# In the United States Court of Appeals for the Seventh Circuit

NORBERTO TORRES,
*Plaintiff-Appellant*,

v.

KENT BROOKMAN, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Illinois
No. 3:19-cv-00248 (Hon. Stephen P. McGlynn)

## BRIEF OF APPELLANT

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Ave., N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

Matthew L. Farley
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
matthew.farley@arnoldporter.com

Robert Reeves Anderson
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth St.
Suite 3100
Denver, CO 80202
(202) 942-1000

*Counsel for Norberto Torres*

March 21, 2024

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2830

Short Caption: Torres v. Brookman et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Norberto Torres

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Arnold & Porter Kaye Scholer; Rights Behind Bars

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s Samuel Weiss      Date: 3/21/2024

Attorney's Printed Name: Samuel Weiss

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address: 416 Florida Ave. NW Unit 26152

Washington, DC 20001

Phone Number: 2024554399      Fax Number: n/a

E-Mail Address: sam@rightsbehindbars.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2830

Short Caption: Torres v. Brookman et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Norberto Torres

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Arnold & Porter Kaye Scholer; Rights Behind Bars

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s Matthew L. Farley    Date: 3/21/2024

Attorney's Printed Name: Matthew L. Farley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 601 Massachusetts Ave. NW

Washington, DC 20001

Phone Number: 2029425000    Fax Number: 2029425999

E-Mail Address: Matthew.Farley@arnoldporter.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2830

Short Caption: Torres v. Brookman et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Norberto Torres

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Arnold & Porter Kaye Scholer; Rights Behind Bars

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s Robert Reeves Anderson      Date: 3/21/2024

Attorney's Printed Name: Robert Reeves Anderson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1144 Fifteenth St.

Suite 3100 Denver, CO 80202

Phone Number: 3038631000      Fax Number: 3038632301

E-Mail Address: Reeves.Anderson@arnoldporter.com

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURES ..................................................................i

TABLE OF AUTHORITIES .............................................................. vi

JURISDICTIONAL STATEMENT .......................................................1

ISSUE PRESENTED .........................................................................1

INTRODUCTION ............................................................................1

STATEMENT OF THE CASE.............................................................5

I.   Factual Background ................................................................5

    A.  Mr. Torres receives the first disciplinary report, which is promptly expunged ...............................................................5

    B.  Mr. Torres receives the second disciplinary ticket for the exact same offense and is again denied a proper hearing.............................6

    C.  Mr. Torres is confined in a moldy, contaminated cell for three months .....................................................................7

    D.  The 409 Ticket is expunged because the hearing was not held in accordance with Illinois Department of Corrections Regulations...............8

II.  Proceedings Below .................................................................9

SUMMARY OF ARGUMENT ...........................................................10

STANDARD OF REVIEW ...............................................................11

ARGUMENT .................................................................................12

I.   Mr. Torres was deprived of a liberty interest because his confinement was a significant and atypical hardship ..................................13

    A.  The district court's summary judgment opinion misstated the law and misapplied the summary judgment standard.......................................14

        1.  The district court erred by assessing the amount of time that Mr. Torres spent in segregation relative to his sentence ......................14

2.  The district court further erred by requiring Mr. Torres to prove physical or mental harm because of his confinement ..........................17

3.  The district court's analysis misapplied the summary judgment standard ...............................................................................19

B.  The conditions of Mr. Torres's segregative confinement were an atypical and significant hardship .................................................22

1.  Conditions exposing inmates to human waste are consistently found to be atypical and significant.......................................22

2.  The conditions of Mr. Torres's confinement were atypical and significant ............................................................................25

CONCLUSION...................................................................................29

CERTIFICATE OF COMPLIANCE....................................................30

CERTIFICATE OF FILING AND SERVICE ......................................31

SHORT APPENDIX............................................................................1a

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30..........2a

SHORT APPENDIX TABLE OF CONTENTS.....................................3a

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Basemore v. Brookman*,
 No. 16-cv-562-SMY-RJD, 2018 WL 1366587
 (S.D. Ill. March 16, 2018)................................................................4, 23

*Brooks v. Warden*,
 800 F.3d 1295 (11th Cir. 2015) ...........................................................25

*Cartwright v. City of Chicago*,
 450 F. App'x 539 (7th Cir. 2011) ........................................................19

*DeSpain v. Uphoff*,
 264 F.3d 965 (10th Cir. 2001) .............................................................25

*Farmer v. Brennan*,
 511 U.S. 825 (1994)..............................................................................18

*Fiorito v. Segal*,
 No. 20-1559, 2022 WL 4809726
 (7th Cir. Oct. 3, 2022)..........................................................................26

*Gaston v. Coughlin*,
 249 F.3d 156 (2d Cir. 2001) .................................................................25

*Gates v. Cook*,
 376 F.3d 323 (5th Cir. 2004) ...............................................................25

*Gillis v. Litscher*,
 468 F.3d 488 (7th Cir. 2006) .........................................................12, 13

*Hardaway v. Meyerhoff*,
 734 F.3d 740 (7th Cir. 2013) .....................................................3, 13, 14

*Hoskins v. Lenear*,
 395 F.3d 372 (7th Cir. 2005) ...................................................14, 15, 16

*Isby v. Brown*,
 856 F.3d 508 (7th Cir. 2018) .................................................................3

*Jackson v. Humphrey*,
No. 5:14-cv-00376, 2015 WL 7566528
(M.D. Ga. Oct. 20, 2015) ..................................................................25

*Jackson v. Humphrey*,
No. 5:14-cv-00376, 2015 WL 7568653
(M.D. Ga. Nov. 24, 2015) ..................................................................25

*Jones v. Frank*,
No. 19-cv-1307-SMY, 2024 WL 1138771
(S.D. Ill. March 15, 2024) ...........................................................18, 19

*Kervin v. Barnes*,
787 F.3d 833 (7th Cir. 2015) ........................................................14, 15

*LaReau v. MacDougall*,
473 F.2d 974 (2d Cir. 1972) ...............................................................25

*Lee v. Bird*,
No. 422CV00053TWPKMB, 2024 WL 621673
(S.D. Ind. Feb. 14, 2024) ...................................................................19

*Lekas v. Briley*,
405 F.3d 602 (7th Cir. 2005) ..............................................................15

*Lisle v. Welborn*,
933 F.3d 705 (7th Cir. 2019) ...................................... 4, 10, 11, 14, 19, 20, 22, 27

*Marion v. Columbia*,
559 F.3d 693 (7th Cir. 2009) .........................................................13, 14, 15

*McCoy v. Atherton*,
818 F. App'x 538 (7th Cir. 2020) ....................................................27, 28

*Neal v. Veath*,
No. 14-cv-1185-SCW, 2017 WL 1132559
(S.D. Ill. March 27, 2017) ..............................................................4, 24

*Ortiz v. Dep't of Correction of New York*,
No. 8-cv-2195, 2011 WL 2638137
(S.D.N.Y. Apr. 29, 2011) ...................................................................25

*Ortiz v. Hernandez*,
  No. 8-cv-2195, 2011 WL 2638140
  (S.D.N.Y. July 5, 2011) .....................................................................................25

*Patel v. Allstate Ins. Co.*,
  105 F.3d 365 (7th Cir. 1997) ....................................................................19, 22

*Sandin v. Conner*,
  515 U.S. 472 (1995).........................................................................3, 12, 13, 17

