# In the United States Court of Appeals for the Seventh Circuit

NORBERTO TORRES,
*Plaintiff-Appellant*,

v.

KENT BROOKMAN, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Illinois
No. 3:19-cv-00248 (Hon. Stephen P. McGlynn)

## APPENDIX

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Ave., N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

Matthew L. Farley
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
matthew.farley@arnoldporter.com

Robert Reeves Anderson
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth St.
Suite 3100
Denver, CO 80202
(202) 942-1000

*Counsel for Norberto Torres*

March 21, 2024

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

I hereby certify that the Appendix herein includes all of the materials required by Circuit Rule 30(a) and (b).

s/ *Matthew L. Farley*
Matthew L. Farley

# TABLE OF CONTENTS

Certificate of Compliance with Circuit Rule 30 ........................................................i

District Court Docket Sheet ..............................................................A.001

Complaint,
Dist. Ct. Dkt. 1 (Feb. 28, 2019) ..................................................A.005

Exhibit D to Defendants' First Motion for Summary Judgment,
Dist. Ct. Dkt. 19-4 (March 10, 2020) .........................................A.032

Memorandum and Order Granting in Part and Denying in Part Defendants'
First Motion for Summary Judgment,
Dist. Ct. Dkt. 28 (Dec. 16, 2020) ...............................................A.038

Defendants' Motion for Summary Judgment,
Dist. Ct. Dkt. 40 (Nov. 11, 2021) ...............................................A.047

Defendants' Memorandum of Law in Support of Summary Judgment,
Dist. Ct. Dkt. 41 (Nov. 11, 2021) ...............................................A.050

Exhibit A to Defendants' Motion for Summary Judgment,
Deposition of Norberto Torres,
Dist. Ct. Dkt. 41-1 (Nov. 11, 2021)............................................A.063

Exhibit D to Defendants' Motion for Summary Judgment,
Offender Disciplinary Reports,
Dist. Ct. Dkt. 41-4 (Nov. 11, 2021)............................................A.142

Exhibit E to Defendants' Motion for Summary Judgment,
Administrative Grievance,
Dist. Ct. Dkt. 41-5 (Nov. 11, 2021)............................................A.149

Plaintiff's Respone to Defendants' Motion for Summary Judgment,
Dist. Ct. Dkt. 46 (Jan. 5, 2022)..................................................A.156

Notice of Appeal,
Dist. Ct. Dkt. 50 (Oct. 17, 2022) ...............................................A.181

**U.S. District Court**
**Southern District of Illinois (East St. Louis)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-00248-SPM**

| | |
|---|---|
| Torres v. Brookman et al | Date Filed: 02/28/2019 |
| Assigned to: Judge Stephen P. McGlynn | Date Terminated: 09/15/2022 |
| | Jury Demand: Both |
| Case in other court:    USCA-7, 22-02830 | Nature of Suit: 555 Prison Condition |
| Cause: 42:1983 Prisoner Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**Norberto Torres**                                    represented by    **Norberto Torres**
                                                                          R74153
                                                                          PINCKNEYVILLE CORRECTIONAL CENTER
                                                                          5835 State Route 154
                                                                          PO Box 999
                                                                          Pinckneyville, IL 62274
                                                                          *PRO SE*

V.

**Defendant**

**Kent Brookman**                                    represented by    **Areda Johnson**
                                                                          Illinois Attorney General's Office - Belleville, IL
                                                                          201 West Pointe Drive
                                                                          Suite 7
                                                                          Belleville, IL 62226
                                                                          618-236-8781
                                                                          Fax: 618-236-8620
                                                                          Email: Areda.Johnson@ilag.gov
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Jason Hart**                                       represented by    **Areda Johnson**
                                                                          (See above for address)
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Jacqueline Lashbrook**                             represented by    **Areda Johnson**
*TERMINATED: 12/17/2020*                                                  (See above for address)
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | COMPLAINT against All Defendants filed by Norberto Torres.(jsm2) (Entered: 02/28/2019) | 02/28/2019 |
| 2 | MOTION for Leave to Proceed in forma pauperis by Norberto Torres. (jsm2) (Entered: 02/28/2019) | 02/28/2019 |
| 3 | MOTION for Recruitment of Counsel by Norberto Torres. (jsm2) (Entered: 02/28/2019) | 02/28/2019 |

**A.001**

| # | Docket Text | Date Filed |
|---|---|---|
| 4 | NOTICE AND ORDER: The Court has received your complaint and your motion to proceed without prepayment of the filing fee. Your case number is 19-cv-248-NJR. The following is some information you should know regarding the initial stages of your lawsuit. After your filing fee status is determined, the Court will review your complaint to identify legally sufficient claims and defendants and dismiss any legally insufficient claims. See: 28 U.S.C. Sec. 1915A. The Court will conduct this review within the next 60 days and inform you of the findings in a Merit Review Order. No other action will be taken in your case during this time, absent extraordinary circumstances. Therefore, you do not need to submit any evidence, argument, motions, or other documents. If you filed a motion for recruitment of counsel along with your complaint, it will not be considered until the merit review is complete. Please note that any motion for recruitment of counsel must include evidence of your own efforts to find counsel, such as a list of the attorneys you contacted and copies of letters you sent or received. See Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007). If you do not receive a Merit Review Order within the next 60 days, you may file a motion requesting the status of your case. In the event your claim(s) survive the merit review, further information and instruction will be provided to you at that time. In addition, several administrative matters warrant mention. Any communication directed to the Court should be in the form of a motion or other pleading and not a letter. All mail should be sent to: Clerk's Office, U.S. District Court, 750 Missouri Avenue, East St. Louis, IL 62201. A copy of the Notice and Consent to Proceed Before a Magistrate Judge form is attached to this Order. Finally, you are advised that if your address changes, you must notify the Court within seven days of the change by filing a Notice of Change of Address. Failure to do so could result in the dismissal of your case. Signed by Judge Nancy J. Rosenstengel on 2/28/2019. (jsm2) (Entered: 02/28/2019) | 02/28/2019 |
| 5 | ORDER: Plaintiff has filed a Motion for Leave to Proceed In Forma Pauperis ("IFP") in this case (see Doc. 2), but has failed to provide the necessary prisoner trust fund account information as required by the PLRA to determine whether the inmate is entitled to proceed without prepaying fees and costs. Pursuant to 28 U.S.C. Section 1915(b)(1), the Court must review the prisoner trust fund account statement for the 6 month period immediately preceding the filing of this action. IT IS THEREFORE ORDERED that Plaintiff shall provide the Clerk of Court with the attached certification completed by the Trust Fund Officer at the facility and a copy of his/her trust fund account statement (or institutional equivalent) for the period 8/1/2018 to 2/28/2019 no later than 45 days from the date of this order. Failure to do so will result in dismissal of this action for failure to comply with an Order of this Court. Fed. R. Civ. P. 41(b). See generally Ladien v. Astrachan, 128 F.3d 1051 (7th Cir. 1997); Johnson v. Kamminga, 34 F.3d 466 (7th Cir. 1994). The Clerk is DIRECTED to mail a copy of this Order and the certification form to the Trust Fund Officer at Lawrence Correctional Center. (Trust Fund Statement due on or before 4/15/2019). Signed by Judge Nancy J. Rosenstengel on 3/1/2019. (tjk) (Entered: 03/01/2019) | 03/01/2019 |
| 6 | Prisoner Trust Fund Account Statement. (jsm2) (Entered: 03/04/2019) | 03/04/2019 |
| 7 | ORDER GRANTING Plaintiff's motion to proceed in forma pauperis ("IFP") (Doc. 2). Pursuant to 28 U.S.C. Section 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $37.35. The agency having custody of Plaintiff is directed to forward the initial partial filing fee from Plaintiff's account to the Clerk of Court upon receipt of this Order. Plaintiff shall make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison trust fund account (including all deposits to the inmate account from any source) until the $350.00 filing fee is paid in full. The agency having custody of Plaintiff shall forward payments from Plaintiff's account to the Clerk of this Court each time the amount in the account exceeds $10 until the $350.00 filing fee is paid.In addition, Plaintiff shall note that the filing fees for multiple cases cumulate. See Newlin v. Helman, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000); Walker v. O'Brien, 216 F.3d 626 (7th Cir. 2000). A prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid; a prisoner who files a second suit or an appeal must remit 40%; and so on. Newlin, 123 F.3d at 436. "Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid." Id. Payments shall be mailed to: Clerk of the Court, United States District Court for the Southern District of Illinois, 750 Missouri Avenue, East St. Louis, Illinois 62201. The Clerk is DIRECTED to mail a copy of this Order to the Trust Fund Officer at the Lawrence Correctional Center upon entry of this Order. Signed by Judge Nancy J. Rosenstengel on 3/6/2019. (tjk)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 03/06/2019) | 03/06/2019 |
|  | Initial Prisoner Filing Fee: $ 37.35 received, receipt number 34625091467 (cds) (Entered: 03/15/2019) | 03/15/2019 |
| 8 | Prisoner Trust Fund Account Statement by Norberto Torres. (jaj) (Entered: 04/02/2019) | 04/02/2019 |
| 9 | ORDER: The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A. The Motion for Recruitment of Counsel (Doc. 3) is DENIED without prejudice.The Clerk of Court shall prepare for Defendants LASHBROOK, BROOKMAN, and HART: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is DIRECTED to mail these forms, a copy of the Complaint and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. Signed by Chief Judge Nancy J. Rosenstengel on 6/11/2019. (bps) (Entered: 06/11/2019) | 06/11/2019 |
| 10 | REQUEST FOR WAIVER of Service sent to Brookman, Lashbrook, and Hart on 6/12/2019. Waiver of Service due by 7/12/2019. (tjk) (Entered: 06/12/2019) | 06/12/2019 |
| 11 | WAIVER OF SERVICE Returned Executed Kent E. Brookman waiver sent on 6/12/2019, answer due 8/12/2019; Jason N. Hart waiver sent on 6/12/2019, answer due 8/12/2019; Jacqueline A. Lashbrook waiver sent on 6/12/2019, answer due 8/12/2019. (tjk) (Entered: 06/12/2019) | 06/12/2019 |
| 12 | NOTICE of Appearance by Areda Antionette Johnson on behalf of Kent E. Brookman, Jason N. Hart, Jacqueline A. Lashbrook (Johnson, Areda) (Entered: 07/08/2019) | 07/08/2019 |
| 13 | ANSWER to 1 Complaint And Affirmative Defenses by Kent E. Brookman, Jason N. Hart, Jacqueline A. Lashbrook.(Johnson, Areda) (Entered: 08/08/2019) | 08/08/2019 |

A.002

| # | Docket Text | Date Filed |
|---|---|---|
| 14 | ORDER: Pursuant to Administrative Order 257, this case has been selected for reassignment to a Magistrate Judge. Within 21 days of this Order, any party not previously having filed a Notice and Consent to Proceed before a Magistrate Judge Jurisdiction form in this case must file the attached form indicating that party's consent to proceed before a Magistrate Judge or an affirmative declination to consent. The 21-day deadline set forth in this Order does not apply to unserved parties. Deadlines for newly served parties to consent or decline to consent to proceed before a Magistrate Judge will be set by the Court at a later date. Consent due by 12/23/2019. Signed by Chief Judge Nancy J. Rosenstengel on 12/2/2019. (Attachments: # 1 Administrative Order)(jsm2) (Entered: 12/02/2019) | 12/02/2019 |
| 15 | CONSENT/NON-CONSENT TO U.S. MAGISTRATE JUDGE - sealed pending receipt from all parties. (Johnson, Areda) (Entered: 12/11/2019) | 12/11/2019 |
| 16 | CONSENT/NON-CONSENT TO U.S. MAGISTRATE JUDGE - sealed pending receipt from all parties. (jsm2) (Entered: 12/13/2019) | 12/13/2019 |
| 17 | Notice of Declination to Consent: A party to this action has declined to consent to magistrate judge jurisdiction. Accordingly, pursuant to Administrative Order 257, this case shall REMAIN with Chief Judge Nancy J. Rosenstengel. (jsm2)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 12/13/2019) | 12/13/2019 |
| 18 | INITIAL SCHEDULING ORDER: A motion for leave to file an amended complaint must be filed, if at all, by April 7, 2020. Dispositive Motions re: Exhaustion of Administrative Remedies due by March 10, 2020. The Clerk of Court is DIRECTED to change Defendants' names in accordance with this Order. Signed by Chief Judge Nancy J. Rosenstengel on 1/8/2020. (jrj) (Entered: 01/08/2020) | 01/08/2020 |
| 19 | MOTION for Summary Judgment and Memorandum of Law in Support by Kent Brookman, Jason Hart, Jacqueline Lashbrook. Responses due by 4/13/2020 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Johnson, Areda) (Entered: 03/10/2020) | 03/10/2020 |
| 20 | MOTION for Leave to File to Substitute by Kent Brookman, Jason Hart, Jacqueline Lashbrook. (Attachments: # 1 Exhibit B) (Johnson, Areda) (Entered: 03/11/2020) | 03/11/2020 |
| 21 | ORDER granting 20 Motion for Leave to File Exhibit B as a substitute to the placeholder Exhibit B submitted with Defendants' Combined Motion and Memorandum of Law in Support of Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. The Court accepts the signed declaration. Signed by Chief Judge Nancy J. Rosenstengel on 6/10/2020. THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 06/10/2020) | 06/10/2020 |
| 22 | ORDER TO SHOW CAUSE. On March 10, 2020, Defendants filed a Motion for Summary Judgment on the basis that Plaintiff failed to exhaust his administrative remedies. As of today, Plaintiff has failed to respond to the motion. Even with the automatic extensions granted by this Court's Administrative Orders issued because of COVID-19, Plaintiff's response is overdue. Thus, Plaintiff shall show cause why his failure to respond shall not be deemed an admission to the merits of the motion and the case dismissed. Plaintiff's response, if any, shall be filed on or before 7/10/2020, or this case will be dismissed. Signed by Chief Judge Nancy J. Rosenstengel on 6/10/2020. THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 06/10/2020) | 06/10/2020 |
| 23 | Rule 56 Notice. Torres is reminded that pursuant to the Court's Order entered on June 10, 2020 (Doc. 22), he has until July 10, 2020, to tell the Court why the motion for summary judgment should not be granted and the case dismissed. Signed by Chief Judge Nancy J. Rosenstengel on 6/26/2020. (jrj) (Entered: 06/26/2020) | 06/26/2020 |
| 24 | Second MOTION for Appointment of Counsel by Norberto Torres. (jsm2) (Entered: 07/09/2020) | 07/09/2020 |
| 25 | MOTION for Extension of Time by Norberto Torres. (jsm2) (Entered: 07/10/2020) | 07/10/2020 |
| 26 | ORDER: The 24 Second Motion for Appointment of Counsel is DENIED without prejudice, the 25 Motion for Extension of Time is GRANTED, and the Show Cause Order is DISCHARGED. Torres shall file a response to Defendants' Motion for Summary Judgment on or before August 5, 2020. Failure to do so may be considered by this Court an admission of the merits of the motion for summaryjudgment. SDIL-LR 7.1(c)(1). No further extensions of time shall be granted. Signed by Chief Judge Nancy J. Rosenstengel on 7/15/2020. (jrj) (Entered: 07/15/2020) | 07/15/2020 |
| 27 | Pursuant to Administrative Order No. 277, this case is transferred from Chief Judge Nancy J. Rosenstengel and reassigned to Judge Stephen P. McGlynn. Unless the newly assigned judge directs otherwise, all deadlines and hearing dates shall remain in effect. All future pleadings shall bear the case number 19-248-SPM. (jaj) (Entered: 10/06/2020) | 10/06/2020 |
| 28 | ORDER granting in part and denying in part 19 Motion for Summary Judgment. Count 2 against Defendant Lashbrook is DISMISSED without prejudice, and Defendant Lashbrook is DISMISSED from this lawsuit. This case shall proceed on Count 1 against Defendants Brookman and Hart. Signed by Judge Stephen P. McGlynn on 12/16/2020. (jrj) (Entered: 12/16/2020) | 12/16/2020 |
| 29 | SCHEDULING ORDER: Discovery due by 10/18/2021. Dispositive motions and Daubert motions due by 11/17/2021. Signed by Judge Stephen P. McGlynn on 12/17/2020. (jrj) (Main Document 29 replaced on 3/30/2021) (jlrr) (Entered: 12/17/2020) | 12/17/2020 |
| 30 | MOTION for Reconsideration for Recruitment of Counsel by Norberto Torres. (kare) Modified on 3/16/2021 (kare). (Entered: 03/16/2021) | 03/16/2021 |
| 31 | SUPPLEMENT by Norberto Torres. Supplement to 30 Motion for Reconsideration for Recruitment of Counsel. (kare) (Entered: 03/16/2021) | 03/16/2021 |

## A.003

| # | Docket Text | Date Filed |
|---|---|---|
| 32 | NOTICE The Court has received from you Request for Production and Interrogatories. These documents will not be filed as it would violate this courts Local Rule 26.1 (b). No discovery materials shall be filed. Your document was received electronically, therefore, will not be returned to you. (kare)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 03/16/2021) | 03/16/2021 |
| 33 | NOTICE OF MODIFICATION re 29 Scheduling Order. An incorrect copy was originally filed. Clerk's Office has replaced the pdf and is attaching the corrected copy to this notice. No further action is required by the filer in relation to this notification. (jlrr) (Entered: 03/30/2021) | 03/30/2021 |
| 34 | MOTION for Extension of Time Defendants' Motion for Extension of Time to Provide Discovery Responses by Kent Brookman, Jason Hart. (Attachments: # 1 Exhibit 1)(Johnson, Areda) (Entered: 04/16/2021) | 04/16/2021 |
| 35 | ORDER granting 34 Motion for Extension of Time. Defendants Brookman and Hart shall respond to Plaintiff's discovery requests dated March 16, 2021, by June 25, 2021. Signed by Judge Stephen P. McGlynn on 5/7/2021. (jrj)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 05/07/2021) | 05/07/2021 |
| 36 | ORDER denying 30 Motion for Recruitment of Counsel. Signed by Judge Stephen P. McGlynn on 6/7/2021. (jrj) (Entered: 06/07/2021) | 06/07/2021 |
| 37 | Second MOTION for Extension of Time by Kent Brookman, Jason Hart. (Johnson, Areda) (Entered: 06/25/2021) | 06/25/2021 |
| 38 | ORDER GRANTING 37 Second Motion for Extension of Time. Defendants Brookman and Hart shall respond to Plaintiff's discovery requests dated March 16, 2021 by August 25, 2021. Signed by Judge Stephen P. McGlynn on 6/28/2021. (cdc)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 06/28/2021) | 06/28/2021 |
| 39 | NOTICE of Change of Address by Norberto Torres (kare) (Entered: 08/10/2021) | 08/10/2021 |
| 40 | MOTION for Summary Judgment by Kent Brookman, Jason Hart. (Johnson, Areda) (Entered: 11/17/2021) | 11/17/2021 |
| 41 | MEMORANDUM in Support re 40 MOTION for Summary Judgment filed by Kent Brookman, Jason Hart. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Johnson, Areda) (Entered: 11/17/2021) | 11/17/2021 |
| 42 | NOTICE by Kent Brookman, Jason Hart re 40 MOTION for Summary Judgment Rule 56 (Johnson, Areda) (Entered: 11/17/2021) | 11/17/2021 |
| 43 | MOTION for Extension of Time to File Response/Reply as to 40 MOTION for Summary Judgment by Norberto Torres. (kare) (Entered: 12/02/2021) | 12/02/2021 |
| 44 | ORDER granting 43 Motion for Extension of Time. Plaintiff's response to the 40 MOTION for Summary Judgment due on or before January 5, 2022. Signed by Judge Stephen P. McGlynn on 12/6/2021. (jrj)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 12/06/2021) | 12/06/2021 |
| 45 | MOTION for Extension of Time to File Response/Reply as to 40 MOTION for Summary Judgment by Norberto Torres. (kare) (Entered: 12/13/2021) | 12/13/2021 |
| 46 | RESPONSE to Motion re 40 MOTION for Summary Judgment filed by Norberto Torres. (kare) (Entered: 01/05/2022) | 01/05/2022 |
| 47 | ORDER denying as moot 45 Motion for Extension. Plaintiff has timely filed a response to the motion for summary judgment. The motion requesting additional time is now moot. Signed by Judge Stephen P. McGlynn on 1/7/2022. (jrj)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED. (Entered: 01/07/2022) | 01/07/2022 |
| 48 | ORDER granting 40 Motion for Summary Judgment filed by Defendants Brookman and Hart. This case is DISMISSED in its entirety with prejudice. Signed by Judge Stephen P. McGlynn on 9/15/2022. (beb) (Entered: 09/15/2022) | 09/15/2022 |
| 49 | CLERK'S JUDGMENT. Approved by Judge Stephen P. McGlynn on 9/15/2022. (beb) (Entered: 09/15/2022) | 09/15/2022 |
| 50 | NOTICE OF APPEAL as to 49 Clerk's Judgment by Norberto Torres. (jlrr) (Entered: 10/17/2022) | 10/17/2022 |
| 51 | Transmission of Short Record to US Court of Appeals re 50 Notice of Appeal (kdw) (Entered: 10/17/2022) | 10/17/2022 |
| 52 | Rule 10 Letter. (kdw) (Entered: 10/17/2022) | 10/17/2022 |
| 53 | USCA Case Number 22-2830 for 50 Notice of Appeal filed by Norberto Torres. (Attachments: # 1 Notice of Docketing, # 2 PLRA Fee Notice and Order)(aza) (Entered: 10/18/2022) | 10/18/2022 |
| | USCA Appeal Fees received $ 505 receipt number 1245 re 50 Notice of Appeal filed by Norberto Torres (bmc) (Entered: 11/28/2022) | 11/28/2022 |
| 54 | ORDER of USCA as to 50 Notice of Appeal filed by Norberto Torres. It is Ordered that briefing will now proceed as follows: 1.) The Appellant's brief of Norberto Torres will be due by January 20, 2023.2.) The Appellee's brief of Kent Brookman and Jason Hart will be due by February 21, 2023 3.) The Appellant's reply brief of Norberto Torres, if any, will be due by March 13, 2023. (aza) (Entered: 12/21/2022) | 12/21/2022 |

# A.004

# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

TORRES NORBERTO _____ )
_____ )
_____ )
_____ )          Case Number: **19-cv-248-NJR**
_____ )
_____ )                    (Clerk's Office will provide)
*Plaintiff/Petitioner(s)* )
v. )          ☑ CIVIL RIGHTS COMPLAINT
BROCKMAN, KENT E _____ )          pursuant to 42 U.S.C. §1983 (State Prisoner)
HART, JASON N _____ )          ☐ CIVIL RIGHTS COMPLAINT
JACQUELINE A LASHBROOK _____ )          pursuant to 28 U.S.C. §1331 (Federal Prisoner)
_____ )          ☐ CIVIL COMPLAINT
*Defendant/Respondent(s)* )          pursuant to the Federal Tort Claims Act,
)          28 U.S.C. §§1346, 2671-2680, or other law

## I.     JURISDICTION

### Plaintiff:

A.     Plaintiff's mailing address, register number, and present place of confinement.

NORBERTO TORRES #R74153
P.O. BOX - 1000
MENARD, IL 62259

### Defendant #1:

B.     Defendant BROCKMAN, KENT E _____ is employed as
                           (a)       (Name of First Defendant)

CHAIRPERSON _____
                           (b)       (Position/Title)

with ILL. DEPARTMENT OF CORRECTION _____
                           (c)       (Employer's Name and Address)

711 E. KASKASKIA ST. MENARD, IL 62259 _____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?   ☑ Yes    ☐ No

If your answer is YES, briefly explain: DEFENDANT, WAS AND IS A
OFFICER FOR I.D.O.C

(Rev. 7/2010)                                    1

**A.005**

**Defendant #2:**

C.     Defendant ___HART, JASON N_____ is employed as

(Name of Second Defendant)

___HEARING OFFICER_____
(Position/Title)

with ___ILL. DEPARTMENT OF CORRECTIONS "OFFICER HART"___
(Employer's Name and Address)

___711 E. KASKASKIA ST. MENARD, IL 62259_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?     ☑ Yes      ☐ No

If you answer is YES, briefly explain: DEFENDANT, IS A
OFFICER FOR I.D.O.C

**Additional Defendant(s) (if any):**

D.     Using the outline set forth above, identify any additional Defendant(s).

(Rev. 7/2010)                                2

**A.006**

**Defendant #2** 3

C.      Defendant _Jacqueline A. lashbrook_ is employed as

                        (Name of Second Defendant)

_CHIEF ADMINISTRATIVE OFFICER_

                        (Position/Title)

with _Ill. DEPARTMENT of CORRECTIONS " WARDEN lashbrook"_

                        (Employer's Name and Address)

_711 KASKASKIA ST, MENARD, IL 62259_

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?   ☑ Yes    ☐ No

If you answer is YES, briefly explain: _AT THIS TIME, DEFENDANT IS_
_A EMPLOYER/WARDEN FOR MENARD CORRECTIONAL CENTER_

**Additional Defendant(s) (if any):**

D.      Using the outline set forth above, identify any additional Defendant(s).

**A.007**

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?   ☑ Yes   ☐ No

B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

1.   Parties to previous lawsuits:
Plaintiff(s):  NORBERTO TORRES

Defendant(s): KIMBERLY CUTTER, WILLIAM SPILLER, KENT BROOKMAN, TERRANCE JACKSON, SHANA DEBOUT

2.   Court (if federal court, name of the district; if state court, name of the county):

3.   Docket number: 3:18-CV-1091-NJR-DGW

4.   Name of Judge to whom case was assigned: NANCY J. ROSENSTENGEL

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):  CIVIL RIGHTS

6.   Disposition of case (for example: Was the case dismissed?  Was it appealed?  Is it still pending?):  STILL PENDING

7.   Approximate date of filing lawsuit:  MAY 4TH, 2018

8.   Approximate date of disposition:  STILL ON GOING

(Rev. 7/2010)

III.   **GRIEVANCE PROCEDURE**

A.   Is there a prisoner grievance procedure in the institution? ☑ Yes   ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?   ☑ Yes   ☐ No

C.   If your answer is YES,
  1.   What steps did you take? FILED A GRIEVANCE TO THE COUNSELOR, THEN, IN THE PROPER TIME TO THE GRIEVANCE OFFICER.

  2.   What was the result? TICKET WAS EXPUNGED AFTER PLAINTIFF HAD ALREADY DID THE SENTENCE FOR THE TICKET.

D.   If your answer is NO, explain why not.


E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?   ☐ Yes   ☐ No

F.   If your answer is YES,
  1.   What steps did you take?


  2.   What was the result?


G.   If your answer is NO, explain why not.


H.   Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not:

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel
your constitutional rights were violated.  Do not include legal arguments of
citations.  If you wish to present legal arguments or citations, file a separate
memorandum of law.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  If your claims
relate to prison disciplinary proceedings, attach copies of the disciplinary
charges and any disciplinary hearing summary as exhibits. You should also
attach any relevant, supporting documentation.

3/13/17, PLAINTIFF WAS PLACED ON DEADLOCK FOR A TICKET STATING, A OFFICER AT ANOTHER FACILITY WAS GOING THROUGH SOMEONE'S PROPERTY, SEEN SOME PAPERWORK WITH PLAINTIFF'S NAME ON IT (SEE, EXHIBIT: A) TWO DAYS LATER, LT. KENT BROCKMAN AND OFFICER JASON HART HEARD MY TICKET AT JUSTICE COMMITTEE. PLAINTIFF WAS GIVEN A CHANCE TO PRESENT HIS DEFENSE AS A RESULT, TICKET WAS EXPUNGED (SEE, EXHIBIT: B) 15 MINUTES AFTER HEARING, PLAINTIFF WAS TOLD TO PACK UP FOR SEGREGATION. 3/17/17, WHILE IN SEGREGATION, PLAINTIFF RECEIVED THE SAME TICKET THAT WAS EXPUNGED. UPON HEARING THE TICKET, THIS TIME LT. BROCKMAN AND OFFICER HART, THE SAME TWO HEARING OFFICERS WHO EXPUNGED THE SAME TICKET, REFUSED TO ALLOW ME TO HAVE A COUNSEL PRESENT, REFUSED TO INVESTIGATE, ALLEGED DOCUMENT THAT WAS FOUND IN PONTIAC CORRECTIONAL CENTER, IN SOMEONE ELSE'S PROPERTY. THEY DIDN'T EVEN HAVE A COPY OF THE DOCUMENT PRESENT. PLAINTIFF WAS THREATENED WITH ANOTHER TICKET IF HE DIDN'T SHUT UP AND WAS GIVEN, 3 MONTHS SEGREGATION AND LOST OF PROVELEGES ON THE SPOT. (SEE, EXHIBIT: C)

IV.   **STATEMENT OF CLAIM**

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments of citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

WHILE IN THE SEGREGATION, THE WARDEN DID ROUNDS, PLAINTIFF SHOWED THAT SHE HAD SIGNED OFF ON BOTH RESULTS FROM THE SAME TICKET. THE WARDENS EXACT WORDS WERE, OH MY GOD, THIS IS THE SAME TICKET THAT WAS EXPUNGED. PLAINTIFF ALSO SHOWED HER WHEN, HE FLUSHED THE TOILET, SMELLY WATER WOULD COME OUT THE BOTTOM. ALSO, A SMALL AMOUNT OF FECES WHEN, HE AND HIS CELLMATE TO A BOWEL MOVEMENT. THAT, FROM THIS PROBLEM EXISTING SO LONG IT CREATED SMELLY MOLD ON THE SIDE OF THE TOILET AND THAT HE AND HIS CELLMATE WASN'T BEING PROVIDED WITH NO CLEANSING SUPPLIES. WARDEN SAID, ALL OF THIS WOULD BE TAKEN CARE OF. PLAINTIFF WAS IN THAT SAME CELL FOR TWO AND A HALF MONTHS. THROUGH GRIEVANCE (SEE, EXHIBIT: G), PLAINTIFF'S TICKET WAS EXPUNGED AFTER, HE HAD ALREADY DID THE THREE MONTHS SEGREGATION AND LOST OF PRIVELEGES. (SEE, EXHIBIT: I).

PLAINTIFF IS SUEING EACH DEFENDANT IN THEER INDIVIDUAL AND OFFICIAL CAPACITY FOR

1. CRUEL AND UNUSUAL PUNISHMENT

2. VIOLATION OF DUE PROCESS

3. CONDITIONS OF CONFINEMENT

CRUEL AND UNUSUAL PUNISHMENT

## COUNT I

PLAINTIFF IS FILING 1983 FOR CRUEL AND UNUSAL PUNISHMENT

WHEN PLAINTIFF WAS ALLOWED TO BE FOUND GUILTY OF THE SAME TICKET THAT WAS EXPUNGED, ON THE SPOT, GIVEN 3 MONTHS SEGREGATION AND LOST OF PRIVELEGES, IT BECAME ONLY ABOUT PUNISHMENT BY THE SAME OFFICERS WHO EXPUNGED THE SAME TICKET, BROOKMAN KENI AND HART JASON. WARDEN LASHBROOK SEEN PERSONALLY THAT SHE HAD SIGNED OFF ON BOTH TICKETS AND ADMITTED OUT OF HER OWN MOUTH THIS WAS THE SAME TICKET. PLAINTIFF WAS STILL ALLOWED TO SERVE 3 MONTHS SEGREGATION. THEN, THE TICKET WAS EXPUNGED, SIGNED OFF AND APPROVED BY ALL DEFENDANTS.

VIOLATION OF DUE PROCESS

## COUNT II

## BROOKMAN AND HART

PLAINTIFF IS SUEING BROOKMAN AND HART FOR VIOLATION OF DUE PROCESS

1. REFUSEING TO HAVE PLAINTIFF COUNSEL PRESENT (SEE, EXHIBIT D)
2. REFUSEING TO ALLOW PLAINTIFF TO PRESENT ANY DEFENSE
3. REFUSEING TO PRESENT OR ALLOW PLAINTIFF TO HAVE / THEY DIDNT EVEN HAVE A COPY OF ALLEGED DOCUMENT THAT PLAINTIFF WAS ACCUSED OF AND BEING FOUND GUILTY OF
4. REFUSEING TO INVESTIGATE, PLAINTIFF WAS FOUND GUILTY AND SENTENCED ON THE SPOT. THE ALLEGED PAPERWORK WAS FOUND IN PONTIAC CORRECTIONAL CENTER

**A.012**

CONDITIONS OF CONFINEMENT

## COUNT III

PLAINTIFF IS FILING 1983 AGAINST ALL DEFENDANTS FOR CONDITIONS OF CONFINEMENT

PLAINTIFF WAS HOUSED, 2 AND A HALF OF THE 3 MONTHS, IN A CELL WITH MOLD, AND WHEN THE TOILET WOULD FLUSH, WHATEVER WAS IN THERE LEAKED OUT OF THE BOTTOM. PLAINTIFF WASN'T PROVIDED WITH CLEANING SUPPLIES, BUT TWICE OF THE 3 MONTHS. THE RULES STATE, ONCE A WEEK. (SEE, EXHIBIT: J)

PLAINTIFF WROTE LETTERS TO THE WARDEN (SEE, EXHIBITS: F AND H) AND SHOWED HER PERSONALY THE CONDITIONS. PLAINTIFF WAS FORCED TO LIVE IN.

PLAINTIFF WROTE GRIEVANCES, BUT THE GRIEVANCE OFFICE ONLY RESPONDED TO THE TICKET PART.

PLAINTIFF APPEALED TO SPRINGFIELD. ITS BEEN OVER A YEAR, NO RESPONCE. WHICH IS A DENIAL.

LT. BROCKMAN AND OFFICER HART, SET THE WHEELS IN MOTION FOR PLAINTIFF TO HAVE TO SPEND MONTHS IN THESE CONDITIONS.

ALL DEFENDANTS IS BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY

**A.013**

V.    **REQUEST FOR RELIEF**

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

$150⁰⁰ A DAY FOR 3 MONTHS SPENT IN SEGREGATION
WITH AN ADDITIONAL $100⁰⁰ A DAY FOR
THE CONDITIONS.

VI.   **JURY DEMAND** (*check one box below*)

The plaintiff ☑ does  ☐ does not request a trial by jury.

**DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on:  2-28-19
_____
(date)

10930 LAWRENCE RD
P.O. BOX 1000
_____
Street Address

LAWRENCE, IL 62466
HENARD, IL 62259
_____
City, State, Zip

_____
Signature of Plaintiff

NORBERTO TORRES
_____
Printed Name

R74153
_____
Prisoner Register Number

_____
Signature of Attorney (if any)

SMI-NO     EX: A

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**

| Type of Report: | | Date: 03/10/2017 |
|---|---|---|
| ☒ Disciplinary ☐ Investigative | Pontiac Correctional Center Facility | |

Offender Name:   TORRES, NORBERTO     ID #:   R74153

**Offense Information:**

Observation Date: 03/09/2017     Approximate Time:   2:00   ☐ a.m. ☒ p.m   Location:   Intelligence Unit

**Offense(s): DR 504:**   205/Security threat group or unauthorized organizational activity

**Observation:** (NOTE: Each offense identified above must be substantiated.) On the above date and approximate time the Intel Unit received and envelope filled with handwritten STG material discovered while shaking property down from an individual that had just arrived from Menard CC. In this envelop was a hand written Latin Folk questionnaire. These questionnaires are given to members of the Latin Folk Union and have to be filled out and returned to a designated individual in the cell house. The information obtained from these can help weed out informants, sex offenders, or individuals that may have had a prior Protective Custody placement. These are just a few examples of what the questionnaires are used for. The individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. This particular questionnaire was filled out by TORRES, NORBERTO R74153.

**Witness(es):**

☐ Check if offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| G. Kochel | 10895 | _(signature)_ | | 03/15/17 | 12:25 | ☐ a.m. |
|---|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | | Date | Time | ☒ p.m. |

**Disciplinary Action:**

**Shift Review:** ☒ Temporary Confinement     ☐ Investigative Status     Reasons:

_____ I 174 _____
Printed Name and Badge #          Shift Supervisor's Signature                3-15-17
                                  (For Transition Centers, Chief Administrative Officer)     Date

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer     Comment:

☒ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

Maj French 681                    French                          3-15-17
Print Reviewing Officer's Name and Badge #     Reviewing Officer's Signature     Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

_____          _____          _____
Print Hearing Investigator's Name and Badge #     Hearing Investigator's Signature     Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

_____          _____
Offender's Signature                ID#

Serving Employee (Print Name)          Badge #          Signature
                                                        ☐ a.m.
                                                        ☐ p.m.
Date Served          Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____          _____
Offender's Signature                ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

_____          _____          _____
Date of Disciplinary Report     Print offender's name          ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| Witness can testify to: | | | |

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| Witness can testify to: | | | |

Page 1 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Continuation Page**

Pontiac Correctional Center
Facility

☒ Disciplinary Report   ☐ Investigative Report   ☐ Disciplinary Summary   ☐ Adjustment Committee Summary

Report/Incident Date: _____   Incident # (if applicable): _____

| **Offender Information:** |
| Offender Name: TORRES, NORBERTO                    ID #: R74153 |

Use the space below to provide any additional information.

TORRES provided information such as his name, affiliation, nick name and his sentence. Hand writing samples were obtained from TORRES's master file via Menard CC's Intel Unit. After comparing the questionnaire to the provided hand writing samples numerous similarities were noted that help determine that TORRES authored the questionnaire. TORRES is a self-admitted member of the Maniac Latin Disciples. The Maniac Latin Disciples fall under the Latin Folk umbrella discussed earlier in this ODR. By TORRES filling out this questionnaire he (TORRES) is participating in STG activity and this participation substantiates the 205 Charge. TORRES was identified by Institutional Graphics, Offender O360 and Menard CC Intel Unit.