*Smith v. United States*,
  No. 9:9-cv-729, 2011 WL 777969
  (N.D.N.Y. Feb. 3, 2011) ..................................................................................25

*Smith v. United States*,
  No. 9:9-cv-729, 2011 WL 776150
  (N.D.N.Y. Mar. 1, 2011).................................................................................25

*Taylor v. Riojas*,
  592 U.S. 7 (2020).............................................................................................25

*Thomas v. Ramos*,
  130 F.3d 754 (7th Cir. 1997) ....................................................................14, 16

*Townsend v. Fuchs*,
  522 F.3d 765 (7th Cir. 2008) ............................................12, 14, 15, 18, 26

*Welch v. Bartlett*,
  196 F.3d 389 (2d Cir.1999) ............................................................................25

*West v. Berge*,
  No. 06-C-0068, 2010 WL 3835104
  (E.D. Wis. Sept. 29, 2010)..............................................................................25

*Wilkinson v. Austin*,
  545 U.S. 209 (2005).........................................................................12, 17, 18

*Williams v. Brown*,
  849 F. App'x 154 (7th Cir. 2021) .............................................................22, 26

*Williams v. Ramos*,
  71 F.3d 1246 (7th Cir. 1995) .........................................................................16

*Wright v. McMann*,
387 F.2d 519 (2d Cir. 1967) .................................................................25

*Xiong v. Bd. of Regents of Univ. of Wis. Sys.*,
62 F.4th 350 (7th Cir. 2023) ...............................................................19

*Young v. Bailey*,
No. 8:21-cv-389, 2022 WL 797472
(M.D. Fla. Mar. 16, 2022)....................................................................24

*Young v. Quinlan*,
960 F.2d 351 (3d Cir. 1992) ...............................................................25

**Constitutional Provisions**

U.S. Const. amend. VIII.......................................................1, 3, 9, 11, 12

U.S. Const. amend. XIV .............................................9, 11, 12, 18, 25, 26

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

42 U.S.C. § 1983 ................................................................................1, 2, 3

# JURISDICTIONAL STATEMENT

Plaintiff-appellant sued Defendants-appellees under 42 U.S.C. § 1983 for violating his federal rights under the Fourteenth Amendment to the United States Constitution. The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. The district court entered final judgment on September 15, 2022. SA.11.[1] Appellant timely filed a notice of appeal under Federal Rule of Appellate Procedure 4(c) on October 14, 2022, and the notice of appeal was docketed on October 17, 2022. A.181-83. This Court has jurisdiction under 28 U.S.C. § 1291.

# ISSUE PRESENTED

Whether the district court erred in concluding that Mr. Torres's months-long segregative confinement in a cell riddled with feces, mold, mildew, and insects did not constitute an atypical and significant hardship compared to ordinary prison life sufficient to trigger procedural protections under the Due Process Clause.

# INTRODUCTION

Appellant Norberto Torres's due process rights were violated when Appellees Brookman and Hart ignored his requests to conduct a procedurally proper disciplinary hearing and then sentenced him to three months of segregation in inhumane conditions. Mr. Torres spent 90 days in a cell covered in mildew and

---

[1] Citations to SA.### are to the Short Appendix appended to this brief. Citations to A.### are to the separately bound Appendix.

mold and infested with insects. Each time the cell's toilet was flushed, it exuded human waste onto the cell's floor. Mr. Torres filed suit under Section 1983, alleging that Brookman and Hart violated his due process rights by sentencing him to such conditions without following proper process. The district court concluded that these conditions were not "atypical" or "significant" enough compared to ordinary prison life to substantiate a claim to procedural due process. That conclusion was incorrect, and the district court's decision should be reversed.

\* \* \*

Mr. Torres is serving a 60-year sentence in the Illinois Department of Corrections. While Mr. Torres was imprisoned at Menard Correctional Center, allegations were raised that he was part of a "security threat group." After two hearings in which Mr. Torres was never permitted to call a witness, examine the evidence being used against him, or have the claims against him investigated, Appellees Hart and Brookman sentenced Mr. Torres to, among other things, three months of segregation.

Mr. Torres's segregation conditions were inhumane compared to the living conditions in Menard's general population. Initially, Mr. Torres was not provided a bed to sleep on for the first four days of his confinement. The toilet in his cell leaked, exuding feces onto the floor each time it was flushed. The sewage water and feces on the ground led to the growth of mold and attracted insects. Mr. Torres informed

Menard's warden about these conditions, but nothing was done to remedy them. Mr. Torres asked for cleaning supplies to clean the cell himself but was never provided with any.

After Mr. Torres was released from segregation, a grievance committee recognized that Mr. Torres's hearing was conducted improperly and expunged the infraction from his record.

Recognizing that his rights had been violated, Mr. Torres sued Brookman and Hart under 42 U.S.C. § 1983 to enforce the rights guaranteed to him by the Fourteenth Amendment's Due Process Clause. Prisoners have a constitutional right to due process before they can be deprived of "life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2018). Specifically, prisoners retain a liberty interest in avoiding conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Prisoners alleging a due process violation, therefore, must first show that correctional officers did not follow proper process in sentencing them to segregation, and second, that the conditions of that confinement constitute an "atypical and significant hardship." On summary judgment, the district court must consider "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).

The district court's decision deviates from other opinions issued within this Circuit. Judges within the Southern District of Illinois have repeatedly held that claims alleging less serious conditions in segregation at the same facility, against the very Defendants in this case, provided sufficient evidence "from which a jury could reasonably conclude that" the plaintiff had endured an atypical and significant hardship. *Basemore v. Brookman*, No. 16-cv-562-SMY-RJD, 2018 WL 1366587, at *3 (S.D. Ill. March 16, 2018) (evidence of feces on the wall and floor of cells in claim against Defendant Brookman); *Neal v. Veath*, No. 14-cv-1185-SCW, 2017 WL 1132559, at *3 (S.D. Ill. March 27, 2017) (evidence of wall covered in feces in claim against Defendant Hart).

Here, the district court properly concluded that Defendants Brookman and Hart violated due process at Mr. Torres's disciplinary hearing by ignoring his request to call a witness or an investigator to interview his witness. But the district court erred by concluding that the feces-ridden, insect-laden, mold-infested conditions of Mr. Torres's segregation were not an atypical and significant hardship. Specifically, the district court held that "[Mr. Torres's] allegations do not rise to the level of 'evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement,'" SA.009 (quoting *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019)), and granted summary judgment for Defendants.

The dispositive issue on appeal is whether three months in a feces-ridden, moldy, insect-infested segregation cell rises to the level of an "atypical and significant hardship." If so, the case should move forward to permit Mr. Torres the opportunity to present his claim to a jury. This Court should reverse the decision below and permit this case to proceed to trial.

## STATEMENT OF THE CASE

### I.  Factual Background

Mr. Torres is serving a 60-year sentence in the Illinois Department of Corrections. Throughout the events of this case, Mr. Torres was imprisoned at Menard Correctional Center in Menard, Illinois. Defendants Brookman and Hart both served on the Adjustment Committee at Menard, responsible for conducting disciplinary hearings and sentencing prisoners to extra punishments for any infractions.

### A.  Mr. Torres receives the first disciplinary report, which is promptly expunged

On March 13, 2017, Mr. Torres received Inmate Disciplinary Report Number 201700365/1-MEN ("the 365 Ticket"). A.142-43. While transferring a different prisoner to another facility, the Department of Corrections allegedly discovered a "Latin Folk questionnaire" filled out by Mr. Torres. A.142-43. According to the Department, "[t]hese questionnaires are given to members of the Latin Folk Union and have to be filled out and returned to a designated individual in the cell house.