Printed on Recycled Paper

DOC 0318 (Eff. 8/2006)
(Replaces DC 7212)

**A.016**

EX:
B

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

Name: TORRES, NORBERTO    IDOC Number: R74153    Race: HSP

Hearing Date/Time: 3/15/2017  11:03 AM    Living Unit: MEN-N2-02-41    Orientation Status: N/A

Incident Number: 201700365/1 - MEN    Status: Expunged Final

*Inmate signed waiver agreeing to hearing date less than 24 hrs. after ticket was served*

| Date | Ticket # | Incident Officer | Location | Time |
|------|----------|------------------|----------|------|
| 3/9/2017 | 201700365/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 10:00 AM |

| Offense | Violation | Final Result |
|---------|-----------|--------------|
| 205 | Gang Or Unauthorized Organization Activity | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|--------------|------------|--------------|----------------|
| No Witness Requested | | | |

**RECORD OF PROCEEDINGS**
Ticket was dismissed

**BASIS FOR DECISION**
Ticket was dismissed

**DISCIPLINARY ACTION** *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|-------------|-------|
| | ---- E X P U N G E D ---- |

Basis for Discipline:

### Signatures
**Hearing Committee**

| | | Date | Race |
|---|---|------|------|
| BROOKMAN, KENT E  - Chair Person | *Signature* | 03/15/17 | WHI |
| HART, JASON N | *Signature* | 03/15/17 | BLK |

Recommended Action Approved

**Final Comments:** N/A

JACQUELINE A LASHBROOK / JAL  3/16/2017    *Signature*    03/16/17
**Chief Administrative Officer**    **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504; Subpart F.

3/24/17 1

Employee Serving Copy to Committed Person    When Served  -- Date and Time

Run Date: **3/17/2017 12:32:10**      Page 1 of 1

**A.017**

EX
C



## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

Name: TORRES, NORBERTO        IDOC Number: R74153        Race: HSP

Date/Time: 3/22/2017   08:07 AM        Living Unit: MEN-N2-06-36        Orientation Status: N/A

nt Number: 201700409/1 - MEN        Status: Final

| Ticket # | Incident Officer | Location | Time |
|---|---|---|---|
| 17    201700409/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 02:00 PM |

| ense | Violation | Final Result |
|---|---|---|
|  | Gang Or Unauthorized Organization Activity | Guilty |

| tness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

tness Requested

## )RD OF PROCEEDINGS
e pled not guilty stated I didn't fill the paper work out

## S FOR DECISION

l on the observation of the reporting employee. Intel unite received and envelop filled with a handwritten STG
ial discovered while shaking down from an individual that had just arrived form Menard CC. In envelope was a
vritten Latin Folk questionnaire. These questions are given to members of the Latin Folk union and have to be filled
nd returned to a designated individual in the cell house. The information obtained from theses can help weed out
nants, sex offenders, or individuals that may have had a prior PC placement. The individuals filling these out have
vide information such as their name, number, affiliation, crime, etc.. The particular questionnaire was filled out be
s, Norberto R74153. Torres provided information such as his name, affiliation, nick name and his sentence. Hand
g samples were obtained from Torres master file via Menard CC intel unit. After comparing the questionnaire to the
led hand writing samples numerous similarities were noted that help determine that Torres authored the
ionnaire. Torres is s self-admitted member of the Maniac Latin Disciples. The Maniac Latin Disciples fall under the
Folk umbrella discussed earlier in the ODR  Inmates ID by OTS sheet and state ID card
nittee finds inmate guilty based on information provided and accepts the written report to be factual account of the
nt and is satisfied the violations occurred as reported.
harge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or
thorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat
o or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational
. Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an
nization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

## CIPLINARY ACTION   (Consecutive to any priors)

| RECOMMENDED | FINAL |
|---|---|
| lonths C Grade | 3 Months C Grade |
| lonths Segregation | 3 Months Segregation |
| Months Commissary Restriction | 3 Months Commissary Restriction |
| Months Contact Visits Restriction | 6 Months Contact Visits Restriction |

sis for Discipline:nature of offense

## Signatures
learing Committee

| | | | |
|---|---|---|---|
| 3ROOKMAN, KENT E  - Chair Person | Signature | 03/22/17    Date | WHI    Race |
| HART, JASON N | Signature | 03/22/17    Date | BLK    Race |

Recommended Action Approved

)ate: 4/4/2017 14:05:42        Page 1 of 2

**A.018**

**STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS**
**ADJUSTMENT COMMITTEE**
**FINAL SUMMARY REPORT**

| | | |
|---|---|---|
| **Name:** TORRES, NORBERTO | **IDOC Number:** R74153 | **Race:** HSP |
| **Hearing Date/Time:** 3/22/2017   08:07 AM | **Living Unit:** MEN-N2-06-36 | **Orientation Status:** N/A |
| **Incident Number:** 201700409/1 - MEN | **Status:** Final | |

**Final Comments:** N/A

_JACQUELINE A LASHBROOK / JAL 4/4/2017_                    04/04/17
Chief Administrative Officer                    Signature                    Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

                    4/14/17
Employee Serving Copy to Committed Person                    When Served  -- Date and Time

**A.019**

E 1023

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** TORRES, NORBERTO | **IDOC Number:** R74153 | **Race:** HSP |
| **earing Date/Time:** 3/22/2017   08:07 AM | **Living Unit:** MEN-N-10-29 | **Orientation Status:** N/A |
| **ncident Number:** 201700409/2 - MEN | **Status:** Expunged Final | |

| )ate | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| /9/2017 | 201700409/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 02:00 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 205 | Gang Or Unauthorized Organization Activity | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| o Witness Requested | | | |

**ECORD OF PROCEEDINGS**
mate pled not guilty stated I didn't fill the paper work out
Ticket was expunged per Grievance Report #18-6-17
er DR 504

**ASIS FOR DECISION**
ased on the observation of the reporting employee  Intel unite received and envelop filled with a handwritten STG
laterial discovered while shaking down from an individual that had just arrived form Menard CC.  In envelope was a
andwritten Latin Folk questionnaire.  These questions are given to members of the Latin Folk union and have to be filled
ut and returned to a designated individual in the cell house.  The information obtained from theses can help weed out
iformants, sex offenders, or individuals that may have had a prior PC placement.  The individuals filling these out have
) provide information such as their name, number, affiliation, crime, etc..  The particular questionnaire was filled out be
orres, Norberto R74153.  Torres provided information such as his name, affiliation, nick name and his sentence.  Hand
riting samples were obtained from Torres master file via Menard CC intel unit.  After comparing the questionnaire to the
rovided hand writing samples numerous similarities were noted that help determine that Torres authored the
uestionnaire.  Torres is s self-admitted member of the Maniac Latin Disciples.  The Maniac Latin Disciples fall under the
atin Folk umbrella discussed earlier in the ODR  Inmate ID by OTS sheet and state ID card
ommittee finds inmate guilty based on information provided and accepts the written report to be factual account of the
cident and is satisfied the violations occurred as reported.
J5 charge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or
iauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat
roup or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational
gns.  Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an
rganization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

**ISCIPLINARY ACTION**   *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | ----E X P U N G E D ---- |

**Basis for Discipline:**

## Signatures
**Hearing Committee**

| | | | |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | | 03/22/17 | WHI |
| | Signature | Date | Race |
| HART, JASON N | | 03/22/17 | BLK |
| | Signature | Date | Race |
| Recommended Action Approved | | | |

inal Comments: N/A



20 ILLINOIS ADMINISTRATIVE CODE      CH. I, SEC.504
SUBCHAPTER e

c) The Hearing Investigator may correct or direct the reporting employee to correct any errors in the disciplinary report. The offender shall be provided with a copy of the corrected report. In the event the corrected report contains new charges, the offender shall be provided a copy of the corrected report at least 24 hours prior to the hearing unless the offender waives this notice.

d) The Hearing Investigator may interview any person who may have information that relates to the alleged violation and may inspect any physical evidence.

e) The Hearing Investigator shall determine whether or not to submit a report to the Adjustment Committee, based upon the results of the investigation. However, if the investigation reveals evidence of a convincing nature that the offender did not commit the offense, that evidence must be reported to the Committee.

f) Any report may be submitted in writing or presented orally, as determined by the Hearing Investigator.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

Section 504.70  Adjustment Committee and Program Unit Composition

a) The Chief Administrative Officer shall appoint the Adjustment Committee, which shall be composed of at least 2 members.

  1) For adult offenders, the Adjustment Committee shall include:

   (A) To the extent possible, a person representing the counseling staff; and

   (B) At least one minority staff member.

  2) The Chief Administrative Officer shall designate a chairperson.

b) The Program Unit shall be composed of a group of employees appointed by the Chief Administrative Officer who shall serve as Hearing Officers. For adult offenders, at least one member of the Unit shall be a minority staff member.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

Section 504.80  Adjustment Committee Hearing Procedures

a) The Adjustment Committee hearing shall be convened but need not be concluded within 14 days after the commission of the offense by an adult offender or within 7 days after the commission of the offense by a juvenile offender or its discovery, whenever possible, unless the offender has received a continuance or is unable or

IDOC 000225

**A.021**

Ex
E

m)   If the safety or security of the facility or any person is jeopardized by certain references in the written record, they may be deleted but the fact that omissions have been made shall be noted on the summary, along with a finding that material is being deleted based on safety or security concerns.

n)   If the offender is found guilty, the individual shall be informed of the opportunity to appeal through the grievance procedures in 20 Ill. Adm. Code 504.Subpart F.

o)   A copy of the disciplinary report and Adjustment Committee summary shall be forwarded to the Chief Administrative Officer for review and approval and a copy shall be filed in the offender's record . The offender shall be given a copy of the Adjustment Committee summary.

p)   The Chief Administrative Officer shall review all Adjustment Committee dispositions. The Director shall review all Adjustment Committee dispositions in which it is recommended that the offender lose statutory good time or good conduct credits. The Deputy Director of the Juvenile Division shall review any Adjustment Committee disposition of a juvenile offender when the Committee has recommended a delay in referral of the offender to the Prisoner Review Board for more than 30 days.

1)   The Director, Deputy Director, or the Chief Administrative Officer may take the following actions:

A)   Confirm the recommendation in whole or in part.

B)   Order additional or new proceedings.

C)   Suspend or overturn the recommendation.

D)   Offer the offender a work assignment which, if accepted and satisfactorily completed, will result in reduction of original disciplinary sanctions.

2)   The Director, Deputy Director, or the Chief Administrative Officer shall not increase the sanctions recommended by the Adjustment Committee, but he or she may reduce them. The offender shall be sent a copy of any modification to the Adjustment Committee recommendations.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

**Section 504.90  New or Additional Proceedings**

**A.022**

a)  The Director, Deputy Director, or Chief Administrative Officer shall remand the decision to the Adjustment Committee for new proceedings if the proceedings are found to be defective due to:

   1)  Inadequate notice, including failure to state the correct date of the offense on the disciplinary report or failure to provide the offender with 24-hour notice of the hearing and such notice was not waived.

   2)  Lack of impartiality of the Adjustment Committee.

   3)  Improper exclusion of witnesses.

   4)  Failure to provide exonerating information to the offender prior to the hearing.

b)  New or additional proceedings may be ordered in other circumstances, as determined by the Director, Deputy Director, or Chief Administrative Officer.

   1)  The offender shall be provided with notice of the rehearing within a reasonable time after the Chief Administrative Officer's decision or the facility's receipt of the decision.

   2)  The rehearing shall commence within 14 days for an adult offender or 7 days for a juvenile offender after the Chief Administrative Officer's decision or the facility's receipt of the decision, whenever possible.

   3)  The procedures on remand shall be conducted in accordance with the procedures governing the hearing on the original charge.

c)  The Director, Deputy Director, or Chief Administrative Officer may remand the decision to the Adjustment Committee for additional documentation, correction, or clarification of the Adjustment Committee summary, including the statement of reasons for excluding witnesses, the basis for the finding of guilt and imposition of sanctions, statement of reasons for deeming sources to be confidential, or the failure to specify reasons for finding a confidential source to be reliable.

   1)  The offender shall not have the right to a new hearing, but shall be notified of the decision.

   2)  After the Adjustment Committee has amended its summary, it shall be forwarded to the Chief Administrative Officer and then to the Director in accordance with the procedures applicable to review of the original disposition.

NORBERTO TORRES #R74153
NORTH 2 CELL # 241
3/17/17

To: WARDEN

I AM IN CELL # 241 IN NORTH 2, SEGREGATION. I AM
WRITING REGARDING MY SITUATION. A TICKET I RECEIVED
ON 3-15-17 WAS EXPUNGED, WHICH YOU AGREED ON. NOW,
I AM IN SEG. FOR THE SAME TICKET. I AM IN SEG.
FALSELY.
PLEASE RESPOND.

THANK YOU,
NORBERTO TORRES

A.024

**ILLINOIS DEPARTMENT OF CORRECTIONS**

**OFFENDER'S GRIEVANCE**

| Date: 5-24-17 | Offender: (Please Print) NORBERTO TORRES | ID#: RT4153 |
|---|---|---|
| Present Facility: MENARD C-C | Facility where grievance issue occurred: MENARD C-C | |

*18-6-17*

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] HIPAA
- [ ] ADA Disability Accommodation
- [ ] Other (specify): _____
- [x] Disciplinary Report:  3-13-17   MENARD - C-C
        Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON 3/13/17 ON OR ABOUT 1-2PM, I WAS PLACED ON DEADLOCK IN THE WEST CELL HOUSE OF 5 GALLERY, WHEN C/O REYNOLDS TOLD ME OF SUCH, I ASKED WHAT WAS THE CAUSE FOR IT, HE ASKED "HOW LONG YOU'VE BEEN IN THIS INSTITUTION." I STATED "ALMOST 2 YEARS", HE THEN SAYS "I'M NOT 100 SURE BUT IT HAS TO DO WITH SOMETHING FROM ANOTHER PLACE. ON THE NIGHT OF SAID DATE (3-13-17) ON OR ABOUT 6-7 PM, I WAS GIVEN A DISCIPLINARY REPORT FOR AN #205-SIG. GRIEVANT WASN'T INFORMED OF ANY INVESTIGATION OR PLACED ON SUCH STATUS. IT WAS ALLEGED THAT THIS GRIEVANT FILLED OUT SOME TYPE OF PAPER WITH INFORMATION SUCH AS VALUE ETC. THE SAID MATERIAL WAS FOUND IN PONTIAC-C-C IN SOMEONE ELSE'S PROPERTY ON A SHAKEDOWN AND THEN OUT TURNED OVER TO INTEL. SUCCINCTLY PUT —

**Relief Requested:** 1) THAT GRIEVANT BE RELEASED FROM SEGREGATION 2) THAT E.D.R. ISSUED TO GRIEVANT BE EXPUNGED 3) THAT GRIEVANT'S MONTHLY PAYROLL BE RESTITUTED.  AND THAT I DON'T BE RETALIATED AGAINST FOR FILING THIS GRIEVANCE.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| [signature] Offender's Signature | ID# RT4153 | Date 5, 24, 17 |
|---|---|---|

(Continue on reverse side if necessary)

**RECEIVED**

| **Counselor's Response** (if applicable) | **JUN 06 2017** |
|---|---|

Date Received: ___/___/___

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to: Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

**EMERGENCY REVIEW**

Date Received: ___/___/___

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Chief Administrative Officer's Signature | Date |
|---|---|

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE (Continued)**

Grievant is Housed in Menard-C.C. on West House, Cell 5-03 a11 Therefore, it is impossible for Grievant to reach Pontiac-C.C. let alone write author anythings on 3/15/17. The Adjustment Committee Found me Not Guilty of #205, S/G, due to disciplinary report Not making sense let alone being written at Pontiac-C.C. 15 Minutes of Sato Cate (3-15-17) I get Told To Pack up, because I'm going To Segregation The C/o Sato, "I don't Know why, I Thought you were good". On 3/17/17, I get a disciplinary Report. "Once More: I wasn't given an investigation Report". As I read from, start To Finish, I Notice it's a copy of The exact disciplinary Report I was given on 3/13/17 which Got Thrown out on 3/15/17. On 3/22/17 The Adjustment Committee Found me Guilty of #205, S/G, This Grievant is Feting The instant Grievance due To The Fact That This Grievant was served a Major disciplinary Report which requires The Chief Administrative Officer To appoint one or More Hearing investigator on all Major disciplinary Reports pursuant To (20 Illinois. Administrative Code. Chi. Sec 504, Subchapter E Section 504 (a) This Grievant was not provided a Hearing investigator during His Hearing before The Adj. Comm in violation of (20 Ill. Adm. Code, Chi Sec 504, Subchapter E 60 (a) Grievant was deprived a chance To Properly Prepare For His Defense (section 504 R0 (E) Properly address The comm. (section 504 (E)(5) The Adj. Comm also Failed To Follow (2 and 3 of Their Hearing Procedures. Only was Grievant not Placed under investigation and Question By C.A.O or a Hearing investigator, Further depriving Grievant of His Ability To call witnesses To be interviewed on Grievant's Behalf is The Fact That The Ticket. This not indicate who The reporting employee Alleging To Have discovered such Materials. The Adj. comm Chairperson, Brookman, before starting To read The disciplinary Report looked at me with recognition... I tell Him, it's The same Ticket I was given on 3-13-17 And got Thrown out on 3-15-17 at That West cell House. He states, oh yeah Along with Sgt. Hart and The rest of comm. Members Then says will The other Ticket did not Make any sense, He continues "To read, as He Finished He asked me, "How do you Plea", I state, "Not Guilty", He Then states "I'm giving you 3 months segregation, not only was My Defense not consider I was never shown Sato Paper That I was being Accused of, nor was I able To ask, due To Being Rushed out. Compounding Grievant's Ability To call any witnesses and/or To defend Himself of Any charges, is The Fact That The letters were deemed To be Authored by Grievant from some File, what Assurance is satisfied That any letter comparison To Grievant's writing wasn't done Arbitrarily, And any Procedural safeguards asserted, if no letter/material was Found in Grievant's Possession nor in Grievant's Property let alone in The Facility. On 6-10-15 I was in Statesville/NRC waiting on Transfer, I was given a #205 S/G. The Sato Ticket Sato, I was an Affiliate with a latin Folk Faction (MLDS) On 7-10-15 I received The Summary Report of 6-10-15, I stated, "explained due To inaccurate/insufficient information". On 12-15-15, I was given an #205-S/G. I Also Stated, "I was Affiliated with a latin Folk Faction on 1-14-16, I received The summary of 12-15-15, I Stated "Not Guilty I'm A.GD."

**A.026**

A) 3-13-17

13-17, It STATED "Ticket was DISMISSED, on 3-17-17, I was GIVEN AN #205,STG, on 4-14-17
RECEIVED THE SUMMARY REPORT OF 3-17-17, It STATED, "INMATE PLED NOT GUILTY STATED, I
DIN'T FILL THE PAPERWORK OUT." MENARD'S INTEL/INTERNAL AFFAIRS ARE TWISTING REPORTS
GNORING/DISREGARDING I.D.O.C'S DUE PROCESS "SAFEGUARDS" BY INTENTIONALLY ALLOWING
RELEVANT TO BE PLACED IN PUNITIVE SEGREGATION ONLY BECAUSE OF HIS RACIAL ETHNICLY.

PREPARATION OF DISCIPLINARY REPORTS

) IF AN EMPLOYEE OBSERVES A COMMITTED PERSON COMMITTING AN OFFENSE, DISCOVERS EVIDENCE
ITS COMMISSION, OR RECEIVES INFORMATION FROM A RELIABLE WITNESS OF SUCH CONDUCT
SHALL PREPARE A DISCIPLINARY REPORT.
) THE DISCIPLINARY REPORT MUST BE FULLY COMPLETED. THE REPORTING EMPLOYEE SHALL
ROVIDE THE FOLLOWING INFORMATION TO THE EXTENT KNOWN OR AVAILABLE.
1) ..... 2) THE PLACE, TIME AND DATE, OF OFFENSE 3) ..... 4) A WRITTEN STATEMENT OF
IE CONDUCT OBSERVED 5) THE NAMES OF COMMITTED PERSON'S, EMPLOYEES ... WHO WERE WITNESSES.
) IF A COMMITTED PERSON IS SUSPECTED OF COMMITTING A DISCIPLINARY OFFENSE, AN
NVESTIGATIVE DISCIPLINARY REPORT, HERE AND IN AFTER REFFERED TO AS AN
NVESTIGATIVE REPORT, MAY BE ISSUED WHICH REASONABLY INFORMS THE COMMITTED
RSON OF THE SUBJECT, OF THE INVESTIGATION TO THE EXTENT THAT SAFETY AND
SECURITY ALLOW.

RECEIVED
JUN 06 2017
EX# 151

A.027

EX-H

NORBERTO TORRES #R74153
NORTH 2 CELL # 636


To: WARDEN

A WEEK AGO, AS YOU DID YOUR ROUNDS, I SPOKE
WITH YOU PERSONALLY. I SHOWED YOU, I WAS FOUND GUILTY
OF A TICKET YOU EXPUNGED AND SIGNED OFF ON. I
AM STILL ALSO IN THE SAME CELL (#636) THAT I SHOWED
YOU THE MOLD AND THE LEAKING SMELLY TOILET. YOU
ADVISED ME, I WOULD BE MOVED TO A BETTER CELL AND
THAT, YOU WOULD CHECK INTO THE TICKET SITUATION. THIS
IS MY 4TH LETTER AND I'VE ALSO WRITTEN GRIEVANCES.
PLEASE RESPOND.


THANK YOU,

NORBERTO TORRES

A.028

**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

Date Received: <u>June 6, 2017</u>            Date of Review: <u>June 8, 2017</u>            Grievance # (optional): <u>18-6-17</u>

Offender: <u>Torres, Norberto</u>                                                    ID#: <u>R74153</u>

**Nature of Grievance:** Disciplinary Report dated 3/9/2017 issued by C/O G. Kochel for 205 Gang or Unauthorized Organization Activity-201700409/1-MEN

**Facts Reviewed:** All information submitted to the Grievance Officer by the offender or institutional staff pertaining to this issue(s) being grieved has been thoroughly reviewed. Offender submitted a grievance dated 5/24/2017 regarding the above disciplinary report. Offender grieves he was issued a STG ticket alleging that he filled out some type of paper with information and the material was found in Pontiac C.C. in someone else's property during a shakedown. He states that it is impossible for grievant to reach Pontiac C.C. or write anything. He states that he was not informed of any investigation or placed on such status. He states that on 3/15/2017 the Adjustment Committee found him not guilty of the offense due to the Disciplinary Report not making sense. On 3/17/2017 he received a disciplinary report that was an exact copy of the one he received on 3/13/2017 which was expunged. The Adjustment Committee found him guilty of #205. He states that he was never issued notice of the investigation or investigative status.

**Relief requested:** Expunge IDR & restore privileges, release from segregation, receive monthly payroll, and no retaliation for filing this grievance.

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures & contacted the Adjustment Committee and Investigations and Intelligence.

The offender was issued a disciplinary ticket for 205 Gang or Unauthorized Organization Activity #201700365/1-MEN written on 3/11/2017 and served to the offender on 3/13/2017. The offender refused to sign the ticket.

The ticket was dismissed due to the ticket not written correctly.

The offender was then issued a disciplinary ticket for 205 Gang or Unauthorized Organization Activity #201700409/1-MEN written on 3/15/2017 and served to the offender on 3/17/2017. The offender refused to sign the ticket.

Per DR 504.80 Prior to the hearing, the offender may request that witnesses be interviewed. No requests for witness received by Committee.

The Committee advised the hearing was in accordance with DR 504.80. Offender was permitted to make statements in his defense and offender pled not guilty stated, "I didn't fill the paper work out" as noted on the final summary.

According to the disciplinary report written by C/O Kochel, based on the observation of the reporting employee, Intel unit received and envelope filled with handwritten STG material discovered while shaking down from an individual that had just arrived from Menard CC. In envelope was a handwritten Latin Folk questionnaire. These questions are given to members of the Latin Folk union and have to be filled out and returned to a designated individual in the cell house. The information obtained from theses can help weed out informants, sex offenders, or individuals that may have had a prior PC placement. The individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. The

Continue on page 2...

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be AFFIRMED. Ticket #201700409/1-MEN shall be expunged in accordance with DR504.

<u>Kelly Pierce   -   Menard Correctional Center</u>                              _Kelly Pierce_
Print Grievance Officer's Name                                          Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: <u>June 15, 2017</u>        ☑ I concur        ☐ I do not concur        ☐ Remand

**Comments:**   Adjustment Committee
                Placement
                Record Office
                Clinical Services Supervisor

_____                                          6/20/17
Chief Administrative Officer's Signature                                    Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____        _____        _____
Offender's Signature                              ID#                              Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE** (Continued)

Continued...

particular questionnaire was filled out by Torres, Norberto, R74153.  Torres provided information such as his name, affiliation, nick name and his sentence.  Hand writing samples were obtained from Torres' master file via Menard CC Intel unit.  After comparing the questionnaire to the provided hand writing samples numerous similarities were noted that help determine that Torres authored the questionnaire.  Torres is s self-admitted member of the Maniac Latin Disciples.  The Maniac Latin Disciples fall under the Latin Folk umbrella discussed earlier in the ODR   Inmate ID by O360 sheet and state ID card.

Committee finds inmate guilty based on information provided and accepts the written report to be factual account of the incident and is satisfied the violations occurred as reported.

205 charge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat-group or unauthorized organizational signs.  Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

The Department Rule does not specify that the offender shall be notified of temporary confinement.

Although the offender is guilty of the infractions, ticket # 201700409/1-MEN shall be expunged due to the ticket not being heard in accordance with DR504.

NO one is retaliated against for filing grievances.  No one is aware unless offender is advising them.



# Joint Committee on Administrative Rules
# ADMINISTRATIVE CODE

### TITLE 20: CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
### CHAPTER I: DEPARTMENT OF CORRECTIONS
### SUBCHAPTER e: OPERATIONS
### PART 504 DISCIPLINE AND GRIEVANCES
### SECTION 504.620 SEGREGATION STANDARDS

**Section 504.620  Segregation Standards**

Standards for living conditions in segregation areas shall include the following provisions:

a)  Double celling shall be permitted upon approval of the Chief Administrative Officer.  Prior to assigning offenders to a double cell, a review shall be conducted to determine whether there are reasons why the offenders should not be double celled. Medical and mental health concerns shall be considered in making this determination.

b)  Minimally, each cell shall be furnished with:

    1)  A bed for each offender, securely fastened to the cell;

    2)  Clean bedding, including a mattress, blanket, sheets, pillow and pillow case for each offender;

    3)  A wash basin with running water and flushable toilet facilities (controls may be located outside the cell); and

    4)  Adequate lighting for reading and observation purposes.

c)  Segregation cells shall be located at or above ground level, provide visual access to natural light, and have heat and ventilation consistent with the climate.

d)  Each cell shall have a door and a food passage.  Any solid cell door shall have a vision panel or shall be designed to allow light to enter and permit observation.

e)  The use of physical restraints to confine the offender's movements within the cell shall generally be prohibited.

f)  Each cell shall be maintained in a sanitary condition and cleaning materials shall be made available on a regular basis.

g)  Personal health and hygiene needs of the offender shall be permitted as follows:

    1)  A shower and shave no less than three times per week.

EXHIBIT D

R74153  TORRES, NORBERTO

**IGRV Inmate History**

| Igrv Code | Hearing/Rec Date | Igrv Loc | Hearing Loc | Chair Code | Mail Code | Comments Field |
|---|---|---|---|---|---|---|
| DR | 06/15/2017 | MEN | MEN | ANLA | G | RGF. GRV DTD 5/24/17. GRVS DR WRITTEN ON 3/17/17 FOR 205 CHARGE.  I/M TO FC |
| DR | 12/06/2016 | MEN | MEN | SHBE | G | GRV# 73-2-16: DR 12/15/15 (201501947/1-MEN).  CLAIMS FLAWED HRNG AS CS'S USE |
| DR | 03/29/2016 | MEN | MEN | LIQU | G | RGF, CO,GO RESPONCES. GRV DTD 1/18/16. GRVS DR WRITTEN 12/7/15 @ MENARE |

**A.032**

Torres v. Lashbrook, et al. (19-248) Document No.:        000010

ILLINOIS DEPARTMENT OF CORRECTIONS

**Administrative Review Board**
**Return of Grievance or Correspondence**

Offender:  Torres _____   Norberto _____   _____  R74153 _____
                    Last Name                          First Name                    MI              ID#

Facility:  Menard _____

☒ Grievance: Facility Grievance # (if applicable) Not provided   Dated: 5/24/2017   or ☐ Correspondence: Dated: _____

Received: 6/1/2017 _____   Regarding: IDR issued 3/17/17 _____
                    Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
☒ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.
☐ Provide dates when incidents occurred.
☐ Unable to determine nature of grievance or correspondence; submit additional specific information.  Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board
    Office of Inmate Issues
    1301 Concordia Court, Springfield, IL  62794-9277

**Misdirected:**
☐ Contact your correctional counselor or Field Services regarding this issue.
☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
☐ Contact the Record Office with your request or to provide additional information.
☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
☐ Address concerns in a letter to:  Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL  62706

**No further redress:**
☐ Award of Supplemental Sentence Credits are discretionary administrative decisions; therefore, this issue will not be addressed further.
☐ Administrative Transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.
☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
☐ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.
☐ This office previously addressed this issue on _____
                                                              Date
☐ No justification provided for additional consideration.

**Other** (specify): Offender to follow DR 504.810 and supply grievance officer and CAO responses, if timely.
_____

Completed by:  Ann Lahr _____        _____        6/15/2017 _____
                          Print Name                          Signature                          Date

Distribution:  Offender        Printed on Recycled Paper        DOC 0070 (Rev.5/2017)
                    Inmate Issues

A-033
Torres v. Lashbrook, et al. (19-248) Document No.:        000011

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date: 5-24-17 | Committed Person: (Please Print) NORBERTO TORRES | ID#: R74153 |
|---|---|---|

| Present Facility: MENARD - C-C | Facility where grievance issue occurred: MENARD - C-C |
|---|---|

**NATURE OF GRIEVANCE:**

| ☐ Personal Property | ☒ Mail Handling | ☐ Restoration of Good Time | ☐ Disability |
|---|---|---|---|
| ☐ Staff Conduct | ☐ Dietary | ☐ Medical Treatment | ☐ Other (specify): |
| ☐ Transfer Denial by Facility | ☐ Transfer Denial by Transfer Coordinator | | |

☒ Disciplinary Report: _3_ / _17_ / _17_     MENARD - C-C
Date of Report                            Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: ON 3/13/17, ON OR ABOUT 1-2 PM I WAS PLACED ON DEADLOCK IN THE WEST
CELL HOUSE OF 5 GALLERY. WHEN C/O REYNOLDS TOLD ME OF SUCH, I ASKED WHAT WAS THE CAUSE
FOR IT. HE ASKED HOW LONG YOU'VE BEEN IN THIS INSTITUTION. I STATED "ALMOST 2 YEARS."
HE THEN SAYS "I'M NOT TOO SURE, BUT IT HAS TO DO WITH SOMETHING FROM ANOTHER PLACE."
ON THE NIGHT OF SAID DATE (3-13-17) ON OR ABOUT 6-7 PM I WAS GIVEN A DISCIPLINARY
REPORT FOR AN #205, STG GRIEVANT WASN'T INFORMED OF ANY INVESTIGATION OR PLACED ON
SUCH STATUS, IT WAS ALLEGED THAT THIS GRIEVANT FILLED OUT SOME TYPE OF PAPER WITH
INFORMATION SUCH AS NAME, CRIME, ETC. THE SAID MATERIAL WAS FOUND IN PONTIAC-C-C
IN SOMEONE ELSE'S PROPERTY ON A SHAKEDOWN AND THEN GOT TURNED OVER TO INTEL.
SUCCINCTLY PUT GRIEVANT IS HOUSED IN MENARD-C-C ON WEST HOUSE, CELL #563.

Relief Requested: ① THAT GRIEVANT BE RELEASED FROM SEGREGATION ② THAT I.D.R. ISSUED TO
GRIEVANT BE EXPUNGED ③ THAT GRIEVANT'S MONTHLY PAY ROLL BE RESTITUTED AND THAT I DON'T
BE RETALIATED AGAINST FOR FILING THIS GRIEVANCE.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ | R74153 | 5, 24, 17 |
|---|---|---|
| Committed Person's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

| **Counselor's Response (if applicable)** |
|---|

Date
Received: ____ / ____ / ____     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | **RECEIVED** |
|---|---|---|

---

| **EMERGENCY REVIEW** | JUN 01 2017 |
|---|---|

Date
Received: ____ / ____ / ____     Is this determined to be of an emergency nature?     **ADMINISTRATIVE REVIEW BOARD**
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____
Chief Administrative Officer's Signature                                    Date

Distribution: Master File; Committed Person                    Page 1                    DOC 0046 (Eff.10/2001)
                                                                                          (Replaces DC 5657)

Printed on Recycled Paper

**A.034**

Torres v. Lashbrook, et al. (19-248) Document No.:          000012

Therefore, it is impossible for grievant to reach Pontiac-C.C. let alone write/author anything. On 3/15/17, the Adjustment Committee found me not guilty of #205, S.I.G. due to disciplinary report not making sense, it alone being written at Pontiac-C.C. is minor. That same date (3-15-17) I get told to pack up because I'm going to segregation. The C/O said, "I don't know why I thought you were good." On 3/17/17, I get a disciplinary report once more. I wasn't given an investigation record, as I read from start to finish. I wrote, is a copy of the exact disciplinary report I was given on 3/15/17 which got rewrote on 3/15/17. On 3/22/17, the Adjustment Committee found me guilty of #205, S.I.G. This grievant is filing the instant grievance due to the fact that this grievant was served a major disciplinary report, which requires the chief administrative officer to appoint one or more hearing investigator. On all major disciplinary reports pursuant to (2 Illinois Administrative Code, chap. sec 504, subchapter e, section 504(a)) This grievant was not provided a hearing investigator during his hearing before the Adj. comm. in violation of (20 Ill. Adm. Code, chap. sec 504, subchapter e 504(a)) Grievant was deprived a chance to properly prepare for his defense (section 504, 80(c) properly address the comm. (section 504(c)) The Adj. comm. also failed to follow "1a and 3" of their hearing procedures only was grievant, nor placed under investigation and questions by I.A. or a hearing investigator, nor further deprived grievant of his ability to call witnesses to be interviewed on grievant's behalf is the fact that the ticket, thus not endorsed with the reporting employee alleging to have discovered such material. The Adj. comm. chairperson, Brockman, before starting to read the disciplinary report looked at me with recognition. I tell him, it's the same ticket I was given on 3-15-17 and got thrown out on 3-15-17 at the west cell house. He states, "oh yeah, along with Sgt. Hart and the rest of comm. members then says, "well, the other ticket did not make any sense, he continues to read. As he finishes, he asked me, "how do you plea, I state "not guilty. He then states "I'm giving you 3 months segregation, not only was my defense not considered, I was never shown said paper that I was being accused of, nor was I able to ask due to being rushed out, compromising grievant's ability to call any witnesses and/or to defend himself of any charges, is the fact that the letters were deemed to be authored by grievant. From some file, what assurance is satisfied that any letter comparison to grievant's writing wasn't done arbitrarily and any procedural safeguards asserted, if no letter/material was found in grievant's possession, nor in grievant's property. I came to the facility, on 6/1/15, I was in Stateville/NRC awaiting on transfer, I was given an #205, S.I.G. The said ticket said I was an affiliate with a Latin folk faction (MLD) on 7-10-15, I received the summary report of 6-10-15. I stated "expunge due to inaccurate/insufficient information. On 12-15-15, I was given an #205, S.I.G. I also stated, "I was affiliated with a Latin folk faction, on 1-11-16 I received the summary of 12-15-15. I stated "not guilty, I'm a GD."

ON 3-13-17, I WAS GIVEN AN #205.SIG, ON 3-24-17 I RECEIVED THE SUMMARY REPORT OF
3-13-17, I STATED "TICKET WAS DISMISSED" ON 3-17-17, I WAS GIVEN AN #205, SIG, ON
4-14-17 I RECEIVED THE SUMMARY REPORT OF 3-17-17, I STATED "INMATE PLED NOT
GUILTY STATED, I DIDN'T FILL THE PAPERWORK OUT." MENARD'S INTEL/INTERNAL AFFAIRS
ARE FALSIFYING REPORTS IGNORING/DISREGARDING I.D.O.C'S DUE PROCESS
"SAFEGUARDS" BY INTENTIONALLY ALLOWING GRIEVANT TO BE PLACED IN PUNITIVE
SEGREGATION ONLY, BECAUSE OF HIS RACIAL/ETHNICITY.

* PREPARATION OF DISCIPLINARY REPORTS *

B) IF AN EMPLOYEE OBSERVES A COMMITTED PERSON COMMITTING AN OFFENSE, DISCOVERS
EVIDENCE OF ITS COMMISSION OR RECEIVES INFORMATION FROM A RELIABLE WITNESS,
INCH CONDUCT HE SHALL PREPARE A DISCIPLINARY REPORT.