The information obtained from these can help weed out informants, sex offenders, or individuals that may have had a prior Protective Custody placement." A.143. The Department considers these questionnaires to be evidence of membership in a security threat group, like the Latin Folk, and therefore a violation of prison rules.

Defendants Brookman and Hart convened a hearing for the 365 Ticket on March 15, 2017. A.142. Mr. Torres requested a witness for this hearing, but Brookman and Hart did not produce him. A.177. After a hearing that lasted no more than 15 minutes, A.104, Defendants expunged the 365 Ticket. A.142. Menard's Chief Administrative Officer approved the expungement the next day, March 16, 2017. A.142.

### B. Mr. Torres receives the second disciplinary ticket for the exact same offense and is again denied a proper hearing

That same day, not long after his first hearing concluded, a corrections officer issued a second Disciplinary Report to Mr. Torres. Inmate Disciplinary Report Number 201700409/1-MEN ("the 409 Ticket"). A.144-45. The 409 Ticket is identical in substance to the 365 Ticket. It again alleges that Mr. Torres filled out a questionnaire associated with a security threat group and that the questionnaire was discovered when transferring another prisoner to a different facility. A.145. Other than the ticket number, there is no discernable difference between the 365 Ticket and the 409 Ticket. The day the 409 Ticket was issued—the same day that the 365 Ticket was expunged—Mr. Torres was taken to segregation pending an investigation

into the 409 Ticket.  A.101.  Mr. Torres was served with the 409 Ticket two days later on March 17, 2017.  A.145.

Defendants held a hearing for the 409 Ticket five days later on March 22, 2017.  A.144.  At the hearing, Mr. Torres "requested to Defendants that the hearing investigator interview his forenamed witness . . . and also to investigate the validity of the handwritten 'Latin Folk' questionnaire."  A.177.  Mr. Torres also requested that Defendants "produce whatever paperwork" Defendants "had against [him]."  A.107.  Brookman and Hart did not dispatch an investigator to interview the witness or investigate the validity of the questionnaire.  The evidence used against Mr. Torres was never provided to him.  Defendants also "refused to allow [Mr. Torres] to have counsel present."  A.010.  After allegedly comparing the questionnaire to handwriting samples that Mr. Torres was never able to review, Defendants found Mr. Torres guilty and recommended he be placed on C-Grade for three months; in segregation for three months; three months of commissary restriction; and six months of contact visits restriction.  A.144.  Mr. Torres was then "rushed out" of the hearing, preventing him from asking any questions.  A.035.

### C. Mr. Torres is confined in a moldy, contaminated cell for three months

Being placed in segregation significantly restricted Mr. Torres's life.  He was not permitted to watch television, access a phone, or possess electronics.  A.095-96.  He was not allowed contact visits and was limited in what he could purchase from

the commissary. A.095. He was not even permitted to work. While in segregation, Mr. Torres was allowed out of his cell only "once or maybe twice a week." A.095.

When Mr. Torres was placed in segregation, "it was three or four days until" he was provided with a bed. A.120. Unfortunately, his conditions in segregation did not improve after that. His cell toilet was polluted with insects, mildew, and rust: "[We were] breathing in rust." A.120. Specifically, Mr. Torres's toilet "was leaking underneath with toilet backflush. There were signs of mold and mildew and insects everywhere." A.171. This backflush included feces going into his cell each time the toilet was flushed. A.011. Mr. Torres informed the warden of these conditions and asked for cleaning supplies to clean the cell himself. A.011. Mr. Torres was never provided any cleaning supplies, forcing him to endure these conditions for the entirety of his segregation. A.011. These conditions are in clear violation of the Illinois Administrative Code, which requires that every cell include a "flushable toilet," and that "each cell shall be maintained in a sanitary condition and cleaning materials shall be made available on a regular basis." A.031.

### D. The 409 Ticket is expunged because the hearing was not held in accordance with Illinois Department of Corrections Regulations

While in segregation, on May 24, 2017, Mr. Torres filed a grievance regarding the 409 Ticket and his placement in segregation. A.025. Mr. Torres's Grievance Officer affirmed his grievance. Although the Officer agreed with Brookman and Hart's decision on the merits, he recommended that Ticket 409 "be expunged due to

the ticket not being heard in accordance with" Illinois Department of Corrections Regulations.  A.030.  The Grievance Officer did not specify what aspects of Mr. Torres's hearing were not in accordance with Department regulations.

## II.  Proceedings Below

Mr. Torres brought this action *pro se* on February 28, 2019.  A.005.  Mr. Torres sued Defendants Brookman, Hart, and Lashbrook in their individual and official capacities for "1. Cruel and unusual punishment 2. Violation of due process [and] 3. Conditions of confinement."  A.011.

On preliminary review, the district court divided Mr. Torres's claims into two counts: (1) a Fourteenth Amendment procedural due process claim against Defendants Brookman and Hart; and (2) an Eighth Amendment claim against Chief Administrative Officer Lashbrook for cruel and unusual punishment.

All three defendants moved for summary judgment on the ground that Mr. Torres had not properly exhausted his claims.  A.038.  The district court granted summary judgment as to Mr. Torres's Eighth Amendment claim against Officer Lashbrook but allowed Mr. Torres's Fourteenth Amendment claim to proceed against Defendants Brookman and Hart.  A.046.  After discovery, the remaining Defendants again moved for Summary Judgment.  A.047-49.  Defendants claimed that there was no due process violation because Mr. Torres was never deprived of a

liberty interest. A.56-60. Mr. Torres filed a timely response. A.156-180. Defendants filed no reply.

Agreeing with Defendants, the district court concluded that Mr. Torres lacked a protectable liberty interest under the second prong of the Due Process analysis. SA.009. On the first prong, the district court concluded that there was evidence which "might support a finding that Defendants' failure to call or interview his witness amounted to a denial of his procedural due process rights." SA.008. However, the district court went on to hold that no liberty interest was impugned by this violation.

The district court determined that Mr. Torres's three months of confinement in inhumane conditions was not an "atypical or significant hardship" because "a three-month period in punitive segregation is a miniscule part of Plaintiff's imprisonment," and Plaintiff did not put forth sufficient "evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement." SA.009 (quoting *Lisle*, 933 F.3d at 721).

Mr. Torres timely appealed. A.181-83.

## SUMMARY OF ARGUMENT

This Court should reverse because the district court misapplied the standard at summary judgment by failing to construe the evidence in the light most favorable to Mr. Torres (the non-movant below) and erred in its conclusion that Mr. Torres

failed to offer evidence that his conditions in segregation were atypical and significant.

The district court committed three legal errors, each of which justifies reversal. First, the district court incorrectly relied on the length of Mr. Torres's sentence to conclude that his 90 days in segregation could not amount to an atypical and significant hardship. Second, the district court improperly imported an element from an Eighth Amendment conditions of confinement claim to Mr. Torres's Fourteenth Amendment Due Process claim by faulting him for not putting forth evidence of a substantial risk of harm. Third, the district court did not construe all facts in a light most favorable to Mr. Torres and ignored undisputed material facts in the record. With regard to the substance of Mr. Torres's claim, this Court should reverse because Mr. Torres did offer "evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement." SA.009. Evidence of prolonged exposure to human waste has consistently been sufficient to deny summary judgment. Mr. Torres presented evidence of that horrid condition—and much more.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of summary judgment. All facts must be construed in a light favorable to Mr. Torres, drawing all reasonable inferences in his favor. *Lisle*, 933 F.3d at 716.