C) THE DISCIPLINARY REPORT MUST BE FULLY COMPLETED. THE REPORTING EMPLOYEE
HALL PROVIDE THE FOLLOWING INFORMATION TO THE EXTENT KNOWN OR AVAILABLE.
       1)...... 2) THE PLACE, TIME AND DATE OF OFFENSE 3)...... 4) A WRITTEN
STATEMENT OF THE CONDUCT OBSERVED 5) THE NAMES OF COMMITTED PERSONS,
EMPLOYEES... WHO WERE WITNESSES

D) IF A COMMITTED PERSON IS SUSPECTED OF COMMITTING A DISCIPLINARY
OFFENSE, AN INVESTIGATIVE DISCIPLINARY REPORT, HERE IN AFTER REFERRED TO
AS AN INVESTIGATIVE REPORT, MAY BE ISSUED WHICH REASONABLY INFORMS THE
COMMITTED PERSON OF THE SUBJECT OF THE INVESTIGATION TO THE EXTENT
THAT SAFETY AND SECURITY ALLOW.

**RECEIVED**

JUN 01 2017

**ADMINISTRATIVE
REVIEW BOARD**

5/24/17

To whom it may concern,

I apologize for skipping proper settings. The reason for such is due to, me, just receiving the summary report on the ticket I was given of the date of, 3-17-17.

I do not know if the expiration date to turn in a grievance has passed. I would like for my grievance to go forward to show, I put in a grievance for said ticket of, 3-17-17.

I turned in a grievance here at Menard-Corr center, but Menard-C.C has a way of losing/not responding back to grievances.

Once more, I apologize for my grievance pushing forward to your department.

Thank you for your time

I can be reach at,                          Sincerely,
Norberto Torres # R74153                    Norberto
Menard-C.C-
P.O. Box- 1000
Menard, IL 62259

**RECEIVED**

JUN 0 1 2017

ADMINISTRATIVE
REVIEW BOARD

**A.037**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

NORBERTO TORRES,
#R74153,

               **Plaintiff,**

    v.

KENT BROOKMAN,
JASON HART, and
JACQUELINE LASHBROOK,

               **Defendants.**

**Case No. 19-cv-00248-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on the Motion for Summary Judgment on Exhaustion filed by Defendants Lashbrook, Brookman, and Hart. (Doc. 19). To date, Plaintiff Torres has failed to file a response to Defendants' Motion for Summary Judgment. For the reasons provided below, the Court grants in part and denies in part the Motion for Summary Judgment on Exhaustion.

### BACKGROUND

Plaintiff Norberto Torres, an inmate of the Illinois Department of Corrections ("IDOC"), commenced this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while incarcerated at Menard Correctional Center. In the Complaint, Torres alleges he was written a disciplinary ticket for participation in security threat group organizational activity after documents containing Torres's name were found by authorities at Pontiac Correctional Center ("Pontiac") in another inmates' property during a shakedown. (Doc. 1, p. 6). On March 15, 2017, the Adjustment Committee, consisting of members Brookman and Hart, conducted a hearing and expunged the ticket. (*Id.* at p. 13). Two days later, on March 17, 2017, Torres was issued a new disciplinary ticket for the exact same offense. Another hearing was

Page 1 of 9

conducted, and this time he was found guilty by the Adjustment Committee. He was sanctioned with three months segregation, along with the loss of certain privileges. While in segregation, Torres was held in unsanitary conditions. He spoke to Warden Lashbrook and informed her of the conditions of his cell, but he remained in the cell for two and a half months without any change or improvement in the conditions. Eventually, after filing a grievance, the second ticket issued on March 17, 2017 was also expunged because the hearing was not conducted in accordance with IDOC Rule 504. (*Id.* at p. 7; Doc. 19-6, p. 1-2). Following a review of the Complaint by the Court pursuant to 28 U.S.C. § 1915A, Torres is proceeding with the following claims:

> **Count 1:** Fourteenth Amendment procedural due process claim against Adjustment Committee Members Brookman and Hart for failing to provide Torres with adequate opportunity to prepare for the disciplinary hearing by not producing the alleged document which was the basis of the charges.

> **Count 2:** Eighth Amendment claim against Warden Lashbrook for cruel and unusual conditions of confinement.

(Doc. 9). The Court dismissed Torres's claim that Brookman and Hart violated his due process rights by convicting him of the same charge, which they had previously expunged. The Court found that double jeopardy principles do not apply in prison disciplinary context. (*Id.* at p. 4).

Defendants filed their Motion for Summary Judgment on Exhaustion on March 10, 2020. Torres had thirty days to respond to the motion. *See* SDIL-LR 7.1(c)(1). He did not file a response. On June 10, 2020, the Court directed Torres to show cause why his failure to file a response should not be deemed an admission to the merits of the motion and his claims against Defendants dismissed. (Doc. 22). Because Torres is a *pro se* litigant, the Court also issued a Rule 56 Notice further informing Torres of the consequences for failing to respond to a motion for summary judgment. (Doc. 23). Torres filed a response to the Show Cause Order on July 10, 2020, requesting additional time to file a response. (Doc. 25). The request was granted, and Torres was given until

August 5, 2020, to respond. The Court again warned Torres that failure to respond may be considered an admission to the merits of the Motion for Summary Judgment. (Doc. 26). The deadline has passed, and Torres has not filed a response.

In their Motion for Summary Judgment, Defendants argue that Torres did not exhaust his administrative remedies prior to filing this lawsuit. They state that there is no record that Torres submitted a grievance regarding his Eighth Amendment claim for unconstitutional cell conditions, (Doc. 19, pp. 4, 9), and they identify two grievances relevant to his Fourteenth Amendment claims. Both grievances are dated May 24, 2017, and grieve that Torres was not provided due process during the hearing regarding the second disciplinary ticket issued on March 17, 2017. (Doc. 19-4, pp. 3-5; Doc. 19-6, pp. 3-5). The first grievance, numbered 18-6-17, was received by the grievance officer on June 6, 2017, who responded to the grievance on June 8, 2017. (Doc. 19, p. 3). The grievance officer recommended that the grievance be affirmed and the ticket expunged. On June 20, 2017, the chief administrative officer concurred with the grievance officer's recommendation, and Torres was provided with a copy of the determination on June 21, 2017. (Doc. 19-1, p. 1; Doc. 19-3, p. 5; Doc. 19-6, p. 1). After receiving the chief administrative officer's determination, Torres did not appeal grievance 18-6-17 to the Administrative Review Board. (Doc. 19, p. 5).

The second grievance was filed directly with the Administrative Review Board. (Doc. 19-4, p. 2-6). Along with the grievance, Torres submitted a letter to the Administrative Review Board explaining that he was skipping proper procedures and "pushing forward" the grievance because he was unsure if the expiration date of submitting grievances had passed and because Menard has a history of losing and not responding to grievances. (Doc. 19-4, p. 6). The Administrative Review Board returned the grievance, directing Torres to supply responses from the grievance officer and chief administrative officer in accordance with Illinois Administrative Code § 504.810. (*Id.* at p. 2). However, no other grievances were received by the Administrative Review Board regarding

Page 3 of 9

**A.040**

complaints against Brookman, Hart, and the March 17, 2017 disciplinary ticket.

Defendants argue that Torres failed to comply with the grievance process as provided in the Illinois Administrative Code in his submission of both grievances dated May 24, 2017, and so, neither grievance was properly exhausted. Specifically, grievance 18-6-17 was (1) untimely filed sixty days after the incident occurred, and (2) not appealed to the Administrative Review Board, and the second grievance was improperly filed with the Administrative Review Board prior to receiving a response from the grievance officer and chief administrative officer. Because there is no evidence that Torres followed the grievance process and fully exhausted his administrative remedies regarding his claims against Lashbrook, Brookman, and Hart prior to filing his Complaint, Defendants argue that Torres has failed to properly exhaust his administrative remedies.

LEGAL STANDARDS

## I. Summary Judgment

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court considers the facts in a light most favorable to the non-moving party, here, Torres. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

## II. PLRA Exhaustion Requirement

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be

Page 4 of 9

**A.041**

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005).

### III. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Torres was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE § 504.810(a). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE § 504.830(a), (e). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the chief administrative officer's response, he or she can file an appeal with the director through the administrative review board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the grievance officer's report and the chief administrative officer's decision to his appeal. *Id*. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

### ANALYSIS

As discussed, after several opportunities, Torres did not file a response to Defendants' Motion for Summary Judgment. Pursuant to Federal Rule of Civil Procedure 56(e), "[i]f a party fails. . . to properly address another party's assertion of fact" the Court may "consider the fact undisputed for purposes of the motion." Also, under Local Rule 7.1(c), a party's "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Thus, the Court deems Torres's failure to respond as an admission to the material facts of the Motion for Summary Judgment on Exhaustion filed by Defendants. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl,* 58 F.3d 283, 288 (7th Cir. 1995) (noting that a failure to respond constitutes an admission that there are no undisputed material facts).

Based on this admission, the Court finds that Torres failed to properly exhaust his

administrative remedies as to his Eighth Amendment claim for unconstitutional conditions of confinement. There is no evidence in the record that Torres submitted a grievance regarding his conditions of confinement while in segregation or that he was somehow thwarted in his efforts to exhaust. Therefore, summary judgment is granted as to Count 2 against Warden Lashbrook.

The Court also finds that Torres failed to properly exhaust the second grievance dated May 24, 2017, by submitting the grievance directly to ARB, rather than to his counselor at Menard. *See* ILL. ADMIN CODE § 504.810(a). The grievance process allows for certain grievances to be submitted directly to the ARB, including grievances about protective custody, involuntary administrative of psychotropic medications, and disciplinary and other issues at facilities other than the one an inmate is currently housed. *See* 20 ILL. ADMIN. CODE § 504.870(a). However, the reasons that Torres provides in his letter to the ARB — lack of knowledge of grievance deadlines and Menard's failure to respond to grievances — are not proper bases for circumventing normal grievance procedures. (Doc. 19-4, p. 6).

That being said, despite the admission of material facts on the part of Torres, the Court finds that Defendants still have not met their burden of establishing that grievance 18-6-17 was not fully exhausted. Defendants argue that grievance 18-6-17 was not timely filed. Torres received the second disciplinary ticket on March 17, 2017, and the grievance was submitted more than sixty days after this incident occurred. (Doc. 19, p. 8). While prison officials can refuse to hear a grievance if an inmate fails to properly utilize the grievance process, they can also excuse a prisoner's noncompliance and review the grievance on the merits. *See Dole,* 438 F. at 809; 20 ILL. ADMIN. CODE §508.810(a) (allowing a grievance officer to consider an untimely grievance for good cause). The Seventh Circuit has held that a "procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Maddox v. Love,* 655 F. 3d 709, 722 (7th Cir. 2011) (quoting *Conyers*

Page 7 of 9

*v. Abitz*, 416 F. 3d 580, 585 (7th Cir. 2005)). Here, grievance 18-6-17 was decided on the merits, not procedural grounds, and so, it cannot be deemed unexhausted based on timeliness. *See Riccardo v. Rausch,* 375 F. 3d 521, 524 (7th Cir. 2004).

Defendants also argue that grievance 18-6-17 was not fully exhausted because Torres did not submit the grievance to the ARB once he received the response from the chief administrative officer. There is no requirement, however, that inmates "appeal favorable decisions." *Thornton v. Snyder,* 428 F. 3d 690, 695 (7th Cir. 2005). Once an inmate has received all remedies "available," he need not continue to exhaust administrative remedies. *Id.* Torres submitted grievance 18-6-17 complaining about the issuance of the March 17, 2017 disciplinary ticket and the lack of procedural safeguards during the hearing before the Adjustment Committee. In the grievance, he requests the following relief: (1) release from segregation; (2) expungement of the disciplinary ticket and restoration of privileges; (3) reinstitution of monthly payroll; and (4) no retaliation for filing the grievance. (Doc. 19-6, pp. 1, 3). After submitting grievance 18-6-17, the grievance officer recommended that the grievance be affirmed and the disciplinary ticket expunged. (Doc. 19-6, p. 1-2). The grievance officer also confirmed that staff was not retaliating against Torres or would be informed that he filed a grievance unless he personally notified staff members. The chief administrative officer concurred in the recommendation, and the ticket and disciplinary action were expunged. (*See* Doc. 1, p. 16). Because Torres ultimately received the relief that he was looking for, expungement of the disciplinary ticket and restoration of his privileges (*see* Doc. 19-6, pp. 1, 3), he did not need to appeal his grievance in order to fully exhaust his administrative remedies.

The Court finds that grievance 18-6-17 sufficiently provided notice to prison officials that Torres believed he did not receive due process during his hearing before Adjustment Committee Members Brookman and Hart on March 22, 2017, and was fully exhausted. Summary judgment is

Page 8 of 9

**A.045**

therefore denied as to Count 1.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Lashbrook, Brookman, and Hart is **GRANTED in part** and **DENIED in part.** Count 2 against Defendant Lashbrook is dismissed without prejudice, and Defendant Lashbrook is dismissed from this lawsuit. This case shall proceed on Count 1 against Defendants Brookman and Hart.

**IT IS SO ORDERED.**

**DATED:   December 16, 2020**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NORBERTO TORRES, R74153,        )
                                         )
           Plaintiff,          )
                                         )
        -vs-              )   No. 19-248-SPM
                                         )
KENT BROOKMAN and JAOSN HART,  )
                                         )
          Defendants.      )

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Now Come the Defendants, KENT BROOKMAN and JASON HART, by and through their attorney, KWAME RAOUL, Attorney General of the State of Illinois, and pursuant to Federal Rule of Civil Procedure 56, for their Motion for Summary Judgment, state as follows:

1.      On April 10, 2019, Plaintiff, Norberto Torres, R74153, brought this action for deprivation of his constitutional rights pursuant to 42 U.S.C. §1983. (Court Doc. 1).

2.      In the Court's Memorandum and Order, the Court held that Plaintiff had stated (1) Fourteenth Amendment claim for due process against Defendant Brookman and Hart and (1) Eighth Amendment claim against Defendant Lashbrook for cruel and unusual conditions of confinement claim. (Court Doc. 9).

3.      On March 10, 2020, Defendants filed a Combined Motion and Memorandum of Law in Support of Summary Judgment on the Issue of Exhaustion. (Court Doc. 19).

4.      Plaintiff failed to file a Response to Defendants' Motion.

5.      On December 16, 2020, the Court entered an order granting in part and denying in part Defendants Combined Motion. (Court Doc. 28). [1]

---

[1] Despite the admission of material facts on the part of Plaintiff the Court found that Defendants still had not met their burden of establishing that grievance 18-6-17 was fully exhausted as alleged in their Combine Motion. (Court Doc. 28, pg. 7).

**Page 1**

**Torres v. Brookman, et al. 19-248-SPM**

**A.047**

6.      The Court held that Plaintiff had failed to exhaust his claims as to Count 2 and that Defendant Lashbrook was dismissed without prejudice. The case was ordered to proceed on Count 1 against Defendants Brookman and Hart. (Court Doc. 29, pg. 9).

7.      Defendants are entitled to summary judgment, as no genuine issue of material facts exists.

8.      Alternatively, Defendants are entitled to qualified immunity.

9.      A memorandum of law in support is attached hereto and incorporated herein by reference.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion for Summary Judgment in their favor and against the Plaintiff.

Respectfully submitted,

KENT BROOKMAN, and JASON HART,

Defendants,

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendants,

By:   s/ *Areda Johnson*
        Areda Johnson, #6316978
        Assistant Attorney General
        201 West Pointe Dr., Suite 7
        Belleville, IL  62226
        Telephone: (618) 236-8781
        Facsimile: (618) 236-8620
        E-Mail: areda.johnson@ilag.gov

**Page 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NORBERTO TORRES, R74153, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 19-248-SPM |
| | ) | |
| KENT BROOKMAN and JAOSN HART, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, the foregoing document, <u>Defendants' Motion for Summary Judgment</u>, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on the same date, I caused a copy of same to be mailed by United States Postal Service, in an envelope fully prepaid and properly addressed, to the following participant:

Norberto Torres, R74153
PINCKNEYVILLE CORRECTIONAL CENTER
5835 State Route 154
Po Box 999
Pinckneyville, IL 62274

By:  s/ *Areda Johnson*
Areda Johnson, #6316978
Assistant Attorney General
201 West Pointe Dr., Suite 7
Belleville, IL  62226
Telephone: (618) 236-8781
Facsimile: (618) 236-8620
E-Mail:  areda.johnson@ilag.gov

**Page 3**

**Torres v. Brookman, et al. 19-248-SPM**
**A.049**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NORBERTO TORRES, R74153, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 19-248-SPM |
| | ) | |
| KENT BROOKMAN and JAOSN HART, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

Now Come the Defendants, KENT BROOKMAN and JASON HART, by and through their attorney, KWAME RAOUL, Attorney General of the State of Illinois, and for their Memorandum of Law in Support of their Motion for Summary Judgment, state as follows:

**INTRODUCTION**

Plaintiff, Norberto Torres (#R74153) is an inmate of the Illinois Department of Corrections and is currently housed at Pinckneyville Correctional Center ("Pinckneyville"). (Court Doc. 39). During the time of the incidents alleged in the Complaint, Plaintiff was housed at Menard Correctional Center ("Menard"). (Court Doc. 1). On February 28, 2019, Plaintiff filed a Complaint alleging his Eighth and Fourteenth Amendment Constitutional rights were violated while housed at Menard. Specifically Plaintiff claims that on March 9, 2017, he was issued a disciplinary ticket after authorities at Pontiac Correctional Center found a handwritten "Latin Folk" questionnaire containing Plaintiff's name and information and matching his handwriting. (Court Doc. 1, pg. 11). Plaintiff, who was then housed at Menard, alleges he was then issued an IDR for participating in Security Threat Group ( STG") organizational activity. (*Id.,* pg. 6, 11-12). Despite the 365 Ticket being expunged, Plaintiff asserts he was served a new IDR alleging the exact same offense two days later. (*Id.,* pg. 6, 14). Plaintiff alleges Defendants Brookman and Hart again sat on the

**A.050**

Adjustment Committee for the new IDR. (*Id.*).  During the second hearing  Plaintiff  states he was found guilty and was sentenced to three months in segregation. (*Id.*).

In the Court's Memorandum and Order (Court Doc. 28), the Court held that the case would proceed against Defendants Brookman and Hart on the following count:

**Count 1:** Fourteenth Amendment procedural due process claim against Brookman and Hart for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges.

Defendants move for summary judgment because Defendants Brookman and Hart did not violate Plaintiff Fourteenth Amendment rights and did not deny Plaintiff due process.  Additionally because Plaintiff cannot show Defendants violated a clearly established constitutional right, they are entitled to be free from suit under the affirmative defense of qualified immunity. Defendants request the Court grant their motion for summary judgment.

## UNDISPUTED MATERIAL FACTS[1]

1.     During the time relevant to the Complaint, Norberto Torres R74153 was an inmate incarcerated within the Illinois Department of Corrections (IDOC) at Menard  Correctional Center ("Menard"). (Exhibit A, Deposition of Plaintiff Norberto Torres).

2.     At all relevant times, Kent Brookman was employed by IDOC as an Adjustment Committee Chairman at Menard. (Exhibit B, Defendant Kent Brookman Responses to Plaintiff's First Set of Interrogatories).

---

[1] Defendants admit these facts are undisputed and material for the sole purposes of this Motion for Summary Judgment only. Defendants reserve the right to dispute these facts or argue any of these facts are immaterial at a later stage of the proceedings in this matter.

**Torres v. Brookman, et al. 19-248-SPM**

3.      At all relevant times, Jason Hart was employed by IDOC as an Adjustment Committee Chairman at Menard. (Exhibit C, Defendant Jason Hart Responses to Plaintiff's First Set of Interrogatories).

4.      Plaintiff currently resides at Pinckneyville Correctional Center ("Pinckneyville"). (Exhibit A, pg. 13).

5.      On March 13, 2017, Plaintiff was issued a disciplinary ticket 201700365/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, Plaintiff's Disciplinary Tickets and Adjustment Committee Final Summary Reports, *see* bates 000224).

6.      Plaintiff refused to sign the ticket that was served to him on March 13, 2017. (*Id.*)

7.      The disciplinary ticket indicated Pontiac Intel Unit received an envelope filled with STG (security threat group) material discovered while shaking down property from an individual who had just arrived from Menard. (*Id.*). In this envelope was a hand written Latin Folk questionnaire written by Plaintiff. (*Id.*).

8.      The Adjustment Committee at Menard held a disciplinary hearing on March 15, 2017 at approximately 11:03 a.m. The Adjustment Committee Chairpersons were Defendants Kent Brookman and Jason Hart. (Exhibit D, *see* Bates stamped 000223, Exhibit B, *see* pg. 2 No. 2; Exhibit C, *see* pg. 2 No. 2 ).

9.      Plaintiff does not recall speaking to Defendant Hart directly during the Adjustment Committee Hearing on March 15, 2017. (Exhibit A, pg. 41-42).

10.     Plaintiff states Defendant Brookman went through the charge with him and expunged the ticket. (Exhibit A, pg. 42).

11.     Ticket 201700365/1-MEN was expunged. (Exhibit D, *see* Bates stamped 000223).

12.     On March 17, 2017 at approximately 6:30 p.m., records indicate Plaintiff was issued disciplinary ticket 201700409/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, *see* bates 000226).

13.     Plaintiff refused to sign the disciplinary ticket served to him on March 17, 2017. (*Id*.).

14.     On March 22, 2017, the Adjustment Committee held a disciplinary hearing for disciplinary ticket 201700409/1-MEN. The Adjustment Committee Chairpersons were Defendants Kent Brookman and Jason Hart. (Exhibit D, *see* bates stamped 000225, Exhibit B, *see* pg. 2 No. 2; Exhibit C, *see* pg. 2, No. 2).

15.     As a result of the disciplinary hearing held on March 22, 2017, the following disciplinary action was recommended: three months of C grade, three months of segregation, three months of commissary restrictions, and six months of contact visit restriction (Exhibit D, *see* bates stamped 000225).

16.     Defendants Brookman and Hart provide that as a member of the Adjustment Committee Hearing on March 15, 2017 and March 22, 2017, [they] only made a recommendation regarding imposing disciplinary action on the incarcerated person who was found guilty of a disciplinary ticket. It was [their] recommendation that Plaintiff be found guilty of the disciplinary ticket. Defendants further provide that the Chief Administrative Officer, the warden, makes the final determination regarding the incarcerated person being found guilty of a disciplinary ticket as well as what disciplinary action that incarcerated person receives. (Exhibit B, *see* pg. 6, No. 14; Exhibit C, *see* pg. 6, No. 14).

17.     Defendants Brookman and Hart provide they do not recall whether or not Plaintiff made a request to call witnesses on Plaintiff's behalf at the Adjustment Committee Hearings held on March 15, 2017 and March 22, 2017. Defendants further provides that the incarcerated person

indicates on the disciplinary ticket who they want as a witness. If there is no witness request made on the disciplinary ticket, the Adjustment Committee has the discretion to decide whether to accept a late witness at an Adjustment Committee Hearing. (Exhibit B, *see* pg. 2-3 No. 4; Exhibit C, *see* pg. 2, No. 4).

18.     Plaintiff did not request any witnesses regarding either disciplinary ticket 201700365/1-MEN or  201700409/1-MEN. (Exhibit D, *see* bates stamped 000224, 000226).

19.     Defendants Brookman and Hart have made a reasonable inquiry and based on the information from the institution they do not recall whether or not they [personally] reviewed the questionnaire, which is the basis on the disciplinary ticket 201700365/1- MEN and 201700409/2-MEN. Defendants further provide, that any evidence would have been reviewed in the Intelligence Unit prior to the Adjustment Committee Hearing and would have been included in the Basis for Decision section of the Adjustment Committee Final Summary Report. (Exhibit B, *see* pg. 6 No. 13; Exhibit C, *see* pg. 5 No. 13).

20.     The Adjustment Committee Final Summary Report for ticket 201700409/2-MEN and dated March 22, 2017 indicates writing samples were obtained from Plaintiff's master file by the Intel Unit and numerous similarities were noted which that determined Plaintiff authored the questionnaire. (Exhibit D, *see* bates 000225).

21.     The Final Summary Report further indicates Plaintiff is a self-admitted member of the Security Threat Group Maniac Latin Disciples which falls under the umbrella of Latin Folk. (*Id.*).

22.     Plaintiff is not aware of what steps Defendants took in investigating disciplinary ticket 201700409/1-MEN. (Exhibit A, pg. 56-57).

23.     Plaintiff admits he was provided with  a copy of each of the disciplinary tickets as well as the adjustment committee final summary reports. (Exhibit A, pg. 59).

**Page 5**

**Torres v. Brookman, et al. 19-248-SPM**
**A.054**

24.     On May 24, 2017, Plaintiff submitted a grievance no. 18-6-17 to the facility level regarding the disciplinary report and ticket he received dated March 9, 2017. (Exhibit E, Plaintiff's Grievance *see* bates 000020- 000022).

25.     Plaintiff sought to be released from segregation, the ticket be expunged, his monthly payroll be [restored], and that he not be retaliated against for filing the grievance. (Exhibit E, *see* bates 000020).

26.     Plaintiff states while in segregation his toilet was polluted with insects and had mildew, he further states that it took three or four days before he received his bed and some of his papers regarding his pending case were lost. (Exhibit A, pg. 58).

27.     On June 6, 2017, grievance 18-6-17 was received by the Grievance Office. (*Id.*).

28.     On June 8, 2017, the grievance was responded to by Grievance Officer Kelly Pierce. (Exhibit E, *see* bates 000018-000019).

29.     Although the offender was guilty of the infractions, the Grievance Office recommended Plaintiff's grievance be affirmed and that ticket #201700409/1-MEN be expunged in accordance with DR 504. (*Id.*).

30.     On June 15, 2017, The Chief Administrative Office received this grievance and on June 20, 2017 concurred with decision of the Grievance Office.(*Id.*).

31.     Plaintiff did not appeal this decision to the director. (*Id.*).

32.     Plaintiff states that other than the Adjustment Committee Hearings he had no interaction with Defendants Brookman and Hart and did not speak with them regarding the disciplinary ticket. (Exhibit A, pg. 51-52).

33.     Plaintiff is unaware of what due process means. (Exhibit A, pg. 50).

**Page 6**

**Torres v. Brookman, et al. 19-248-SPM**

**A.055**

## ARGUMENT

**I.    Defendants Kent Brookman and Jason Hart are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim.**

Plaintiff alleges Defendants Brookman and Hart deprived him of a liberty interest for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges. In the context of a prison disciplinary hearing, due process requires that the prisoner receive written notice of the claimed violation at least 24 hours before the hearing. Due process also requires an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker. Additionally due process requires a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. "Some evidence" to satisfy due process must support a disciplinary decision. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Here there is no evidence that Defendants deprived Plaintiff of a liberty interest as it relates to ticket 201700365/1-MEN or 201700409/1-MEN. On March 13, 2017, Plaintiff was issued disciplinary ticket 201700365/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, Plaintiff's Disciplinary Tickets and Adjustment Committee Final Summary Reports, see bates 000224). This disciplinary ticket indicated the Pontiac Intel Unit had received an envelope filled with material discovered while shaking down property from an individual who had just arrived from Menard. (*Id.*). In this envelope was a hand written Latin Folk questionnaire written by Plaintiff. (*Id.*). The Menard Adjustment Committee, which was comprised of Defendants Brookman and Hart held a disciplinary hearing on March 15, 2017. (Exhibit D, see

Bates stamped 000223, Exhibit B, see pg. 2 No. 2; Exhibit C, see pg. 2 No. 2). As a result of that hearing  Ticket 201700365/1-MEN was expunged. (Exhibit D, see Bates stamped 000223). There was no violation of due process here as Plaintiff was served with the ticket, made no request for witnesses and was provided with the Adjustment Committee's final summary report. (Exhibit A, pg. 59; Exhibit D, see bates 000224, 000226).

On March 17, 2017, Plaintiff was served with a disciplinary ticket for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, *see* bates 000226). Though the same charge as the ticket served on Plaintiff on March 13, 2017, this ticket included additional information that the Menard Intelligence Unit had obtained hand-writing samples from Plaintiff's master file and numerous similarities were noted that determined Plaintiff authored the questionnaire. (*Id.*). The ticket further indicated Plaintiff is a self-admitted member of the Security Threat Group Maniac Latin Disciples which falls under the umbrella of Latin Folk. (*Id.*).  On March 22, 2017, the Adjustment Committee, again comprised of Defendants Brookman and Hart, held a disciplinary hearing for disciplinary ticket 201700409/1-MEN. (Exhibit D, see bates stamped 000225, Exhibit B, see pg. 2 No. 2; Exhibit C, see pg. 2, No. 2). As a result of the disciplinary hearing, the following disciplinary action was recommended: three months of C grade, three months of segregation, three months of commissary restrictions, and six months of contact visit restriction (Exhibit D, see bates stamped 000225). After this recommendation, the final determination regarding Plaintiff's guilt as well as disciplinary action was made by the Chief Administrative Officer. (Exhibit D, *see* bates stamped 000225). Plaintiff again did not request witnesses when served this ticket and refused to sign for the ticket. (Exhibit D, *see* bates000226). Additionally,  he did not request to present any documents, admits he was provided with a copy of the disciplinary ticket, and is unaware of what steps Defendants took in investigating disciplinary

ticket 201700409/1-MEN. (Exhibit A, pg. 56-57). Still further the disciplinary ticket adequately advised Plaintiff of charges against him.

There is no evidence that Plaintiff was denied due process by being found guilty of disciplinary ticket 201700409/1-MEN. Moreover, Plaintiff incorrectly correlates a violation of his due process with being able to review the documents which were the basis of the charges. First, confrontation and cross-examination of witnesses and evidence are not absolutely required rights in a prison disciplinary proceeding, but are matters left to the sound discretion of the prison officials. Further, Defendants did not interfere with Plaintiff's liberty interest. Inmates do have liberty interests in being free from disciplinary segregation in certain circumstances. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). The discipline Plaintiff received as a result of the STG ticket was ultimately expunged by the Grievance Office which the Chief Administrative Office also concurred. (Exhibit E, *see* bates 000018-000019).

Under certain limited circumstances, inmates punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *Marion*, 559 F.3d at 697–98. This due process liberty interest arises when the conditions of disciplinary confinement impose an atypical and significant hardship on the inmate, when compared to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit utilizes a two-prong analysis for determining whether disciplinary segregation imposes an atypical and significant hardship; the Court must consider the: (1) combined import of the duration of the segregated confinement; and (2) conditions endured by the prisoner during that period. *Marion*, 559 F.3d at 697–98.

Even assuming Plaintiff's three months in disciplinary segregation compared to his life sentence satisfies the *Marion* duration prong, Plaintiff fails to allege sufficient conditions to satisfy

the second prong. Plaintiff states while in segregation his toilet was polluted with insects and had mildew, he further states that it took three or four days before he received his bed and some of his papers regarding his pending case were lost. (Exhibit A, pg. 58).  However he alleges no facts to support these allegations.  *See Cunningham v. Snyder*, 472 F.Supgs.2d 1023, 1029 (S.D. Ill. 2006) ("[I]t would be difficult ... to make disciplinary segregation sufficiently more restrictive than the conditions of the general population of ... a [maximum-security] prison to count as an atypical and significant deprivation of liberty-that is, to count as a substantial incremental deprivation-without scraping up against the Eighth Amendment's prohibition against cruel and unusual punishments.") (citing *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (noting that dismissal was proper when plaintiff did not allege that he suffered any psychological or physical injury from disciplinary segregation). Plaintiff has failed to show that Defendants him of a liberty interest regarding the disciplinary tickets 201700365/1-MEN and 201700409/1-MEN. Plaintiff has also failed to show that Defendants interfered with Plaintiff's liberty interest and therefore Defendants are entitled to summary judgment on this count.

## II.  Defendants are entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). To determine whether an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was

Torres v. Brookman, et al. 19-248-SPM

unlawful in the situation he confronted. *Id.* at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id.* at 205.

Under the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation. As analyzed in the preceding sections, Defendants Brookman and Hart took appropriate steps in issuing plaintiff a disciplinary ticket, and in serving on the adjustment committee and finding Plaintiff guilty.

Under the second prong of the analysis, Defendants are also entitled to qualified immunity because if they were to be held liable on the facts alleged, it would constitute a heightened standard for what constitutes a due process violation.   Here, on Plaintiff's facts, these defendants did not harm Plaintiff.  These defendants followed procedure in issuing Plaintiff a ticket. Further Plaintiff attended the adjustment committee hearings, filed a grievance to appeal the ruling, and received a decision remanding and ultimately expunging the ticket and removing it from his disciplinary record in its entirety. To require more from these Defendants would constitute a heightened standard under the constitution. Defendants are, therefore, entitled to qualified immunity.

Look up cases in argument for case law to include here.

## CONCLUSION

Defendants are entitled to summary judgment. Plaintiff has failed to prove necessary elements of his claims. In particular, Plaintiff has failed to show Defendants Brookman and Hart violated Plaintiff Fourteenth Amendment rights and denied Plaintiff due process. Additionally, Plaintiff's claims are barred by qualified immunity.

WHEREFORE, for the above and foregoing reasons, Defendants Brookman and Hart respectfully request that this Honorable Court grant their Motion and enter Summary Judgment in their favor and against the Plaintiff.