# ARGUMENT

Because Brookman and Hart violated Mr. Torres's due process rights at his second hearing, Mr. Torres was confined in a cell for three months that was infested with mold, mildew, insects, and rust, and consistently flooded with sewage water containing human waste. Mr. Torres asked for, and was denied, cleaning supplies to remedy the situation himself. These conditions were "atypical and significant" under Seventh Circuit precedent and implicate Mr. Torres's liberty interests.

The Constitution does not always "create an interest in avoiding transfer within a correctional facility." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005)). The Supreme Court has determined, however, that "that the Fourteenth Amendment provides to inmates a liberty interest in avoiding placement in more restrictive conditions, such as segregation, when those conditions pose an atypical and significant hardship when compared to the ordinary incidents of prison life." *Id.* (citing *Sandin*, 515 U.S. at 484). This "atypical and significant hardship" does not need to rise to the level of an Eighth Amendment violation to "trigger[] procedural requirements." *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006). And even conditions that are "necessary and appropriate" can still "give rise to a liberty interest in their avoidance." *Wilkinson*, 545 U.S. at 224.

"Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (quoting *Sandin*, 515 U.S. at 484). Determining whether conditions rise to this level is a "fact intensive inquiry," and is therefore ultimately a fact question for the jury. *Gillis*, 468 F.3d at 492. At summary judgment, therefore, the district court is assessing only whether a plaintiff has presented evidence from which a jury could conclude that he was subjected to an atypical and significant hardship. In doing so, courts must look at "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion v. Columbia*, 559 F.3d 693, 697 (7th Cir. 2009). Neither is dispositive, as "relatively short terms of segregation" subject to "exceptionally harsh conditions" may "give rise to a prisoner's liberty interest." *Hardaway*, 734 F.3d at 743.

I. **Mr. Torres was deprived of a liberty interest because his confinement was a significant and atypical hardship**

The district court below correctly concluded that Mr. Torres's procedural rights were violated when Brookman and Hart ignored his request for a witness or an investigator at his second hearing. An Illinois Department of Corrections Grievance Officer expunged Mr. Torres's disciplinary ticket because the ticket was not "heard in accordance with Department Rule 504." A.152. The district court thus held that a jury could conclude that Brookman and Hart's "failure to call or interview

his witness amounted to a denial of [Mr. Torres's] due process rights." SA.008. The only question before this Court, therefore, is whether the evidence on the record would have permitted a jury to decide that the conditions of Mr. Torres's confinement rose to the level of an atypical and significant hardship. The district court erred in holding that Mr. Torres's claim could not meet this standard.

### A. The district court's summary judgment opinion misstated the law and misapplied the summary judgment standard

#### 1. The district court erred by assessing the amount of time that Mr. Torres spent in segregation relative to his sentence

The district court's assertion that "Courts have dismissed due process claims based on relatively short periods of disciplinary segregation without inquiry into the specific conditions of confinement," misstates the law on segregative confinement claims. SA.008-09 (citing *Marion*, 559 F.3d at 698; *Townsend*, 522 F.3d at 766; *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)).

This Court has made clear that district courts must examine "the *combined* import of the duration of the segregative confinement *and* the conditions endured." *Hardaway*, 734 F.3d at 743 (first emphasis added). This Court has "found that, depending on the conditions of confinement and whether there were any additional punishments, a period of segregation considerably shorter than four months may" constitute an atypical and significant hardship. *Lisle*, 933 F.3d at 721 (citing *Kervin*

*v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015)).  In fact, even in cases where this Court

has determined that the duration of segregation is "not such an extreme term, and

standing alone, would not trigger due process rights," the Court has nevertheless

"remanded for a factual inquiry as to whether the conditions of the prisoner's

confinement were significantly altered when he was placed in segregation." *Marion*,

559 F.3d at 698 (quotation marks omitted).

The cases cited by the district court do not stand for the proposition that courts

can dismiss due process claims "without inquiry into the specific conditions of

confinement." SA.009.  In *Marion*, while 240 days of segregation was insufficient

on its own to be an "atypical and significant" condition, the case was remanded for

further fact finding into the conditions of that confinement.  *Id.* at 698-99.  In

*Townsend*, the holding turned not on the fact that the plaintiff was in segregation for

only 59 days, but rather on the fact that the segregative confinement was

administrative rather than disciplinary, as "inmates have no liberty interest in

avoiding transfer to discretionary segregation—that is, segregation imposed for

administrative, protective, or investigative purposes." *Townsend*, 522 F.3d at 771

(citing *Lekas v. Briley*, 405 F.3d 602, 608-09 & 608 n.4).  In *Hoskins*, the plaintiff

alleged no atypical conditions about his segregation status.  The Court did not

consider the conditions of confinement because the confinement itself was the only

thing alleged to be a violation of the prisoner's due process rights.  *Hoskins*, 395

F.3d at 374-75.  And in *Thomas*, the Court's conclusion explicitly depended on the combination of the duration and conditions of disciplinary segregation.  *Thomas*, 130 F.3d at 762 ("In spite of Thomas's extended period of disciplinary segregation, we are convinced that it did not result in an atypical and significant deprivation because the conditions he experienced did not 'greatly exceed[] what one could expect from prison life.'" (quoting *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995))).

Requiring that district courts look at the duration of confinement in connection with the conditions of that confinement makes practical sense.  Duration is but one factor in determining how much of a liberty interest has been taken away.  The Seventh Circuit has never drawn a line requiring prisoners to suffer depraved conditions for a certain amount of time before being permitted to bring a due process claim alleging an atypical and significant hardship.  For good reason.  It is not difficult to conjure up hypothetical conditions so inhumane that they would implicate a liberty interest after a few hours.  At the other end of the spectrum, less onerous conditions suffered for an extended period of time could eventually rise to a unconstitutional deprivation of liberty.

The district court further erred in considering the length of Mr. Torres's segregative confinement *in relation to* the length of his underlying sentence.  Neither the Supreme Court nor this Court has ever held that the fact-intensive inquiry that

goes into consideration of liberty interests includes the length of the plaintiff's sentence as a variable. And yet, the district court still based its decision on its assessment that Mr. Torres's time in segregation was "miniscule" in comparison to his full sentence. But a prisoner serving a 60-year sentence has no less of a constitutional liberty interest than someone serving a six-day sentence. Whether or not conditions rise to the level of atypical and significant does not depend on the length of a prisoner's sentence. To determine if certain conditions rise to a protectable liberty interest, a jury decides whether they are atypical and significant . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Wilkinson*, 545 U.S. at 223-24. The fact that Mr. Torres was serving a 60-year sentence does not make the conditions he endured any less horrific, nor do they make the deprivation of his procedural rights any less redressable.

To the extent that the district court's opinion relied on its assessment that "[v]iewed in the context of Plaintiff's 60-year sentence, a three-month period in punitive segregation is a miniscule part of Plaintiff's imprisonment," SA.009, it cannot stand.

### 2. The district court further erred by requiring Mr. Torres to prove physical or mental harm because of his confinement

The district court again misconstrued the law when it faulted Mr. Torres for not alleging "that he suffered physical or mental harm or substantial risk to his health because of his three-month confinement in the cell." SA.009. There is no

requirement that plaintiffs allege any physical or mental harm because of confinement in his cell to plead a violation of his due process rights.