Page 11

**Torres v. Brookman, et al. 19-248-SPM**

Respectfully submitted,

KENT BROOKMAN, and JASON HART,

    Defendants,

KWAME RAOUL, Attorney General,
State of Illinois,

    Attorney for Defendants,


By:   *s/ Areda Johnson*
       Areda Johnson, #6316978
       Assistant Attorney General
       201 West Pointe Dr., Suite 7
       Belleville, IL  62226
       Telephone: (618) 236-8781
       Facsimile: (618) 236-8620
       E-Mail: areda.johnson@ilag.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NORBERTO TORRES, R74153,                 )
                                         )
                 Plaintiff,              )
                                         )
        -vs-                             )     No. 19-248-SPM
                                         )
KENT BROOKMAN and JAOSN HART,            )
                                         )
                 Defendants.             )

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 17, 2021, the foregoing document, <u>Defendants'</u>
<u>Memorandum of Law in Support of Summary Judgment</u> was electronically filed with the Clerk of
the Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on the same date, I caused a copy of same to be mailed by United States
Postal Service, in an envelope fully prepaid and properly addressed, to the following participant:

Norberto Torres, R74153
PINCKNEYVILLE CORRECTIONAL CENTER
5835 State Route 154
Po Box 999
Pinckneyville, IL 62274

By:  s/ *Areda Johnson*
        Areda Johnson, #6316978
        Assistant Attorney General
        201 West Pointe Dr., Suite 7
        Belleville, IL  62226
        Telephone: (618) 236-8781
        Facsimile: (618) 236-8620
        E-Mail:  areda.johnson@ilag.gov

Page 13

**Torres v. Brookman, et al. 19-248-SPM**

**A.062**

```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2

 3

 4

 5

 6

 7

 8
                    NORBERTO TORRES
 9                       vs.
          KENT BROOKMAN and JASON HART
10
                Case No. 19-248-SPM
11

12

13

14

15

16

17   VIDEOCONFERENCE DEPOSITION OF NORBERTO TORRES

18        TAKEN ON BEHALF OF THE DEFENDANTS

19                 OCTOBER 7, 2021

20

21

22

23

24

25      (The deposition commenced at 10:02 a.m.)
```

```
 1
 2                        I N D E X
 3
 4
 5   QUESTIONS BY:                            PAGE NO.
 6   Examination By Ms. Johnson                   6
 7
 8        (No exhibits marked.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2

 3
    NORBERTO TORRES,                )
 4                                  )
          PLAINTIFF,                )
 5                                  )
    vs.                             )
 6                                  )   Case No. 19-248-SPM
    KENT BROOKMAN and JASON         )
 7  HART,                           )
                                    )
 8        DEFENDANTS.               )

 9

10

11               VIDEOCONFERENCE DEPOSITION OF NORBERTO

12   TORRES, produced, sworn and examined on

13   October 7, 2021, between the hours of eight o'clock in

14   the forenoon and six o'clock in the afternoon of that

15   day, via Zoom, with the witness appearing from

16   Pinckneyville Correctional Center, before Angie Happe,

17   a Missouri Certified Shorthand Reporter and a Notary

18   Public within and for the State of Missouri, in a

19   certain cause now pending in the above matter.

20

21

22

23

24

25
```

NORBERTO TORRES  10/7/2021

Page 4

```
 1
 2                    A P P E A R A N C E S
 3
 4
        FOR THE DEFENDANTS:
 5
                    ILLINOIS ATTORNEY GENERAL'S OFFICE
 6                  By:  Areda Johnson
                    201 West Pointe Drive
 7                  Suite 7
                    Belleville, Illinois 62226
 8                  (618) 236-8781
                    areda.johnson@ilag.gov
 9
10
11
12
13
14
15
16
17
18
19
20
21
22   Court Reporter:  Angie Happe, MO CSR #818
23   ALARIS LITIGATION SERVICES
     711 North Eleventh Street
24   St. Louis, Missouri 63101
     (314) 644-2191
25   1-800-280-DEPO
```

```
 1              IT IS HEREBY STIPULATED AND AGREED, by
 2    counsel for the Defendants that this deposition may be
 3    taken in shorthand by Angie Happe, a Missouri
 4    Certified Shorthand Reporter and Notary Public, and
 5    afterwards transcribed into typewriting; and the
 6    signature of the witness is reserved.
 7
 8                    *     *     *     *     *
 9
10              COURT REPORTER:  This is Angie Happe, and I
11    am a certified court reporter.  This deposition is
12    being taken remotely, and those participating in this
13    deposition today are attending via videoconference,
14    with the witness appearing from Pinckneyville
15    Correctional Center.
16              Counsel acknowledge their understanding
17    that I am not physically present with the witness and
18    that I will be reporting this proceeding remotely.
19    Counsel further acknowledge that I will not be
20    administering the oath in person, but am doing so
21    remotely.  The witness and counsel consent to this
22    arrangement and waive any objections to this manner of
23    proceeding.
24              Counsel, please indicate your agreement
25    verbally on the record by stating your name and that
```

NORBERTO TORRES  10/7/2021

Page 6

```
 1   you stipulate to these terms, after which I will swear
 2   in the witness and we may begin.
 3              MS. JOHNSON:  Areda Johnson, counsel for
 4   IDOC Defendants.  I stipulate.
 5              COURT REPORTER:  All right.  Will you raise
 6   your right hand to be sworn, please.
 7
 8                        NORBERTO TORRES,
 9   of lawful age, produced, sworn and examined on behalf
10   of the Defendants, deposes and says:
11
12              MS. JOHNSON:  For the record, this is the
13   deposition of Norberto Torres in the case of Torres v.
14   Brookman, et al., Southern District Illinois, case
15   number 19-248.
16
17                        EXAMINATION
18   BY MS. JOHNSON:
19       Q.   Mr. Torres, could you please state and
20   spell your name for the benefit of the court reporter
21   and for the record.
22       A.   First name N-o-r-b-e-r-t-o.  Last name
23   T-o-r-r-e-s.
24       Q.   And, Mr. Torres, have you ever had your
25   deposition taken before?
```

```
 1        A.   No.
 2        Q.   Are you currently on any medications today?
 3        A.   No.
 4        Q.   Are you under the influence of any drugs or
 5   alcohol?
 6        A.   No.
 7        Q.   Have you reviewed any documents in
 8   preparation for your deposition today?
 9        A.   Just the few that I do have.  That's it.
10        Q.   And what is that that you have?
11        A.   Like the transactions I've been getting and
12   the grievances and stuff I had.
13        Q.   By "transactions," do you mean the court
14   filings?
15        A.   Yeah.  And a lot of my stuff -- by me being
16   moved -- constantly being moved, like, some of my
17   stuff got misplaced or lost.  So I didn't get fully
18   all my paperwork back.
19        Q.   Okay.  Now, back in 2017, during the time
20   that these allegations arose, did you keep any sort of
21   personal journal or diary to document your day-to-day
22   activities?
23        A.   I did, but the little pamphlet I had, it
24   got -- it got lost when I got transferred from Menard
25   Correctional Center to Lawrence Correctional Center.
```

NORBERTO TORRES  10/7/2021

```
 1      A lot of stuff were took and were thrown out.
 2            Q.    So you don't still have that?
 3            A.    No.
 4            Q.    Now, outside of reviewing the documents
 5      that you have, did you speak to anyone in preparation
 6      for your deposition today?
 7            A.    No.
 8            Q.    Now, Mr. Torres, I represent IDOC
 9      Defendants Jason Hart and Kent Brookman.  Do you
10      understand?
11            A.    Yes.
12            Q.    And those are the only two Defendants in
13      this case.  Do you understand that?
14            A.    Yeah.  Yes.
15            Q.    Now, a deposition is my opportunity to ask
16      you a series of questions regarding the claim that you
17      filed in Torres v. Brookman, et al., Southern District
18      Illinois, case number 19-248-SPM.  Do you understand
19      that?
20            A.    Yes.
21            Q.    Now, everything you say is being taken down
22      by the court reporter that's here.  Do you understand
23      that you are under oath and your testimony today has
24      the same effect as if it were made in a court of law?
25            A.    Yes.
```

NORBERTO TORRES  10/7/2021

```
 1          Q.    If you do not understand a question, please
 2    request that I re-ask the question or rephrase the
 3    question.   Otherwise, if you answer the question, I
 4    will assume that you understood the question.   Okay?
 5          A.    All right.
 6          Q.    And additionally, if you can't hear me or
 7    if there's anything technological that happens that
 8    prevents you from being able to fully understand the
 9    question, please just ask that we rephrase -- that I
10    rephrase the question as well.   Okay?
11          A.    Okay.
12          Q.    Now, if I ask you a question, please allow
13    me to finish the question before responding.   I will
14    grant you the same courtesy and allow you to finish
15    responding to a question before I ask another
16    question.   Okay?
17          A.    Okay.
18          Q.    And that is going to be especially
19    important, since we are all here via video, to make
20    sure that the court reporter is able to accurately
21    take down what each one of us says.
22                Sometimes the video -- it will pause or it
23    could malfunction if we're trying to speak over each
24    other.   Okay?
25          A.    Okay.
```

NORBERTO TORRES  10/7/2021

Page 10

```
 1            Q.    I'm going to ask you some background
 2     questions before we get into the claims of your case.
 3     Are you married, Mr. Torres?
 4            A.    I didn't hear the last part.
 5            Q.    Are you married?
 6            A.    No.  Engaged, but not married.
 7            Q.    Okay.  And what is your partner's name?
 8            A.    Trina.
 9            Q.    Trina?
10            A.    Yeah.  You want her full name?
11            Q.    Yes.
12            A.    Jones.
13            Q.    Okay.  Do you have any children,
14     Mr. Torres?
15            A.    Yes.
16            Q.    How many?
17            A.    I got one son.  He about to be 18.
18            Q.    Okay.  Does either Trina or your son have
19     any information related to this lawsuit that you've
20     filed?
21            A.    No.
22            Q.    Do you anticipate either one of them or
23     anyone else from your family to testify?
24            A.    No.
25            Q.    What is the highest grade of education that
```

NORBERTO TORRES  10/7/2021

```
 1    you've completed?
 2         A.    Ninth.
 3         Q.    And where did you go to your first year of
 4    high school?
 5         A.    Kelvyn Park in Chicago, Illinois.
 6         Q.    Do you recall the year that you left?
 7         A.    2001.
 8         Q.    Have you gotten your GED?
 9         A.    No.
10         Q.    Have you taken any courses, educational
11    courses, while you've been in IDOC custody?
12         A.    I have temporarily until I was being moved
13    from one facility to another.  When I was at Menard, I
14    finished my tape and I was starting GED.  Then I got
15    transferred to Lawrence and I was waiting on the
16    waiting list.  And when I got approved, the pandemic
17    happened and then I got transferred over here.
18         Q.    Do you have any certifications or licenses?
19         A.    No.
20         Q.    So looking at your criminal history, I've
21    seen that you previously had a conviction for an
22    aggravated DUI and aggravated unlawful use of a weapon
23    in 2008 from Cook County.  Is that correct?
24         A.    Correct.
25         Q.    Is that the only other felony conviction
```

NORBERTO TORRES  10/7/2021

Page 12

```
 1    you have other than what you're currently serving time
 2    for?
 3         A.   Yes.
 4         Q.   And how much time did you receive on that
 5    aggravated DUI and aggravated unlawful use of a weapon
 6    from 2008?
 7         A.   One year each consecutive.
 8         Q.   Do you recall where you were housed when
 9    you did that sentence?
10         A.   (Inaudible) --
11              COURT REPORTER:  I'm sorry.  Say that
12    again.
13         A.   Vienna, V-i-e-n-n-a.
14              COURT REPORTER:  Thank you.
15    QUESTIONS BY MS. JOHNSON:
16         Q.   Did you do your entire sentence there?
17         A.   Yes.
18         Q.   Did you do that at 50 percent, 85 percent,
19    100 percent?
20         A.   50 percent.
21         Q.   And then the charge that you're currently
22    serving time for, is that a murder charge?  Is that --
23         A.   Yes.
24         Q.   -- correct?
25         A.   Yes.
```

```
 1           Q.    And when did you enter IDOC on that charge?
 2           A.    I think it was 2014.
 3           Q.    And I have written down that that is a
 4     60-year sentence.  Is that correct?
 5           A.    Yes.
 6           Q.    And do you currently reside at
 7     Pinckneyville Correctional Center?
 8           A.    Yes.
 9           Q.    And how long have you resided there?
10           A.    Two months now.
11           Q.    And prior to being at Pinckneyville, where
12     were you housed?
13           A.    Lawrence Correctional Center.
14           Q.    Why were you transferred from Lawrence to
15     Pinckneyville?
16           A.    They said that because of the flu shot --
17     the people that were supposed to come over here
18     originally, they weren't vaccinated.  So they wanted
19     people that were vaccinated.  So we filled those
20     slots, the ones that had been vaccinated.
21           Q.    Okay.  And how long were you at Lawrence
22     Correctional Center?
23           A.    From February '19 until July 31st of this
24     year, '21.
25           Q.    So February of 2019 until July 31st of this
```

NORBERTO TORRES  10/7/2021

Page 14

```
 1   year?
 2         A.   Correct.
 3         Q.   Okay.  And then prior to being at Lawrence,
 4   where were you housed?
 5         A.   Menard Correctional Center.
 6         Q.   And why were you transferred from Menard to
 7   Lawrence?
 8         A.   I got moved twice from Menard.  I went from
 9   Menard, I went to the hill.  From the hill, Menard --
10   Menard -- I mean, from the south uppers in Menard, the
11   building was collapsing.  So they did immediate
12   evacuation and they sent me to MSU, Menard MSU.
13              And from there I got re-classified from
14   maximum to medium, so I got moved to Lawrence
15   Correctional Center.
16         Q.   So you got re-classified from max to
17   medium?
18         A.   Correct.
19         Q.   And where did you reside prior to Menard
20   Correctional Center?
21         A.   I was being -- I was in Stateville NRC
22   waiting to get moved over there.  I was in NRC for ten
23   months.
24         Q.   And NRC, is that the facility that you were
25   brought once you entered IDOC custody?
```

NORBERTO TORRES  10/7/2021

Page 15

```
 1        A.   Yes.
 2        Q.   Now, Mr. Torres, I see that you had one
 3   other federal lawsuit, that's Torres v. Butler,
 4   18-1091, that was also in the Southern District of
 5   Illinois in front of Judge Rosenstengel.  Is that
 6   correct?
 7        A.   Yes.
 8        Q.   And what was that case about?
 9        A.   That was -- that was almost similar to
10   this, to the same one, it just -- I don't really too
11   much recall.  I know it was similar to this, though,
12   like cruel and unusual punishment and facilitation of
13   a disciplinary ticket.
14        Q.   Was it the same disciplinary ticket as this
15   case?
16        A.   No.  It was separate.  It was different.
17        Q.   Do you recall who the defendants were that
18   you named in that case?
19        A.   No, I don't recall.
20        Q.   Okay.  Did you have an attorney
21   representing you in that case?
22        A.   No, I did not.
23        Q.   And that case is no longer pending.
24   Correct?
25        A.   Correct.
```

NORBERTO TORRES  10/7/2021

Page 16

```
 1            Q.    And how was that case resolved?
 2            A.    Settlement.
 3            Q.    And did you -- have you ever filed any sort
 4     of state court -- state court cases?
 5            A.    State court cases?
 6            Q.    Yeah.
 7            A.    I don't -- can you rephrase that?
 8            Q.    Sure.  So have you ever filed any cases in,
 9     say, like, Randolph County, Logan County, like at a
10     state level rather than --
11            A.    No.
12            Q.    -- in federal court?
13            A.    No.
14            Q.    Mr. Torres, do you currently have a job at
15     Pinckneyville?
16            A.    No.
17            Q.    Have you ever held a job since you've been
18     in IDOC custody?
19            A.    Yes.  I was just working at dietary in
20     Lawrence Correctional Center for 18 months.
21            Q.    And then did that end because you were
22     transferred to Pinckneyville?
23            A.    Yes.
24            Q.    Did you have a job while you were at either
25     Stateville or Menard?
```

NORBERTO TORRES  10/7/2021

Page 17

```
 1          A.   No.   I was approved to get a job at Menard,
 2     but I got transferred.
 3          Q.   Okay.  While you worked in dietary, what
 4     was your shift like?  How many days a week did you
 5     work?
 6          A.   Every day from 1:00 to 8:00.
 7          Q.   And how much did you get paid?
 8          A.   I think 30 a month, I think it was.
 9          Q.   Have you put in for a job at Pinckneyville?
10          A.   Yes.   They said I'm on the waiting list.
11          Q.   What job did you put in for at
12     Pinckneyville?
13          A.   I put in for commissary, porter and
14     dietary.
15          Q.   Now, does your security status affect your
16     ability to be able to get a job?
17          A.   Yes.   They said -- right now they just
18     renewed it to about -- if you're under five years now.
19     So I guess they eliminated me out of every job right
20     there.
21          Q.   And when you say "under five years," what
22     does that mean?
23          A.   Like people sentenced under five years,
24     with the minimum of five years, two years, two to
25     five years.
```

NORBERTO TORRES  10/7/2021

Page 18

```
 1            Q.   Gotcha.  Okay.  And so because of your
 2       sentence, you don't qualify right now --
 3            A.   Right.
 4            Q.   -- to have a job?
 5            A.   Correct.
 6            Q.   Now, when you arrived at IDOC back in 2014
 7       at Stateville, did you go through any sort of
 8       orientation process?
 9            A.   No.
10            Q.   Did you go through any sort of
11       orientation -- have you ever gone through the
12       orientation process for IDOC?
13            A.   As far as, like, physical?
14            Q.   Yes.  Physical --
15            A.   Like --
16            Q.   Yeah.
17            A.   Yeah.  When we go to NRC, they give us a
18       blood test, blood type, weight, dental and stuff like
19       that.
20            Q.   Was that process repeated each time you
21       were moved to a new facility?
22            A.   Just dental-wise.  That's it.
23            Q.   Were you provided with any sort of
24       orientation manual on the rules and regulations of
25       IDOC?
```

 1          A.    For this one, yes.  When I arrived here,
 2     yes.
 3          Q.    **When you say "here," you mean**
 4     **Pinckneyville?**
 5          A.    Pinckneyville, yes.  When I went to Menard
 6     or Lawrence, I did not get one.
 7          Q.    Okay.  **Did you have one when you entered**
 8     **IDOC while you were at NRC?**
 9          A.    They gave us one, but they -- when they --
10     I guess when they went and did their shakedowns, they
11     had took -- there was a lot of paperwork on the desk.
12          Q.    **And that orientation manual that you got,**
13     **that initial one, what sort of information did it have**
14     **in there?**
15          A.    It just states the rules and regulations
16     for Pinckneyville.
17          Q.    **So does it explain things like the**
18     **grievance process, how to request medical treatment,**
19     **that sort of thing?**
20          A.    To be honest, I ain't really looked into
21     it.  I just read a few pages and put it down because I
22     was focused on fighting my case, my post-conviction.
23     So I've been focused on that right now.
24          Q.    Okay.  **Are you aware if it included**
25     **anything regarding contact with other individuals that**

NORBERTO TORRES  10/7/2021

 1    are incarcerated in prison?
 2            Like you being able to contact someone, say
 3    you're housed at Pinckneyville, who is housed at
 4    Menard, or vice versa, is that allowed within IDOC?
 5        A.   Why -- I don't know.  I'm not sure.
 6        Q.   Okay.  Are you aware of the grievance
 7    process and what that grievance process entails?
 8        A.   I'm not -- not to the full extent.  I've
 9    been helped.
10        Q.   Who's helped you, other offenders?
11        A.   Yes, individuals that work in the law
12    library and people that understand common law.
13        Q.   Have you ever filed grievances or submitted
14    grievances?
15        A.   I've been helped on them.
16        Q.   Is it accurate, then, to say that you've
17    never fully gone through the grievance process on your
18    own without help, that you've always had someone help
19    you?
20        A.   I always had someone help me.
21        Q.   Okay.  Are you aware of the types of
22    grievances?  Like do you know the difference between a
23    regular grievance and an emergency grievance?
24        A.   No.
25        Q.   Okay.  Are you aware of appealing a

 1    grievance to the administrative review board, to ARB?

 2         A.   I've been helped through all that.

 3         Q.   **Have you ever submitted something to the**

 4    **ARB, though?**

 5         A.   On the first one, in the first civil suit I

 6    had filed while I was being helped, like, I somewhat

 7    understood it, how to do it, but not to the full

 8    extent.

 9         Q.   **In this case do you recall submitting**

10    **documents to the administrative review board regarding**

11    **the claims of your case and the seg time that you**

12    **received?**

13         A.   I didn't hear the last part.

14         Q.   **And the seg time that you received.**

15         A.   Yes.

16         Q.   **Do you recall --**

17         A.   The seg --

18         Q.   **Yes.  Do you recall submitting things to**

19    **Springfield?**

20         A.   Yeah, in the first one.

21         Q.   **When you say "the first one," what are you**

22    **referring to?**

23         A.   To the first civil suit I had filed.  I

24    remember submitting it to the ARB.  I don't too much

25    recall on this one if I did or not.

```
 1          Q.    Okay.  Other than submitting a grievance
 2    that you've been helped with that process, are you
 3    aware of any other way that you can speak to staff
 4    regarding issues that you may be having?
 5          A.    No.
 6          Q.    Have you ever written a letter or a scribe
 7    to staff or a request slip for medical care?
 8          A.    Yes, for medical care.
 9          Q.    Okay.  What is your understanding of how to
10    request medical care within IDOC?
11          A.    I just write down -- I just wrote down what
12    was wrong, what was occurring with me during the time
13    period and I submitted it.
14          Q.    Are you aware of -- well, are there rules
15    and regulations for incarcerated persons within IDOC?
16          A.    I -- yes.
17          Q.    And what happens if an incarcerated person
18    does not abide by those rules and regulations of IDOC?
19    Can they face disciplinary action?
20          A.    I've seen that and I've seen verbal at the
21    same time.  So I'm assuming it'll go either way.
22          Q.    Are you aware of any sort of examples of
23    infractions that could result in disciplinary action?
24    Like what can you get in trouble for at IDOC?
25          A.    Oh, fighting and stuff.
```

NORBERTO TORRES  10/7/2021

Page 23

```
 1              Q.    What about STG, is that something that if
 2      you are involved in an STG, that is reprimandable in
 3      IDOC?
 4              A.    Yes.
 5              Q.    And STG stands for security threat group.
 6      Is that correct?
 7              A.    Yes.
 8              Q.    Do you know any STG groups within IDOC?
 9      Have you heard of any STG groups within IDOC?
10              A.    No.  I just know from what I've been --
11      they implicated me on.  That's it.
12              Q.    Okay.
13              A.    Because I ain't affiliated.  They put me
14      into the -- they just assumed.
15              Q.    So you've never claimed affiliation with
16      any sort of STG?
17              A.    Never.
18              Q.    Prior to entering IDOC, did you ever claim
19      affiliation with any sort of gang?
20              A.    No.
21              Q.    Do you have any tattoos, Mr. Torres?
22              A.    Yes.
23              Q.    What tattoos do you have?
24              A.    I have my son, my nieces -- my son, my
25      niece and nephew's names, my mother's, my brother's
```

```
 1    rest in peace.

 2          Q.    Are you aware that there is a disciplinary

 3    process within IDOC?

 4          A.    A who?  I'm sorry.  I didn't hear.

 5          Q.    A disciplinary process.

 6          A.    Yes.

 7          Q.    Are you aware of if that disciplinary

 8    process is the same for each facility or if it's

 9    different depending on where you're housed?

10          A.    I don't -- I do not know.

11          Q.    Outside of this ticket that you received,

12    which are the basis of the claims of this case, have

13    you ever been issued another disciplinary ticket,

14    Mr. Torres?

15          A.    Yes.

16          Q.    What have you gotten a ticket for?

17          A.    STGs and (inaudible), but they were

18    expunged.

19                COURT REPORTER:  I'm sorry.  And?

20          A.    A hooch warning or -- yeah.

21                COURT REPORTER:  Thank you.

22          A.    You're welcome.

23    QUESTIONS BY MS. JOHNSON:

24          Q.    You said they were expunged.  Which ones

25    were expunged?
```

```
 1          A.   All of 'em.
 2          Q.   Okay.  When's the last time you received a
 3     ticket, Mr. Torres?
 4          A.   Oh, I would say with the hooch ticket in --
 5     I think it was November of 2020.
 6          Q.   And you say "hooch."  Is that H-o-o --
 7          A.   -- c-h.
 8          Q.   -- c-h?
 9          A.   Yes.
10          Q.   I've never heard that before.  Okay.  Is
11     that the slang in -- is that the slang in IDOC for
12     liquor?
13          A.   Yes.
14          Q.   Okay.  And so when you received those
15     disciplinary tickets, what was the process?  What
16     happened once you got the ticket?  Walk me through
17     your understanding of the disciplinary process.
18          A.   Well, I was helped with those.  But as far
19     as the hooch ticket, when we was in seg, me and my
20     cellie -- my cellie took his weight.  So they released
21     me that day we went to go see the hearing board.
22          Q.   When you say they released you, were you
23     being held somewhere?
24          A.   Yeah.  I was held in seg.  I was held in
25     seg with him until we seen the ticket people.  Then he
```

NORBERTO TORRES  10/7/2021

Page 26

```
 1   took his weight, so they let me go that instant.
 2        Q.   So you received the ticket.  Then you are
 3   placed in --
 4        A.   Segregation, yes.
 5        Q.   -- seg.  Okay.  And you're placed in seg
 6   until the ticket is heard?
 7        A.   Yes.
 8        Q.   Okay.  Have you ever been a part of a
 9   hearing process?
10        A.   No.
11        Q.   You've never been in an adjustment
12   committee hearing on a ticket?
13        A.   Oh, yes.
14        Q.   What happens typically during that process?
15        A.   From what I recall, it was -- they called
16   me in front of them, they read out the ticket and then
17   they decide -- either they decide it or they wait a
18   few days to decide and then we get the summary ticket.
19        Q.   Okay.  How many people generally are on
20   that committee that decide the ticket?
21        A.   I don't recall, because it was a few people
22   there.
23        Q.   Okay.
24        A.   But it was only, like, two of them speaking
25   at that time.
```

```
 1          Q.   Okay.  And so typically are you provided
 2     with -- you're provided with a copy of this ticket.
 3     Is that correct?
 4          A.   Yes.
 5          Q.   Do you have to sign for that ticket?
 6          A.   It's optional.
 7          Q.   Okay.  Just because you don't sign for it,
 8     though, doesn't mean that you're not going to have a
 9     hearing on it.  Correct?
10          A.   Correct.  Correct.
11          Q.   And so what is your understanding on who
12     makes the final decision of, you know, what happens
13     during an adjustment committee hearing?
14               Like the sanction that you receive, what's
15     your understanding of who makes that decision?
16          A.   That would be the person hearing it and I
17     guess the warden got the last say-so because it has
18     his signature on it.
19          Q.   And is your knowledge of that based on
20     anything other than just what you're assuming?  Like
21     are you basing that -- have you read something that --
22          A.   No, I just base --
23          Q.   -- that explains that process?
24          A.   I base it on it.
25          Q.   Are you aware of if you can appeal the
```

NORBERTO TORRES  10/7/2021

```
 1    adjustment committee hearing if you don't like the

 2    ruling?

 3         A.   Yes.

 4         Q.   And what's your understanding of who you

 5    appeal to?

 6         A.   Well, my understanding is -- well, with me,

 7    I seeked for help.  So by that person helping me

 8    saying, We got to submit it to the counselor, I think

 9    it was.  Then from there --

10         Q.   Who was it that you said?

11         A.   To the counselor.

12         Q.   The counselor.  Okay.

13              Would it be accurate to say that the times

14    that you have appealed an adjustment committee

15    hearing, you got assistance doing that, that you

16    didn't do that on your own?

17         A.   No, I got assistance.

18         Q.   For this particular case and the claims of

19    this case, do you recall --

20         A.   Yes.

21         Q.   -- who assisted you?

22         A.   Excuse me?  I didn't hear the last part.

23         Q.   Yeah.  Do you recall who assisted you?

24         A.   I don't -- I don't know his full name, just

25    by nickname.
```

NORBERTO TORRES  10/7/2021

Page 29

```
 1          Q.    What was his nickname?

 2          A.    Scar.

 3          Q.    Scar?

 4          A.    Yeah.

 5          Q.    Where was he housed?  Was he housed at

 6    Menard?  Lawrence?  Pinckneyville?

 7          A.    In Menard.

 8          Q.    Where in Menard was he housed?  Do you

 9    recall?

10          A.    We was in -- we was in segregation,

11    North 2.

12          Q.    Do you recall -- what does Scar look like?

13          A.    To be honest, I do not know because I was

14    behind the door in 6 Gallery and he was in 4 Gallery.

15    We just hollered through the vent.

16          Q.    And so when you say he helped you, what do

17    you mean that he helped you through this process if

18    you guys didn't see each other and converse about --

19          A.    Through the porters.

20          Q.    -- this case?  Okay.

21          A.    Through the porters.

22          Q.    And what did you guys exchange through the

23    porters, if anything?

24          A.    The disciplinary ticket.  And he did the

25    rest after that.
```

NORBERTO TORRES  10/7/2021

```
 1              Q.    And when you say "he did the rest," what do
 2      you mean by that?
 3              A.    Filed a grievance and every other paperwork
 4      he helped me with.
 5              Q.    Did he help you in filing your lawsuit?
 6              A.    Yes.
 7              Q.    Did you have to pay him for assisting you?
 8              A.    No.  He just helped me.
 9              Q.    So this individual that you'd never seen
10      before, you just yelled through the vents, and he
11      agreed to submit grievances on your behalf and file a
12      lawsuit in this case without anything in return?
13              A.    Yes.
14              Q.    Okay.  Is that common within IDOC?
15              A.    Yes.  Helping each other if one don't
16      understand.
17              Q.    Okay.  So when you arrived -- we're going
18      to switch gears a little bit.
19                    When you arrived at Menard back in 2017,
20      where were you housed?
21              A.    In '17?
22              Q.    Or '16.  I'm sorry.  Are you crumbling up
23      something?
24              A.    No.
25              Q.    Is your paper near the microphone?
```

NORBERTO TORRES  10/7/2021

```
 1          A.   Yes.  I'm sorry.
 2          Q.   No, that's okay.  When you arrived in 2017,
 3     I'm sorry, at Menard, where were you housed?
 4          A.   I was already at Menard in '17.  I arrived
 5     in 2015.
 6          Q.   And where did you arrive -- or where were
 7     you housed upon your arrival at Menard?
 8          A.   West House.
 9          Q.   And you're correct.  I'm sorry.  So it
10     looks like June 18th of 2015 you arrived from NRC to
11     Menard.  Is that correct?
12          A.   Correct.
13          Q.   Then we're going to fast-forward to about
14     March during the time that you allege in this
15     complaint when you received this ticket.  Do you
16     recall where you were housed?
17          A.   In West House.
18          Q.   And West House, is that general population
19     or is that seg?
20          A.   General population.
21          Q.   Do you recall if you had a cellmate at that
22     time?
23          A.   No.  He had just went to seg.
24          Q.   Okay.  And can you describe the housing
25     situation at Menard?  Where are the different housing
```

NORBERTO TORRES  10/7/2021

Page 32

 1    units that you can be housed at Menard?

 2         A.   Well, they got West House, East House,

 3    South and North Uppers and then segregation.

 4         Q.   And you said in 2017 you were housed where?

 5         A.   In the West House.

 6         Q.   And you were in a single cell or a double

 7    cell?

 8         A.   It was a double cell, but I was by myself

 9    at the time.

10         Q.   Okay.  What is your understanding of the

11    difference between general population and segregation?

12    Well, strike that.

13              What's your understanding of what it means

14    for an incarcerated person to be placed in

15    segregation?

16         A.   What it means or what -- well, my

17    understanding of it is, like, we got all our

18    privileges tooken.

19         Q.   Okay.  How long can an individual be in

20    segregation?

21         A.   It's unlimited.  It depends, I guess, what

22    they do.  Because there's people that were housed

23    there for years.

24         Q.   What are the reasons -- are you aware of

25    the reasons that an individual can be placed in

NORBERTO TORRES  10/7/2021

Page 33

```
 1    segregation?
 2         A.   My understanding is fighting, assaulting
 3    and etcetera.
 4         Q.   You said "etcetera"?
 5         A.   Yes.
 6         Q.   Okay.  So your privileges are restricted
 7    when you're in segregation?
 8         A.   Yes.
 9         Q.   And so what type of restrictions does an
10    individual have when they're in segregation?
11         A.   We get no TV, no electronics, no visits, no
12    contact visitation, no food, limited on store and
13    that's it.
14         Q.   When you say "no food," what do you mean by
15    "no food"?
16         A.   Oh, no food by, like, shopping at
17    commissary.  We get limited $15 a month in
18    segregation.
19         Q.   Are you able to work if you're in seg?
20         A.   No.  We don't come out really in seg.
21         Q.   You don't come out of your cell really?
22         A.   Like once or maybe twice a week.  It
23    depends if they're on lockdown or not.
24         Q.   What's your understanding of what general
25    population is?
```

```
 1          A.   Well, we get -- we get all the above I
 2     explained, commissary, contact visitation,
 3     electronics, being able to move around, go to -- to
 4     chow.  Basically that's all they're able to do over
 5     there.
 6          Q.   Are you able to go to yard in seg?
 7          A.   Once or twice if we're not on lockdown.
 8          Q.   And what about in general population, are
 9     you able to go to yard more?
10          A.   Yes.  Oh, we get the phone.  Seg we don't
11     get phones.
12          Q.   And "phone," that means, like, no phone
13     calls with anyone on the outside?
14          A.   Correct.
15          Q.   Is segregation the same as administrative
16     segregation?
17          A.   I do not know.
18          Q.   What about protective custody, are you
19     aware of what protective custody is?
20          A.   No.
21          Q.   Have you ever requested protective custody
22     or been placed in protective custody?
23          A.   No.
24          Q.   What level security facility is Menard?
25          A.   Like classification-wise?
```

```
 1          Q.   Yes.

 2          A.   Maximum.

 3          Q.   Okay.  So you received a ticket sometime in

 4   March of 2017 for STG.  Correct?

 5          A.   Correct.

 6          Q.   Do you recall if you signed for a copy of

 7   that ticket?

 8          A.   I do not recall.

 9          Q.   At the time that you received a ticket at

10   Menard, did you have a job or anything like that?

11          A.   No.

12          Q.   Prior to being issued that ticket, which is

13   the basis of the claims of this case, had you ever

14   been issued a disciplinary ticket before?

15          A.   Yes.

16          Q.   What had you been issued a ticket for?

17          A.   STG prior to that.

18          Q.   And what STG was it alleged that you had

19   been a part of?

20          A.   What STG?

21          Q.   Yes.

22          A.   Latin (inaudible) --

23               COURT REPORTER:  I'm sorry.  Say that

24   again.

25          A.   Latin Folk.
```

NORBERTO TORRES  10/7/2021

Page 36

```
 1                COURT REPORTER:  Thank you.
 2    QUESTIONS BY MS. JOHNSON:
 3        Q.    And is that the STG ticket that was the
 4    basis of the other lawsuit that you filed?
 5        A.    Yes.
 6        Q.    Now, for this particular ticket that you
 7    received, what STG was it alleged that you were a part
 8    of?
 9        A.    The same.
10        Q.    Had you ever been at Pontiac Correctional
11    Center?
12        A.    Never.
13        Q.    Do you know anyone that was housed at
14    Pontiac?
15        A.    I do not know.
16        Q.    Was there a hearing on that ticket that you
17    were issued?
18        A.    Yes.  That first day -- the first night,
19    yes.  Like two days later after I got that
20    disciplinary ticket.
21        Q.    And what --
22        A.    I was issued --
23        Q.    Go ahead.  I'm sorry.
24        A.    I was issued the ticket at nighttime.  When
25    the officer came, he deadlocked my door.  And I asked
```

NORBERTO TORRES  10/7/2021

Page 37

```
 1   why is he locking my door.  He says he does not know.
 2   He was going to go look into it.
 3              So when he left and came back, he said that
 4   I was issued a ticket for having gotten -- an
 5   investigative ticket.  He wasn't aware or I wasn't
 6   aware of what it was issued for.
 7              So when they were passing out mail, he's
 8   like, Oh, look.  You got the ticket.  I'm like, For
 9   what?  He's like, I do not know.  It's for being
10   somewhere in another facility.  He's like, You been in
11   another facility?  I'm like, No.  This is the only
12   facility I've ever been to.  So he's like, I do not
13   know.  He gave me the ticket.  Two days later I heard
14   it got expunged.
15        Q.   Okay.  So you were never placed on
16   investigative status for that ticket?
17        A.   Correct.
18        Q.   So a couple days later you had a hearing.
19   Do you recall who was present at the hearing?
20        A.   Can I look at my papers?
21        Q.   Sure.
22        A.   I don't remember the names.  Kent Brookman
23   and Jason Hart.
24        Q.   Do you recall what occurred when you first
25   got to the adjustment committee hearing?
```

NORBERTO TORRES  10/7/2021

Page 38

```
 1        A.    Yes.   They walked me down the stairs inside
 2    the cell house in West House.  And once I got in the
 3    room, they were talking.  Jason Hart was on the
 4    computer and Mr. Brookman was talking to me.
 5              And he's like -- he's like, How you doing,
 6    etcetera.  We were talking.  He's like -- I'm like,
 7    Why am I here?  He's like, Have you ever been to
 8    another institution?  I'm like, No, I've never been to
 9    another institution besides NRC.  I came straight over
10    here.
11              He's like, Are you lying to me?  I'm like,
12    No, I'm not lying.  He's like, If I find out you're
13    lying to me, I'm going to walk you myself straight to
14    segregation.  He's like, You understand?  I'm like, I
15    understand that.  I'm like, What if I was never in
16    Pontiac, would I be let go?  Would this ticket be
17    expunged?  He's like, Yes.
18              So he looked at Mr. Hart.  Mr. Hart looked
19    at the computer.  He's like -- he says something, and
20    he's like, Well, give me the word.  And he said, He's
21    never been to Pontiac.  He just looked at me.  He's
22    like, Okay.  We're going to expunge your ticket.  Let
23    you go.
24              I go to the cell house.  I go back to where
25    I was at in the gallery about to make me some food.
```

NORBERTO TORRES  10/7/2021

```
 1   The porter come tell me, he's like, Hey, the CO said
 2   for you to pack it up.  I'm like, For what?  He said,
 3   You going to segregation for investigative ticket -- I
 4   mean for STG ticket.  I'm like, What STG ticket?  I
 5   just heard it and they dismissed it.  He's like, I
 6   don't know.  That's what he said.  So he leaves.
 7            The CO comes and tells me, like, Hey, did
 8   he tell you you have to pack up?  I'm like, Yeah, but
 9   for what?  He's like, Apparently internal affairs
10   didn't like the ending of this, so they want us to
11   house you in segregation.
12            I go to segregation.  I don't remember what
13   day it was I get the seg ticket.  It's the same exact
14   ticket of what I just heard.  It's not -- it wasn't
15   written up all over or nothing.  It was a copy of the
16   first ticket.  So once I'm reading it, it's the same
17   ticket.
18            So days later I go hear that ticket.
19   Again, it was a whole bunch of people there, but I
20   remember Mr. Hart and Brookman.  They asked me how do
21   I plead.  I said, Not guilty.  I'm like, This is the
22   same seg ticket that you expunged last week.
23            He's like, Oh.  Well, let me read off to it
24   and see what it states.  He reads off to it.  Then he
25   looked at Mr. Hart.  Hart just put his head down.
```

NORBERTO TORRES  10/7/2021

Page 40

```
 1   Brookman is like, Well, this one makes more sense.
 2           I said -- I told them, Can I speak?  I
 3   said, How do that make more sense when it's the same
 4   ticket I got in my pocket and it's just a copy?  He's
 5   like, No, this one makes more sense.  He's like, I'm
 6   giving you -- I forgot what it was that he gave me for
 7   the segregation.  And they just walked me off and
 8   escorted me back to the cell.
 9       Q.   Okay.  So I'm going to backtrack a little
10   bit there.  So after the first hearing, you went back
11   to your cell.  Are you stating the same day that you
12   went back to your cell after the hearing, you were
13   moved to segregation and received the same ticket?
14       A.   Yes, five minutes later.
15       Q.   Okay.  And so then you went to seg.  How
16   long were you in seg before you were heard on the
17   ticket again?
18       A.   I was there, like -- I think it was eight
19   days, nine days.  It was a week, because every Tuesday
20   we heard the ticket -- they heard tickets.
21       Q.   So my records show in the Bates-stamped
22   documents that have been produced to you that that
23   first hearing was on March 15, 2017, and that the
24   second hearing was March 22, 2019.  Does that sound --
25   or 2017.  Does that sound right to you?
```

```
 1            A.   Say it one more.
 2            Q.   March 15, 2017, that is what the adjustment
 3      committee final summary report showing on Bates 223
 4      shows.  And then the second hearing on Bates 225 shows
 5      that that second hearing was on March 22, 2017.  Does
 6      that sound right to you?
 7            A.   Yeah, about a week.  Yes.
 8            Q.   Okay.
 9            A.   Almost a week.
10            Q.   Okay.  And so during that first hearing,
11      you state that Mr. Brookman was the one that was
12      speaking with you.  Did Jason Hart say anything to
13      you?
14            A.   He was just -- he was in the background
15      saying -- I couldn't really hear what he was saying
16      because he was further back.  And then it was echoing
17      and they had a little music playing.  So I couldn't
18      really hear what they were speaking of.  It was just
19      them two at that time.
20            Q.   Did he ever speak to you directly, Jason
21      Hart?
22            A.   He just -- he just laughed when he said --
23      when Brookman said he'd take me himself to seg if I
24      was lying.  He was saying something to him, but I
25      didn't really hear because I was focused on what
```

```
 1      Mr. Brookman was saying.
 2           Q.   So Mr. Brookman went through the charge
 3      with you and then expunged the ticket right there?
 4           A.   Yes.
 5           Q.   Do you recall if there was anyone else in
 6      the room during this time?
 7           A.   It was CO Reynolds, which is sergeant now.
 8           Q.   Is he the one that escorted you there?
 9           A.   He's the one that gave me -- yes.  The
10      first day they allowed me -- actually went to verify
11      why was I being in such status, and he walked me to
12      the hearing committee, yes.
13           Q.   About how long do you recall that first
14      hearing taking?  How long were you there?
15           A.   Not long.  Not even -- probably over --
16      probably less than ten minutes or so, or around that
17      time period.  Ten, 15 minutes.
18           Q.   So then you get back to your cell.  And
19      where are you housed at this point.  Do you recall?
20           A.   West House 5 Gallery.
21           Q.   West House 5 Gallery.  And then shortly
22      thereafter, within five to ten minutes, do you recall
23      who it was that came and got you and told you that you
24      were being moved to seg?
25           A.   Reynolds.
```

NORBERTO TORRES  10/7/2021

Page 43

```
 1          Q.   So then Reynolds comes back and says,
 2     You're being moved to seg on an investigative ticket.
 3     Did he serve you with a ticket?
 4          A.   No.  I didn't get a investigative ticket
 5     for that time.
 6          Q.   And so -- but you did -- you did indicate a
 7     few moments ago that you had a copy of the ticket from
 8     this first hearing in your pocket because you
 9     referenced it during the second hearing.  Correct?
10          A.   Yes.
11          Q.   Okay.
12          A.   Because once -- once already -- two or
13     three days later after we housed in segregation, they
14     bring us our property.  So we get our certain
15     paperwork.  So I had my -- I was able to produce my
16     first ticket.
17          Q.   Okay.  You got to seg.  You were there
18     about a week before the second hearing.  So at the
19     second hearing, you were in front of Brookman and Hart
20     again.  Is that correct?
21          A.   Yeah.  Yes.
22          Q.   Do you recall if Hart said anything to you
23     during that second hearing, or if it was just all
24     Brookman that was speaking?
25          A.   They were both speaking.
```

NORBERTO TORRES  10/7/2021

Page 44

```
1           Q.   Do you recall specifically what Hart said
2     to you during that hearing?
3           A.   He was saying that -- he was agreeing what
4     Brookman was saying made more sense.
5           Q.   And so at that hearing you received, it
6     looks like, three months of C grade, three months of
7     segregation, three months of commissary restriction
8     and six months of contact visit.  Is that correct?
9           A.   Yes.
10          Q.   Do you recall if you were told what your
11    disciplinary action was going to be right then and
12    there, or if you were told at a later date?
13          A.   They already had that in mind once they
14    gave me the DOT verdict.
15          Q.   And you said that they had that in mind.
16    Did they tell you that?
17          A.   Yes.  They said three months' segregation.
18          Q.   Did you get your -- were you sentenced
19    right then and there, or did you get something in the
20    mail a couple of days later?
21          A.   I was sentenced there and then.
22          Q.   And you stated you had a chance to speak
23    and that you told them that this ticket didn't make
24    any sense because it was the same exact ticket as the
25    last time.  Correct?
```

NORBERTO TORRES  10/7/2021

Page 45

```
 1          A.    Correct.
 2          Q.    Did you state anything else during the
 3   hearing other than that it was the same ticket and you
 4   were confused as to why you were being sentenced on
 5   that ticket?
 6          A.    Yes.
 7          Q.    What else did you say?
 8          A.    I said I wasn't the one that -- I said
 9   that, and I said I was never in Pontiac.  I never
10   wrote nothing what they're accusing me of and if they
11   could produce whatever paperwork they said they had
12   against me.
13          Q.    So after that hearing, what happened?
14          A.    I was -- I was held in seg for three
15   months.
16          Q.    You did the whole three months of C
17   grade -- what is C grade?
18          A.    C grade is we can't go to -- we got limited
19   store.  We can only go for $30.  Phone time once a
20   month.  No yard.  No stuff like that.  And no
21   visitation.
22          Q.    So that is the six-month contact visit
23   restriction?
24          A.    Yes.
25          Q.    Okay.  Now, does contact visit mean -- is
```

NORBERTO TORRES  10/7/2021

Page 46

```
 1    that behind the glass or --
 2         A.   No, that's restriction visitation.  Contact
 3    visit is, like, able to touch each other and hug each
 4    other and be able to eat with 'em.
 5         Q.   So could you still have restrictive
 6    visitation?
 7         A.   Yes, but behind the glass, limited to one
 8    hour.
 9         Q.   Okay.  Is there a limit on contact visit,
10    like a time limit?
11         A.   There is if it's overpacked, overcrowded.
12    Other than that, it's still limited two to four hours.
13         Q.   Okay.  Gotcha.  Now, after you received
14    this disciplinary action, did you speak to anyone?
15         A.   Yes.  I was -- I spoke upstairs to see if
16    anybody knew about the -- about filing grievances.  I
17    got on the gallery next.  I was seeking help.
18         Q.   And so did you -- do you recall if you
19    submitted a grievance?
20         A.   Yes.  They -- the following day I was
21    helped.
22         Q.   Do you recall who helped you write a
23    grievance?
24         A.   Scar.
25         Q.   Scar.  Okay.  Did he physically write the
```

NORBERTO TORRES  10/7/2021

Page 47

 1   grievance, or did he just tell you what to write?