To be sure, claims challenging the conditions of confinement under the *Eighth Amendment* require showing that the conditions exposed an inmate to "a substantial risk of serious harm," *Townsend*, 522 F.3d at 773 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). But claims alleging that a violation of a prisoner's due process rights resulted in an atypical and significant hardship have no such requirement. It is well settled precedent that claims of an atypical and significant hardship *do not* have to rise to the level of an Eighth Amendment claim "result[ing] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834; *Wilkinson*, 545 U.S. at 224 (establishing that there is a liberty interest short of an Eighth Amendment violation triggering due process protections).

Even if it were a requirement for Mr. Torres to allege a substantial risk to his health, however, Mr. Torres has made clear that his alleged injuries include damage to his health resulting from this due process violation. Mr. Torres contends that breathing in the contaminants in his segregation cell harmed his physical health and that the time in segregation injured his back, specifically a dislocated disk. A.122. This evidence alone is sufficient to show an atypical and substantial hardship. *See Jones v. Frank*, No. 19-cv-1307-SMY, 2024 WL 1138771, at *6 (S.D. Ill. March 15,

2024) (testimony that segregation was "traumatizing" was sufficient to create "an issue of fact as to whether [] segregation imposed an atypical hardship").

### 3. The district court's analysis misapplied the summary judgment standard

The district court's single-paragraph analysis of the conditions of Mr. Torres's confinement misapplied the summary judgment standard and ignored contrary case law. A district court deciding a motion for summary judgment must construe all facts in a light most favorable to the non-moving party, *Lisle*, 933 F.3d at 716, and "must consider the *entire* record." *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997) (emphasis added). "[A]t summary judgment, [the court] cannot ignore undisputed material facts." *Xiong v. Bd. of Regents of Univ. of Wis. Sys.*, 62 F.4th 350, 357 (7th Cir. 2023) (Kirsch, J., dissenting in part); *see Cartwright v. City of Chicago*, 450 F. App'x 539, 541 (7th Cir. 2011) ("even when the opposing party does not dispute the movant's facts, the district court is still obligated to review those facts in the light most favorable to the nonmoving party" and cannot "disregard" them); *Lee v. Bird*, No. 422CV00053TWPKMB, 2024 WL 621673, at *6 (S.D. Ind. Feb. 14, 2024) (cannot ignore facts at summary judgment).

Specifically, the district court failed to properly apply the summary judgment standard with respect to evidence of human waste in Mr. Torres's cell. Either the district court failed to construe all facts in a light most favorable to Mr. Torres, or the district court overlooked evidence that Mr. Torres's toilet was exuding human

waste onto the floor of his cell that he was not permitted to clean. Either error warrants reversal.

One of Mr. Torres's central claims is that while in segregation, his toilet was exuding feces into his cell with every flush. Plaintiff alleged that "feces" would leak from the toilet every time that either he or his cellmate flushed the toilet. A.011. The toilet in his cell was "leaking underneath with toilet backflush," which would include feces. A.171. This allegation was *in addition to* the fact that Mr. Torres's cell was contaminated with insects, mold, mildew, and rust. A.011; A.171, A.120. Mr. Torres asserted that his cell was contaminated with feces in both his Complaint and his Opposition to Defendants' Motion for Summary judgment, yet the district court did not mention this critical evidence in the decision below.

The district court describes the conditions of Mr. Torres's confinement in two sentences: "he was initially without a mattress but received it (along with bedding and his personal property and legal papers) within three or four days of being placed in the segregation cell. The toilet did not work properly, resulting in mold and mildew in the cell, and the cell was infested with insects." SA.009. The district court's analysis of these conditions was limited to a single sentence: "Plaintiff's allegations do not rise to the level of 'evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement.'" SA.009 (quoting *Lisle*, 933 F.3d at 721).

The district court's description of the toilet in Mr. Torres's cell fails to draw inferences in the light most favorable to the plaintiff. In describing the undisputed facts, the district court states only that Mr. Torres's "toilet was malfunctioning, causing 'smelly mold' to grow on the side of the toilet." SA.003. And in assessing the conditions of Mr. Torres's confinement, the district court offered that, "[t]he toilet did not work properly, resulting in mold and mildew in the cell, and the cell was infested with insects." SA.009.

By describing the toilet as "malfunctioning" and "not work[ing] properly," the district court has improperly drawn an inference in favor of *Brookman and Hart*, the moving parties. A "malfunctioning" toilet describes a toilet with a broken handle or a loose toilet seat, but that is not what the record shows here. Drawing inferences in favor of Mr. Torres requires concluding that, as Mr. Torres asserted, the toilet spread feces into his cell each time it was flushed after use for three whole months. Drawing inferences in favor of Mr. Torres leads to an image of a jail cell flooded with sewage water and fecal matter. Mr. Torres begged for cleaning supplies to take care of this issue himself but was never provided any. The loose fecal matter coating the floor led to mold and mildew and infestations of insects. Describing a toilet as one that "did not work properly," while technically true, subverts the summary judgment standard by failing to construe all facts in favor of Mr. Torres.

In the alternative, the district court's opinion may have simply overlooked evidence that Mr. Torres's segregative cell was covered with human waste. Defendants did not contest that Mr. Torres's toilet was consistently leaking fecal matter into his cell. An undisputed, material fact such as this must be considered when deciding a motion for summary judgment. *Patel,* 105 F.3d at 367. The fact that the district court did not address the undisputed fact about fecal matter leaking into Mr. Torres's cell in conducting its assessment of whether his conditions of confinement were atypical and significant is sufficient for this Court to reverse and remand to the district court.

**B.      The conditions of Mr. Torres's segregative confinement were an atypical and significant hardship**

**1.      Conditions exposing inmates to human waste are consistently found to be atypical and significant**

The evidence in the record that Mr. Torres's cell was infested with mold, mildew, insects, and human waste certainly "rise[s] to the level of 'evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement.'" SA.009 (quoting *Lisle* 993 F.3d at 721). In some cases, evidence of human waste *alone* has been enough to defeat a motion for summary judgment. *Williams v. Brown*, 849 F. App'x 154, 155 (7th Cir. 2021) (segregation "to an environment contaminated by feces and urine" implicated a liberty interest).

Notably, similar inhumane conditions exposing a prisoner to human waste for four months at the *same correctional facility*, against *one of the same defendants in this case*, was found to be an atypical and significant hardship by another judge within the same district. *See Basemore v. Brookman*, No. 16-CV-562-SMY-RJD, 2018 WL 1366587 (S.D. Ill. March 16, 2018). The plaintiff in *Basemore*, like Mr. Torres, sued Defendant Brookman and another correctional officer alleging a due process violation in the procedures that sentenced him to segregation. *Id.* at 1. The plaintiff spent four months of his segregative confinement at Menard Correctional Center, the same facility in this case, where he was not provided "cleaning supplies, and there was feces on the walls and floors of his cells." *Id.* at *3. The other five months of the plaintiff's segregation were spent at a different facility where the segregation conditions "were similar to the conditions in general population," and therefore would not be considered in the atypical and significant hardship analysis. *Id.* With no other alleged conditions, the court concluded that "[a]lthough the record is not fully developed as to how certain conditions in segregation compared to general population conditions, there is sufficient evidence from which a jury could reasonably conclude that [the plaintiff's] nine months in segregation," namely four months in segregation at Menard in conditions similar to Mr. Torres's, "amounted to an 'atypical and significant hardship.'" *Id.* at *4.