 2        A.   He wrote it.

 3        Q.   Okay.  And do you recall if you appealed

 4   that grievance to Springfield?

 5        A.   I don't recall.

 6        Q.   Okay.  Do you recall if that ticket --

 7   well, what ended up happening ultimately?  Was that

 8   ticket expunged?

 9        A.   Yes.

10        Q.   Do you recall why that ticket was expunged?

11        A.   I got it right here.

12        Q.   Sure.  Okay.  What does it say as to why it

13   was expunged?  And just so the record is clear, what

14   is it that you are referring to?

15        A.   What, the ticket?  The paperwork?

16        Q.   Yes.

17        A.   This was sent from the grievance officer's

18   report.

19        Q.   Okay.  In the bottom right-hand corner,

20   does that have a Bates number on it?  Like in the

21   bottom right-hand corner of the document.  Is that

22   something I produced to you, the Defendants in this

23   case produced to you?

24        A.   It says from the Grievance Officer Kelly.

25        Q.   Okay.  If you look, Mr. Torres -- like if

```
 1    you look at the screen, it's, like, in the bottom
 2    right-hand corner.  Is there, like, a Bates number on
 3    that document?  Is it like a 000?
 4         A.   No.  This is a copy of -- I don't know if
 5    you can see this.
 6         Q.   Yes.  Okay.  Is that your copy then?
 7    That's not something I've given to you?
 8         A.   No.  This is something that -- I'm
 9    assuming -- I'm not sure if it came from the ARB or
10    from the last -- from after the summary when the case
11    was expunged.
12         Q.   Okay.
13         A.   It says the basis to why it was expunged.
14         Q.   Okay.
15         A.   And then this one's a summary saying they
16    expunged me.  It says ticket was dismissed.
17         Q.   Okay.  So what's your understanding of what
18    it means when a ticket is expunged and dismissed?
19         A.   That it -- they expunged it, like it don't
20    exist.  That it was just -- I don't know.  That's my
21    understanding, that it don't exist no more.
22         Q.   Is no longer on your record?
23         A.   Yes.
24         Q.   Okay.  And so is it your understanding that
25    because you appealed this grievance regarding this
```

NORBERTO TORRES  10/7/2021

Page 49

```
 1      disciplinary action, that IDOC ultimately agreed with
 2      you and expunged your ticket.  Correct?
 3           A.   Yes.
 4           Q.   Okay.  So this case is proceeding on a
 5      single count, a due process violation.  You're
 6      alleging that your due process was violated.  Correct?
 7           A.   Yes.
 8           Q.   So how was your due process violated?
 9           A.   I don't really know how to explain it
10      because I was helped through all this process.  So the
11      person that was explaining it to me, he was helping me
12      with it, but I didn't fully understand what he was
13      telling me.
14           Q.   So do you believe that your rights were
15      violated, Mr. Torres?
16           A.   Yes, because the ticket was expunged.  The
17      first ticket was a similarity to the second ticket.
18      So they dismissed that one, and then they came and
19      took me again for the same said ticket and convicted
20      me on the same said ticket that was dismissed.  I
21      believe, yes, my rights were violated.
22           Q.   So they found you -- well, you were held in
23      segregation as a result of that second ticket.  But
24      then you stated, and the record shows, that you filed
25      a grievance regarding that.  Correct?
```

NORBERTO TORRES  10/7/2021

```
 1          A.   Right.
 2          Q.   And then that the grievance office and the
 3     ARB agreed with you.  Correct?
 4          A.   Correct.
 5          Q.   And they expunged the ticket.  Correct?
 6          A.   Correct.
 7          Q.   And so what is it that you are alleging the
 8     Defendants did to you that they should not have done
 9     which resulted in your rights being violated?
10          A.   They shouldn't have found me guilty of the
11     same ticket, of a duplicate ticket.
12          Q.   And, Mr. Torres, what's your understanding
13     of due process?  Like what does that mean to you?
14          A.   I do not know.
15          Q.   Okay.  And could you explain to me, like,
16     what is -- Kent Brookman, what does he look like?
17          A.   I don't recall him.  It's been a little
18     while.
19          Q.   Do you recall if he was white or black?
20          A.   He was white.
21          Q.   Do you recall any other distinguishing
22     features, like height, weight, anything like that?
23          A.   No.  He was -- he was taller than I was.  I
24     don't recall too much.  Too many people come across
25     paths throughout the years.  Got a blurry image.
```

```
 1           Q.   I understand.  How tall are you,
 2   Mr. Torres?
 3           A.   5'8".
 4           Q.   Okay.  Other than the adjustment committee
 5   hearings back in March of 2017, have you ever seen
 6   Kent Brookman?
 7           A.   Prior to this, on my other ticket, the
 8   other STG ticket that was expunged as well.
 9           Q.   Okay.  Outside of the adjustment committee
10   hearings, did you ever speak to Kent Brookman about
11   your ticket?
12           A.   Not that I recall.
13           Q.   Okay.  Other than being heard by him as a
14   member of the adjustment committee hearing, do you
15   recall any other conversations with him about anything
16   else?
17           A.   I don't recall.
18           Q.   What about Jason Hart, do you recall what
19   he looks like?
20           A.   I know him a little more -- well, I ain't
21   going to say I know him more, but I seen him more
22   because he was a sergeant in the West House as well.
23           Q.   What does he look like?
24           A.   I would say he's, like, around my height,
25   older with glasses and black.
```

NORBERTO TORRES  10/7/2021

```
 1          Q.    He's black.  Okay.
 2          A.    Yes.
 3          Q.    And so you've seen Hart around other than
 4     just in the adjustment committee hearing?
 5          A.    Yes.
 6          Q.    Do you recall the last time you've seen
 7     Hart?
 8          A.    In the adjustment committee.
 9          Q.    Have you had any conversations with him
10     other than when you were in the adjustment committee
11     hearings?
12          A.    When he used to walk us to commissary.
13          Q.    Was that before or after the ticket that
14     you received in this case?
15          A.    Before.
16          Q.    So after you received the ticket in this
17     case and after the adjustment committee hearings, have
18     you had any conversations or dealings with Mr. Hart?
19          A.    No.  I seen him when I was in seg, but it
20     was from afar.  He was going to, I guess, hear some
21     more tickets at that time.  That's the only time, the
22     last.
23          Q.    And so what is it that Mr. Brookman did --
24     or was supposed to do that he failed to do?
25          A.    In the committee?
```

```
1            Q.   Well, you filed a complaint against him.
2    So I'm just wondering what is it that Mr. Brookman was
3    supposed to do that he failed to do.
4            A.   To my understanding, he could've thrown out
5    that ticket.
6            Q.   And what is the basis of that understanding
7    that you have that he could've thrown out the ticket?
8    What are you basing that on?
9            A.   Off of he's the main one that threw out the
10   first one, so he had a clear view of what it was.
11           Q.   Are you aware of any administrative
12   directive or departmental rule which governs the
13   adjustment committee?
14           A.   No.
15           Q.   Are you aware of who makes the final, you
16   know, decision of the adjustment committee?
17           A.   No.  I just go off when they write down on
18   the -- when they sign -- give their signature on the
19   paperwork.  That's my understanding of who was the
20   last person.
21           Q.   So your testimony here today is what he
22   should've done but failed to do was throw out the
23   ticket, that duplicative ticket?
24           A.   Yes.
25           Q.   And because he didn't do that, he violated
```

NORBERTO TORRES  10/7/2021

Page 54

```
 1    your rights.  Is that what you're stating?
 2         A.   That's my understanding of what he could've
 3    done, yes.
 4         Q.   Is there anything else that you're alleging
 5    that he should've done but failed to do?
 6         A.   Look more into it.  When I produced that
 7    paperwork, he said he had -- they had against me.
 8         Q.   When you say "look more into it," what do
 9    you mean by that?
10         A.   Like he did the first time, look into it,
11    see if I was ever in another facility, that I wrote
12    anything in that order, if I'm affiliated with any
13    sorts of anything that I was being claimed -- brought
14    up for.
15         Q.   Do you know if he looked into the writing
16    of the questionnaire?
17         A.   My understanding, he did not, because he
18    already had his mind set to what it was when I first
19    got in there.  He knew what he was going to give me
20    before reading it off or -- then after the fact when
21    he said after that, he was just going to give me three
22    months.
23         Q.   You said he knew before.  Did he tell you?
24         A.   No.  But, like, when we wait -- when we
25    wait in line, there's a lot of individuals waiting to
```

```
1    go inside the hearing board.  So we hear certain stuff
2    that they talk about once other guys come in and out.
3         Q.   So what did you hear?
4         A.   I just heard, "It was always the same
5    thing."  But I can't say if it was for me or for the
6    person that just left.  I do not know.  But that's all
7    I heard was "It's the same thing."  I do not know who
8    said it, but that's they said.
9         Q.   You said "It's the same thing."  What do
10   you mean by that?
11        A.   That's what I'm saying, I do not know what
12   they're referring to, my case or the prior person's
13   case.  Just when the door opens, they're talking
14   amongst each other, so we only get to hear the first
15   few seconds that it's opening and closing.
16        Q.   Okay.
17        A.   So once I went in, that's what --
18        Q.   So you heard some conversation when the
19   door was opening and closing.  Was it in reference to
20   your ticket?
21        A.   I do not know.
22        Q.   Do you know if he took any sort of
23   investigative measures regarding looking into the
24   handwriting on the ticket?
25        A.   I don't believe he did.
```

NORBERTO TORRES  10/7/2021

```
 1          Q.   So you say you don't believe he did.  But
 2     do you have any firsthand knowledge of whether or not
 3     he did or not?
 4          A.   No.
 5          Q.   Okay.
 6          A.   No.
 7          Q.   Regarding any sort of accusations of your
 8     affiliation with the Latin Folk, are you aware of what
 9     investigative steps he took in regards to that?
10          A.   No.
11          Q.   So would it be safe to say and accurate to
12     say that you are not aware specifically of the steps
13     that Mr. Brookman took in investigating this
14     disciplinary ticket before that March 22nd hearing?
15     Is that correct?
16          A.   Correct.
17          Q.   So going on to Jason Hart, what is it that
18     you believe he failed to do that he should have done
19     as it relates to that duplicative ticket that you got?
20          A.   He could've done the same measurement as
21     Mr. Brookman, because he was the one reading it off
22     and handing it off to him.
23          Q.   And so as you sit here today and at the
24     time that you filed your lawsuit, were you aware
25     specifically of any steps that he had taken or had not
```

 1   taken?

 2        A.   Not that I know.

 3        Q.   You just assume that he had not

 4   investigated it thoroughly?

 5        A.   Yes.

 6        Q.   But you never had any direct firsthand

 7   knowledge that it was not investigated.  Is that

 8   correct?

 9        A.   Yes.  We would be in the cell all day.  So

10   we don't ever really see the COs, nothing.  We locked

11   down 24/7.

12        Q.   Okay.  And what was it that you were

13   deprived of?  Can you articulate that for me?

14             You filed a due process claim.  So you're

15   alleging that, you know, the steps that were taken

16   were -- they weren't appropriate, they weren't

17   correct.

18             What were the steps that you're alleging

19   should've been taken?  What is it that you're alleging

20   that you've lost and the reason that you filed this

21   lawsuit?

22        A.   Lost as far as what?  Sorry.

23        Q.   Lost as far as, like, damages that you've

24   received.  What is it that you're alleging, you know,

25   has happened to you as a result of filing -- or as a

NORBERTO TORRES  10/7/2021

Page 58

```
 1    result of receiving this ticket?
 2              I just want to make sure that, you know,
 3    I'm clearly understanding your claims in this case and
 4    what you're alleging.
 5         A.   For one, all the toilets and all that in
 6    segregation are polluted with insects, infected,
 7    mildew, rust.  We're breathing in rust.
 8              Our beds, we don't even -- sometimes --
 9    like there was three or four days until we get beds,
10    stuff like that.  I lost my original case papers
11    to my -- documentation to my pending case.
12              So me going to seg, they just scatter stuff
13    around.  We won't receive a lot of our stuff that we
14    went in there with as far as paperwork-wise or other
15    miscellaneous stuff.  But more important is our
16    paperwork.  So a lot of that stuff gets displaced.
17              So by the time we try to argue that fact,
18    it either gets thrown out or it don't even get heard
19    or nothing happens after that.  So that right there
20    postponed a lot of my stuff for my pending case.
21         Q.   And so this case is only proceeding on a
22    14th Amendment regarding that ticket that you received
23    in March of 2017.  It's not regarding any other
24    claims.  So that's the only count that is proceeding
25    in this case.  Do you understand that?
```

NORBERTO TORRES  10/7/2021

Page 59

```
 1          A.   Yes.
 2          Q.   Okay.  So as it relates just to the ticket
 3     that you received in March of 2017, what damages are
 4     you alleging that you have endured as a result of
 5     that?
 6          A.   Well, I just stated.
 7          Q.   Okay.
 8          A.   All that with that health-wise and all
 9     that.
10          Q.   Okay.  And you received a copy of both of
11     these tickets.  Correct?
12          A.   Yes.
13          Q.   And you received a copy of the adjustment
14     committee final summary report with the findings of
15     the adjustment committee?
16          A.   Yes.
17          Q.   If you'll give me just one second, I think
18     I'm just about done.
19               As it relates to Mr. Brookman, have we
20     discussed all of the claims or -- yes, have we
21     discussed all the claims that you have against
22     Defendant Brookman?
23          A.   I believe so.
24          Q.   And as it relates to Mr. Hart, have we
25     discussed all of your claims as it relates to
```

```
 1    Mr. Hart?

 2         A.   Yes.

 3         Q.   And as it relates to damages that you

 4    allege that you've suffered, have we discussed all of

 5    those damages?

 6         A.   Well, I said health-wise, but that's, like,

 7    just from breathing all that stuff and, like, my

 8    immune system and my back -- once I left seg from

 9    there from the prior one, like, my back's been messed

10    up since.

11         Q.   Has anyone ever diagnosed you as having --

12    that your issues with your back are a direct result of

13    the time you were in segregation at Menard?

14         A.   I was put in for healthcare, but either it

15    gets -- it gets -- the call paths will get cancelled

16    or we'll be on lockdown.

17              Then when I got transferred from Menard to

18    Lawrence, I put in, in lack of that, saying that I got

19    a dislocated disc and I was taking medication for

20    that.

21         Q.   And did you physically write your

22    complaint?

23         A.   Once I was helped with it, yes.  Somebody

24    wrote it for me, and I just rewrote it.

25         Q.   Okay.  And what about the grievances, did
```

NORBERTO TORRES  10/7/2021

1   you physically write those grievances, or did -- was

2   that the same, like someone wrote the grievance and

3   then you recopied it?

4        A.   Correct.

5        Q.   And was that individual that helped you

6   through all of this Scar?

7        A.   Scar and other individuals once I left

8   Menard to Lawrence.

9        Q.   Okay.  So --

10       A.   But Scar was the main one -- I'm sorry.

11       Q.   Go ahead.

12       A.   Scar was the main one that wrote the

13   grievance in the civil and all that stuff.

14       Q.   Okay.  Have we discussed all of the claims

15   in this case regarding your due process, Mr. Torres,

16   and all of the allegations?  Have we discussed all of

17   the allegations regarding your due process claim?

18       A.   Yes.

19            MS. JOHNSON:  So that is going to conclude

20   the deposition.  And so now you have the opportunity

21   to review the transcript.  You can't keep a copy of

22   it.  You'll get a copy when I file my dispositive

23   motion in this case.

24            But if you'd like to for now, you can

25   review the transcript for any sort of grammatical

NORBERTO TORRES  10/7/2021

1    errors, meaning like a comma, spelling, that sort of
2    thing.
3            But you can't change your answers.  You
4    can't change an answer from yes to no.  You can only
5    change, you know, the spelling of something, the
6    punctuation of something.
7            Or if you trust that the court reporter has
8    accurately taken down everything here today, you can
9    waive your signature.  But it's completely up to you.
10           You can request a copy of it.  The copy
11   will be sent to you.  You'll be set up in the law
12   library or wherever they're able to set you up.  You
13   review the transcript for grammatical errors.  You
14   sign it and send it back to us.  Or you can waive your
15   signature.
16       A.   Would I be able to hold it to read it
17   thoroughly, or do I have to read it right then and
18   there and send it?
19       MS. JOHNSON:  I'm not sure how they do it.
20   I would imagine they set up, like, in the law library
21   or something and give you time to review it.
22           But it's not a situation that you can hold
23   it for several days.  So it would be set up in a -- I
24   would imagine somewhere in the law library they set
25   you up with it, you can review it and then document

NORBERTO TORRES  10/7/2021

```
 1    any errors that you have.
 2              There will be, it's called, an "errata
 3    sheet," but that will be given to you with a copy of
 4    the deposition for you to document any changes that
 5    you have.  And then you have to give that back to the
 6    law librarian or the prison staff and then it's sent
 7    back to us.
 8              And then once I file my dispositive motion,
 9    you get a copy of the deposition, and that's when you
10    get to keep it.
11        A.    All right.  Would that be within this time
12    period, or will I have to wait a little longer from
13    this date?
14              MS. JOHNSON:  So typically it takes a few
15    weeks to get a copy of the transcript.
16        A.    Okay.
17              MS. JOHNSON:  So once we get a copy of the
18    transcript, it would be sent to you.  You would need
19    to review it before I'm able to file, you know, my
20    dispositive motion in this case.
21              Once you review it for whatever grammatical
22    errors you have, it's sent back.  Then I get the
23    transcript and, you know, at that point I do my
24    dispositive motion, so...
25        A.    Okay.
```

NORBERTO TORRES  10/7/2021

1          MS. JOHNSON:  So what would you prefer?  Do
2     you want a copy of it so you can review it?
3          A.   Yes.
4          MS. JOHNSON:  Okay.  So once that
5     transcript is ready, it'll be sent to the litigation
6     coordinator at Pinckneyville.  And then she will
7     coordinate with the law librarian or whoever for you
8     to review the transcript.  And then once you're done
9     reviewing, it will be sent back to the court reporter.
10    Okay?
11         A.   Okay.
12         MS. JOHNSON:  And that will conclude our
13    deposition.  Thank you so much, Mr. Torres, for your
14    time.
15         A.   Thank you.  Have a good one.
16         MS. JOHNSON:  You too.
17         COURT REPORTER:  And what kind of copy?
18         MS. JOHNSON:  Can I just do an electronic
19    PDF, a condensed and a full version.
20         COURT REPORTER:  So you want the condensed
21    and the full in paper copy?
22         MS. JOHNSON:  No, electronic.
23         COURT REPORTER:  All PDF?
24         MS. JOHNSON:  Yep.
25         COURT REPORTER:  Okay.

```
 1
 2                  (Whereupon, signature was reserved and the
 3     deposition was concluded at 11:24 a.m.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                      CERTIFICATE OF REPORTER
 3
 4
 5            I, Angie Happe, a Certified Court Reporter,
 6    (MO), Certified Shorthand Reporter (IL), do hereby
 7    certify that the witness whose testimony appears in
 8    the foregoing deposition was duly sworn by me pursuant
 9    to Section 492.010 RSMo; that the testimony of said
10    witness was taken by me to the best of my ability and
11    thereafter reduced to typewriting under my direction;
12    that I am neither counsel for, related to, nor
13    employed by any of the parties to the action in which
14    this deposition was taken, and further that I am not a
15    relative or employee of any attorney or counsel
16    employed by the parties thereto, nor financially or
17    otherwise interested in the outcome of the action.
18
19
20    _____
21                      Certified Court Reporter within
                        and for the State of Missouri
22                      MO CSR #818
23
24
25
```

NORBERTO TORRES  10/7/2021

Page 67

```
 1                      Alaris Litigation Services

 2

 3      October 14, 2021

 4

 5      ILLINOIS ATTORNEY GENERAL'S OFFICE
        Ms. Areda Johnson
 6      201 West Pointe Drive, Suite 7
        Belleville, Illinois 62226
 7

 8      In Re:  Torres vs. Kent Brookman and Jason Hart

 9      Dear Ms. Johnson:

10      Please find enclosed your copy of the deposition of
        Norberto Torres taken on October 7, 2021, in the
11      above-referenced case.  Also enclosed is the original
        signature page and errata sheets.
12      Please have the witness read your copy of the
        transcript, indicate any changes and/or corrections
13      desired on the errata sheets, and sign the signature
        page before a notary public.
14      Please return the errata sheet and notarized signature
        page to the production department at Alaris Litigation
15      Services, 711 N. 11th Street, St. Louis, Missouri,
        63101.
16      Thank you for your attention to this matter.

17      Sincerely,

18

19

20      Angie Happe, MO CSR

21      Enclosures

22

23

24

25
```

```
1     STATE OF                    )

2                                 )

3     COUNTY OF                   )

4

5     I, NORBERTO TORRES, do hereby certify:

6          That I have read the foregoing deposition;

7          That I have made such changes in form and/or

8     substance to the within deposition as might be
      necessary to render the same true and correct;
9          That having made such changes thereon, I hereby
      subscribe my name to the deposition.
10         I declare under penalty of perjury that the
      foregoing is true and correct.
11

12
                       NORBERTO TORRES
13

14         Executed this      day of                 ,

15    2021, at                           .

16

17

18    Notary Public:

19    My Commission Expires:

20

21

22    NORBERTO TORRES, 10/07/2021

23    NORBERTO TORRES vs. KENT BROOKMAN and JASON HART

24

25
```

```
 1                    WITNESS ERRATA SHEET
 2     Witness Name:  Norberto Torres
 3     Case Name:    Torres vs. Kent Brookman and Jason Hart
 4     Date Taken:   October 7, 2021
 5     Page #_____  Line #_____
 6     Should Read:  _____
 7     Reason for Change:  _____
 8
 9     Page #_____  Line #_____
10     Should Read:  _____
11     Reason for Change:  _____
12
13     Page #_____  Line #_____
14     Should Read:  _____
15     Reason for Change:  _____
16
17     Page #_____  Line #_____
18     Should Read:  _____
19     Reason for Change:  _____
20
21     Page #_____  Line #_____
22     Should Read:  _____
23     Reason for Change:  _____
24
       Witness Signature:
25     _____
```

**A**

a.m 1:25 65:3
abide 22:18
ability 17:16
   66:10
able 9:8,20
   17:16 20:2
   33:19 34:3,4,6
   34:9 43:15
   46:3,4 62:12
   62:16 63:19
above-refere...
   67:11
accurate 20:16
   28:13 56:11
accurately 9:20
   62:8
accusations
   56:7
accusing 45:10
acknowledge
   5:16,19
action 22:19,23
   44:11 46:14
   49:1 66:13,17
activities 7:22
additionally 9:6
adjustment
   26:11 27:13
   28:1,14 37:25
   41:2 51:4,9,14
   52:4,8,10,17
   53:13,16 59:13
   59:15
administering
   5:20
administrative
   21:1,10 34:15
   53:11
afar 52:20
affairs 39:9
affect 17:15
affiliated 23:13
   54:12
affiliation 23:15
   23:19 56:8

afternoon 3:14
age 6:9
aggravated
   11:22,22 12:5
   12:5
ago 43:7
agreed 5:1 30:11
   49:1 50:3
agreeing 44:3
agreement
   5:24
ahead 36:23
ain't 19:20
   23:13 51:20
al 6:14 8:17
Alaris 4:23 67:1
   67:14
alcohol 7:5
allegations
   7:20 61:16,17
allege 31:14
   60:4
alleged 35:18
   36:7
alleging 49:6
   50:7 54:4
   57:15,18,19,24
   58:4 59:4
allow 9:12,14
allowed 20:4
   42:10
Amendment
   58:22
and/or 67:12
   68:7
Angie 3:16 4:22
   5:3,10 66:5
   67:20
answer 9:3
   62:4
answers 62:3
anticipate
   10:22
anybody 46:16
Apparently
   39:9

appeal 27:25
   28:5
appealed 28:14
   47:3 48:25
appealing
   20:25
appearing 3:15
   5:14
appears 66:7
appropriate
   57:16
approved 11:16
   17:1
ARB 21:1,4,24
   48:9 50:3
Areda 4:6 6:3
   67:5
areda.johnso...
   4:8
argue 58:17
arose 7:20
arrangement
   5:22
arrival 31:7
arrive 31:6
arrived 18:6 19:1
   30:17,19 31:2
   31:4,10
articulate 57:13
asked 36:25
   39:20
assaulting 33:2
assistance
   28:15,17
assisted 28:21
   28:23
assisting 30:7
assume 9:4
   57:3
assumed 23:14
assuming 22:21
   27:20 48:9
attending 5:13
attention 67:16
attorney 4:5
   15:20 66:15
   67:5

aware 19:24
   20:6,21,25
   22:3,14,22
   24:2,7 27:25
   32:24 34:19
   37:5,6 53:11
   53:15 56:8,12
   56:24

**B**

back 7:18,19
   18:6 30:19
   37:3 38:24
   40:8,10,12
   41:16 42:18
   43:1 51:5 60:8
   60:12 62:14
   63:5,7,22
   64:9
back's 60:9
background
   10:1 41:14
backtrack 40:9
base 27:22,24
based 27:19
Basically 34:4
basing 27:21
   53:8
basis 24:12
   35:13 36:4
   48:13 53:6
Bates 41:3,4
   47:20 48:2
Bates-stamped
   40:21
beds 58:8,9
behalf 1:18 6:9
   30:11
believe 49:14,21
   55:25 56:1,18
   59:23
Belleville 4:7
   67:6
benefit 6:20
best 66:10
bit 30:18 40:10
black 50:19

51:25 52:1
blood 18:18,18
blurry 50:25
board 21:1,10
   25:21 55:1
bottom 47:19,21
   48:1
breathing 58:7
   60:7
bring 43:14
Brookman 1:9
   3:6 6:14 8:9,17
   37:22 38:4
   39:20 40:1
   41:11,23 42:1,2
   43:19,24 44:4
   50:16 51:6,10
   52:23 53:2
   56:13,21 59:19
   59:22 67:8
   68:23 69:3
brother's 23:25
brought 14:25
   54:13
building 14:11
bunch 39:19
Butler 15:3

**C**

C 4:2 44:6
   45:16,17,18
c-h 25:7,8
call 60:15
called 26:15
   63:2
calls 34:13
cancelled 60:15
care 22:7,8,10
case 1:10 3:6
   6:13,14 8:13,18
   10:2 15:8,15,18
   15:21,23 16:1
   19:22 21:9,11
   24:12 28:18,19
   29:20 30:12
   35:13 47:23
   48:10 49:4

NORBERTO TORRES  10/7/2021

52:14,17 55:12
55:13 58:3,10
58:11,20,21,25
61:15,23
63:20 67:11
69:3
cases 16:4,5,8
cause 3:19
cell 32:6,7,8
33:21 38:2,24
40:8,11,12
42:18 57:9
cellie 25:20,20
cellmate 31:21
Center 3:16
5:15 7:25,25
13:7,13,22
14:5,15,20
16:20 36:11
certain 3:19
43:14 55:1
CERTIFICATE
66:2
certifications
11:18
certified 3:17
5:4,11 66:5,6
66:21
certify 66:7
68:5
chance 44:22
change 62:3,4
62:5 69:7,11
69:15,19,23
changes 63:4
67:12 68:7,9
charge 12:21,22
13:1 42:2
Chicago 11:5
children 10:13
chow 34:4
civil 21:5,23
61:13
claim 8:16 23:18
57:14 61:17
claimed 23:15
54:13

claims 10:2 21:11
24:12 28:18
35:13 58:3,24
59:20,21,25
61:14
classification-...
34:25
clear 47:13
53:10
clearly 58:3
closing 55:15,19
collapsing 14:11
come 13:17
33:20,21 39:1
50:24 55:2
comes 39:7
43:1
comma 62:1
commenced
1:25
commissary
17:13 33:17
34:2 44:7
52:12
Commission
68:19
committee
26:12,20
27:13 28:1,14
37:25 41:3
42:12 51:4,9
51:14 52:4,8
52:10,17,25
53:13,16 59:14
59:15
common 20:12
30:14
complaint 31:15
53:1 60:22
completed 11:1
completely
62:9
computer 38:4
38:19
conclude 61:19
64:12
concluded 65:3

condensed
64:19,20
confused 45:4
consecutive
12:7
consent 5:21
constantly 7:16
contact 19:25
20:2 33:12
34:2 44:8
45:22,25
46:2,9
conversation
55:18
conversations
51:15 52:9,18
converse 29:18
convicted 49:19
conviction 11:21
11:25
Cook 11:23
coordinate 64:7
coordinator
64:6
copy 27:2 35:6
39:15 40:4
43:7 48:4,6
59:10,13 61:21
61:22 62:10,10
63:3,9,15,17
64:2,17,21
67:10,12
corner 47:19,21
48:2
correct 11:23,24
12:24 13:4
14:2,18 15:6
15:24,25 18:5
23:6 27:3,9,10
27:10 31:9,11
31:12 34:14
35:4,5 37:17
43:9,20 44:8
44:25 45:1
49:2,6,25
50:3,4,5,6
56:15,16 57:8

57:17 59:11
61:4 68:8,10
Correctional
3:16 5:15 7:25
7:25 13:7,13
13:22 14:5,15
14:20 16:20
36:10
corrections
67:12
COs 57:10
could've 53:4,7
54:2 56:20
counsel 5:2,16
5:19,21,24 6:3
66:12,15
counselor 28:8
28:11,12
count 49:5
58:24
County 11:23
16:9,9 68:3
couple 37:18
44:20
courses 11:10,11
court 1:1 3:1
4:22 5:10,11
6:5,20 7:13
8:22,24 9:20
12:11,14 16:4,4
16:5,12 24:19
24:21 35:23
36:1 62:7 64:9
64:17,20,23
64:25 66:5,21
courtesy 9:14
criminal 11:20
cruel 15:12
crumbling
30:22
CSR 4:22 66:22
67:20
currently 7:2
12:1,21 13:6
16:14
custody 11:11
14:25 16:18

34:18,19,21,22

D

D 2:2
damages 57:23
59:3 60:3,5
date 44:12
63:13 69:4
day 3:15 17:6
25:21 36:18
39:13 40:11
42:10 46:20
57:9 68:14
day-to-day 7:21
days 17:4 26:18
36:19 37:13,18
39:18 40:19,19
43:13 44:20
58:9 62:23
deadlocked
36:25
dealings 52:18
Dear 67:9
decide 26:17,17
26:18,20
decision 27:12
27:15 53:16
declare 68:10
Defendant
59:22
defendants 1:18
3:8 4:4 5:2
6:4,10 8:9,12
15:17 47:22
50:8
dental 18:18
dental-wise
18:22
department
67:14
departmental
53:12
depending
24:9
depends 32:21
33:23
deposes 6:10

deposition 1:17
1:25 3:11 5:2,11
5:13 6:13,25
7:8 8:6,15
61:20 63:4,9
64:13 65:3
66:8,14 67:10
68:6,8,9
deprived 57:13
describe 31:24
desired 67:13
desk 19:11
diagnosed
60:11
diary 7:21
dietary 16:19
17:3,14
difference
20:22 32:11
different 15:16
24:9 31:25
direct 57:6
60:12
direction 66:11
directive 53:12
directly 41:20
disc 60:19
disciplinary
15:13,14 22:19
22:23 24:2,5
24:7,13 25:15
25:17 29:24
35:14 36:20
44:11 46:14
49:1 56:14
discussed
59:20,21,25
60:4 61:14,16
dislocated
60:19
dismissed 39:5
48:16,18 49:18
49:20
displaced 58:16
dispositive
61:22 63:8,20
63:24

distinguishing
50:21
District 1:1,1 3:1,1
6:14 8:17 15:4
document 7:21
47:21 48:3
62:25 63:4
documentation
58:11
documents 7:7
8:4 21:10
40:22
doing 5:20
28:15 38:5
door 29:14
36:25 37:1
55:13,19
DOT 44:14
double 32:6,8
Drive 4:6 67:6
drugs 7:4
due 49:5,6,8
50:13 57:14
61:15,17
DUI 11:22 12:5
duly 66:8
duplicate 50:11
duplicative
53:23 56:19

E
E 2:2 4:2,2
East 32:2
eat 46:4
echoing 41:16
education
10:25
educational
11:10
effect 8:24
eight 3:13 40:18
either 10:18,22
16:24 22:21
26:17 58:18
60:14
electronic 64:18
64:22

electronics
33:11 34:3
Eleventh 4:23
eliminated 17:19
em 25:1 46:4
emergency
20:23
employed
66:13,16
employee
66:15
enclosed 67:10
67:11
Enclosures
67:21
ended 47:7
endured 59:4
Engaged 10:6
entails 20:7
enter 13:1
entered 14:25
19:7
entering 23:18
entire 12:16
errata 62:1,13
67:11,13,14
69:1
errors 62:1,13
63:1,22
escorted 40:8
42:8
especially 9:18
et 6:14 8:17
etcetera 33:3,4
38:6
evacuation
14:12
exact 39:13
44:24
Examination
2:6 6:17
examined 3:12
6:9
examples
22:22
exchange
29:22