The same was true in *Neal v. Veath*, No. 14-cv-1185-SCW, 2017 WL 1132559 (S.D. Ill. March 27, 2017).  In *Neal*, a plaintiff imprisoned at Menard was sentenced to six months segregation by Defendant Hart.  *Id.* at *2.  Alleging a due process violation, the plaintiff brought a claim against Hart and other defendants.  *Id.* at *3. On a thinner evidentiary record than the one presented by Mr. Torres in this case, the district court concluded that evidence of feces in a segregation cell, alleged in only the plaintiff's response to summary judgment, was sufficient to amount to an atypical and significant hardship:

> Viewing the record in the light most favorable to Plaintiff, a reasonable juror could find that the conditions of Plaintiff's segregation imposed upon Plaintiff an atypical and significant hardship in relation to the ordinary incidents of prison life.  <u>Though it is only briefly mentioned in his *pro se* response, Plaintiff's claim that the walls of his cell in segregation were covered in feces and urine is enough for the implication of a liberty interest.</u>  Though Plaintiff does not indicate if he was in the cell covered in feces and urine for his entire stay in segregation, in viewing the facts most favorably to Plaintiff, one can infer that he was in that dirty cell for the duration of his segregation.  A six month stay in a cell with the walls covered in feces and urine and a non-working toilet constitutes an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.  Though Plaintiff mentioned these conditions only in his Response to the summary judgment motion, the statement in his Response is sufficient to create a question of fact as to the condition of his segregation cell.

*Id.* (emphasis added).

Evidence of exposure to human waste has consistently been sufficient to defeat motions for summary judgment in cases alleging atypical and significant hardships.  *Young v. Bailey*, No. 8:21-cv-389, 2022 WL 797472, at *3 (M.D. Fla.

Mar. 16, 2022) (evidence of human waste was an atypical and significant hardship); *Jackson v. Humphrey*, No. 5:14-cv-00376, 2015 WL 7566528, at *4 (M.D. Ga. Oct. 20, 2015), *report and recommendation adopted*, 2015 WL 7568653 (M.D. Ga. Nov. 24, 2015) (finding that the smell of human waste was an atypical and significant condition).[2]

### 2. The conditions of Mr. Torres's confinement were atypical and significant

Conditions less harsh than Mr. Torres's have been found by this Court to be significant and atypical hardships. In *Townsend*, this Court conceded that a confinement for 60 days in a mold-infested cell could constitute an Eighth

---

[2] Indeed, evidence of exposure to human waste has even supported the stricter standard of an Eighth Amendment conditions-of-confinement claim. *E.g.*, *Taylor v. Riojas*, 592 U.S. 7 (2020); *Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001); *Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992); *Gaston v. Coughlin*, 249 F.3d 156, 161 (2d Cir. 2001); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972); *Smith v. United States*, No. 9:9-cv-729, 2011 WL 777969, at *10 (N.D.N.Y. Feb. 3, 2011), *report and recommendation adopted*, 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011) (denying motion for summary judgment on Eighth Amendment claim where inmate alleged that officers "refused to flush the toilet . . . causing the toilet to overflow and covering the floor with urine and feces"); *Ortiz v. Dep't of Correction of New York*, No. 8-cv-2195, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom*, *Ortiz v. Hernandez*, No. 8-cv-2195, 2011 WL 2638140 (S.D.N.Y. July 5, 2011) ("A[n] [Eighth Amendment Claim] will not lie for prison conditions that are merely unpleasant. However, chronic exposure to human waste will give rise to a colorable claim."). Even a denial of toilet paper has been found to be an atypical and significant hardship. *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir.1999); *West v. Berge*, No. 06-C-0068, 2010 WL 3835104, at *7 (E.D. Wis. Sept. 29, 2010); *Wright v. McMann*, 387 F.2d 519, 522 (2d Cir. 1967).

Amendment violation, surpassing the standard necessary to constitute atypical and significant hardship. *Townsend*, 522 F.3d at 773. The Court has held that conditions of a nonfunctioning toilet and no access to a shower "warrant[s] a further look" from the district court as to whether the conditions are atypical and significant. *Fiorito v. Segal*, No. 20-1559, 2022 WL 4809726, at \*3 (7th Cir. Oct. 3, 2022). And in *Williams v. Brown*, this Court assumed that segregative confinement in a room infested with feces and urine constituted an atypical and significant hardship. *Williams*, 849 F. App'x at 158.

Mr. Torres's conditions exceed those accepted as atypical and significant by this Court in the past. Mr. Torres was confined in a cell infested with mold, mildew, and insects. In his own words "all the toilets . . . in segregation are polluted with insects, infected, mildew, rust. We're breathing in rust." A.120. "[T]he toilet in his cell was leaking underneath with toilet backflush, there were signs of mold and mildew and insects everywhere." A.171. These conditions were never remedied. Mr. Torres was only permitted to leave this polluted cell once or twice a week for a single hour. And four days of his time in segregation were spent without even a mattress, forcing him to sleep on the floor contaminated with human waste. A.120. These conditions "rise to the level of 'evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement.'" SA.009.

The two cases cited by the district court to support a contrary finding, *Lisle* and *McCoy*, offer little support for its position. In *Lisle*, this Court concluded that a "vague description" of a cell having "rust on the bars" and "corroded feces" in the toilet was insufficient for a jury to "reasonably infer that these conditions were unique to cells in the segregation unit or that these conditions caused [the plaintiff] any hardship." *Lisle*, 933 F.3d at 721. Mr. Torres's description was anything but vague. He has not alleged "rust on the bars"; he has testified that there was rust in the air that affected his breathing. Mr. Torres did not describe "corroded feces," *inside* a toilet. Mr. Torres said that feces were expelled onto his floor every time the toilet was flushed and that he was never permitted cleaning supplies to remedy this situation himself. Further, unlike in *Lisle*, Mr. Torres has made clear that these conditions varied significantly from general population. He testified that "all the toilets and all that *in segregation* [were] polluted with insects, infected, mildew, rust," comparing the toilets in segregation to those outside of it. A.120 (emphasis added). Mr. Torres testified that it was his time in segregation that gave him breathing problems and back problems. A.122. It is unreasonable to read Mr. Torres's testimony to mean anything other than that the polluted and contaminated conditions in segregation are not present in the facility at large.

The district court's reliance on *McCoy v. Atherton*, 818 F. App'x 538 (7th Cir. 2020), fares no better. *McCoy* concerned a gay inmate who was placed in

administrative segregation on the medical floor of the jail. *Id.* at 540. The plaintiff was placed in segregation because of his sexual orientation, "to protect him from other inmates preying on him and from him potentially preying on other inmates due to [his] sexual orientation." *Id.*. In alleging a due process claim, the plaintiff "characterized his living conditions as unsanitary and dangerous. In particular, he said that his cell was dirty—there were stray hairs near his bed, a dirty piece of toilet paper on the floor, dried urine on the toilet seat, and soap scum in the sink." *Id.*

Again, these conditions are not comparable to the conditions experienced by Mr. Torres. Mr. Torres testified that a toilet was actively leaking feces into his cell which was infested with mold, mildew, and insects. The conditions of Mr. Torres's confinement are much more akin to the conditions in *Townsend*, *Williams v. Brown*, *Basemore*, and *Neal* that were found to represent an atypical and significant hardship than they are to the vague allegations in *Lisle* and *McCoy*. Had the district court properly considered all facts of the record and construed all facts in favor of Mr. Torres, it would have been compelled by precedent to deny summary judgment. Mr. Torres has a right to present his claims to a jury of his peers after being forced to live in subhuman conditions for three months after a conceded lack of due process.