Excuse 28:22
Executed 68:14
exhibits 2:8
exist 48:20,21
Expires 68:19
explain 19:17
49:9 50:15
explained 34:2
explaining 49:11
explains 27:23
expunge 38:22
expunged
24:18,24,25
37:14 38:17
39:22 42:3
47:8,10,13
48:11,13,16,18
48:19 49:2,16
50:5 51:8
extent 20:8
21:8

F
face 22:19
facilitation 15:12
facility 11:13
14:24 18:21
24:8 34:24
37:10,11,12
54:11
fact 54:20
58:17
failed 52:24
53:3,22 54:5
56:18
family 10:23
far 18:13 25:18
57:22,23
58:14
fast-forward
31:13
features 50:22
February 13:23
13:25
federal 15:3
16:12
felony 11:25

fighting 19:22
22:25 33:2
file 30:11 61:22
63:8,19
filed 8:17 10:20
16:3,8 20:13
21:6,23 30:3
36:4 49:24
53:1 56:24
57:14,20
filing 30:5 46:16
57:25
filings 7:14
filled 13:19
final 27:12 41:3
53:15 59:14
financially
66:16
find 38:12 67:10
findings 59:14
finish 9:13,14
finished 11:14
first 6:22 11:3
21:5,5,20,21
21:23 36:18,18
37:24 39:16
40:10,23 41:10
42:10,13 43:8
43:16 49:17
53:10 54:10,18
55:14
firsthand 56:2
57:6
five 17:18,21,23
17:24,25
40:14 42:22
flu 13:16
focused 19:22
19:23 41:25
Folk 35:25 56:8
following 46:20
food 33:12,14,15
33:16 38:25
foregoing 66:8
68:6,10
forenoon 3:14
forgot 40:6

form 68:7
found 49:22
  50:10
four 46:12 58:9
front 15:5 26:16
  43:19
full 10:10 20:8
  21:7 28:24
  64:19,21
fully 7:17 9:8
  20:17 49:12
further 5:19
  41:16 66:14

**G**

gallery 29:14,14
  38:25 42:20
  42:21 46:17
gang 23:19
gears 30:18
GED 11:8,14
general 31:18
  31:20 32:11
  33:24 34:8
GENERAL'S 4:5
  67:5
generally 26:19
getting 7:11
give 18:17 38:20
  53:18 54:19,21
  59:17 62:21
  63:5
given 48:7 63:3
giving 40:6
glass 46:1,7
glasses 51:25
go 11:3 18:7,10
  18:17 22:21
  25:21 26:1
  34:3,6,9
  36:23 37:2
  38:16,23,24
  38:24 39:12
  39:18 45:18,19
  53:17 55:1
  61:11
going 9:18 10:1

27:8 30:17
31:13 37:2
38:13,22 39:3
40:9 44:11
51:21 52:20
54:19,21 56:17
58:12 61:19
good 64:15
Gotcha 18:1
  46:13
gotten 11:8
  24:16 37:4
governs 53:12
grade 10:25
  44:6 45:17,17
  45:18
grammatical
  61:25 62:13
  63:21
grant 9:14
grievance 19:18
  20:6,7,17,23
  20:23 21:1
  22:1 30:3
  46:19,23 47:1
  47:4,17,24
  48:25 49:25
  50:2 61:2,13
grievances 7:12
  20:13,14,22
  30:11 46:16
  60:25 61:1
group 23:5
groups 23:8,9
guess 17:19
  19:10 27:17
  32:21 52:20
guilty 39:21
  50:10
guys 29:18,22
  55:2

**H**

H-o-o 25:6
hand 6:6
handing 56:22
handwriting

55:24
Happe 3:16
  4:22 5:3,10
  66:5 67:20
happened 11:17
  25:16 45:13
  57:25
happening 47:7
happens 9:7
  22:17 26:14
  27:12 58:19
Hart 1:9 3:7 8:9
  37:23 38:3,18
  38:18 39:20
  39:25,25
  41:12,21 43:19
  43:22 44:1
  51:18 52:3,7
  52:18 56:17
  59:24 60:1
  67:8 68:23
  69:3
head 39:25
health-wise
  59:8 60:6
healthcare
  60:14
hear 9:6 10:4
  21:13 24:4
  28:22 39:18
  41:15,18,25
  52:20 55:1,3
  55:14
heard 23:9
  25:10 26:6
  37:13 39:5,14
  40:16,20,20
  51:13 55:4,7
  55:18 58:18
hearing 25:21
  26:9,12 27:9
  27:13,16 28:1
  28:15 36:16
  37:18,19,25
  40:10,12,23
  40:24 41:4,5
  41:10 42:12,14

43:8,9,18,19
43:23 44:2,5
45:3,13 51:14
52:4 55:1
56:14
hearings 51:5
  51:10 52:11,17
height 50:22
  51:24
held 16:17
  25:23,24,24
  45:14 49:22
help 20:18,18
  20:20 28:7
  30:5 46:17
helped 20:9,10
  20:15 21:2,6
  22:2 25:18
  29:16,17 30:4
  30:8 46:21,22
  49:10 60:23
  61:5
helping 28:7
  30:15 49:11
Hey 39:1,7
high 11:4
highest 10:25
hill 14:9,9
history 11:20
hold 62:16,22
hollered 29:15
honest 19:20
  29:13
hooch 24:20
  25:4,6,19
hour 46:8
hours 3:13
  46:12
house 31:8,17,18
  32:2,2,5 38:2
  38:2,24 39:11
  42:20,21
  51:22
housed 12:8
  13:12 14:4
  20:3,3 24:9
  29:5,5,8

30:20 31:3,7
31:16 32:1,4
32:22 36:13
42:19 43:13
housing 31:24
  31:25
hug 46:3

**I**

IDOC 6:4 8:8
  11:11 13:1 14:25
  16:18 18:6,12
  18:25 19:8
  20:4 22:10,15
  22:18,24 23:3
  23:8,9,18 24:3
  25:11 30:14
  49:1
IL 66:6
Illinois 1:1 3:1
  4:5,7 6:14 8:18
  11:5 15:5 67:5
  67:6
image 50:25
imagine 62:20
  62:24
immediate 14:11
immune 60:8
implicated 23:11
important 9:19
  58:15
inaudible 12:10
  24:17 35:22
incarcerated
  20:1 22:15,17
  32:14
included 19:24
indicate 5:24
  43:6 67:12
individual 30:9
  32:19,25
  33:10 61:5
individuals
  19:25 20:11
  54:25 61:7
infected 58:6
influence 7:4

information
  10:19 19:13
infractions
  22:23
initial 19:13
insects 58:6
inside 38:1 55:1
instant 26:1
institution 38:8
  38:9
interested
  66:17
internal 39:9
investigated
  57:4,7
investigating
  56:13
investigative
  37:5,16 39:3
  43:2,4 55:23
  56:9
involved 23:2
issued 24:13
  35:12,14,16
  36:17,22,24
  37:4,6
issues 22:4
  60:12
it'll 22:21 64:5

**J**

Jason 1:9 3:6
  8:9 37:23
  38:3 41:12,20
  51:18 56:17
  67:8 68:23
  69:3
job 16:14,17,24
  17:1,9,11,16,19
  18:4 35:10
Johnson 2:6
  4:6 6:3,3,12,18
  12:15 24:23
  36:2 61:19
  62:19 63:14,17
  64:1,4,12,16,18
  64:22,24 67:5

67:9
Jones 10:12
journal 7:21
Judge 15:5
July 13:23,25
June 31:10

**K**

keep 7:20 61:21
  63:10
Kelly 47:24
Kelvyn 11:5
Kent 1:9 3:6 8:9
  37:22 50:16
  51:6,10 67:8
  68:23 69:3
kind 64:17
knew 46:16
  54:19,23
know 15:11 20:5
  20:22 23:8,10
  24:10 27:12
  28:24 29:13
  34:17 36:13,15
  37:1,9,13 39:6
  48:4,20 49:9
  50:14 51:20,21
  53:16 54:15
  55:6,7,11,21
  55:22 57:2,15
  57:24 58:2
  62:5 63:19,23
knowledge
  27:19 56:2
  57:7

**L**

lack 60:18
Latin 35:22,25
  56:8
laughed 41:22
law 8:24 20:11
  20:12 62:11,20
  62:24 63:6
  64:7
lawful 6:9
Lawrence 7:25

11:15 13:13,14
  13:21 14:3,7,14
  16:20 19:6
  29:6 60:18
  61:8
lawsuit 10:19
  15:3 30:5,12
  36:4 56:24
  57:21
leaves 39:6
left 11:6 37:3
  55:6 60:8
  61:7
letter 22:6
level 16:10
  34:24
librarian 63:6
  64:7
library 20:12
  62:12,20,24
licenses 11:18
limit 46:9,10
limited 33:12,17
  45:18 46:7,12
line 54:25 69:5
  69:9,13,17,21
liquor 25:12
list 11:16 17:10
litigation 4:23
  64:5 67:1,14
little 7:23 30:18
  40:9 41:17
  50:17 51:20
  63:12
lockdown
  33:23 34:7
  60:16
locked 57:10
locking 37:1
Logan 16:9
long 13:9,21
  32:19 40:16
  42:13,14,15
longer 15:23
  48:22 63:12
look 29:12 37:2
  37:8,20 47:25

48:1 50:16
  51:23 54:6,8
  54:10
looked 19:20
  38:18,18,21
  39:25 54:15
looking 11:20
  55:23
looks 31:10 44:6
  51:19
lost 7:17,24
  57:20,22,23
  58:10
lot 7:15 8:1 19:11
  54:25 58:13
  58:16,20
Louis 4:24
  67:15
lying 38:11,12,13
  41:24

**M**

mail 37:7 44:20
main 53:9 61:10
  61:12
malfunction
  9:23
manner 5:22
manual 18:24
  19:12
March 31:14
  35:4 40:23,24
  41:2,5 51:5
  56:14 58:23
  59:3
marked 2:8
married 10:3,5
  10:6
matter 3:19
  67:16
max 14:16
maximum 14:14
  35:2
mean 7:13 14:10
  17:22 19:3
  27:8 29:17
  30:2 33:14

39:4 45:25
  50:13 54:9
  55:10
meaning 62:1
means 32:13,16
  34:12 48:18
measurement
  56:20
measures
  55:23
medical 19:18
  22:7,8,10
medication
  60:19
medications
  7:2
medium 14:14,17
member 51:14
Menard 7:24
  11:13 14:5,6,8
  14:9,9,10,10,12
  14:19 16:25
  17:1 19:5 20:4
  29:6,7,8 30:19
  31:3,4,7,11,25
  32:1 34:24
  35:10 60:13,17
  61:8
messed 60:9
microphone
  30:25
mildew 58:7
mind 44:13,15
  54:18
minimum 17:24
minutes 40:14
  42:16,17,22
miscellaneous
  58:15
misplaced 7:17
Missouri 3:17,18
  4:24 5:3
  66:21 67:15
MO 4:22 66:6
  66:22 67:20
moments 43:7
month 17:8

33:17 45:20
**months** 13:10
14:23 16:20
44:6,6,7,8
45:15,16
54:22
**months'** 44:17
**mother's** 23:25
**motion** 61:23
63:8,20,24
**move** 34:3
**moved** 7:16,16
11:12 14:8,14
14:22 18:21
40:13 42:24
43:2
**MSU** 14:12,12
**murder** 12:22
**music** 41:17

**N**

**N** 2:2 4:2 67:15
**N-o-r-b-e-r-t-o**
6:22
**name** 5:25
6:20,22,22
10:7,10 28:24
68:9 69:2,3
**named** 15:18
**names** 23:25
37:22
**near** 30:25
**necessary** 68:8
**need** 63:18
**neither** 66:12
**nephew's**
23:25
**never** 20:17
23:15,17 25:10
26:11 30:9
36:12 37:15
38:8,15,21
45:9,9 57:6
**new** 18:21
**nickname**
28:25 29:1
**niece** 23:25

**nieces** 23:24
**night** 36:18
**nighttime** 36:24
**nine** 40:19
**Ninth** 11:2
**Norberto** 1:8,17
3:3,11 6:8,13
67:10 68:5,12
68:22,23
69:2
**North** 4:23
29:11 32:3
**notarized** 67:14
**notary** 3:17 5:4
67:13 68:18
**November** 25:5
**NRC** 14:21,22
14:24 18:17
19:8 31:10
38:9
**number** 6:15
8:18 47:20
48:2

**O**

**o'clock** 3:13,14
**oath** 5:20 8:23
**objections** 5:22
**occurred** 37:24
**occurring** 22:12
**October** 1:19
3:13 67:3,10
69:4
**offenders** 20:10
**office** 4:5 50:2
67:5
**officer** 36:25
47:24
**officer's** 47:17
**Oh** 22:25 25:4
26:13 33:16
34:10 37:8
39:23
**okay** 7:19 9:4,10
9:11,16,17,24
9:25 10:7,13
10:18 13:21

14:3 15:20
17:3 18:1 19:7
19:24 20:6,21
20:25 22:1,9
23:12 25:2,10
25:14 26:5,8
26:19,23 27:1
27:7 28:12
29:20 30:14
30:17 31:2,24
32:10,19 33:6
35:3 37:15
38:22 40:9,15
41:8,10 43:11
43:17 45:25
46:9,13,25
47:3,6,12,19
47:25 48:6,12
48:14,17,24
49:4 50:15
51:4,9,13 52:1
55:16 56:5
57:12 59:2,7
59:10 60:25
61:9,14 63:16
63:25 64:4,10
64:11,25
**older** 51:25
**once** 14:25
25:16 33:22
34:7 38:2
39:16 43:12,12
44:13 45:19
55:2,17 60:8
60:23 61:7
63:8,17,21
64:4,8
**one's** 48:15
**ones** 13:20
24:24
**opening** 55:15
55:19
**opens** 55:13
**opportunity**
8:15 61:20
**optional** 27:6
**order** 54:12

**orientation** 18:8
18:11,12,24
19:12
**original** 58:10
67:11
**originally** 13:18
**outcome** 66:17
**outside** 8:4
24:11 34:13
51:9
**overcrowded**
46:11
**overpacked**
46:11

**P**

**P** 4:2,2
**pack** 39:2,8
**page** 2:5 67:11
67:13,14 69:5
69:9,13,17,21
**pages** 19:21
**paid** 17:7
**pamphlet** 7:23
**pandemic** 11:16
**paper** 30:25
64:21
**papers** 37:20
58:10
**paperwork** 7:18
19:11 30:3
43:15 45:11
47:15 53:19
54:7 58:16
**paperwork-wi...**
58:14
**Park** 11:5
**part** 10:4 21:13
26:8 28:22
35:19 36:7
**participating**
5:12
**particular** 28:18
36:6
**parties** 66:13,16
**partner's** 10:7
**passing** 37:7

**paths** 50:25
60:15
**pause** 9:22
**pay** 30:7
**PDF** 64:19,23
**peace** 24:1
**penalty** 68:10
**pending** 3:19
15:23 58:11,20
**people** 13:17,19
17:23 20:12
25:25 26:19
26:21 32:22
39:19 50:24
**percent** 12:18,18
12:19,20
**period** 22:13
42:17 63:12
**perjury** 68:10
**person** 5:20
22:17 27:16
28:7 32:14
49:11 53:20
55:6
**person's** 55:12
**personal** 7:21
**persons** 22:15
**phone** 34:10,12
34:12 45:19
**phones** 34:11
**physical** 18:13
18:14
**physically** 5:17
46:25 60:21
61:1
**Pinckneyville**
3:16 5:14 13:7
13:11,15 16:15
16:22 17:9,12
19:4,5,16 20:3
29:6 64:6
**placed** 26:3,5
32:14,25
34:22 37:15
**PLAINTIFF** 3:4
**playing** 41:17
**plead** 39:21

please 5:24 6:6
6:19 9:1,9,12
67:10,12,14
pocket 40:4
43:8
point 42:19
63:23
Pointe 4:6 67:6
polluted 58:6
Pontiac 36:10
36:14 38:16,21
45:9
population
31:18,20 32:11
33:25 34:8
porter 17:13 39:1
porters 29:19,21
29:23
post-conviction
19:22
postponed
58:20
prefer 64:1
preparation 7:8
8:5
present 5:17
37:19
prevents 9:8
previously 11:21
prior 13:11 14:3
14:19 23:18
35:12,17 51:7
55:12 60:9
prison 20:1
63:6
privileges 32:18
33:6
probably 42:15
42:16
proceeding
5:18,23 49:4
58:21,24
process 18:8,12
18:20 19:18
20:7,7,17 22:2
24:3,5,8
25:15,17 26:9

26:14 27:23
29:17 49:5,6,8
49:10 50:13
57:14 61:15,17
produce 43:15
45:11
produced 3:12
6:9 40:22
47:22,23 54:6
production
67:14
property 43:14
protective
34:18,19,21,22
provided 18:23
27:1,2
public 3:18 5:4
67:13 68:18
punctuation
62:6
punishment
15:12
pursuant 66:8
put 17:9,11,13
19:21 23:13
39:25 60:14
60:18

—————
**Q**
qualify 18:2
question 9:1,2,3
9:3,4,9,10,12
9:13,15,16
questionnaire
54:16
questions 2:5
8:16 10:2 12:15
24:23 36:2

—————
**R**
R 4:2
raise 6:5
Randolph 16:9
re-ask 9:2
re-classified
14:13,16
read 19:21 26:16

27:21 39:23
62:16,17 67:12
68:6 69:6,10
69:14,18,22
reading 39:16
54:20 56:21
reads 39:24
ready 64:5
really 15:10
19:20 33:20
33:21 41:15,18
41:25 49:9
57:10
reason 57:20
69:7,11,15,19
69:23
reasons 32:24
32:25
recall 11:6 12:8
15:11,17,19 21:9
21:16,18,25
26:15,21 28:19
28:23 29:9,12
31:16,21 35:6
35:8 37:19,24
42:5,13,19,22
43:22 44:1,10
46:18,22 47:3
47:5,6,10
50:17,19,21,24
51:12,15,17,18
52:6
receive 12:4
27:14 58:13
received 21:12
21:14 24:11
25:2,14 26:2
31:15 35:3,9
36:7 40:13
44:5 46:13
52:14,16
57:24 58:22
59:3,10,13
receiving 58:1
recopied 61:3
record 5:25
6:12,21 47:13

48:22 49:24
records 40:21
reduced 66:11
reference 55:19
referenced
43:9
referring 21:22
47:14 55:12
regarding 8:16
19:25 21:10
22:4 48:25
49:25 55:23
56:7 58:22,23
61:15,17
regards 56:9
regular 20:23
regulations
18:24 19:15
22:15,18
related 10:19
66:12
relates 56:19
59:2,19,24,25
60:3
relative 66:15
released 25:20
25:22
remember
21:24 37:22
39:12,20
remotely 5:12
5:18,21
render 68:8
renewed 17:18
repeated 18:20
rephrase 9:2,9
9:10 16:7
report 41:3
47:18 59:14
reporter 3:17
4:22 5:4,10,11
6:5,20 8:22
9:20 12:11,14
24:19,21
35:23 36:1
62:7 64:9,17
64:20,23,25

66:2,5,6,21
reporting 5:18
represent 8:8
representing
15:21
reprimandable
23:2
request 9:2
19:18 22:7,10
62:10
requested
34:21
reserved 5:6
65:2
reside 13:6
14:19
resided 13:9
resolved 16:1
responding
9:13,15
rest 24:1 29:25
30:1
restricted 33:6
restriction 44:7
45:23 46:2
restrictions
33:9
restrictive 46:5
result 22:23
49:23 57:25
58:1 59:4
60:12
resulted 50:9
return 30:12
67:14
review 21:1,10
61:21,25 62:13
62:21,25
63:19,21 64:2
64:8
reviewed 7:7
reviewing 8:4
64:9
rewrote 60:24
Reynolds 42:7
42:25 43:1
right 6:5,6 9:5

17:17,19 18:2,3
19:23 40:25
41:6 42:3
44:11,19 47:11
50:1 58:19
62:17 63:11
**right-hand**
47:19,21 48:2
**rights** 49:14,21
50:9 54:1
**room** 38:3 42:6
**Rosenstengel**
15:5
**RSMo** 66:9
**rule** 53:12
**rules** 18:24
19:15 22:14,18
**ruling** 28:2
**rust** 58:7,7

**S**

**S** 4:2
**safe** 56:11
**sanction** 27:14
**say-so** 27:17
**saying** 28:8
41:15,15,24
42:1 44:3,4
48:15 55:11
60:18
**says** 6:10 9:21
37:1 38:19 43:1
47:24 48:13,16
**Scar** 29:2,3,12
46:24,25 61:6
61:7,10,12
**scatter** 58:12
**school** 11:4
**screen** 48:1
**scribe** 22:6
**second** 40:24
41:4,5 43:9,18
43:19,23 49:17
49:23 59:17
**seconds** 55:15
**Section** 66:9
**security** 17:15

23:5 34:24
**see** 15:2 25:21
29:18 39:24
46:15 48:5
54:11 57:10
**seeked** 28:7
**seeking** 46:17
**seen** 11:21
22:20,20
25:25 30:9
51:5,21 52:3,6
52:19
**seg** 21:11,14,17
25:19,24,25
26:5,5 31:19
31:23 33:19
33:20 34:6,10
39:13,22
40:15,16 41:23
42:24 43:2,17
45:14 52:19
58:12 60:8
**segregation**
26:4 29:10
32:3,11,15,20
33:1,7,10,18
34:15,16 38:14
39:3,11,12
40:7,13 43:13
44:7,17 49:23
58:6 60:13
**send** 62:14,18
**sense** 40:1,3,5
44:4,24
**sent** 14:12 47:17
62:11 63:6,18
63:22 64:5,9
**sentence** 12:9
12:16 13:4 18:2
**sentenced**
17:23 44:18,21
45:4
**separate** 15:16
**sergeant** 42:7
51:22
**series** 8:16
**serve** 43:3

**Services** 4:23
67:1,15
**serving** 12:1,22
**set** 54:18 62:11
62:12,20,23
62:24
**Settlement** 16:2
**shakedowns**
19:10
**sheet** 63:3
67:14 69:1
**sheets** 67:11,13
**shift** 17:4
**shopping** 33:16
**shorthand** 3:17
5:3,4 66:6
**shortly** 42:21
**shot** 13:16
**should've**
53:22 54:5
57:19
**show** 40:21
**showing** 41:3
**shows** 41:4,4
49:24
**sign** 27:5,7
53:18 62:14
67:13
**signature** 5:6
27:18 53:18
62:9,15 65:2
67:11,13,14
69:24
**signed** 35:6
**similar** 15:9,11
**similarity** 49:17
**Sincerely** 67:17
**single** 32:6
49:5
**sit** 56:23
**situation** 31:25
62:22
**six** 3:14 44:8
**six-month**
45:22
**slang** 25:11,11
**slip** 22:7

**slots** 13:20
**Somebody**
60:23
**somewhat** 21:6
**son** 10:17,18
23:24,24
**sorry** 12:11 24:4
24:19 30:22
31:1,3,9 35:23
36:23 57:22
61:10
**sort** 7:20 16:3
18:7,10,23
19:13,19 22:22
23:16,19
55:22 56:7
61:25 62:1
**sorts** 54:13
**sound** 40:24,25
41:6
**south** 14:10
32:3
**Southern** 1:1 3:1
6:14 8:17 15:4
**speak** 8:5 9:23
22:3 40:2
41:20 44:22
46:14 51:10
**speaking** 26:24
41:12,18 43:24
43:25
**specifically** 44:1
56:12,25
**spell** 6:20
**spelling** 62:1,5
**spoke** 46:15
**Springfield**
21:19 47:4
**St** 4:24 67:15
**staff** 22:3,7
63:6
**stairs** 38:1
**stands** 23:5
**starting** 11:14
**state** 3:18 6:19
16:4,4,5,10
41:11 45:2

66:21 68:1
**stated** 44:22
49:24 59:6
**states** 1:1 3:1
19:15 39:24
**Stateville** 14:21
16:25 18:7
**stating** 5:25
40:11 54:1
**status** 17:15
37:16 42:11
**steps** 56:9,12
56:25 57:15
57:18
**STG** 23:1,2,5,8
23:9,16 35:4
35:17,18,20
36:3,7 39:4,4
51:8
**STGs** 24:17
**stipulate** 6:1,4
**STIPULATED**
5:1
**store** 33:12
45:19
**straight** 38:9,13
**Street** 4:23
67:15
**strike** 32:12
**stuff** 7:12,15,17
8:1 18:18
22:25 45:20
55:1 58:10,12
58:13,15,16,20
60:7 61:13
**submit** 28:8
30:11
**submitted**
20:13 21:3
22:13 46:19
**submitting** 21:9
21:18,24 22:1
**subscribe** 68:9
**substance** 68:8
**suffered** 60:4
**suit** 21:5,23
**Suite** 4:7 67:6

summary 26:18
  41:3 48:10,15
  59:14
supposed 13:17
  52:24 53:3
sure 9:20 16:8
  20:5 37:21
  47:12 48:9
  58:2 62:19
swear 6:1
switch 30:18
sworn 3:12 6:6
  6:9 66:8
system 60:8

**T**

T-o-r-r-e-s 6:23
take 9:21 41:23
taken 1:18 5:3
  5:12 6:25 8:21
  11:10 56:25
  57:1,15,19
  62:8 66:10,14
  67:10 69:4
takes 63:14
talk 55:2
talking 38:3,4,6
  55:13
tall 51:1
taller 50:23
tape 11:14
tattoos 23:21
  23:23
technological
  9:7
tell 39:1,8 44:16
  47:1 54:23
telling 49:13
tells 39:7
temporarily
  11:12
ten 14:22 42:16
  42:17,22
terms 6:1
test 18:18
testify 10:23
testimony 8:23

53:21 66:7,9
Thank 12:14
  24:21 36:1
  64:13,15 67:16
thereon 68:9
thereto 66:16
thing 19:19 55:5
  55:7,9 62:2
things 19:17
  21:18
think 13:2 17:8,8
  25:5 28:8
  40:18 59:17
thoroughly 57:4
  62:17
threat 23:5
three 43:13
  44:6,6,7,17
  45:14,16 54:21
  58:9
threw 53:9
throw 53:22
thrown 8:1 53:4
  53:7 58:18
ticket 15:13,14
  24:11,13,16
  25:3,4,16,19
  25:25 26:2,6
  26:12,16,18,20
  27:2,5 29:24
  31:15 35:3,7,9
  35:12,14,16
  36:3,6,16,20
  36:24 37:4,5
  37:8,13,16
  38:16,22 39:3
  39:4,4,13,14,16
  39:17,18,22
  40:4,13,17,20
  42:3 43:2,3,4
  43:7,16 44:23
  44:24 45:3,5
  47:6,8,10,15
  48:16,18 49:2
  49:16,17,17,19
  49:20,23
  50:5,11,11 51:7

51:8,11 52:13
  52:16 53:5,7
  53:23,23
  55:20,24
  56:14,19 58:1
  58:22 59:2
tickets 25:15
  40:20 52:21
  59:11
time 7:19 12:1,4
  12:22 18:20
  21:11,14 22:12
  22:21 25:2
  26:25 31:14
  31:22 32:9
  35:9 41:19
  42:6,17 43:5
  44:25 45:19
  46:10 52:6,21
  52:21 54:10
  56:24 58:17
  60:13 62:21
  63:11 64:14
times 28:13
today 5:13 7:2,8
  8:6,23 53:21
  56:23 62:8
toilets 58:5
told 40:2 42:23
  44:10,12,23
tooken 32:18
Torres 1:8,17
  3:3,12 6:8,13
  6:13,19,24 8:8
  8:17 10:3,14
  15:2,3 16:14
  23:21 24:14
  25:3 47:25
  49:15 50:12
  51:2 61:15
  64:13 67:8,10
  68:5,12,22,23
  69:2,3
touch 46:3
transactions
  7:11,13
transcribed 5:5

transcript 61:21
  61:25 62:13
  63:15,18,23
  64:5,8 67:12
transferred
  7:24 11:15,17
  13:14 14:6
  16:22 17:2
  60:17
treatment 19:18
Trina 10:8,9,18
trouble 22:24
true 68:8,10
trust 62:7
try 58:17
trying 9:23
Tuesday 40:19
TV 33:11
twice 14:8
  33:22 34:7
two 8:12 13:10
  17:24,24
  26:24 36:19
  37:13 41:19
  43:12 46:12
type 18:18 33:9
types 20:21
typewriting 5:5
  66:11
typically 26:14
  27:1 63:14

**U**

ultimately 47:7
  49:1
understand
  8:10,13,18,22
  9:1,8 20:12
  30:16 38:14,15
  49:12 51:1
  58:25
understanding
  5:16 22:9
  25:17 27:11,15
  28:4,6 32:10
  32:13,17 33:2
  33:24 48:17,21

48:24 50:12
  53:4,6,19 54:2
  54:17 58:3
understood 9:4
  21:7
UNITED 1:1 3:1
units 32:1
unlawful 11:22
  12:5
unlimited 32:21
unusual 15:12
uppers 14:10
  32:3
upstairs 46:15
use 11:22 12:5

**V**

v 6:13 8:17 15:3
V-i-e-n-n-a
  12:13
vaccinated
  13:18,19,20
vent 29:15
vents 30:10
verbal 22:20
verbally 5:25
verdict 44:14
verify 42:10
versa 20:4
version 64:19
vice 20:4
video 9:19,22
videoconfere...
  1:17 3:11 5:13
Vienna 12:13
view 53:10
violated 49:6,8
  49:15,21 50:9
  53:25
violation 49:5
visit 44:8 45:22
  45:25 46:3,9
visitation 33:12
  34:2 45:21
  46:2,6
visits 33:11
vs 1:9 3:5 67:8

68:23 69:3

**W**

wait 26:17
  54:24,25
  63:12
waiting 11:15,16
  14:22 17:10
  54:25
waive 5:22
  62:9,14
walk 25:16
  38:13 52:12
walked 38:1
  40:7 42:11
want 10:10
  39:10 58:2
  64:2,20
wanted 13:18
warden 27:17
warning 24:20
wasn't 37:5,5
  39:14 45:8
way 22:3,21
we'll 60:16
we're 9:23
  30:17 31:13
  34:7 38:22
  58:7
weapon 11:22
  12:5
week 17:4
  33:22 39:22
  40:19 41:7,9
  43:18
weeks 63:15
weight 18:18
  25:20 26:1
  50:22
welcome 24:22
went 14:8,9 19:5
  19:10 25:21
  31:23 40:10,12
  40:15 42:2,10
  55:17 58:14
weren't 13:18
  57:16,16

West 4:6 31:8,17
  31:18 32:2,5
  38:2 42:20,21
  51:22 67:6
When's 25:2
white 50:19,20
witness 3:15
  5:6,14,17,21
  6:2 66:7,10
  67:12 69:1,2
  69:24
wondering 53:2
word 38:20
work 17:5 20:11
  33:19
worked 17:3
working 16:19
write 22:11
  46:22,25 47:1
  53:17 60:21
  61:1
writing 54:15
written 13:3
  22:6 39:15
wrong 22:12
wrote 22:11
  45:10 47:2
  54:11 60:24
  61:2,12

**X**

X 2:2

**Y**

yard 34:6,9
  45:20
yeah 7:15 8:14
  10:10 16:6
  18:16,17 21:20
  24:20 25:24
  28:23 29:4
  39:8 41:7
  43:21
year 11:3,6 12:7
  13:24 14:1
years 17:18,21
  17:23,24,24

17:25 32:23
  50:25
yelled 30:10
Yep 64:24

**Z**

Zoom 3:15

**0**

000 48:3

**1**

1-800-280-D...
  4:25
1:00 17:6
10/07/2021
  68:22
10:02 1:25
100 12:19
11:24 65:3
11th 67:15
14 67:3
14th 58:22
15 33:17 40:23
  41:2 42:17
16 30:22
17 30:21 31:4
18 10:17 16:20
18-1091 15:4
18th 31:10
19 13:23
19-248 6:15
19-248-SPM
  1:10 3:6 8:18

**2**

2 29:11
2001 11:7
2008 11:23 12:6
201 4:6 67:6
2014 13:2 18:6
2015 31:5,10
2017 7:19 30:19
  31:2 32:4 35:4
  40:23,25 41:2
  41:5 51:5
  58:23 59:3

2019 13:25
  40:24
2020 25:5
2021 1:19 3:13
  67:3,10 68:15
  69:4
21 13:24
22 40:24 41:5
223 41:3
225 41:4
22nd 56:14
236-8781 4:8
24/7 57:11

**3**

30 17:8 45:19
314 4:24
31st 13:23,25

**4**

4 29:14
492.010 66:9

**5**

5 42:20,21
5'8 51:3
50 12:18,20

**6**

6 2:6 29:14
60-year 13:4
618 4:8
62226 4:7 67:6
63101 4:24
  67:15
644-2191 4:24

**7**

7 1:19 3:13 4:7
  67:6,10 69:4
711 4:23 67:15

**8**

8:00 17:6
818 4:22 66:22
85 12:18

**EXHIBIT D**

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** TORRES, NORBERTO | **IDOC Number:** R74153 | | **Race:** HSP |
| **ring Date/Time:** 3/15/2017  11:03 AM | **Living Unit:** MEN-N2-02-41 | | **Orientation Status:** N/A |
| **cident Number:** 201700365/1 - MEN | **Status:** Expunged Final | | |

*Inmate signed waiver agreeing to hearing date less than 24 hrs. after ticket was served*

| te | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| /2017 | 201700365/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 10:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 205 | Gang Or Unauthorized Organization Activity | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| Witness Requested | | | |

**CORD OF PROCEEDINGS**
cket was dismissed

**SIS FOR DECISION**
cket was dismissed

**SCIPLINARY ACTION**   *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | — E X P U N G E D — |

asis for Discipline:

**Signatures**
**Hearing Committee**

| | | | |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | | 03/15/17 | WHI |
| | Signature | Date | Race |
| HART, JASON N | | 03/15/17 | BLK |
| | Signature | Date | Race |

Recommended Action Approved

**nal Comments:** N/A

| | | |
|---|---|---|
| ACQUELINE A LASHBROOK / JAL  3/16/2017 | | 03/16/17 |
| Chief Administrative Officer | Signature | Date |

e committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

| | | |
|---|---|---|
| | | 3/24/17 |
| Employee Serving Copy to Committed Person | When Served  - - Date and Time | |

**A.142**

Torres v. Lashbrook, et al. (19-248) Document No.:    000223

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Report**

| Type of Report: | Pontiac Correctional Center | Date: 03/11/2017 |
|---|---|---|
| ☒ Disciplinary ☐ Investigative | Facility | |

Offender Name: TORRES, NORBERTO          ID #: ~~R58108~~ R74153

**Offense Information:**

Observation Date: 03/09/2017    Approximate Time: 10:00  ☒ a.m. ☐ p.m.    Location: Intelligence Unit

Offense(s): DR 504:    205/Security threat group or unauthorized organizational activity

Observation: (NOTE: Each offense identified above must be substantiated.) On the above date and approximate time the Intel Unit received and envelope filled with handwritten STG material discovered while shaking property down from an individual that had just arrived from Menard CC. In this envelop was a hand written Latin Folk questionnaire. These questionnaires are given to members of the Latin Folk Union and have to be filled out and returned to a designated individual in the cell house. The information obtained from these can help weed out informants, sex offenders, or individuals that may have had a prior Protective Custody placement. These are just a few examples of what the questionnaires are used for. The individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. This particular questionnaire was filled out by TORRES, NORBERTO R74153.

Witness(es):

☒ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| G. KOCHEL | 10895 | *[signature]* | 3/11/2017 | 10:30 | ☒ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

**Disciplinary Action:**

Shift Review: ☐ Temporary Confinement    ☐ Investigative Status    Reasons:

| | | |
|---|---|---|
| Printed Name and Badge # | Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer) | Date |

Reviewing Officer's Decision: ☐ Confinement reviewed by Reviewing Officer    Comment:

☒ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

MAJOR WHEAT #742
Print Reviewing Officer's Name and Badge #     Reviewing Officer's Signature     Date 3/11/17

☒ Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only):

T FALETI     13310
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date 3.12.17

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☒ Check if offender refused to sign

| | Offender's Signature | ID# |
|---|---|---|
| A. Choate | 11884 | |
| Serving Employee (Print Name) | Badge # | Signature |

Date Served 3-13-17        Time Served 6:17   ☐ a.m. ☒ p.m.