## CONCLUSION

Mr. Torres respectfully asks the Court to reverse the judgment below.

Dated: March 21, 2024

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Ave., N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

Respectfully submitted,

*s/ Matthew L. Farley*
Matthew L. Farley
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
matthew.farley@arnoldporter.com

Robert Reeves Anderson
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth St.
Suite 3100
Denver, CO 80202
(202) 942-1000

.

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Circuit Rule 32(c).  The brief contains 6,881 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 (2016) in Times New Roman 14-point font.

*s/ Matthew L. Farley*
Matthew L. Farley

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on

March 22, 2024, I electronically filed the foregoing Brief of Appellant via ECF, and

service was accomplished on counsel of record by that means.

<div align="right">

*s/ Matthew L. Farley*
Matthew L. Farley

</div>

**<u>SHORT APPENDIX</u>**

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

I hereby certify that the Short Appendix herein includes all of the materials required by Circuit Rule 30(a) and (b).

s/ *Matthew L. Farley*

Matthew L. Farley

**SHORT APPENDIX**
**TABLE OF CONTENTS**

Memorandum and Order Granting Motion for Summary Judgment,
    Dist. Ct. Dkt. 48 (Sept. 15, 2022) ...........................................................SA.1

Judgment,
    Dist. Ct. Dkt. 49 (Sept. 15, 2022) .........................................................SA.11

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **NORBERTO TORRES,** | ) | |
| **#R74153,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-00248-SPM** |
| | ) | |
| **KENT E. BROOKMAN, and** | ) | |
| **JASON N. HART,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 40). Plaintiff Norberto Torres filed a response in opposition (Doc. 46). As explained below, the motion will be granted.

### BACKGROUND

In this *pro se* civil rights lawsuit, Plaintiff claims that Defendants violated his constitutional right to due process when they found him guilty of a disciplinary infraction that had previously been expunged, which resulted in his confinement in punitive segregation for three months at Menard Correctional Center ("Menard"). The second Inmate Disciplinary Report ("IDR") was also ultimately expunged, but not before Plaintiff completed serving his segregation time. Plaintiff is currently confined at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 39).

Upon initial review of the Complaint, the Court permitted Plaintiff to proceed on two counts (Doc. 9). Subsequently, Count 2 (an Eighth Amendment claim for unsanitary cell

1

**SA.001**

conditions) and one Defendant were dismissed from the action for Plaintiff's failure to exhaust his administrative remedies. (Doc. 20). The case now consists of a single count:

> **Count 1:** Fourteenth Amendment procedural due process claim against Brookman and Hart for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges.

(Doc. 9, p. 3).

### RELEVANT FACTS

On March 9, 2017, Plaintiff was incarcerated at Menard, and was issued IDR Number 201700365/1-MEN (the "365 Ticket") for the offense of 205/Security Threat Group ("STG") organizational activity. (Doc. 41-4, pp. 1-2). The ticket was based on a handwritten "Latin Folk" questionnaire containing Plaintiff's name and information and allegedly matching his handwriting. The document had been found by Pontiac Correctional Center officials among the belongings of another inmate who had just transferred from Menard to Pontiac. (Doc. 1, p. 11; Doc. 41-4, p. 2). Defendants Brookman and Hart, as the Adjustment Committee, conducted the disciplinary hearing on the 365 Ticket on March 15, 2017, and expunged the charge. (Doc. 1, pp. 6, 13; Doc. 41-4, p. 1).

Two days later, on March 17, 2017, Plaintiff was issued IDR Number 2017-00409/1-MEN, (the "409 Ticket") for the same 205 offense based on the same gang-related document. (Doc. 41-4, pp. 3-5). This ticket included the additional information that handwriting samples from Plaintiff's master file were compared to the questionnaire to conclude that Plaintiff wrote it, and stated that Plaintiff was a self-admitted member of a gang affiliated with the Latin Folk. (Doc. 41-4, p. 5). On March 22, 2017, Brookman and Hart again served as the Adjustment Committee for the hearing on this ticket. Plaintiff asserted he did not write the questionnaire, but they found

2

Plaintiff guilty, punishing him with 3 months in segregation as well as loss of privileges. (Doc. 1, pp. 6, 14; Doc. 41-4, p. 3). Defendants note that they merely recommended the punishment, and the warden made the final determination of guilt and sanctions. (Doc. 41, p. 4).

Plaintiff maintains that he requested a witness prior to the hearing on the 365 Ticket via institutional mail, but Defendants did not contact the witness. (Doc. 46, pp. 8, 15). During the hearing on the 409 Ticket, Plaintiff requested a hearing investigator to interview that witness and to investigate the validity of the handwritten questionnaire, but Defendants declined to do so. (Doc. 46, p. 8). Defendants state they have no recollection of whether Plaintiff requested a witness at either hearing, but note Plaintiff did not request a witness on either disciplinary ticket. (Doc. 41, pp. 4-5).

Plaintiff filed a grievance challenging the discipline imposed as a result of the 409 Ticket. (Doc. 1, pp. 21-23; Doc. 41-5, pp. 5-7). He asserted that he had never been informed of any investigation, was not provided with a hearing investigator, was denied the ability to call witnesses to be interviewed, and could not prepare a defense because he was never given a copy of the document that prompted the IDR or the documents relied upon to conclude that the handwriting on the "Latin Folk" questionnaire was Plaintiff's. The grievance officer noted that Plaintiff was guilty of the offense, but the ticket was expunged on June 15, 2017 because the hearing was not conducted in accordance with Department Rule 504. (Doc. 1, pp. 25-26; Doc. 41-5, pp. 3-4).

Plaintiff asserts that his segregation cell was unsanitary because the toilet was malfunctioning, causing "smelly mold" to grow on the side of the toilet, and Plaintiff and his cellmate were not given any cleaning supplies. (Doc. 1, p. 7). In his deposition, Plaintiff testified that the toilet was "polluted" with insects, mildew, and rust, and that he was breathing in rust while

3

**SA.003**

in the cell. (Doc. 41-1, p. 58). Those conditions were not remedied for the duration of his three month segregation term. (Doc. 1, p. 7).

<div align="center">LEGAL STANDARDS</div>

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). The moving party has the burden of establishing that no material facts are genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F. 3d 939, 951 (7th Cir. 2013). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

<div align="center">4</div>

<div align="center">**SA.004**</div>

### B. Due Process Standard

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017); *Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Procedural due process protections for prison disciplinary proceedings require that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation" of the decision. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted). *See also Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Id.*

Demotion to C-grade status and loss of commissary and/or visitation privileges do not implicate a liberty interest. *Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *see also*, *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015). And an inmate's liberty interest in avoiding segregation is limited. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). A protected liberty interest is triggered only when segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, the Court must take into consideration "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway*, 734 F.3d at 743; *Marion v. Columbia Corr. Inst.*, 559 F.3d 693 (7th Cir. 2009).