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____        _____
Offender's Signature                          ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

| Date of Disciplinary Report | Print offender's name | | ID# |
|---|---|---|---|

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

**A.143**
Printed on Recycled Paper

DOC 0317 (Rev. 2/2007)

Distribution:  Master File
Offender
Facility (2)

Torres v. Lashbrook, et al. (19-248) Document No.:   000224

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** TORRES, NORBERTO | **IDOC Number:** R74153 | **Race:** HSP |
| **aring Date/Time:** 3/22/2017  08:07 AM | **Living Unit:** MEN-N2-06-36 | **Orientation Status:** N/A |
| **ncident Number:** 201700409/1 - MEN | **Status:** Final | |

| ate | Ticket # | Incident Officer | Location | Time | |
|---|---|---|---|---|---|
| 9/2017 | 201700409/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 02:00 PM | |

| Offense | Violation | Final Result |
|---|---|---|
| 205 | Gang Or Unauthorized Organization Activity | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| ) Witness Requested | | | |

**ECORD OF PROCEEDINGS**
mate pled not guilty stated I didn't fill the paper work out

**ASIS FOR DECISION**
ased on the observation of the reporting employee  Intel unite received and envelop filled with a handwritten STG
aterial discovered while shaking down from an individual that had just arrived form Menard CC.  In envelope was a
andwritten Latin Folk questionnaire.  These questions are given to members of the Latin Folk union and have to be filled
ut and returned to a designated individual in the cell house.  The information obtained from theses can help weed out
formants, sex offenders, or individuals that may have had a prior PC placement.  The individuals filling these out have
 provide information such as their name, number, affiliation, crime, etc..  The particular questionnaire was filled out be
orres, Norberto R74153.  Torres provided information such as his name, affiliation, nick name and his sentence.  Hand
riting samples were obtained from Torres master file via Menard CC intel unit.  After comparing the questionnaire to the
ovided hand writing samples numerous similarities were noted that help determine that Torres authored the
uestionnaire.  Torres is s self-admitted member of the Maniac Latin Disciples.  The Maniac Latin Disciples fall under the
atin Folk umbrella discussed earlier in the ODR  Inmate ID by OTS sheet and state ID card
ommittee finds inmate guilty based on information provided and accepts the written report to be factual account of the
cident and is satisfied the violations occurred as reported.
05 charge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or
nauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat
oup or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational
gns.  Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an
rganization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

**ISCIPLINARY ACTION**  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 3 Months C Grade | 3 Months C Grade |
| 3 Months Segregation | 3 Months Segregation |
| 3 Months Commissary Restriction | 3 Months Commissary Restriction |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| **Basis for Discipline:**nature of offense | |

### Signatures
**Hearing Committee**

| | | Date | Race |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | Signature | 03/22/17 | WHI |
| HART, JASON N | Signature | 03/22/17 | BLK |

Recommended Action Approved

n Date: **4/4/2017 14:05:42**          Page 1 of 2

**A.144**

**Offender Disciplinary Report**

Date: 03/10/2017

| Type of Report: | |
|---|---|
| ☒ Disciplinary | ☐ Investigative |

Pontiac Correctional Center
Facility

Offender Name:   TORRES, NORBERTO                    *ID #:   R74153

**Offense Information:**

Observation Date:   03/09/2017   Approximate Time:   2:00   ☐ a.m. ☒ p.m.   Location:   Intelligence Unit

**Offense(s): DR 504:**   205/Security threat group or unauthorized organizational activity

**Observation:**   (NOTE: Each offense identified above must be substantiated.) On the above date and approximate time the Intel Unit received and envelope filled with handwritten STG material discovered while shaking property down from an individual that had just arrived from Menard CC. In this envelop was a hand written Latin Folk questionnaire. These questionnaires are given to members of the Latin Folk Union and have to be filled out and returned to a designated individual in the cell house. The information obtained from these can help weed out informants, sex offenders, or individuals that may have had a prior Protective Custody placement. These are just a few examples of what the questionnaires are used for. The Individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. This particular questionnaire was filled out by TORRES, NORBERTO R74153.

**Witness(es):**

☐ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses

| | | | | | ☐ a.m. ☒ p.m. |
|---|---|---|---|---|---|
| G. Kochel | 10895 | Signature | 03/15/17 | 12:25 | |
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

**Disciplinary Action:**

**Shift Review:** ☒ Temporary Confinement   ☐ Investigative Status   Reasons:

| | | 8-15-17 |
|---|---|---|
| Milour J 644 | | |
| Printed Name and Badge # | Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer) | Date |

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer   Comment:

☒ **Major Infraction**, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ **Minor Infraction**, submitted to Program Unit

| Maj French 681 | French | 3-15-17 |
|---|---|---|
| Print Reviewing Officer's Name and Badge # | Reviewing Officer's Signature | Date |

☒ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only)

| | | 3/17 |
|---|---|---|
| Print Hearing Investigator's Name and Badge # | Hearing Investigator's Signature | Date |

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may also ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filing out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☒ Check if offender refused to sign

| | Offender's Signature | ID# | |
|---|---|---|---|
| DuAvey | | 12475 | D. Lang |
| Serving Employee (Print Name) | Badge # | Signature | |

| 3-17-17 | 6:30 ☐ a.m. ☒ p.m. |
|---|---|
| Date Served | Time Served |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

| | |
|---|---|
| Offender's Signature | ID# |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

| | | |
|---|---|---|
| Date of Disciplinary Report | Print offender's name | ID# |

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| | | | |
|---|---|---|---|
| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |

Witness can testify to:

| | | | |
|---|---|---|---|
| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |

Witness can testify to:

Page 1 of **2**

**A.145**

Distribution:   Master File
Offender
Facility (2)                DOC 0317 (Rev. 2/2007)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Continuation Page**

Pontiac Correctional Center
Facility

☒ Disciplinary Report   ☐ Investigative Report   ☐ Disciplinary Summary   ☐ Adjustment Committee Summary

Report/Incident Date: _____   Incident # (if applicable): _____

| **Offender Information:** |
|---|
| Offender Name: TORRES, NORBERTO                    ID #: R74153 |

Use the space below to provide any additional information.

TORRES provided information such as his name, affiliation, nick name and his sentence. Hand writing samples were obtained from TORRES's master file via Menard CC's Intel Unit. After comparing the questionnaire to the provided hand writing samples numerous similarities were noted that help determine that TORRES authored the questionnaire. TORRES is a self-admitted member of the Maniac Latin Disciples. The Maniac Latin Disciples fall under the Latin Folk umbrella discussed earlier in this ODR. By TORRES filling out this questionnaire he (TORRES) is participating in STG activity and this participation substantiates the 205 Charge. TORRES was identified by Institutional Graphics, Offender O360 and Menard CC Intel Unit.

Printed *...*   **A.146**

Distribution: Master File
Offender
Facility (2)

DOC 0318 (Eff. 8/2006)
(Replaces DC 7212)

Torres v. Lashbrook, et al. (19-248) Document No.:    000227

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Report**

| Type of Report: | | Date: 03/11/2017 |
|---|---|---|
| ☒ Disciplinary    ☐ Investigative | Pontiac Correctional Center Facility    Menard | |
| Offender Name:    TORRES, NORBERTO | ID #:    ~~R53108~~    R74153 | |

**Offense Information:**

Observation Date:    03/09/2017    Approximate Time:    10:00    ☒ a.m. ☐ p.m.    Location:    Intelligence Unit

**Offense(s): DR 504:**    205/Security threat group or unauthorized organizational activity

**Observation:** (NOTE: Each offense identified above must be substantiated.) On the above date and approximate time the Intel Unit received and envelope filled with handwritten STG material discovered while shaking property down from an individual that had just arrived from Menard CC. In this envelop was a hand written Latin Folk questionnaire. These questionnaires are given to members of the Latin Folk Union and have to be filled out and returned to a designated individual in the cell house. The information obtained from these can help weed out informants, sex offenders, or individuals that may have had a prior Protective Custody placement. These are just a few examples of what the questionnaires are used for. The individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. This particular questionnaire was filled out by TORRES, NORBERTO R74153.

**Witness(es):**

☒ Check if Offender Disciplinary Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| G. KOCHEL | 10895 | G. Kochel | 3/11/2017 | 10:30 | ☒ a.m. ☐ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

---

**Disciplinary Action:**

**Shift Review:** ☐ Temporary Confinement    ☐ Investigative Status    Reasons:

| | |
|---|---|
| Printed Name and Badge # | Shift Supervisor's Signature    Date<br>(For Transition Centers, Chief Administrative Officer) |

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment:

☒ **Major Infraction,** submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction,** submitted to Program Unit

MAJOR WHEAT #742    3-11-17
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

☒ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only)

FAUTTI  3380    3.12.17
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if offender refused to sign

| | | |
|---|---|---|
| | Offender's Signature | ID# |
| Serving Employee (Print Name) | Badge # | Signature<br>☐ a.m. ☐ p.m. |
| | Date Served    Time Served | |

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

| | |
|---|---|
| Offender's Signature | ID# |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

| | | |
|---|---|---|
| Date of Disciplinary Report | Print offender's name | ID# |

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to: _____

Printed on Recycled Paper    DOC 0317 (Rev. 2/2007)

Distribution:    Master File
Offender
Facility (2)

Torres v. Lashbrook, et al. (19-248) Document No.:    000228

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | |
|---|---|---|
| Name: TORRES, NORBERTO | IDOC Number: R74153 | Race: HSP |
| ring Date/Time: 3/22/2017  08:07 AM | Living Unit: MEN-W-10-23 | Orientation Status: N/A |
| cident Number: 201700409/2 - MEN | Status: Expunged Final | |

| te | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| /2017 | 201700409/1-MEN | KOCHEL, GREGORY A | PON-INTERNAL AFFAIRS | 02:00 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 205 | Gang Or Unauthorized Organization Activity | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|
| Witness Requested | | | |

**CORD OF PROCEEDINGS**

nate pled not guilty stated I didn't fill the paper work out
cket was expunged per Grievance Report #18-6-17
r DR 504

**SIS FOR DECISION**

sed on the observation of the reporting employee  Intel unite received and envelop filled with a handwritten STG
terial discovered while shaking down from an individual that had just arrived form Menard CC.  In envelope was a
ndwritten Latin Folk questionnaire.  These questions are given to members of the Latin Folk union and have to be filled
t and returned to a designated individual in the cell house.  The information obtained from theses can help weed out
ormants, sex offenders, or individuals that may have had a prior PC placement.  The individuals filling these out have
provide information such as their name, number, affiliation, crime, etc..  The particular questionnaire was filled out be
rres, Norberto R74153.  Torres provided information such as his name, affiliation, nick name and his sentence.  Hand
ting samples were obtained from Torres master file via Menard CC intel unit.  After comparing the questionnaire to the
vided hand writing samples numerous similarities were noted that help determine that Torres authored the
estionnaire.  Torres is s self-admitted member of the Maniac Latin Disciples.  The Maniac Latin Disciples fall under the
in Folk umbrella discussed earlier in the ODR  Inmate ID by OTS sheet and state ID card
mmittee finds inmate guilty based on information provided and accepts the written report to be factual account of the
ident and is satisfied the violations occurred as reported.
5 charge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or
authorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat
up or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational
ns.  Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an
ganization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

**SCIPLINARY ACTION**  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| | — E X P U N G E D — |

asis for Discipline:

**Signatures**
**Hearing Committee**

| | | | |
|---|---|---|---|
| BROOKMAN, KENT E  - Chair Person | Signature | 03/22/17 | WHI |
| | | Date | Race |
| HART, JASON N | Signature | 03/22/17 | BLK |
| | | Date | Race |
| Recommended Action Approved | | | |

nal Comments:  N/A

Date: 7/10/2017 07:53:51                    Page 1 of 2

# A.148

**EXHIBIT E**

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| | |
|---|---|
| Date: OCT 1, 2018 | Offender: (Please Print) NORBERTO TORRES IDOC # R74153 |
| Present Facility: MENARD C.C. | Facility where grievance issue occurred: MENARD C.C. |

137-10-18

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [x] Staff Conduct
- [ ] Dietary
- [ ] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify):

- [ ] Disciplinary Report: ___ Date of Report ___ Facility where Issued ___

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

THIS GRIEVANCE IS WRITTEN DUE TO AN ONGOING ISSUE I AM HAVING WITH SGT. BEBOUT, WHO IS ASSIGNED TO THE INMATE VISITING ROOM. I GET VISITS REGULARLY, SO I NEED TO MAKE THIS ISSUE KNOWN TO THIS ADMINISTRATION. ALMOST EVERY SINGLE VISIT, MY FAMILY (VISITORS) WILL TELL ME THAT SGT. BEBOUT WOULD APPROACH THEIR TABLE BEFORE I CAME IN AND TELL THEM THAT I AM A "TROUBLE MAKER", a

Relief Requested:
1) SGT. BEBOUT BE REMOVED FROM THE VISITING ROOM AND HAVE NO INTERACTION WITH OUR VISITORS; 2) TRANSFER ME TO STATEVILLE,

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature R74153 IDOC# 10, 1, 18 Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| | |
|---|---|
| Date Received: 10 / 5 / 18 | [x] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: UNABLE TO SUBSTANTIATE OFFENDERS ALLEGATIONS.

T. BRANSY CCII   Print Counselor's Name   Counselor's Signature CCII 10 / 5 / 18   Date of Response

---

**EMERGENCY REVIEW**

| | |
|---|---|
| Date Received: ___ / ___ / ___ | Is this determined to be of an emergency nature?   [ ] Yes; expedite emergency grievance   [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

Chief Administrative Officer's Signature ___ Date ___

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

GANG MEMBER, THAT SHE WAS INTERNAL AFFAIRS AND MY NAME ALWAYS CAME UP WHEN THERE WAS TROUBLE. SHE HAS TOLD THEM THAT I NAMED HER IN A LAW-SUIT. ANOTHER TIME I WAS TOLD THAT SHE TOLD MY FAMILY THAT I DON'T LIKE WHITE PEOPLE. THIS IS RIDICULOUS! I GO OUT OF MY WAY TO AVOID HER AND NOT ENGAGE HER IN ANY DIALOG. I'VE WITNESSED HER OUTBURSTS IN THE VISITING ROOM TOWARDS INMATES AND THEIR FAMILY. SHE IS ALWAYS THREATENING TO END PEOPLES VISITS EARLY OR THREATENING TO WRITE INMATES TICKETS OR SEND THEM TO SEG. EVERY VISIT I HEAR HER TELLING SOMEBODY HOW SHE CAN TERMINATE VISITS AT ANY TIME OR BAN VISITORS FROM EVER COMING INTO THE PRISON. ITS GOTTEN SO BAD OUR VISITORS HAVE BEGUN CALLING SPRINGFIELD DUE TO THE INACCESSABILITY OF THE PRISON WARDENS WHEN CALLING MENARD. I CURRENTLY HAVE LITIGATION PENDING THAT NAMES SGT. BEBOUT AS A DEFENDANT (SEE: NORBERTO TORRES V. KIM BUTLER, et al. CASE NO. 18 CV 1091-NJR-DGW ) ... AND I'M SURE IT ISN'T APPROPRIATE FOR HER TO SLANDER ME TO MY FAMILY AND OTHER VISITORS OR TO DISCUSS MY CIVIL COMPLAINT WITH THEM. I KNOW THAT SGT. BEBOUT CAN BE VINDICTIVE TOO SO I AM AWARE THAT THERE MAY BE CONSEQUENCES OR SOME FORM OF RETALIATION FOR THIS GRIEVANCE. THIS IS THE SAME PERSON THAT PROMISED TO PUT ME IN SEG FOR A YEAR IF SHE FOUND OUT I LIED ABOUT MY NATIONALITY/RACE. I AM A LATINO, YET SHE CLAIMS I AM SAMOAN. X END OF GRIEVANCE.

A.150

Torres v. Lashbrook, et al. (19-248) Document No.:     000017

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

**Date Received:** June 6, 2017      **Date of Review:** June 8, 2017      **Grievance #** (optional): 18-6-17

**Offender:** Torres, Norberto                                    **ID#:** R74153

**Nature of Grievance:** Disciplinary Report dated 3/9/2017 issued by C/O G. Kochel for 205 Gang or Unauthorized Organization Activity-201700409/1-MEN

**Facts Reviewed:** All information submitted to the Grievance Officer by the offender or institutional staff pertaining to this issue(s) being grieved has been thoroughly reviewed. Offender submitted a grievance dated 5/24/2017 regarding the above disciplinary report. Offender grieves he was issued a STG ticket alleging that he filled out some type of paper with information and the material was found in Pontiac C.C. in someone else's property during a shakedown. He states that it is impossible for grievant to reach Pontiac C.C. or write anything. He states that he was not informed of any investigation or placed on such status. He states that on 3/15/2017 the Adjustment Committee found him not guilty of the offense due to the Disciplinary Report not making sense. On 3/17/2017 he received a disciplinary report that was an exact copy of the one he received on 3/13/2017 which was expunged. The Adjustment Committee found him guilty of #205. He states that he was never issued notice of the investigation or investigative status.

Relief requested: Expunge IDR & restore privileges, release from segregation, receive monthly payroll, and no retaliation for filing this grievance.

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures & contacted the Adjustment Committee and Investigations and Intelligence.

The offender was issued a disciplinary ticket for 205 Gang or Unauthorized Organization Activity #201700365/1-MEN written on 3/11/2017 and served to the offender on 3/13/2017. The offender refused to sign the ticket.

The ticket was dismissed due to the ticket not written correctly.

The offender was then issued a disciplinary ticket for 205 Gang or Unauthorized Organization Activity #201700409/1-MEN written on 3/15/2017 and served to the offender on 3/17/2017. The offender refused to sign the ticket.

Per DR 504.80 Prior to the hearing, the offender may request that witnesses be interviewed. No requests for witness received by Committee.

The Committee advised the hearing was in accordance with DR 504.80. Offender was permitted to make statements in his defense and offender pled not guilty stated, "I didn't fill the paper work out" as noted on the final summary.

According to the disciplinary report written by C/O Kochel, based on the observation of the reporting employee, Intel unit received and envelope filled with handwritten STG material discovered while shaking down from an individual that just arrived from Menard CC. In envelope was a handwritten Latin Folk questionnaire. These questions are given to members of the Latin Folk union and have to be filled out and returned to a designated individual in the cell house. The information obtained from theses can help weed out informants, sex offenders, or individuals that may have had a prior PC placement. The individuals filling these out have to provide information such as their name, number, affiliation, crime, etc. The

Continue on page 2...

**Recommendation:** Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be AFFIRMED. Ticket #201700409/1-MEN shall be expunged in accordance with DR504.

Kelly Pierce   -   Menard Correctional Center
Print Grievance Officer's Name                                    Grievance Officer's Signature
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** June 15, 2017      [✓] I concur      [ ] I do not concur      [ ] Remand

**Comments:**   Adjustment Committee
              Placement
              Record Office
              Clinical Services Supervisor

Chief Administrative Officer's Signature                                    4/20/17
                                                                           Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. **(Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)**

Offender's Signature                              ID#                              Date

Torres v. Lashbrook, et al. (19-248) Document No.:      000018

**ILLINOIS DEPARTMENT OF CORRECTIONS**
## RESPONSE TO OFFENDER'S GRIEVANCE (Continued)

Continued...

particular questionnaire was filled out by Torres, Norberto, R74153. Torres provided information such as his name, affiliation, nick name and his sentence. Hand writing samples were obtained from Torres' master file via Menard CC Intel unit. After comparing the questionnaire to the provided hand writing samples numerous similarities were noted that help determine that Torres authored the questionnaire. Torres is s self-admitted member of the Maniac Latin Disciples. The Maniac Latin Disciples fall under the Latin Folk umbrella discussed earlier in the ODR Inmate ID by O360 sheet and state ID card.

Committee finds inmate guilty based on information provided and accepts the written report to be factual account of the incident and is satisfied the violations occurred as reported.

205 charge found inmate guilty of engaging, pressuring, or authorizing others to engage in security threat group or unauthorized organizational activities, meetings, or criminal acts; displaying, wearing, possessing, or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs. Unauthorized organizational activity shall include engaging in the above activities by or on behalf of an organization that has not been approved pursuant to 20 Ill. Adm. Code 445 or 450.

The Department Rule does not specify that the offender shall be notified of temporary confinement.

Although the offender is guilty of the infractions, ticket # 201700409/1-MEN shall be expunged due to the ticket not being heard in accordance with DR504.

NO one is retaliated against for filing grievances. No one is aware unless offender is advising them.

Distribution:   Master File; Offender

A P152
Printed on Recycled Paper

DOC 0047 (Rev. 3/2005)

Torres v. Lashbrook, et al. (19-248) Document No.:       000019

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 5-24-17 | Offender: (Please Print) NORBERTO TORRES | ID#: R74153 |
|---|---|---|

| Present Facility: MENARD - C-C | Facility where grievance issue occurred: MENARD C-C |
|---|---|

**NATURE OF GRIEVANCE:**

18-6-17

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): _____

- [x] Disciplinary Report: 3 / 13 / 17    MENARD - C-C
  Date of Report / Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

ON 3/13/17 ON OR ABOUT 1-2PM, I WAS PLACED ON DEADLOCK IN THE WEST CELL HOUSE OF 5 GALLERY. WHEN C/O REYNOLDS TOLD ME OF SUCH, I ASKED WHAT WAS THE CAUSE FOR IT, HE ASKED "HOW LONG YOU'VE BEEN IN THIS INSTITUTION, I STATED, "ALMOST 2 YEARS," HE THEN SAYS, "I'M NOT TOO SURE BUT IT HAS TO DO WITH SOMETHING FROM ANOTHER PLACE, ON THE NIGHT OF SAID DATE (3-13-17) ON OR ABOUT 6-7 PM, I WAS GIVEN A DISCIPLINARY REPORT FOR AN #205-STG. GRIEVANT WASN'T INFORMED OF ANY INVESTIGATION OR PLACED ON SUCH STATUS. IT WAS ALLEGED THAT THIS GRIEVANT FILLED OUT SOME TYPE OF PAPER WITH INFORMATION SUCH AS NAME ETC. THE SAID MATERIAL WAS FOUND IN PONTIAC-C-C IN SOMEONE ELSE'S PROPERTY ON A SHAKEDOWN AND THEN GOT TURNED OVER TO INTEL. SUCCINCTLY PUT-

Relief Requested: 1) THAT GRIEVANT BE RELEASED FROM SEGREGATION 2) THAT E.D.R ISSUED TO GRIEVANT BE EXPUNGED 3) THAT GRIEVANT'S MONTHLY PAYROLL BE RESTITUTED, AND THAT I DON'T BE RETALIATED AGAINST FOR FILING THIS GRIEVANCE.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| [signature]  Offender's Signature | R74153  ID# | 5 , 24 , 17  Date |
|---|---|---|

(Continue on reverse side if necessary)

RECEIVED

---

**Counselor's Response (if applicable)**    JUN 0 6 2017

| Date Received: ___ / ___ / ___ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: ___ / ___ / ___ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Chief Administrative Officer's Signature | | Date |
|---|---|---|

Distribution: Master File; Offender          Page 1          DOC 0046 (8/2012)

**A.153**

Torres v. Lashbrook, et al. (19-248) Document No.:          000020

GRIEVANTS HOUSED IN MENARD C.C. ON WEST HOUSE, CELL 5-03, THEREFORE, IT IS IMPOSSIBLE FOR GRIEVANT TO REACH PONTIAC-C.C. LET ALONE WRITE AUTHOR ANYTHING ON 3/15/17 THE ADJUSTMENT COMMITTEE FOUND ME NOT GUILTY OF # 205. S/G, DUE TO DISCIPLINARY REPORT NOT MAKING SENSE, LET ALONE BEING WRITTEN A PONTIAC-C.C. 15 MINUTES OF BATCH CALL (3-15-17) I GET TOLD TO PACK UP BECAUSE I'M GOING TO SEGREGATION THE C/O SAID, "I DON'T KNOW WHY, I THOUGHT YOU WERE GOOD" ON 3/17/17, I GET A DISCIPLINARY REPORT. "ONCE MORE I WASN'T GIVEN AN INVESTIGATION REPORT", AS I READ FROM, START TO FINISH, I NOTICE ITS A COPY OF THE EXACT DISCIPLINARY REPORT I WAS GIVEN ON 3/15/17 WHICH GOT THROWN OUT ON 3/15/17. ON 3/22/17 THE ADJUSTMENT COMMITTEE FOUND ME GUILTY OF # 205. S/G, THIS GRIEVANT IS FILING THIS INSTANT GRIEVANCE DUE TO THE FACT THAT THIS GRIEVANT WAS SERVED A MAJOR DISCIPLINARY REPORT, WHICH REQUIRES THE CHIEF ADMINISTRATIVE OFFICER TO APPOINT ONE OR MORE HEARING INVESTIGATORS ON ALL MAJOR DISCIPLINARY REPORTS PURSUANT TO (20 ILLINOIS, ADMINISTRATIVE CODE, CH. SEC 504, SUBCHAPTER E SECTION 504 (A) THIS GRIEVANT WAS NOT PROVIDED A HEARING INVESTIGATOR DURING HIS HEARING BEFORE THE ADJ. COMM IN VIOLATION OF (20 ILL. ADM. CODE, CH. SEC 504, SUBCHAPTER E 605 A) GRIEVANT WAS DEPRIVED A CHANCE TO PROPERLY PREPARE FOR HIS DEFENSE (SECTION 504 80 FF) PROPERLY ADDRESS THE COMM. (SECTION 504 8 E) 5) THE ADJ. COMM ALSO FAILED TO FOLLOW 2 AND 3 OF THEIR HEARING PROCEDURES. ONLY WAS GRIEVANT NOT PLACED UNDER INVESTIGATION AND QUESTION BY E.A OR A HEARING INVESTIGATOR. FURTHER DEPRIVING GRIEVANT OF HIS ABILITY TO CONFRONT WITNESS TO BE INTERVIEWED ON GRIEVANTS BEHALF IS THE FACT THAT THE TICKET THUS NOT INDICATE WHO THE REPORTING EMPLOYEE ALLEGING TO HAVE DISCOVERED SUCH MATERIAL, THE ADJ. COMM CHAIRPERSON, BROOKMAN, BEFORE STARTING TO READ THE DISCIPLINARY REPORT LOOKED AT ME WITH RECOGNITION, I TELL HIM, ITS THE SAME TICKET IT WAS GIVEN ON 3-13-17 AND GOT THROWN OUT ON 3-15-17 AT THE WEST CELL HOUSE. HE STATES, OH YEAH ALONG WITH SGT. HART AND THE REST OF COMM. MEMBERS, THEN SAYS WELL, THE OTHER TICKET DID NOT MAKE ANY SENSE, HE CONTINUES TO READ, AS HE FINISHED HE ASKED ME, HOW DO YOU PLEA, I STATE, "NOT GUILTY" HE THEN STATES "BY GIVING YOU 3 MONTHS SEGREGATION, NOT ONLY WAS MY DEFENSE NOT CONSIDER, I WAS NEVER SHOWN SAID PAPER THAT I WAS BEING ACCUSED OF, NOR WAS I ABLE TO ASK DUE TO BEING RUSHED OUT, COMPOUNDING GRIEVANTS ABILITY TO CALL ANY WITNESSES AND/OR TO DEFEND HIMSELF OF ANY CHARGES, IS THE FACT THAT THE LETTERS WERE DEEMED TO BE AUTHORED BY GRIEVANT FROM SOME FILE, WHAT ASSURANCE IS SATISFIED THAT ANY LETTER COMPARISON TO GRIEVANTS WRITING WHEN DONE ARBITRARILY, AND ANY PROCEDURAL SAFEGUARDS ASSERTED, IF NO LETTER/MATERIAL WAS FOUND IN GRIEVANTS POSSESSION NOR IN GRIEVANTS PROPERLY, LET ALONE IN THE FACILITY. ON 6-10-15 I WAS IN STATEVILLE/NRC WAITING ON TRANSFER, I WAS GIVEN A # 205. S/G. THE SAID TICKET SAID, I WAS AN AFFILIATE WITH A LATIN FOLK FACTION (MLD) ON 7-10-15 I RECEIVED THE SUMMARY REPORT OF 6-10-15, I STATED, "EXPUNGED DUE TO INACCURATE/INSUFFICIENT INFORMATION", ON 12-15-15, I WAS GIVEN AN # 205 S/G, I ALSO STATED, I WAS AFFILIATED WITH A LATIN FOLK FACTION ON 12-11-16, I RECEIVED THE SUMMARY OF 12-15-15, I STATED "NOT GUILTY I'M A GD".

Torres v. Lashbrook, et al. (19-248) Document No.: 000021

ON 3-13-17, I WAS GIVEN A #205.51G. ON 3-14-17, I WAS GIVEN A FORMAL HEARING, FOR TICKET OF 3-13-17. IT STATED "TICKET WAS DISSMISSED. ON 3-17-17, I WAS GIVEN AN #205.51G. ON 4-14-17, I REVIEWD THE SUMMARY REPORT OF 3-17-17. IT STATED "INMATE PLED NOT GUILY STATED, I DIDN'T FILL THE PAPERWORK OUT." MENARDS INTEL/INTERNAL AFFAIRS ARE FALSIFYING REPORT IGNORING/DISREGARDING I.D.O.C'S DUE PROCESS "SAFEGUARDS" BY INTENTIONALLY ALLOWING GRIEVANT TO BE PLACED IN PUNITIVE SEGREGAITON ONLY BECAUSE OF HIS RACIAL ETHNICLY.

PREPARATION OF DISCIPLINARY REPORTS

B) IF AN EMPLOYEE OBSERVES A COMMITTED PERSON COMMITTING AN OFFENSE, DISCOVERS EVIDENCE OF ITS COMMISSION, OR RECIEVES INFORMATION FROM A RELIABLE WITNESS OF SUCH CONDUCT HE SHALL PREPARE A DISCIPLINARY REPORT.

-) THE DISCIPLINARY REPORT MUST BE FULLY COMPLETED. THE REPORTING EMPLOYEE SHALL PROVIDE THE FOLLOWING INFORMATION TO THE EXTENT KNOWN OR AVAILABLE.

1) ....... 2) THE PLACE, TIME AND DATE. OF OFFENSE 3).......... 4) A WRITTEN STATEMENT OF THE CONDUCT OBSERVED 5) THE NAMES OF COMMITTED PERSON'S, EMPLOYEES... WHO WERE WITNESSES

D) IF A COMMITTED PERSON IS SUSPECTED OF COMMITTING A DISCIPLINARY OFFENSE, AN INVESTIGATIVE DISCIPLINARY REPORT HERE ~~AND~~ IN AFTER REFFERED TO AS AN INVESTIGATIVE REPORT, MAY BE ISSUED WHICH REASONABLY INFORMS THE COMMITTED PERSON OF THE SUBJECT OF THE INVESTIGATION TO THE EXTENT THAT SAFETY AND SECURITY ALLOW.

RECEIVED

JUN 06 2011

A.155

Torres v. Lashbrook, et al. (19-248) Document No.:     000022

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

NOBERTO TORRES,

      PLAINTIFF,

VS.

KENT BROOKMAN AND JASON HART,

      DEFENDANTS.

Scanned at Pinckneyville CC and e-mailed

1/5/22 by CB 3 pages
Date        Initials   No.

CASE NO: 19-248-SPM

PLAINTIFF'S RESPONSE TO DEFENDANTS

KENT BROOKMAN AND JASON HART MOTION FOR SUMMARY JUDGMENT

PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56, IN WHICH

DEFENDANTS CLAIM THAT THEY ARE ENTITLED TO SUMMARY

JUDGMENT, AS NO GENUINE ISSUE OF MATERIAL FACTS EXISTS,

AND ENTITLED TO QUALIFIED IMMUNITY, STATE AS FOLLOWS:

      COMES NOW PLAINTIFF, NOBERTO TORRES, ACTING IN

PROPIA PERSONA, AND RESPECTFULLY ASKS THIS COURT TO

ENTER A JUDGMENT DENYING DEFENDANTS MOTION FOR SUMMARY

JUDGMENT. IN SUPPORT THEREOF, PLAINTIFF STATES AS

FOLLOWS:

      1. ON APRIL 10, 2019, PLAINTIFF, NOBERTO TORRES,

BROUGHT THIS ACTION FOR DEPRIVATION OF HIS CONSTITUTIONAL

**A.156**

RIGHTS PURSUANT TO 42 U.S.C. § 1983. (COURT DOC. 1)

2. IN THE COURTS MEMORANDUM AND ORDER, THE COURT HELD THAT PLAINTIFF HAD STATED (1) FOURTEENTH AMENDMENT CLAIM FOR DUE PROCESS AGAINST DEFENDANT BROOKMAN AND HART AND (1) EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT LASHBROOK FOR CRUEL AND UNUSUAL CONDITIONS OF CONFINEMENT CLAIM. (COURT DOC. 9).

3. ON MARCH 10, 2020, DEFENDANTS BROOKMAN AND HART FILED A COMBINED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION (DOC. 19).

4. DUE TO PLAINTIFF NOT BEING WELL-VERSED IN THE LAW OF CIVIL CLAIMS AND NOT BEING ABLE TO UNDERSTAND ALL THE PROCEEDINGS IN FRONT OF HIM, PLAINTIFF FAILED TO FILE A RESPONSE TO DEFENDANTS MOTION.

5. ON DECEMBER 16, 2020, THIS HONORABLE COURT ENTERED AN ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS COMBINED MOTION. (COURT DOC 28).

6. THE COURT HELD THAT PLAINTIFF HAD FAILED TO

**A.157**

EXHAUST HIS CLAIMS AS TO COUNT 2 AND THAT DEFENDANT LASHBROOK WAS DISMISSED WITHOUT PREJUDICE. THIS CASE WAS ORDER TO PROCEED ON COUNT 1 AGAINST DEFENDANTS BROOKMAN AND HART. ( DOC. 29, PG. 9).

7. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT, AS THE COURT FOUND THAT GENUINE ISSUES OF MATERIAL FACTS EXIST AGAINST DEFENDANTS BROOKMAN AND HART.

8. FURTHERMORE, DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. THIS DETERMINATION LIES IN THE SOUND DISCRETION OF THIS COURT. THE COURT DECIDES WHETHER PLAINTIFF HAS ALLEGED FACTS THAT, IF PROVED, WOULD SHOW A VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS.

9. A MEMORANDUM OF LAW IN SUPPORT IS ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.

WHEREFORE, FOR THE ABOVE AND FOREGOING REASONS, PLAINTIFF RESPECTFULLY ASKS THIS HONORABLE COURT TO DENY DEFENDANTS MOTION FOR SUMMARY JUDGMENT.

NOBERTO TORRES, R74153
PINCKNEYVILLE CORRECTIONAL CENTER
5835 STATE ROUTE 154
PINCKNEYVILLE IL 62274

RESPECTFULLY SUBMITTED,

/S/ _____

NOBERTO TORRES
PLAINTIFF, PRO-PER

**A.158**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

NORBERTO TORRES,          )
                          )
        PLAINTIFF,        )
                          )
V.S.                      )      CASE NO: 19-248-SPM
                          )
KENT BROCKMAN AND JASON HART, )
                          )
        DEFENDANTS.       )

Scanned at Pinckneyville CC and e-mailed
1/5/22   by  CB   21  pages
Date         Initials   No.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS RESPONSE
TO DEFENDANTS KENT BROCKMAN AND JASON HART' MOTION FOR
SUMMARY JUDGMENT.

FACTUAL BACKGROUND

PLAINTIFF, CURRENTLY INCARCERATED AT PINCKNEY-
VILLE CORRECTIONAL CENTER (PINCKNEYVILLE), HAS BROUGHT
THIS PRO-SE CIVIL RIGHTS ACTION PURSUANT TO 42 U.S.C.
1983. PLAINTIFF RAISES CLAIMS OF DUE PROCESS VIOLATIONS
DURING DISCIPLINARY HEARINGS, VIOLATION FOR CRUEL AND
UNUSUAL PUNISHMENT AND VIOLATION FOR INHUMANE PRISON
CONDITIONS, AGAINST DEFENDANTS KENT BROCKMAN AND
JASON HART.

UNDISPUTED MATERIAL FACTS

**A.159**

1. AT THE TIME PLAINTIFF'S INITIAL CLAIMS AROSE, PLAINTIFF WAS INCARCERATED AT MENARD CORRECTIONAL CENTER, (MENARD).

2. ON FEBRUARY 28, 2019, PLAINTIFF FILED A COMPLAINT ALLEGING HIS EIGHTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS WERE VIOLATED WHILE HOUSED AT MENARD CORRECTIONAL CENTER. ADDITIONALLY, PLAINTIFF CLAIMS THAT ON MARCH 9, 2017, HE WAS ISSUED A DISCIPLINARY TICKET AFTER AUTHORITIES AT PONTIAC CORRECTIONAL CENTER (PONTIAC), FOUND A HAND-WRITTEN "LATIN FOLKS" QUESTIONNAIRE CONTAINING PLAINTIFF'S NAME AND INFORMATION AND ALLEGEDLY MATCHING HIS HAND-WRITTING. (COURT DOC. 1, PG. 11). PLAINTIFF, WHO WAS THEN HELD AT MENARD, WAS ISSUED AN IDR FOR PARTICIPATING IN SECURITY THREAT GROUP (STG) ORGANIZATIONAL ACTIVITY. [EXHIBIT-A, TORRES IDOC DISCIPLINARY REPORT PG'S. 2.]

3. ON MARCH 15, 2017 A DISCIPLINARY HEARING WAS HELD FOR PLAINTIFF WHO WAS ACCUSED FOR 205/ SECURITY THREAT GROUP OR UNAUTHORIZED ORGANIZATIONAL ACTIVITY AND EVENTUALLY WAS FOUND NOT GUILTY BY THE ADJUSTMENT COMMITTEE. HEARING COMMITTEE MEMBERS KENT BROOKMAN AND JASON HART FOUND PLAINTIFF (NOT GUILTY) OF THE CHARGE DUE TO LACK OF EVIDENCE AND LACK OF PERSONAL INVOLVEMENT. BASED ON THESE FINDINGS PLAINTIFFS TICKET WAS EXPUNGED ON MARCH 15, 2017. [EXHIBIT-B PG. 1 OF 1].

4. DESPITE THE TICKET BEING EXPUNGED, PLAINTIFF WAS SERVED A NEW IDR SEVERAL DAYS LATER FOR THE SAME EXACT OFFENSE. BOTH, DEFENDANTS BROCKMAN AND HART AGAIN PRESIDED OVER THE HEARING. THE EVIDENCE PRESENTED AT PLAINTIFF'S SECOND HEARING WAS EXACTLY THE SAME AS THE FIRST HEARING, BUT THIS TIME AROUND DEFENDANTS BROCKMAN AND HART REFUSE TO CONDUCT AN INDEPENDENT INVESTIGATION ON THE REALIABILITY OF THE QUESTIONNAIRE THAT WAS CONFISCATED BY AUTHORITIES AT PONTIAC CORRECTIONAL CENTER. PLEASE NOTE THAT PLAINTIFF WAS FIRST PLACED IN SEGREGATED CONFINEMENT AND THEN SERVED WITH THE SECOND TICKET.