<div align="center">**DISCUSSION**</div>

The fact that Plaintiff's 409 ticket was expunged because the disciplinary hearing failed to comply with an IDOC procedural rule does not mean that a constitutional violation occurred. Likewise, having been found guilty of the 409 ticket after the initial 365 ticket was expunged did not, in and of itself, violate Plaintiff's due process rights. *See Meeks v. McBride*, 81 F.3d 717, 721-22 (7th Cir. 1996) ("[A]n acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge."). Instead, the Court applies the standards outlined in the section above when assessing Plaintiff's civil rights claims. Two issues may implicate procedural due process concerns: Plaintiff's request for a witness and his inability to review the documents relied upon to find him guilty.

Some facts are in dispute regarding the witness request. Plaintiff insists he made a written request for a witness (a fellow inmate) prior to the first disciplinary hearing, and he renewed that request for the second hearing, but Defendants deny that Plaintiff requested witnesses. (Doc. 46, pp. 8-9, 14-15; Doc. 41, p. 5). Defendants also do not recall whether Plaintiff asked for a witness during either hearing. (Doc 41, pp. 4-5). Defendants note that Plaintiff did not write a witness request on either of the disciplinary tickets, and Plaintiff does not deny that point. Construing the disputed facts in Plaintiff's favor at this stage, the Court presumes that Plaintiff could show that he requested a witness but Defendants refused to obtain that person's testimony. No evidence has been put forth by Defendants to indicate that security or institutional concerns prevented them from granting Plaintiff's request to call the witness. *See Wolff*, 418 U.S. at 566 (prisoner has a right to call witnesses in disciplinary proceeding unless doing so would jeopardize institutional safety or correctional goals).

Plaintiff was given advance written notice of the charge against him, but it is undisputed

<div align="center">6</div>

<div align="center">**SA.006**</div>

that during the disciplinary process, Plaintiff did not receive a copy of the gang questionnaire allegedly written by him, and he was never shown the documents that Defendants relied on to conclude that the handwriting on that questionnaire was Plaintiff's. (Doc. 46, pp. 9-12, 14). Material *exculpatory* evidence must be disclosed in prison disciplinary proceedings if timely requested, unless disclosure "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *see also Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). However, prison officials are not required to provide irrelevant or inculpatory evidence. *Jones*, 637 F.3d at 848; *Scruggs*, 485 F.3d at 939-40.

Here, the documents in question are not part of the record, so their exculpatory or inculpatory nature cannot be independently assessed. During the pendency of this case, Plaintiff has had the opportunity to conduct discovery. The "documents related to the resolution of" his disciplinary ticket should have been provided to him by Defendants, and Plaintiff could have specifically requested any that were not disclosed. (Doc. 18, p. 2; Doc. 29). Plaintiff has not filed any motion claiming that he was denied access to relevant documents during discovery. Notably, Plaintiff does not assert that the handwritten questionnaire or handwriting samples would have proved him innocent, and he did not include copies of the documents with his response to the motion for summary judgment. (Doc. 46). Instead, Plaintiff relies on the arguments that he should have been permitted to see the documents during the disciplinary proceedings since they were part of the charge against him, and that Defendants should have independently investigated the reliability of the documents. (Doc. 46, p. 6). Of course, in the opinion of the IDOC reviewing officer who examined the documents, the gang questionnaire and handwriting samples were not exculpatory but instead confirmed Plaintiff's guilt of the charged infraction. Defendants were entitled to rely on the investigator's report, and no legal authority requires them to conduct a

7

**SA.007**

separate investigation.

Plaintiff has not set forth any evidence from which the Court could conclude that the withheld documents would have been exculpatory. The record is devoid of facts to support a finding that Plaintiff was denied his procedural due process right to see exculpatory evidence in the disciplinary proceeding. As such, there is no genuine issue of material fact on this issue.

Further, the evidence considered by Defendants in the hearing – the gang questionnaire and the written report of the officer who examined the documents and concluded Plaintiff was the author – satisfies the requirement that "some evidence" exists to support the disciplinary finding. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (the "some evidence" standard "is a lenient standard, requiring no more than a modicum of evidence") (internal citations and quotations omitted).

Giving Plaintiff the benefit of the doubt, the evidence now before this Court might support a finding that Defendants' failure to call or interview his witness amounted to a denial of his procedural due process rights. However, that is not the end of the analysis. Even if a procedural violation occurred, Plaintiff's substantive due process rights are only implicated if his term in segregation was of a duration and included conditions that together imposed an "atypical and significant hardship" on him. Notably, the proper comparison is between conditions in punitive segregation as opposed to administrative (non-punitive) segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

Here, Plaintiff is serving a 60-year prison term according to the online records of the IDOC.[1] Courts have dismissed due process claims based on relatively short periods of disciplinary

---

[1] Https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Sept. 14, 2022). Plaintiff also testified to the length of his sentence. (Doc. 41-1, p. 13). Defendants incorrectly stated that Plaintiff is serving a life sentence. (Doc. 41, p. 9).

segregation without inquiry into the specific conditions of confinement. *See Marion*, 559 F.3d at 698; *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (two months); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days in disciplinary segregation was "a relatively short period when one considers [plaintiff's] 12 year prison sentence"). Viewed in the context of Plaintiff's 60-year sentence, a three-month period in punitive segregation is a minuscule part of Plaintiff's imprisonment.

As to the conditions of Plaintiff's segregation confinement, he was initially without a mattress but received it (along with bedding and his personal property and legal papers) within three or four days of being placed in the segregation cell. (Doc. 46, p. 16). The toilet did not work properly, resulting in mold and mildew in the cell, and the cell was infested with insects. *Id.* Plaintiff does not elaborate further on the cell conditions. While these conditions were substandard, Plaintiff does not allege that he suffered physical or mental harm or substantial risk to his health because of his three-month confinement in the cell. More to the point, Plaintiff's allegations do not rise to the level of "evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) (vague description of rust on cell bars and "corroded feces" in toilet was insufficient to overcome summary judgment on due process claim for four months in segregation). *See also McCoy v. Atherton*, 818 F. App'x 538, 541-42 (7th Cir. 2020) (three months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship).

While Plaintiff may have been denied his ability to have witness testimony considered in his disciplinary proceeding, the evidence before the Court regarding his three-month disciplinary confinement in the segregation cell is not sufficient for a reasonable jury to find that Plaintiff was

subjected to an atypical and significant hardship amounting to a due process violation. Accordingly, Defendants' motion for summary judgment will be granted. In light of this conclusion, it is not necessary for the Court to address the parties' arguments on qualified immunity.

<div align="center">DISPOSITION</div>

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Doc. 40) filed by Defendants Brookman and Hart is **GRANTED**. This case is **DISMISSED** in its entirety **with prejudice**.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  September 15, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **NORBERTO TORRES,** | ) | |
| **#R74153,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-00248-SPM** |
| | ) | |
| **KENT E. BROOKMAN, and** | ) | |
| **JASON N. HART,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>JUDGMENT IN A CIVIL CASE</u>

This action came before the Court, District Judge Stephen P. McGlynn, and the following decision was reached:

**IT IS ORDERED** that Plaintiff shall recover nothing, and the action be **DISMISSED on the merits with prejudice,** the parties to bear their own costs.

**DATED**: September 15, 2022

<div style="margin-left: 40%;">

MONICA A. STUMP
CLERK of COURT


By: s/ Tanya Kelley
Deputy Clerk

</div>

APPROVED:   *s/ Stephen P. McGlynn*
Stephen P. McGlynn
United States District Judge