5. DISCIPLINARY TICKET 201700409/1-MEN FOR THE OFFENSE OF 205 / SECURITY THREAT GROUP OR UNAUTHORIZED ORGANIZATIONAL ACTIVITY WAS ISSUED TO PLAINTIFF ON MARCH 17, 2017 AT APPROXIMATELY 6:30 P.M,.

6. ON MARCH 22, 2017, THE ADJUSTMENT COMMITTEE HELD ANOTHER DISCIPLINARY HEARING FOR THE SAME OFFENSE. THE ADJUSTMENT COMMITTEE CHAIRPERSONS THAT PRESIDED ON THIS HEARING WERE THE SAME OFFICERS THAT PRESIDED ON PLAINTIFFS LAST HEARING WHERE TICKET WAS EXPUNGED. THE ADJUSTMENT COMMITTEE CHAIRPERSONS WERE DEFENDANTS KENT BROCKMAN AND JASON HART. ( EXHIBIT C ).

7. AS A RESULT OF THE DISCIPLINARY HEARING HELD ON MARCH 22, 2017, THE FOLLOWING DISCIPLINARY ACTION

( 3. )

**A.161**

WAS RECOMMENDED BY DEFENDANTS KENT BROOKMAN AND JASON HART: THREE MONTHS OF C GRADE, THREE MONTHS OF COMMISSARY RESTRICTION, SIX MONTHS OF CONTACT VISIT RESTRICTION AND THREE MONTHS OF SEGREGATION. (EXHIBIT C).

8. BOTH DEFENDANTS BROOKMAN AND HART DECIDED THAT AS MEMBERS OF THE ADJUSTMENT COMMITTEE HEARING HELD ON MARCH 15, 2017 AND MARCH 22, 2017, BOTH COULD MAKE A RECOMMENDATION AND IMPOSE THE DISCIPLINARY ACTION ON PLAINTIFF AS THEY SEE FIT WITHOUT SUFFICIENT EVIDENCE, OR WEIGHING OF THE EVIDENCE. INSTEAD THERE RECOMMENDATION DEPRIVED PLAINTIFF OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW.

9. DEFENDANTS BROOKMAN AND HART (BOTH) ONLY CLAIM THAT THEY MADE A RECOMMENDATION REGARDING IMPOSING DISCIPLINARY ACTION ON PLAINTIFF WHO WAS FOUND GUILTY OF THE SAME DISCIPLINARY OFFENSE AFTER BOTH DEFENDANTS HAD RECOMMENDED THAT THE SAME TICKET BE EXPUNGED ON THE PREVIOUS ADJUSTMENT COMMITTEE HEARING HELD SEVERAL DAYS BEFORE ON MARCH 15, 2017.

10. SURE, THE CHIEF ADMINISTRATIVE OFFICER, THE WARDEN, MAKES THE FINAL DETERMINATION REGARDING THE DISCIPLINARY ACTION THAT PLAINTIFF WOULD RECEIVE, BUT THE WARDEN MAKES HIS DETERMINATION BASED ON THE ADJUSTMENT COMMITTEE'S RECOMMENDATION, WHICH IN THIS CASE

(4.)
**A.162**

THE MOST SEVERE RECOMMENDATION WAS THREE (3) MONTHS IN SEGREGATED CONFINEMENT.

11. PLAINTIFF DID REQUEST A WITNESS REGARDING HIS FIRST DISCIPLINARY HEARING PRIOR TO HIS ADJUSTMENT COMMITTEE HEARING ON MARCH 15, 2017. HOWEVER, HE WAS DEPRIVED OF HIS RIGHT TO CALL A WITNESS IN HIS DEFENSE BY BOTH DEFENDANTS BROOKMAN AND HART. NOW, EVEN THOUGH THERE WAS NO WITNESS REQUESTED MADE ON THE ATTACHED SECTION OF THE DISCIPLINARY TICKET THAT PLAINTIFF WAS ISSUED. PLAINTIFF DID MENTION TO BOTH DEFENDANTS BROOKMAN AND HART DURING HIS DISCIPLINARY HEARING ON MARCH 15, 2017, THAT HE HAD PERSONALLY SENT THE WITNESS INFORMATION ALONG WITH HIS STATEMENT TO THE ADJUSTMENT COMMITTEE THROUGH THE INSTITUTIONAL MAIL SEVERAL WEEKS PRIOR TO HIS HEARING.

12. ON PLAINTIFF'S SECOND HEARING ON MARCH 17, 2017, HE FACED THE SAME EXACT CHARGES FOR THE SAME INFRACTION THAT HAD RECENTLY BEEN EXPUNGED ON MARCH 15, 2017 BY DEFENDANTS KENT BROOKMAN AND JASON HART. AT THIS SECOND DISCIPLINARY HEARING PLAINTIFF CONTINUED TO MAINTAIN HIS INNOCENSE AND REQUESTED A HEARING INVESTIGATOR TO INTERVIEW HIS FORNAMED WITNESS, RICARDO MARCHAN #M-11209, AND ALSO TO INVESTIGATE THE VALIDITY OF THE HANDWRITTEN "LATIN FOLK" QUESTIONNAIRE

(5.)

**A.163**

ALLEGEDLY CONTAINING PLAINTIFF'S NAME AND INFORMATION AND MATCHING HIS HANDWRITING, PRISONERS FACED WITH THE REVOCATION OF GOOD-TIME CREDITS, LOSS OF GRADE STATUS, VISITING PRIVILEGES AND ALSO FACED WITH BEING PLACED IN SEGREGATION HAVE A QUALIFIED RIGHT TO CALL WITNESSES IN THEIR DEFENSE. SEE WOLFF V. MCDONNELL, 418 U.S. 539, 41 L Ed 2d 935, 94 S. Ct 2963 (1974). CLEARLY, BOTH DEFENDANTS BROOKMAN AND HART VIOLATED THE ILLINOIS DEPARTMENT OF CORRECTIONS WITNESS POLICY WHICH IN TURN VIOLATED THE FOURTEENTH AMENDMENT'S DUE PROCESS GUARANTEE. IN ADDITION, PLAINTIFF HAS BEEN ADVERSELY AFFECTED BY THE WITNESS POLICY WHICH RESULTED IN TWO SEPERATE DISCIPLINARY HEARINGS FOR THE SAME EXACT IN-FRACTION WHICH PLAINTIFF WAS UNJUSTLY PUNISHED FOR BY DEFENDANTS BROOKMAN AND HART.

13. THE PLAINTIFF ALSO POINTS OUT THAT THERE WAS NO DIFFERENCE WHATSOEVER IN THE EVIDENCE PRESENTED AT PLAINTIFF'S SECOND DISCIPLINARY HEARING. DESPITE THE FAILURE TO PRODUCE ANY NEW EVIDENCE, PLAINTIFF CONTENDS THAT HE WAS FOUND GUILTY OF THE SAME EXACT OFFENSE WHICH HAD RECENTLY BEEN EXPUNGED BY THE SAME DEFENDANTS BROOKMAN AND HART ON MARCH 15, 2017.

14. DEFENDANTS BROOKMAN AND HART HAVE MADE A QUESTIONABLE INQUIRY BASED ON THE LACK OF EVIDENCE AND INFORMATION THAT WAS PROVIDED TO THEM BY

(6.)
**A.164**

THE INTELLIGENCE UNIT, SO NOW THEY BOTH ALLEGE THAT THEY DO NOT RECALL WHETHER OR NOT THEY [PERSONALLY] REVIEWED THE QUESTIONNAIRE, WHICH WAS THE BASIS FOR DISCIPLINARY TICKET 201700365/1-MEN AND 201700409/2-MEN. DEFENDANTS FURTHER PROVIDE, THAT ANY EVIDENCE WOULD HAVE BEEN INCLUDED IN THE BASIS FOR "DECISION" SECTION OF THE ADJUSTMENT COMMITTEE FINAL SUMMARY REPORT. HOWEVER, ON PAGE-4, PARAGRAPH 16, OF DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR SUMMARY JUDGMENT. BOTH DEFENDANT'S CLEARLY ARGUE THAT "[THEY]" "ONLY MADE A RECOMMENDATION REGARDING IMPOSING DISCIPLINARY ACTION ON PLAINTIFF." AND "THAT THE CHIEF ADMINISTRATIVE OFFICER, THE WARDEN, MAKES THE FINAL DETERMINATION REGARDING WHAT DISCIPLINARY ACTION THE INCARCERATED PERSON RECEIVES." AS PREVIOUSLY MENTIONED, THE ULTIMATE DECISION ON WHAT DISCIPLINARY ACTION WAS TAKEN FALLS ON THE C.A.O., THE WARDEN, BUT THERE IS CLEARLY NO SEPERATION OF POWERS BETWEEN THE MEMBERS OF THE ADJUSTMENT COMMITTEE AND THE WARDEN BECAUSE WHATEVER RECOMMENDATION IS MADE BY THE ADJUSTMENT COMMITTEE THE MAJORITY OF THE TIME THE WARDEN SINGS OFF ON IT.

15. AS FOREMENTIONED, PLAINTIFF IS NOT AWARE OF WHAT WRITING SAMPLES IF ANY, WERE OBTAINED FROM PLAINTIFF'S MASTER FILE BY THE INTEL UNIT. AS A MATTER OF FACT, PLAINTIFF ASKED DEFENDANTS BROOKMAN AND HART TO SHOW HIM ALL THE EVIDENCE AGAINST

(7.)

**A.165**

HIM, INCLUDING THE WRITING SAMPLES THAT WERE
COMPARE TO THIS SO CALL "LATIN FOLK" QUESTIONNAIRE,
BUT BOTH DEFENDANTS BROOKMAN AND HART IGNORED
PLAINTIFF'S REQUEST AND INSTEAD FOUND PLAINTIFF
GUILTY OF THE OFFENSE REGARDING DISCIPLINARY TICKET
201700409 / L-MEN.

16. FURTHERMORE, IN ACCORDANCE WITH THE CONSTITUTIONAL
MANDATES AND DISCIPLINARY PROCEDURES AS DESCRIBED IN
ILCS 5/3-8-5, THE ILLINOIS DEPARTMENT OF CORRECTIONS
HAS ESTABLISHED PROCEDURES WHICH THE ADJUSTMENT
COMMITTEE MUST FOLLOWED PRIOR TO THE IMPOSITION OF
DISCIPLINE. IN PLAINTIFFS CASE, HIS RIGHTS CONCER-
NING THE FOURTEENTH AMENDMENT CONCERNING DISCIPLINARY
PROCEDURES WERE VIOLATED BY THE INTELLICENCE UNIT,
ADJUSTMENT COMMITTEE CHAIRPERSONS BROOKMAN AND
HART AND THE WARDEN AT THE FIRST STEP, WHICH WAS
PLAINTIFFS DISCIPLINARY REPORT WHICH DOES NOT STAND ON
ITS OWN IF CHALLENGED BY THIS COURT. IT CAN BE ARGUED
THAT PRISON OFICIALS, PARTICULARLY, ( MENARD INTELLICENCE
UNIT), ALSO VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS BY
NOT PRESENTING ANY EVIDENCE TO SUPPORT PLAINTIFF'S IN-
VOLEMENT. HERE, PLAINTIFF HAS CLAIMED FROM THE BEGINNING
OF HIS DISCIPLINARY PROCESS THAT HE HAS BEEN DENIED
DUE PROCESS BY DEFENDANTS BROOKMAN AND HART DURING
BOTH OF HIS DISCIPLINARY HEARINGS DUE TO BEING FOUND

(B.)

**A.166**

GUILTY ON THE BASIS OF INSUFFICIENT EVIDENCE. IN THIS
CASE, THE "SOME EVIDENCE" STANDARD HAS NOT BEEN MET ES-
PECIALLY WHERE THE ONLY EVIDENCE ALLEGED WERE WRITING
SAMPLES ALLEGEDLY OBTAINED FROM PLAINTIFFS PRISON
MASTER FILE. THESE WRITING SAMPLES WERE NEVER PROVIDED
TO PLAINTIFF FOR HIS REVIEW, EVEN AFTER PLAINTIFF RE-
QUESTED TO BE GIVEN AN ADEQUATE OPPORTUNITY TO SEE
THESE WRITING SAMPLES ALONG WITH THE QUESTIONNAIRE
IN ORDER TO PREPARE HIS DEFENSE. PLAINTIFF ASKED
FOR THIS MATERIAL IN BOTH OF HIS DISCIPLINARY HEARINGS,
AND BOTH TIMES HE WAS DENIED THIS PRIVILEDGE BY
DEFENDANT'S BROOKMAN AND HART.

17. ON MAY 24, 2017, PLAINTIFF SUBMITTED A GRIEVANCE
TO THE FACILITY LEVEL REGARDING THE DISCIPLINARY REPORT,
GRIEVANCE NO. 18-6-17. NOW, TO BE CLEAR, PLAINTIFF SUBMITTED
A GRIEVANCE REGARDING THE DISCIPLINARY REPORT AND TICKET
HE RECEIVED DATED MARCH 17, 2017 AND NOT DATED MARCH
09, 2017 AS BOTH DEFENDANTS BROOKMAN AND HART STATED
IN PARAGRAPH 24., PG 6, IN THEIR MEMORANDUM OF LAW IN
SUPPORT OF SUMMARY JUDGMENT.

18. IN THIS GRIEVANCE, PLAINTIFF SOUGHT TO BE RE-
LEASED FROM SEGREGATION, TICKET 201700409/1-MEN BE EXPUNGED,
HIS MONTHLY PAYROLL BE [RESTORED], AND THAT HE NOT BE RE-
TALIATED AGAINST FOR FILING THE GRIEVANCE. (EXHIBIT-G)

(9.)

**A.167**

19. ON JUNE 6, 2017, GRIEVANCE 18-6-17 WAS RECEIVED BY GRIEVANCE OFFICE.

20. ON JUNE 8, 2017, THE GRIEVANCE WAS RESPONDED TO BY GRIEVANCE OFFICER KELLY PIERCE.

21. ALTHOUGH THE INSUFFICIENCY OF EVIDENCE CLEARLY PROVED PLAINTIFF INNOCENT OF THE INFRACTIONS, GRIEVANCE OFFICER PIERCE RECOMMENDED PLAINTIFF'S GRIEVANCE BE AFFIRMED AND THAT TICKET # 201700409/1 MEN BE EXPUNGED IN ACCORDANCE WITH DR 504.

22. ON JUNE 15, 2017, THE CHIEF ADMINISTRATIVE OFFICER, THE WARDEN, RECEIVED THIS GRIEVANCE AND ON JUNE 20, 2017, CONCURRED WITH THE DECISION OF THE GRIEVANCE OFFICE.

23. PLAINTIFF DID NOT APPEAL THIS DECISION TO THE DIRECTOR.

## ARGUMENT

I. DEFENDANTS KENT BROOKMAN AND JASON HART ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOUR- TEENTH AMENDMENT DUE PROCESS CLAIM.

PLAINTIFF CLAIMS THAT BOTH DEFENDANTS KENT BROOKMAN AND JASON HART DEPRIVED HIM OF LIBERTY IN- TEREST FOR FINDING PLAINTIFF GUILTY ON THE SAME CHARGE WHICH THEY HAD PREVIOUSLY EXPUNGED AT THE FIRST AD-

(10.)

**A.168**

JUSTMENT COMMITTEE HEARING HELD ON MARCH 15, 2017, AND FOR FAILING TO PROVIDE HIM WITH AN ADEQUATE OPPORTUNITY TO PREPARE HIS DEFENSE BY NOT PRODUCING THE ALLEGED DOCUMENTS WHICH WERE THE BASIS OF THE CHARGES AND FOR NOT PRODUCING THE WRITING SAMPLES THAT WERE ALLEGEDLY OBTAINED FROM PLAINTIFF'S PRISON MASTER FILE. NOW, BOTH DEFENDANTS CLAIM THAT IN THE CONTEXT OF A PRISON DISCIPLINARY HEARING, DUE PROCESS REQUIRES THAT THE PRISONER RECEIVE A WRITTEN NOTICE OF THAT CLAIMED VIOLATION AT LEAST 24 HOURS BEFORE THE HEARING. HOWEVER, IN PLAINTIFF'S CASE, HE WAS PLACED IN SEGREGATION HOURS AFTER HIS FIRST TICKET WAS EXPUNGED AND NEVER SERVED AN INVESTIGATIVE REPORT WITHIN 24 HOURS THAT INFORMED PLAINTIFF OF THE REASONS WHY HE WAS BEING PLACED IN SEGREGATION. IT WAS NOT UNTIL PLAINTIFF WAS SERVED WITH THE SECOND TICKET # 201700409/1 MEN ON MARCH 17, 2017 THAT HE UNDERSTOOD WHY HE WAS BEING DETAINED IN SEGREGATION.

HERE THERE IS AMPLE EVIDENCE THAT THE CONDUCT OF BOTH DEFENDANTS BROOKMAN AND HART VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS DURING BOTH DISCIPLINARY HEARINGS FOR THE SAME EXACT INFRACTION. DUE PROCESS REQUIRES AN OPPORTUNITY TO CALL WITNESSES TO TESTIFY AT A DISCIPLINARY HEARING. DR 504 ADMINISTRATION OF DISCIPLINE (ADJUSTMENT COMMITTEE SUMMARY, PAGES 36-37.38). " THE ADJUSTMENT COMMITTEE SHALL CONSIDER ANY STATEMENTS OF WITNESSES WITH RELEVANT

KNOWLEDGE OF THE INCIDENT WHO ARE REASONABLY AVAILABLE.
THE ADJUSTMENT COMMITTEE OR ITS HEARING INVESTIGATOR MAY
INTERVIEW WITNESSES AND PREPARE OR REVIEW SUMMARIES OF
THEIR TESTIMONY PRIOR TO, AT, OR SUBSEQUENT, TO THE HEARING."
(EXHIBIT-E, PG 36) NOW, "IF THE REQUEST FOR WITNESSES IS RE-
CEIVED PRIOR TO THE ADJUSTMENT COMMITTEE, BUT THE ADJUSTMENT
COMMITTEE DETERMINES THE WITNESS DO NOT NEED TO BE CONTACTED,
A REASON MUST BE PROVIDED." (EXHIBIT-E, PG 37) IN THIS CASE,
BOTH DEFENDANT'S, NEVER PROVIDED PLAINTIFF A REASON AS
TO WHY HIS WITNESS WAS NOT CONTACTED, AS PREVIOUSLY
STATED, "BOTH DEFENDANTS PLAINLY IGNORED PLAINTIFF'S
REQUEST FOR HIS WITNESS TO BE PRESENT DURING HIS FIRST
AND SECOND ADJUSTMENT COMMITTEE HEARINGS.

    MOREOVER, CITING DR 504, "THE ADJUSTMENT COMMITTEE DOES
NOT NEED TO PROVIDE A REASON FOR DELETING A CHARGE, UNLESS THE
DELETION IS BASED ON EXONERATING EVIDENCE WHICH SHOULD BE EX-
PLAINED TO THE OFFENDER AND DOCUMENTED." IN THIS CASE, DEFENDANTS
BROOKMAN AND HART "EXPUNGED" PLAINTIFF'S FIRST TICKET # 201700365(1
MEN, BUT NEVER PROVIDED PLAINTIFF WITH AN EXPLANATION FOR THEIR
EXPUNGEMENT, EITHER IN PERSON OR IN THEIR FINAL SUMMARY REPORT.
NOW, THERE IS A GOOD CHANCE THAT IF BOTH DEFENDANTS WOULD
HAVE EXPLAINED THEIR REASONS FOR EXPUNGING PLAINTIFFS CHARGE
ON THEIR FINAL SUMMARY REPORT, PLAINTIFF WOULD HAVE NEVER
BEEN RECHARGED FOR THE SAME EXACT VIOLATION NOR PLACED
IN SEGREGATION FOR THREE LONG MONTHS. THE DISCIPLINE

THAT PLAINTIFF RECEIVED AS A RESULT OF BEING RECHARGED FOR THE SAME EXACT VIOLATION AND PLACED IN SEGREGATION FOR THREE MONTHS DEFINITELY IMPOSED AN ATYPICAL AND SIGNIFICANT HARDSHIP ON PLAINTIFF. CLEARLY, PLAINTIFF FALLS UNDER THE TWO-PRONG ANALYSIS. FIRST, PLAINTIFFS COMBINED IMPORT OF THE DURATION OF THE SEGREGATED CONFINEMENT. SECOND, CONDITIONS ENDURED BY THE PRISONER DURING THAT PERIOD. AS A RESULT OF BEING DENIED DUE PROCESS BY BEING RECHARGED OF THE SAME INSTITUTIONAL VIOLATION AND BEING PUNISHED WITH THREE MONTHS SEGREGATION, PLAINTIFF'S DUE PROCESS WAS VIOLATED IN THAT THE CONDITIONS OF HIS CONFINEMENT WAS INHUMANE, IN WHICH THE TOILET TO HIS CELL WAS LEAKING UNDERNEATH WITH TOILET BACKFLUSH, THERE WERE SIGNS OF MOLD AND MILDEW AND INSECTS EVERYWHERE, PLAINTIFFS FURTHER ALLEGES THAT IT TOOK OFFICERS THREE TO FOUR DAYS BEFORE HE RECEIVED HIS MATTRESS AND BED LINEN AND PROPERTY, INCLUDING HIS LEGAL PAPERS. IN BRIEF, DEFENDANT'S ALLEGE THAT PLAINTIFF HAS NOT PROVIDED ANY FACTS TO SUPPORT HIS ALLEGATIONS OF INHUMANE CONDITIONS, THERE ARE SEVERAL DOCUMENTS THAT PLAINTIFF IS FURNISHING TO SUPPORT THE ALLEGATIONS OF CRUEL AND UNUSUAL PUNISHMENT. FIRST, IN PLAINTIFFS 42 U.S.C. 1983 CLAIM UNDER, (IV STATEMENT OF CLAIM) PLAINTIFF INCLUDED THIS LEGAL ARGUMENT. AND SECONDLY, IN PLAINTIFF LETTER TO THE WARDEN OF MENARD CORRECTIONAL CENTER, IT CLEARLY SUPPORTS THESE ALLEGATIONS. (EXHIBIT - H)

II. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

IN ORDER TO DETERMINE WHETHER A CORRECTIONAL OFFICER IS ENTITLED TO QUALIFIED IMMUNITY, A TWO PART STEP IS REQUIRED: (1) WHETHER A CONSTITUTIONAL RIGHT WOULD HAVE BEEN VIOLATED ON THE FACTS ALLEGED, AND (2) WHETHER THE RIGHT ALLEGED TO HAVE BEEN VIOLATED WAS CLEARLY ESTABLISHED. RICHARDSON V. MCKNIGHT, 117 S.CT. 2100, 2102. THE QUALIFIED IMMUNITY DOCTRINE PROTECTS GOVERNMENT OFFICIALS FROM LIABILITY FOR CIVIL DAMAGES WHEN THEIR CONDUCT DOES NOT VIOLATE CLEARLY ESTABLISHED STATUTORY OR CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE PERSON WOULD HAVE KNOWN; IF THE RIGHTS WERE CLEARLY ESTABLISHED, THE OFFICIAL MAY BE LIABLE FOR MONETARY DAMAGES AND THE SUIT PROCEEDS TO THE NEXT STAGE, BUT IF THE RIGHTS WERE NOT CLEARLY ESTABLISHED, THEN THE OFFICIAL IS IMMUNE FROM SUIT AND THE CLAIM IS DISMISSED. BIRDO V. DAVE GOMEZ, 214 F. SUPP. 3d 709 (2016). TO BE CLEARLY ESTABLISHED AT THE TIME OF THE CHALLENGED CONDUCT, THE CONTOURS OF THE STATUTORY OR CONSTITUTIONAL RIGHT MUST BE SUFFICIENTLY CLEAR THAT EVERY REASONABLE OFFICIAL WOULD HAVE UNDERSTOOD THAT WHAT HE IS DOING VIOLATES THAT RIGHT AND EXISTING PRECEDENT MUST HAVE PLACED THE STATUTORY OR CONSTITUTIONAL QUESTION BEYOND DEBATE. BIRDO V. DAVE GOMEZ, 214 F SUPP. 3d 709 (2016). UNDER THE FIRST PRONG OF THE ANALYSIS, THE FACTS ALLEGED HERE CLEARLY GIVE RISE TO A CONSTI- TUTIONAL VIOLATION. AS MENTIONED PREVIOUSLY, BOTH

(14.)
**A.172**

DEFENDANTS BROOKMAN AND HART APPARENTLY DID NOT FOLLOW
THE ILLINOIS DEPARTMENT OF CORRECTIONS DR 504 ADMINISTRATION
OF DISCIPLINE PROCEDURE. SEVERAL DISCIPLINARY HEARINGS WERE
HELD FOR PLAINTIFF WHO WAS ACCUSED AND EVENTUALLY FOUND
NOT GUILTY OF 205/ SECURITY THREAT GROUP OR UNAUTHORIZED ORGA-
NIZATIONAL ACTIVITY AND BASED ON THESE FINDINGS TICKET #
201700365|1 HEN WAS EXPUNGED. IN SPITE OF THIS TICKET BEING
EXPUNGED, SEVERAL DAYS LATER PLAINTIFF WAS PLACED IN
SEGREGATED CONFINEMENT AND GIVEN ANOTHER TICKET #
2017004091| HEN FOR THE SAME EXACT PRISON VIOLATION. FURTHER,
PLAINTIFF WAS RETRIED BY BOTH DEFENDANTS WITH THE SAME
FAULTY AND QUESTIONABLE EVIDENCE, BUT THIS TIME AROUND A
DIFFERENT OUTCOME WAS REACHED WHICH CLEARLY SHOWS THAT
BOTH DEFENDANTS PARTICIPATED DIRECTLY WITH THE PRISON
INTELLIGENCE UNIT TO FIND PLAINTIFF GUILTY OF THE SAME
VIOLATION WHICH THE EVIDENCE AGAINST PLAINTIFF WAS
INSUFFICIENT TO PERMIT A FINDING OF GUILTY. IN THIS
CASE, IT IS CLEAR THAT DEFENDANTS BROOKMAN AND HART CLEARLY
UNDERSTOOD THAT WHAT THEY WERE DOING VIOLATED PLAINTIFFS
CONSTITUTIONAL RIGHTS. IT COULD BE SAID WITH FAIR ASSURANCE
THAT REGARDING THE CONSTITUTIONALITY OF DISCIPLINARY HEARINGS,
PLAINTIFF WAS FLAT OUT DEPRIVED OF A FAIR ADJUSTMENT
COMMITTEE HEARING, ACTUALLY TWO SEPERATE HEARINGS. IT HAS
BEEN SHOWN THAT BOTH DEFENDANTS DID NOT FOLLOW PROCEDURE
AND DENIED PLAINTIFF DUE PROCESS. THEREFORE BOTH DEFENDANTS

(15.)

**A.173**

ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

## CONCLUSION

BOTH DEFENDANTS KENT BROOKMAN AND JASON HART ARE NOT ENTITLED TO SUMMARY JUDGMENT. CLAIMS AGAINST BOTH DEFENDANTS ARE NOT PROTECTED UNDER QUALIFIED IMMUNITY. IN THIS CASE, PLAINTIFF HAS PROVEN WITH CLARITY OF LAW THE NECESSARY ELEMENTS OF HIS CLAIMS. PLAINTIFF HAS PROVEN THAT DEFENDANTS BROOKMAN AND HART VIOLATED PLAINTIFFS FOURTEENTH AMENDMENTS RIGHTS AND DENIED HIM DUE PROCESS.

WHEREFORE, FOR THE ABOVE AND FOREGOING REASONS, PLAINTIFF NOBERTO TORRES RESPECTFULLY ASKS THIS HONARABLE COURT TO DENY DEFENDANTS MOTION FOR SUMMARY JUDGMENT.

RESPECTFULLY SUBMITTED,

/S/ _____

NOBERTO TORRES
PLAINTIFF, PRO-PER

NOBERTO TORRES #R74153
PINCKNEYVILLE CORRECTIONAL CENTER
5835 STATE ROUTE 154
PINCKNEYVILLE, IL 62274

(16) **A.174**

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF PERRY   )


<u>AFFIDAVIT OF SERVICE</u>


    I HEREBY CERTIFY THAT ON THE __4TH__ OF JANUARY, 2022, THE FORGOING DOCUMENT, <u>PLAINTIFFS RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT</u>, WAS ELECTRONICALLY FILED WITH THE CLERK VIA THE SYSTEM SET IN PLACE AT THE PINCKNEYVILLE CORRECTIONAL CENTER'S LAW LIBRARY.


        BY: S/ _____
              NOBERTO TORRES
              PLAINTIFF, PRO-PER


**A.175**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

NOBERTO TORRES,                      )
        PLAINTIFF,                   )
                                     )    CASE NO.: 19-CV-248-SPM
V.                                   )
                                     )
KENT BROOKMAN, et al,.               )
        DEFENDANTS.                  )

AFFIDAVIT OF NOBERTO TORRES

1. I, NOBERTO TORRES, AM COMPETENT AND CAPABLE OF MAKING THIS AFFIDAVIT.

2. I AM AN INMATE INCARCERATED AT PINCKNEYVILLE CORRECTIONAL CENTER AND HAVE FILED SUIT IN THIS COURT UNDER 42 U.S.C. 1983 ALLEGING FOURTEENTH AMENDMENTS RIGHTS AND DUE PROCESS VIOLATIONS.

3. ON MARCH 15, 2017, PLAINTIFF WAS ISSUED AN IDR FOR 2051 SECURITY THREAT GROUP OR UNATHORIZED ORGANIZATIONAL ACTIVITY. BASED ON LACK OF EVIDENCE THE TICKET WAS EXPUNGED BY ADJUSTMENT COMMITTEE CHAIRPERSONS KENT BROOKMAN AND JASON HART.

4. BESIDES TICKET # 20170036511-MEN BEING EXPUNGED, SEVERAL DAYS LATER PLAINTIFF WAS SERVED ANOTHER IDR FOR THE SAME EXACT INFRACTION. TICKET # 20170040911-MEN.

**A.176**

5. ON MARCH 22, 2017, THE ADJUSTMENT COMMITTEE HELD ANOTHER DISCIPLINARY HEARING FOR THE SAME EXACT OFFENSE. BOTH DEFENDANTS BROOKMAN AND HART PRESIDED OVER BOTH HEARINGS WITH DIFFERENT OUTCOMES.

6. AS A RESULT OF THE SECOND HEARING, THE FOLLOWING DISCIPLINARY ACTION WAS RECOMMENDED BY DEFENDANTS: 3 MONTHS OF C-GRADE, 3 MONTHS OF COMMISSARY RESTRICTION, 6 MONTHS OF CONTACT VISIT RESTRICTION AND THE MOST SEVERE PUNISHMENT, 3 MONTH OF SEGREGATED CONFINEMENT.

7. PLAINTIFF DID REQUEST A WITNESS REGARDING HIS FIRST ADJUSTMENT COMMITTEE HEARING, BUT DEFENDANTS BROOKMAN AND HART DEPRIVED PLAINTIFF OF THIS RIGHT.

8. ON PLAINTIFFS SECOND HEARING ON MARCH 17, 2017, HE FACED THE SAME EXACT CHARGES, PLAINTIFF CONTINUE TO MAINTAIN HIS INNOCENCE AND REQUESTED TO DEFENDANTS THAT THE HEARING INVESTIGATOR INTERVIEW HIS FORENAMED WITNESS, AND ALSO TO INVESTIGATE THE VALIDITY OF THE HANDWRITTEN "LATIN FOLK" QUESTIONNAIRE.

9. AS MENTIONED IN HIS COMPLAINT, PLAINTIFF IS NOT AWARE OF WHAT WRITING SAMPLES IF ANY, WERE OBTAINED FROM PLAINTIFFS MASTER FILE BY THE INTEL UNIT AT MENARD CORRECTIONAL CENTER.

10. DURING BOTH DISCIPLINARY HEARINGS PLAINTIFF ASKED DEFENDANTS TO SHOW HIM THE WRITING SAMPLES THAT WERE COMPARE TO THIS "LATIN FOLK" QUESTIONNAIRE, BOTH DEFENDANTS

IGNORE HIS REQUEST AND INSTEAD FOUND PLAINTIFF GUILTY OF THE SECOND INFRACTION.

11. ON MAY 24, 2017, PLAINTIFF SUBMITTED A GRIEVANCE REGARDING TICKET # 201700409/1 MEN. PLAINTIFF SOUGHT TO BE RELEASED FROM SEGREGATION AND TICKET BE EXPUNGED.

12. ON JUNE 8, 2017, OFFICER KELLY PIERCE RESPONDED TO PLAINTIFFS GRIEVANCE.

13. EVEN THOUGH THE INSUFFICIENCY OF EVIDENCE PROVED PLAINTIFF INNOCENT, C/O PIERCE RECOMMENDED GRIEVANCE BE AFFIRMED, BUT THAT TICKET # 201700409/1 MEN BE EXPUNGED IN ACCORDANCE WITH DR 504.

14. ON JUNE 15, 2017, THE CHIEF ADMINISTRATIVE OFFICER, THE WARDEN, CONCURRED WITH THE GRIEVANCE OFFICER.

15. PLAINTIFF DID NOT APPEAL THIS DECISION TO THE DIRECTOR BUT IS NOW RAISING A CLAIM OF FOURTEENTH AMENDMENT AND DUE PROCESS VIOLATIONS.

/S/ _____

ROBERTO TORRES
PLAINTIFF, PRO-PER

ROBERTO TORRES # R74133
PINCKNEYVILLE CORRECTIONAL CENTER
5835 STATE ROUTE 154
PINCKNEYVILLE IL 62274

**A.178**

STATE OF ILLINOIS        )
                         ) - SS
COUNTY OF PERRY          )


UNDER PENALTIES AS PROVIDED BY LAW

PURSUANT TO 735 IL CS 5/1 109, I CERTIFY THAT THE STATE-

MENTS SET FORTH HEREIN ARE TRUE AND CORRECT.


DATE  1-4-22

                                   /s/ _____
                                        NOBERTO TORRES

                                        PLAINTIFF, PRO-PER

**A.179**



Scanned at Pinckneyville CC and e-mailed
___1/5/22___ by _CB_ _24_ pages
Date        Initials  No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

_Norberto Torres_          _R74153_
Name                        ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?          Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?          Yes or (No)

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?          (Yes) or No

    If yes, please list case number:   _19-248-SPM_

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted:          _24_

5.  If multiple documents, please identify each document and the number of pages for each document.  For example:  Motion to Proceed In Forma Pauperis, 6 pages;  Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| Plaintiffs Response to Defendants Motion for Summary Judgment | 3 |
| Plaintiff's Memorandum of Law | 21 |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.   Discovery materials sent to the Court will be returned unfiled.

**A.180**

Scanned at Pinckneyville CC and e-mailer

_____10/17/22_____ by _CB_ _2_ pages
       Date              Initials  No.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


NOBERTO TORRES,                    )
          PETITIONER               )
                                   )
                                   )    CASE NO. 3:19-cv-00248-SPM
                                   )
                                   )
BROOKMAN et, al.                   )
          RESPONDENT.              )


## CERTIFICATE OF SERVICE


    I hereby certify that on October____ of 2022 the foregoing document,
Plaintiff's Notice Of Appeal was electronically sent to The United States District
Court by the system set in place at Pinckneyville Correctional Center's Law Library.


                                   Respectfully Submitted,


                                   _____
NOBERTO TORRES,#R-74153                  NOBERTO TORRES
PINCKNEYVILLE, CORRECTIONAL CENTER
5835 State Route 154                     PLAINTIFF, PRO-PER
Pinckneyville, Il 62274


**A.181**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

NOBERTO TORRES                    )
_____,          )
                                  )
                  PETITIONER      )        NOTICE OF APPEAL
VS.                               )        CASE NO. 3:19-cv-00248-SPM
                                  )
                                  )
BROOKMAN et, al.                  )
_____,          )
                  RESPONDENT

NOTICE OF APPEAL

Notice is hereby given that NOBERTO TORRES , above named, appeals to the United

States Court of Appeals for the 7th Circuit from the SOUTHERN DISTRICT OF ILLINOIS

ON A JUDGEMENT ENTERED AND APPROVED BY JUDGE STEPHEN P. McGLYNN ON 9/15/2022

_____

_____

(attach extra page if necessary)

entered in this action on _____9/15/2022_____ .

Respectfully Submitted,

/s/ _____

Subscribed and Sworn To Before Me

This _14th_ Day of _October_ , 200_2_

_____
NOTARY    PUBLIC    SEAL

DANA NEWTON
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Aug 19, 2024

**A.182**



Scanned at Pinckneyville CC and e-mailed

10/17/22 by _CB_ ___2___ pages
Date          Initials    No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

## ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

_Norberto Torres_
Name

_R74153_
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?        Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?        Yes or (No)

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here:   _____

3.  Should this document be filed in a pending case?        (Yes) or No

    If yes, please list case number:  _19-CV-00248-SPM_

    If yes, but you do not know the case number mark here:   _____

4.  Please list the total number of pages being transmitted:   _2_

5.  If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

Name of Document                                Number of Pages

_Notice of Appeal_                              _2_

_____                                _____

_____                                _____

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on March 21, 2024, I electronically filed the foregoing Appendix via ECF, and service was accomplished on counsel of record by that means.

*s/ Matthew L. Farley*

Matthew L. Farley