No. 22-2830

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| NORBERTO TORRES, | ) | Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Illinois |
| | ) | |
| v. | ) | |
| | ) | No. 3:19-cv-00248-SPM |
| KENT BROOKMAN and JASON | ) | |
| HART, | ) | The Honorable |
| | ) | STEPHEN P. McGYLNN, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

**KAITLYN N. CHENEVERT**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov

# TABLE OF CONTENTS

*Page*

JURISDICTIONAL STATEMENT .................................................................................. 1

ISSUES PRESENTED FOR REVIEW ............................................................................. 3

STATEMENT OF THE CASE ........................................................................................ 4

SUMMARY OF ARGUMENT ....................................................................................... 12

ARGUMENT ................................................................................................................. 13

I.      The *de novo* standard of review applies. .......................................................... 13

II.     The district court properly granted summary judgment to Brookman and
        Hart on Torres's procedural due process claim. ................................................ 13

        A.      Neither the duration of Torres's time in segregation nor the conditions
                of the cell implicated a liberty interest giving rise to due process
                protections. ............................................................................................. 14

        B.      Torres's remaining arguments on the issue of a liberty interest do not
                warrant reversal of the district court's judgment. .................................. 23

        C.      Even if Torres had a protected liberty interest, he received all the
                process that was due. .............................................................................. 25

III.    In the alternative, Brookman and Hart are entitled to qualified immunity ... 28

CONCLUSION ............................................................................................................. 31

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Adams v. Reagle,*
    91 F.4th 880 (7th Cir. 2024) ..................................................................14, 26, 27, 30

*Amadio v. Ford Motor Co.,*
    238 F.3d 919 (7th Cir. 2001) ...............................................................................13, 25

*Anderson v. Romero,*
    72 F.3d 518 (7th Cir. 1995) .......................................................................................19

*Basemore v. Brookman,*
    No. 16-cv-562, 2018 WL 1366587 (S.D. Ill. Mar. 16, 2018) .......................................20

*Beaman v. Freesmeyer,*
    776 F.3d 500 (7th Cir. 2015) .....................................................................................29

*Bernstein v. Bankert,*
    733 F.3d 190 (7th Cir. 2013) .....................................................................................26

*Bivens v. Trent,*
    591 U.S. 555 (7th Cir. 2010) .....................................................................................23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................................................18, 20

*Chambers v. Sood,*
    956 F.3d 979 (7th Cir. 2020) .......................................................................................2

*Chasensky v. Walker,*
    740 F.3d 1088 (7th Cir. 2014) ..............................................................................28, 29

*Chemsource, Inc. v. Hub Group, Inc.,*
    106 F.3d 1358 (7th Cir. 1997) ...................................................................................17

*Daniels v. Williams,*
    474 U.S. 327 (1986) ...................................................................................................22

*Dockery v. Blackburn,*
    911 F.3d 458 (7th Cir. 2018) .....................................................................................28

*Hardaway v. Meyerhoff*,
   734 F.3d 740 (7th Cir. 2013).................................................................15, 24

*Hewitt v. Helms*,
   459 U.S. 460 (1983) ..................................................................................26

*Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.*,
   988 F.3d 948 (7th Cir. 2021) .....................................................................13

*Isby v. Brown*,
   856 F.3d 508 (7th Cir. 2017).................................................................14, 15

*Jackson v. Humphrey*,
   No. 5:14-cv-00376 (MTT), 2015 WL 7568653 (M.D. Ga. Nov. 24, 2015)...................23

*Jackson v. Humphrey*,
   No. 5:14-cv-00376-MTT-CHW, 2015 WL 7566528 (M.D. Ga. Oct. 20, 2015)............23

*Kervin v. Barnes*,
   787 F.3d 833 (7th Cir. 2015)......................................................................25

*Kidwell v. Eisenhauer*,
   679 F.3d 957 (7th Cir. 2012)......................................................................13

*Lisle v. Welborn*,
   933 F.3d 705 (7th Cir. 2019).........................................................15, 16, 29

*Marion v. Columbia Corr. Inst.*,
   559 F.3d 693 (7th Cir. 2009)...............................................................8, 15, 24

*McCoy v. Atherton*,
   818 Fed. App'x 538 (7th Cir. 2020) ......................................................16, 29

*McPherson v. McBride*,
   188 F.3d 784 (7th Cir. 1999)......................................................................27

*Michael v. St. Joseph Cty.*,
   259 F.3d 842 (7th Cir. 2001)................................................................20, 21

*Modrowski v. Pigatto*,
   712 F.3d 1166 (7th Cir. 2013)...............................................................13, 17

*Neal v. Veath,*
  No. 14-cv-1185, 2017 WL 1132559 (S.D. Ill. Mar. 27, 2017) ..................................... 20

*Obriecht v. Raemisch,*
  565 F. App'x 535 (7th Cir. 2014) ..................................................................... 22

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ..................................................................................... 28

*Sandin v. Conner,*
  515 U.S. 472 (1995) ..................................................................................... 15

*Thomas v. Ramos,*
  130 F.3d 754 (7th Cir. 1997) .......................................................................... 24

*Townsend v. Fuchs,*
  522 F.3d 765 (7th Cir. 2008) .......................................................................... 22

*Waver v. Speedway, LLC,*
  28 F.4th 816, 820 (7th Cir. 2022) ................................................................... 13

*Wilkinson v. Austin,*
  545 U.S. 209 (2005) ..................................................................................... 21

*Williams v. Brown,*
  849 Fed. App'x 154 (7th Cir. 2021) ................................................................. 19

*Wolff v. McDonnell,*
  418 U.S. 539 (1974) ..................................................................................... 22

*Young v. Bailey,*
  No. 8:21-cv-389-WFJ-TGW, 2022 WL 797472 (M.D. Fla. Mar. 16, 2022) ................ 22

**Statutes**

28 U.S.C. § 1291 ............................................................................................. 2

28 U.S.C. § 1331 ............................................................................................. 1

28 U.S.C. § 1915A ........................................................................................... 1

28 U.S.C. § 2107(a) ......................................................................................... 2

42 U.S.C. § 1983 ............................................................................................. 1

**Rules**

7th Cir. R. 28(b) ..................................................................................................... 1

Fed. R. App. P. 4(a)(1)(A) ..................................................................................... 2

Fed. R. Civ. P. 6(a)(1)(c) ....................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 13

Fed. R. Civ. P. 56 ................................................................................... 1, 5, 13, 20

Fed. R. Civ. P. 56(c)(1)(A) ............................................................................. 13, 18

Fed. R. Civ. P. 58 ................................................................................................... 2

# JURISDICTIONAL STATEMENT

The jurisdictional statement of Plaintiff-Appellant Norberto Torres is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees Kent Brookman and Jason Hart provide this statement.

Torres, an inmate in the custody of the Illinois Department of Corrections, filed a complaint in the district court under 42 U.S.C. § 1983, naming as defendants: Kent Brookman, the Chairperson of the Adjustment Committee at Menard Correctional Center; Jason Hart, a hearing officer on the Adjustment Committee at Menard; and Jacqueline Lashbrook, Menard's warden. Doc. 1 at 1-3.[1] Torres alleged that defendants violated the Eighth Amendment to the United States Constitution by subjecting him to unsanitary conditions while he was placed in segregation for three months and violated the Fourteenth Amendment by denying him procedural due process during his Adjustment Committee hearing on a disciplinary ticket. *Id*. at 7-9. The district court screened Torres's complaint under 28 U.S.C. § 1915A and allowed him to proceed on a procedural due process claim against Brookman and Hart and on an Eighth Amendment claim against Lashbrook. Doc. 9 at 4-5. The district court had subject matter jurisdiction over Torres's action under 28 U.S.C. § 1331 because it raised a federal question.

On December 16, 2020, the district court granted summary judgment in favor of Lashbrook under Fed. R. Civ. 56 on Torres's Eighth Amendment claim. Doc. 28.

---

[1] The record on appeal, which is the district court docket, is cited as "Doc. __ at __." Torres's opening brief on appeal is cited as "AT Br. __."

On September 15, 2022, the district court granted summary judgment in favor of Brookman and Hart on the due process claim, Doc. 48, thereby disposing of all claims against all parties. That same day, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58. Doc. 49. No motion to alter or amend the judgment was filed.

Torres's notice of appeal was filed on the district court's docket on October 17, 2022. Doc. 50. This was a timely notice of appeal under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because the thirtieth day from the entry of the judgment fell on Saturday, October 15, 2022, and so the time to file a notice of appeal continued to the following Monday, *see* Fed. R. Civ. P. 6(a)(1)(c). This court has jurisdiction over Torres's appeal from a final judgment under 28 U.S.C. § 1291.

Although the district court dismissed Lashbrook without prejudice based on Torres's failure to exhaust his administrative remedies as to his Eighth Amendment claim against her, *see* Doc. 28, there is finality because the district court directed the clerk to "close the case and enter judgment accordingly." Doc. 48 at 10; *see Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (finding appellate jurisdiction where district court dismissed, without prejudice, inmate's case for failure to exhaust administrative remedies and "terminated the case").

# ISSUES PRESENTED FOR REVIEW

1.      Whether the district court properly concluded that, based on the uncontroverted evidence at summary judgment, no reasonable jury could find that the three months that Torres spent in segregation implicated a protected liberty interest entitling him to due process protections.

2.      Whether summary judgment was proper for the additional reason that the undisputed evidence showed that the challenged prison disciplinary hearing satisfied due process requirements where Torres's punishment for the relevant disciplinary charged included, among other things, time in segregation, and where he lost no good conduct credits.

3.      In the alternative, whether Brookman and Hart are entitled to qualified immunity.

## STATEMENT OF THE CASE

### Torres's Complaint and the District Court's Screening Order

Torres alleged in his complaint that, while at Menard, he was issued a disciplinary ticket. Doc. 1 at 6. Two days later, he appeared before the adjustment committee, which was comprised of Brookman and Hart, for a hearing on the disciplinary ticket. *Id*. That ticket was expunged, but he then received a second disciplinary ticket, which was "the same" as the one that had been expunged. *Id*. During the hearing on the second ticket, Brookman and Hart purportedly refused to allow Torres "to have counsel present" and refused to investigate a document that was found at Pontiac Correctional Center and formed the basis of the disciplinary ticket. *Id*. Torres was found guilty of the second disciplinary ticket and given three months in segregation, among other forms of discipline. *Id*. at 14. The second disciplinary ticket was later expunged as well, but only after Torres had spent three months in segregation. *Id*. at 7.

Torres alleged that while he was in segregation, "smelly water" would come out of the bottom of the toilet when it was flushed, as would a "small amount of feces" when he or his cellmate had a bowel movement. *Id*. He alleged that this problem created a "smelly mold" on the side of the toilet. *Id*. He further claimed that he was given no cleaning supplies. *Id*. Torres alleged that Lashbrook told him that "all of this would be taken care of." *Id*. Torress claimed that he was in that cell for two-and-a-half months. *Id*.

Torres brought an Eighth Amendment claim against Lashbrook based on the conditions of his segregation cell, *id*. at 9, and a procedural due process claim against Brookman and Hart for refusing to allow him to "present any defense" at the second hearing and for "failing to investigate" the second disciplinary ticket, *id*. at 8; *see* Doc. 9 at 3.  The district court granted summary judgment in favor of Lashbrook on the Eighth Amendment claim for failure to exhaust administrative remedies, Doc. 28 at 9, and Torres does not challenge that ruling on appeal, *see* AT Br.

**Brookman and Hart's Motion for Summary Judgment**

Brookman and Hart moved for summary judgment on the due process claim under Fed. R. Civ. P. 56, attaching as exhibits to their motion, among other things, Torres's deposition testimony, Doc. 41-1, and the relevant disciplinary tickets, Docs. 41-4, 41-5.  That evidence revealed the following.

The first disciplinary ticket charged Torres with engaging in Security Threat Group ("STG") or unauthorized organizational activity.  Doc. 41-4 at 2.  Specifically, the ticket stated that the "Intel Unit" at Pontiac had received an envelope "filled with handwritten STG material" that had been discovered after searching the cell of an inmate who had just been transferred from Menard.  *Id*.  Included in that envelope was a "handwritten Latin Folk questionnaire," which was given to members of the Latin Folk Union to complete and return "to a designated individual in the cell house."  *Id*.  The disciplinary ticket alleged that Torres had completed one of the questionnaires included in the envelope received by Pontiac's Intel Unit.  *Id*.  Torres

appeared before the adjustment committee, comprised of Brookman and Hart, and the ticket was expunged. *Id*. at 1.

Two days later, Torres was served with a second disciplinary ticket. *Id*. at 4. The second ticket was the same as the first, except for stating that the questionnaire was compared with the handwriting samples in Torres's master file, and "numerous similarities were noted that help[ed] determine that Torres authored the questionnaire." *Id*. at 5. It also noted that Torres was a "self-admitted member of the Maniac Latin Disciples," which "fall[s] under the Latin Folk umbrella[.]" *Id*. The adjustment committee, again comprised of Hart and Brookman, found Torres guilty of the charged offense. *Id*. at 7. Torres filed a grievance regarding the second disciplinary ticket, which was affirmed, and the disciplinary ticket was expunged. *Id*. at 7.

During his deposition, Torres testified that he attended a hearing before Brookman and Hart on the first disciplinary ticket a couple of days after receiving that ticket. Doc. 41-1 at 36:16-25, 37:1-24. Brookman asked Torres if he had ever been to Pontiac, and Torres told him that he had not. *Id*. at 38:5-9. Hart then confirmed that Torres had never been to Pontiac, and they told him the ticket would be expunged. *Id*. at 38:18-23.

Torres testified that when he returned to the cell house, a porter told him that a correctional officer had instructed Torres to "pack it up" to go to segregation for an STG ticket. *Id*. at 38:24-25, 39:1-6. Torres went to segregation and received "the same exact ticket" that had just been heard by the adjustment committee. *Id*. at

39:12-17. Eight or nine days later, he appeared before the adjustment committee, and a "whole bunch of people" were there, including Brookman and Hart. *Id*. at 39:18-20, 40:15-20. Torres pled not guilty and stated that this was the same ticket that had been expunged the week prior. *Id*. at 39:20-22. He also said that he never wrote what he was accused of writing and that he was never at Pontiac, and he requested that Brookman and Hart produce the paperwork that formed the basis of the ticket. *Id*. at 45:7-12. Torres was found guilty of the second ticket and received three months of C grade status, three months in segregation, three months of commissary restrictions, and six months of contact visit restrictions. *Id*. at 44:5-9.

Regarding cell conditions in segregation, Torres testified that "all the toilets and all that in segregation are polluted with insects, infected, mildew, rust," and that he and other inmates were "breathing in rust." *Id*. at 58:2-7. He further testified that "sometimes . . . there was three or four days until we get beds," and he "lost my original case papers to my — documentation to my pending case." *Id*. at 58:8-11. He stated that he was seeking damages related to "[a]ll that with that health-wise and all that." *Id*. at 59:2-9. He further claimed that since he left segregation, his back had been "messed up." *Id*. at 60:3-10. Counsel for defendants asked Torres whether they had discussed all the claims that he was raising, as well as all the information related to damages he might be seeking, and he did not identify any. *See id*. at 59:19-25, 60:1-10.

Brookman and Hart argued in their motion that they were entitled to summary judgment because Torres was not deprived of a liberty interest that

triggered due process protections.  Doc. 41 at 7, 9-10.  They noted that this court has explained that, when determining whether an inmate's time in segregation implicates a liberty interest, courts must consider:  (1) the duration of the segregative confinement and (2) the conditions endured while in segregation.  *Id.* at 9 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)).  Assuming that three months in segregation was enough to satisfy the first prong, Brookman and Hart argued that Torres failed to establish that the conditions he endured in segregation deprived him of a liberty interest.  *Id.* at 9-10.  Specifically, they contended that Torres's claim that his toilet while in segregation was polluted with insects and mildew, that it took him three or four days to receive a bed, and that some of his documents regarding his lawsuits were lost did not implicate a liberty interest.  *Id.* at 10.  Furthermore, even if Torres had been deprived of a liberty interest, he was afforded all the process he was owed.  *Id.* at 7-8.

In the alternative, Brookman and Hart argued that they were entitled to qualified immunity because the evidence at summary judgment showed that they had not violated Torres's constitutional rights.  *Id.* at 11.  And even if they had, those constitutional rights were not clearly established at the time of their conduct.  *Id.*

In response, Torres argued that Brookman and Hart "ignored" his requests for witnesses during both hearings.  Doc. 46 at 15.  Torres also argued that there was "no difference whatsoever" between the evidence presented during the second disciplinary hearing and the first.  *Id.* at 9.  In addition, Torres claimed that he asked to be shown "all of the evidence against him" during the second hearing, including

the writing samples that were compared to the Latin Folk questionnaire, but that his request was denied. *Id*. at 10-11. Torres also argued that his due process rights were violated because he was found guilty despite "insufficient evidence" to support that finding. *Id*. at 11-12. He further claimed that Brookman and Hart violated his due process rights by finding him guilty of the second disciplinary ticket even though the first ticket was expunged, and for failing to provide him an adequate opportunity to prepare for his defense by "not producing the alleged documents which were the basis of the charges" or the writing samples from his master file. *Id*. at 13-14.

As to the conditions of his cell in segregation, Torres asserted that they were inhumane because the toilet was "leaking underneath with toilet backflush," and there were "signs of mold and mildew and insects everywhere." *Id*. at 16. And, he maintained, it took three or four days before he received a mattress, bed linen, and his personal property. *Id*. Finally, Torres argued that Brookman and Hart were not entitled to qualified immunity for reasons similar to those given in his arguments against their motion on the merits. *Id*. at 17-18.

**The District Court's Order Granting Summary Judgment to Brookman and Hart**

The district court granted summary judgment in favor of Brookman and Hart on the due process claim. Doc. 48. The court began by noting that there was a dispute as to whether Torres requested a witness to provide information during the adjustment committee hearings — Torres claimed that he made a written request for an inmate to appear before the hearings, but Brookman and Hart denied that he made those requests. Doc. 48 at 6. The court then "constru[ed] the disputed facts"

in Torres's favor and "presume[d]" that he could show that he "requested a witness but Defendants refused to obtain that person's testimony." *Id.* As a result, the court found that the evidence at summary judgment "might support a finding that Defendants' failure to call or interview his witness amounted to a denial of his procedural due process rights." *Id.* at 8.

But the court ultimately granted summary judgment to Brookman and Hart because there was no evidence establishing that Torres was deprived of a liberty interest protected by due process. *Id.* at 8-10. The district court noted that this court had dismissed due process claims with "relatively short" disciplinary segregation times without inquiring into the conditions during segregation. *Id.* at 8-9. And, the court concluded, "[v]iewed in the context of Plaintiff's 60-year sentence," three months in segregation was a "miniscule" part of Torres's imprisonment. *Id.* at 9.

Turning to the conditions, the court noted that Torres claimed that he was without a mattress or his personal property, including legal papers, for three or four days; "[t]he toilet did not work properly, resulting in mold and mildew in the cell"; and the cell was "infested with insects," though Torres had not "elaborate[d] further on the cell conditions." *Id.* at 9. The court acknowledged that these conditions were substandard but noted that Torres had not alleged that he suffered any physical or mental harm, or substantial risk to his health, because of the conditions in the cell. *Id.* At bottom, the district court concluded that the cell conditions did not amount to an atypical and significant hardship. *Id.* As a result, the court held that no

reasonable jury could find that defendants had violated Torres's due process rights and granted Brookman and Hart's motion for summary judgment. *Id*. at 9-10.

Torres appealed. Doc. 50.

## SUMMARY OF ARGUMENT

This court should affirm summary judgment in favor of Brookman and Hart. Torres's three months in segregation, absent especially harsh conditions, does not implicate a liberty interest protected by due process. And the conditions of the cell, as described by Torres during his deposition — toilets infected with insects, mildew, and rust — do not rise to the level of an atypical and significant hardship.

On appeal, Torres argues that the district court erred in granting summary judgment because he stated that the toilets in the segregation cell secreted feces from the bottom of the toilet when flushed. Torres, however, presented no evidence at summary judgment attesting to those conditions. And he could not rely solely on the allegations to that effect in his complaint to defeat summary judgment. In any event, Torres received all the process he was due because he was given notice of the charges against him and had an opportunity to present his arguments during the hearing.

In the alternative, Brookman and Hart are entitled to qualified immunity because they did not violate any rights that were clearly established at the time of the incident. Indeed, this court has held that similar cell conditions for similar lengths of time did not constitute atypical and significant hardships. Furthermore, even if Torres established a protected liberty interest, Brookman and Hart afforded him all process that he was due.

**ARGUMENT**

## I.     The *de novo* standard of review applies.

 This court reviews *de novo* a district court's grant of summary judgment under Fed. R. Civ. P. 56.  *Waver v. Speedway, LLC,* 28 F.4th 816, 820 (7th Cir. 2022). Summary judgment is proper when the moving party shows "that there is no genuine dispute as to any material fact[.]"  Fed. R. Civ. P. 56(a).  "At summary judgment, the moving party can support its assertions of undisputed facts by citing to record materials, 'including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.'"  *Igasaki v. Ill. Dep't of Fin. & Prof'l Regul.*, 988 F.3d 948, 955 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(c)(1)(A)).  A party may not rely exclusively on allegations in their complaint to defeat summary judgment, *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013), nor may speculation be used "to manufacture a genuine issue of fact," *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001).  On *de novo* review, this court may "affirm on any basis that appears in the record."  *Kidwell v. Eisenhauer*, 679 F.3d 957, 965, n.1 (7th Cir. 2012).

## II.    The district court properly granted summary judgment to Brookman and Hart on Torres's procedural due process claim.

 The district court properly granted summary judgment because Torres failed to present evidence from which a reasonable jury could infer that he suffered an atypical and significant hardship that gave rise to due process protections.  Neither the length of his time in segregation — three months — nor the conditions of his cell

13

rose to the level of an atypical and significant hardship. On appeal, Torres primarily argues that the district court erred in reaching its conclusion because he had said that feces was leaking from the toilet into his cell. But Torres raised those allegations in his complaint only. He did not testify to those conditions at his deposition or present any evidence at summary judgment showing that those conditions were present in his cell. As a result, his allegations cannot defeat Brookman and Hart's motion for summary judgment, and none of Torres's other arguments warrant reversal of the district court's judgment.

In addition, even if Torres had suffered an atypical and significant hardship entitling him to due process protections, summary judgment was still proper. That is because, consistent with *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024), he received all of the process that was due.

### A. Neither the duration of Torres's time in segregation nor the conditions of the cell implicated a liberty interest giving rise to due process protections.

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). To determine whether a plaintiff may succeed on a procedural due process claim, courts consider "whether the plaintiff was deprived of a protected interest," and if so, "what process was due under the circumstances." *Id*.

An inmate's protected liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

(1995). Inmates "do not have a constitutional right to remain in the general population." *Isby*, 856 F.3d at 524. But "avoiding segregation can constitute a protected liberty interest" in some circumstances. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). To determine whether segregation amounts to an atypical and significant hardship, this court looks to the "combined import of the duration of the segregative confinement *and* the conditions endured." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original). "[R]elatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).

The district court correctly determined that, based on the evidence at summary judgment, no reasonable jury could find that Torres had been deprived of a liberty interest. *See* Doc. 48 at 8-9. To begin, the length of Torres's time in segregation, on its own, does not implicate a liberty interest. Torres testified that he spent three months in segregation, Doc. 41-1 at 44:5-9, which, absent harsh conditions, does not implicate a liberty interest. *See Lisle*, 933 F.3d at 721 (four months in segregation "is not so atypical and significantly harsh that it creates a liberty interest); *see also Marion*, 559 F.3d at 697, n.2 (collecting cases holding that 59, 60, 70, and 90 days did not implicate liberty interest).

Nor did the conditions Torres described during his deposition, in conjunction with the duration of his segregation term, implicate a liberty interest. Torres testified that "all" of the toilets in segregation were "polluted with insects, infected,

15

mildew, rust," and claimed that inmates in segregation were "breathing in rust."
Doc. 41-1 at 58:2-7. As in *Lisle* and *McCoy v. Atherton*, 818 Fed. App'x 538, 540-42
(7th Cir. 2020), relied on by the district court, *see* Doc. 48 at 9, this general
description of the segregation cells does not show that Torres was subject to an
atypical and significant hardship. As this court held in *Lisle*, "vague descriptions" of
cell, "including rusty bars and . . . 'corroded feces' in the toilet" do not implicate
liberty interest. 933 F.3d at 721. And in *McCoy*, the court held that a pre-trial
detainee's description of cell as "unsanitary and dangerous" based on stray hairs
near bed, dirty toilet paper on floor, dried urine on toilet seat, soap scum on sink, and
denial of requests for cleaning supplies do not implicate liberty interest. 818 Fed.
App'x at 540-42.

For his part, Torres argues that the district court erred in relying on *Lisle* and
*McCoy*. AT Br. 27-28. Torres argues that his description of his segregation cell was
unlike the "vague" descriptions in *Lisle* because he had "said that feces were expelled
onto his floor every time the toilet was flushed and that he was never permitted
cleaning supplies to remedy this situation himself." *Id*. at 27. Similarly, he argues
that the conditions here were more severe than in *McCoy* because he "testified that a
toilet was actively leaking feces into his cell which was infested with mold, mildew,
and insects." *Id*. at 28.

Torres's arguments lack merit because his core premise — that he testified
that feces was expelled onto the floor of his cell — is incorrect. Although Torres
alleged in his complaint that a "small amount of feces" would come out of the bottom

of the toilet when it was flushed after he or his cellmate had a bowel movement, Doc. 1 at 7, he did not testify to those conditions in his deposition, *see* Doc. 41-1 at 58:2-7 (testifying that "all the toilets and all that in segregation are polluted with insects, infected, mildew, rust").  Indeed, counsel for defendants asked Torres whether they had discussed all the claims that he was raising, as well as all the information related to damages he might be seeking, and in response Torres did not mention feces secreting from the bottom of the toilet.  *See* Doc. 41-1 at 59:19-25, 60:1-10.  The same is true for Torres's claim that he asked for, but was not given, cleaning supplies. Although Torres made that allegation in his complaint, Doc. 1 at 7, he did not testify to that during his deposition, Doc. 41-1 at 58:2-20.

Thus, Torres had the opportunity to present evidence about the conditions of the toilet in segregation, and he did not mention feces or a lack of cleaning supplies. And at summary judgment, Torres was required to cite evidence, not allegations, to defeat Brookman and Hart's motion.  *See Chemsource, Inc. v. Hub Group, Inc*., 106 F.3d 1358, 1361 (7th Cir. 1997) ("nonmovant may not rest upon mere allegations in the pleadings" to defeat summary judgment; "it must go beyond the pleadings and support its contentions with proper documentary evidence"); *see also Modrowski*, 712 F.3d at 1170 (party may not rely exclusively on allegations to defeat summary judgment).  In sum, Torres's argument that the conditions here were more severe than in *Lisle* and *McCoy* is incorrect because at his deposition he did not testify about any feces in his segregation cell or a lack of cleaning supplies.  While Torres alleged

such matters in his complaint, he presented no evidence to support those allegations, which was required to survive summary judgment.

For similar reasons, Torres's arguments that the district court erred by overlooking evidence of feces in his segregation cell fail. *See* AT Br. 19-20 (district court "overlooked evidence" that toilet in segregation was "exuding human waste onto the floor of his cell and that he was not permitted to clean"); *see also id*. at 27 (arguing that he "said that feces were expelled onto his floor every time the toilet was flushed"); *id*. at 20 (arguing that he "asserted that his cell was contaminated with feces in both his Complaint and his Opposition to Defendants' Motion for Summary Judgment, yet the district court did not mention this critical evidence in the decision below"; *see id*. at 21-22 (raising similar arguments). As explained, Torres merely alleged in his complaint that his cell was contaminated with feces, and those allegations, absent any supporting evidence, cannot defeat summary judgment. *See Modrowski*, 712 F.3d at 1170.

Further, although Torres asserted in his response to the summary judgment motion that the toilet was "leaking underneath with toilet backflush," Doc. 46 at 16, this assertion was insufficient. At summary judgment, the nonmoving party may rely on "any of the kinds of evidentiary materials listed in Rule 56(c)." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). That list includes "depositions, documents, electronically stored information, affidavits or declarations, [or] stipulations." Fed. R. Civ. P. 56(c)(1)(A). Torres's unsworn assertion in his response, therefore, cannot defeat Brookman and Hart's motion. Indeed, Torres attached a sworn affidavit to his

response, *see* Doc. 46 at 21-24, but in that affidavit, he did not attest to feces secreting from the bottom of the toilet, *see id*.

In addition, Torres's reliance on *Williams v. Brown*, 849 Fed. App'x 154 (7th Cir. 2021), to argue that summary judgment was improper, AT Br. 22, is misplaced for several reasons. Citing *Williams*, Torres argues that "evidence of human waste *alone* has been enough to defeat a motion for summary judgment." *Id.* (emphasis in original). But as explained, at summary judgment there was no evidence of human waste in Torres's segregation cell. Furthermore, *Williams* did not concern summary judgment. Instead, this court held that the district court erred in dismissing the plaintiff's procedural due process claim at screening. *Williams*, 849 Fed. App'x at 157. And human waste was not the only condition at issue. Rather, the plaintiff alleged that he was "deprived of bedding, exposed to relentless light that made sleep impossible, threatened repeatedly by other inmates, and subjected to an environment contaminated by feces and urine." *Id*. at 155. The allegations in *Williams*, therefore, differ substantially from the allegations and evidence here. *See* Doc. 1. Finally, the duration of the plaintiff's time in segregation in *Williams* exceeded Torres's time in segregation by five months. *Compare Williams*, 849 Fed. App'x at 157 (describing eight month duration of segregation) *with* Doc. 41-1 at 45:14-15 (three months in segregation). *Williams*, therefore, is inapposite.

Torres also cites two unreported district court orders, *see* AT Br. 23-24, but neither warrants reversal. First, they are not controlling authority. *See Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) ("[d]istrict court decisions have no weight

as precedents, no authority"). Second, they are factually distinguishable. Both cases involved evidence presented at summary judgment that the plaintiffs' segregation cells were covered in feces. *See Basemore v. Brookman*, No. 16-cv-562, 2018 WL 1366587, *3 (S.D. Ill. Mar. 16, 2018) (feces "on the walls and floors of [the plaintiff's] cells"); *Neal v. Veath*, No. 14-cv-1185, 2017 WL 1132559, *2 (S.D. Ill. Mar. 27, 2017) (segregation cell was "covered in feces and urine"). As explained, *supra* pp. 17-19, no such evidence was presented at summary judgment here.

Furthermore, the conditions of the cells in those cases were more severe than the alleged conditions here, and those plaintiffs were in segregation for greater lengths of time. *See Basemore*, 2018 WL 1366587, *3 (plaintiff was in segregation for nine months and was "unable to go to the yard to get air in the summer heat," and cells were "moldy and infested with insects and mice"); *Neal*, 2017 WL 1132559, *2 (plaintiff was in segregation for six months "in a strip cell for suicide watch (a status for which he was not recommended)" and cell had a non-functioning toilet). Torres, in contrast, was in segregation for three months and focuses almost exclusively on the feces that he alleged was in his cell after flushing the toilet. *See* AT Br. 20 (describing the toilet "exuding feces into his cell with every flush" as "central" to his claim.).

Torres also points to the district court's holding in *Neal* that cell conditions described in the plaintiff's response in opposition to the defendants' motion for summary judgment created a question of fact as to the cell's conditions. *See id*. at 24. But that holding is incorrect under *Celotex* and Fed. R. Civ. P. 56. *See Michael v. St.*

20

*Joseph Cty.*, 259 F.3d 842, 845 (7th Cir. 2001) (nonmovant must present "definite, competent evidence" to rebut summary judgment motion).

For similar reasons, Torres's argument that exposure to human waste has "supported the stricter standard of an Eighth Amendment conditions-of-confinement claim," AT Br. 25, n.2, is irrelevant here. Again, at summary judgment, there was no evidence of human waste in Torres's segregation cell. Doc. 41-1 at 58:2-7, 59:19-25, 60:1-10. So whether evidence of a certain amount of human waste in a cell satisfies another constitutional standard has no bearing on the district court's judgment in this case. Furthermore, the district court did not understand Torres's complaint as bringing an Eighth Amendment claim against Brookman and Hart, *see* Doc. 9 at 3-5, and Torres does not challenge the district court's screening order on appeal, *see* AT Br.

And in any event, the alleged presence of feces in the segregation cell could not give rise to a due process claim because there was no evidence presented that such presence of feces inherent to Torres's disciplinary segregation sentence. Where restrictive or harsh conditions are imposed by design, they may impose an atypical and significant hardship. *See Wilkinson v. Austin*, 545 U.S. 209, 213-14 (2005) ("Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population" and are "synonymous with extreme isolation[.]"). As a result, a due process claim could be raised based on a prison official's "deliberate decision" to place an inmate in those known conditions. *Daniels v. Williams*, 474 U.S. 327, 333-

34 (1986) (prison officials in *Wolff v. McDonnell,* 418 U.S. 539 (1974) could be subjected to a due process claim based on their "deliberate decision to deprive the inmate [there] of good-time credit"). Here, in contrast, Torres presented no evidence that the alleged conditions, including feces secreting from the toilet, were part of the disciplinary sentence or were otherwise known or foreseeable to Brookman and Hart when they imposed the disciplinary sanction. To the extent the conditions in the segregation cell affected any constitutional right, they would have been "best analyzed as a claim brought under the Eighth Amendment" against the prison officials who were responsible for their existence. *See Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008) (rejecting inmate's due process claim based on harsh conditions); *see also Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (rejecting inmate's due process claim and declining to address whether alleged conditions raised an Eighth Amendment claim because inmate "did not submit evidence establishing that any of the defendants knew about or had control over the conditions in segregation").

Finally, Torres's reliance on three out-of-circuit district court decisions is misplaced. Torres argues that these cases stand for the proposition that "[e]vidence of exposure to human waste has consistently been sufficient to defeat motions for summary judgment in cases alleging atypical and significant hardships." AT Br. 24. But none of those decisions considered the merits of the plaintiffs' claims at summary judgment. In *Young v. Bailey*, No. 8:21-cv-389-WFJ-TGW, 2022 WL 797472, *1 (M.D. Fla. Mar. 16, 2022), the district court was screening a complaint under 28 U.S.C. §

1915A. And the two cited orders in *Jackson v. Humphrey* did not address the merits of the plaintiff's procedural due process claim, as the court instead granted the defendants' motion to dismiss the plaintiff's complaint as barred by the statute of limitations and because he failed to exhaust his administrative remedies. *Jackson v. Humphrey*, No. 5:14-cv-00376-MTT-CHW, 2015 WL 7566528, *1 (M.D. Ga. Oct. 20, 2015) (recommending that defendants' motion be granted); *Jackson v. Humphrey*, No. 5:14-cv-00376 (MTT), 2015 WL 7568653, *1 (M.D. Ga. Nov. 24, 2015) (adopting recommendation of magistrate judge).

In sum, at summary judgment, there was no evidence in the record supporting Torres's allegation that the toilet in segregation exuded feces into his cell, or, for that matter, that feces was present in his cell at all. Torres's allegations, absent any such evidence, cannot defeat Brookman and Hart's motion for summary judgment.

**B.      Torres's remaining arguments on the issue of a liberty interest do not warrant reversal of the district court's judgment.**

Torres raises several other arguments regarding the district court's liberty interest analysis. As an initial matter, even if the district court misstated the law, this court reviews the district court's decision *de novo*, and may affirm on any basis in the record. *See Bivens v. Trent*, 591 U.S. 555, 559 (7th Cir. 2010). In any event, none of Torres's arguments warrant reversal of the district court's judgment.

First, Torres argues that the district court misstated the law when it explained that "[c]ourts have dismissed due process claims based on relatively short periods of disciplinary segregation without inquiry into the specific conditions of confinement." AT Br. 14 (citing Doc. 48 at 8-9). To be sure, this court has explained

that courts should analyze the "combined import of the duration of the segregative confinement *and* the conditions endured." *Marion*, 559 F.3d at 697 (emphasis in original). This court has also, however, recognized that cases involving "relatively short periods of segregation" do not implicate liberty interests. *Id.*; *see Hardaway*, 734 F.3d at 743 ("relatively short terms of segregation rarely give rise to a prisoner's liberty interest"). In any event, any potential misstatement was immaterial because the district court then analyzed the conditions of Torres's cell while he was in segregation, and ultimately concluded that the conditions did not give rise to a protected liberty interest. *See* Doc. 48 at 9.

Next, Torres argues that the district court erred when it compared the length of his time in segregation to the length of his sentence. AT Br. 16-17. He continues that "[n]either the Supreme Court nor this Court has ever held that the fact-intensive inquiry that goes into consideration of liberty includes the length of the plaintiff's sentence as a variable." *Id.* Torres is incorrect. In *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997), this court considered this exact fact, noting that the inmate's 70-day confinement in segregation was "a relatively short period when one considers his 12 year prison sentence." Moreover, any potential error in considering the length of Torres's sentence was harmless because, as stated, the district court ultimately considered both the duration of Torres's segregation term as well as its conditions. *See* Doc. 48 at 9.

Torres also argues that the district court erred when it found that he had not "allege[d] that he suffered physical or mental harm or substantial risk to his health"

24

because of his three months in segregation, AT Br. 17 (citing Doc. 48 at 9), because there is no such requirement for an inmate bringing a procedural due process claim, *see id*. But this court has identified a lack of injury as a relevant consideration when dismissing a due process claim for lack of a liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (dismissal proper where inmate was in segregation for "at most 30 days" and failed to allege "any significant psychological or other injury from it").

Torres continues that, even if he was required to show harm to his health, he met that standard because he "contends that breathing in the contaminants in his segregation cell harmed his physical health and that the time in segregation injured his back, specifically a dislocated disk." AT Br. 18. To be sure, Torres testified that he was "breathing in rust," Doc. 41-1 at 58:7, and that once he left segregation his back was "messed up" and that he had a dislocated disc, *id*. at 60:6-20. But at summary judgment, he failed to present any evidence that either any breathing or lung problems he may have (which he did not testify to) or his self-described back problems were related to his time in segregation. *See* Doc. 46. And Torres's speculation about the cause of these alleged ailments cannot defeat summary judgment. *See Amadio*, 238 F.3d at 927 ("speculation may not be used to manufacture a genuine issue of fact").

## C. Even if Torres had a protected liberty interest, he received all the process that was due.

Finally, Torres notes, AT Br. 13, that the district court held that the evidence at summary judgment "might support a finding that Defendants' failure to call or

interview his witness amounted to a denial of his procedural due process rights."
Doc. 48 at 8. Torres then argues that the only question before this court "is whether
the evidence on the record would have permitted a jury to decide that the conditions
of [his] confinement rose to the level of an atypical and significant hardship." AT Br.
14. But even if this court holds that Torres raised a question of fact as to the
existence of a liberty interest, and concludes that Brookman and Hart are not
entitled to qualified immunity, *see infra* p. 28, this court should still affirm because
no reasonable jury could conclude that the process Torres received was insufficient.
*See Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir. 2013) (request that judgment be
affirmed on an alternative ground does not require a cross-appeal).

In *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024), this court stated that the law
is "clear that an inmate who is facing transfer to disciplinary segregation is entitled
only to informal, nonadversarial due process, which leaves substantial discretion and
flexibility in the hands of prison administrators." *Id.* at 895 (cleaned up) (St. Eve, J.,
and Kirsch, J., concurring). That process "calls for notice of the reasons for the
inmate's placement and an opportunity to present his views." *Id.* (cleaned up). This
court explained that ordinarily a written response by the inmate will suffice and,
"'[s]o long as this occurs, and the decisionmaker reviews the charges and then-
available evidence against the prisoner, the Due Process Clause is satisfied.'" *Id.*
(quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

That informal standard was satisfied here. Torres testified that he received
approximately two days' notice before the hearing on the first ticket, Doc. 41-1 at

36:16-25, and received approximately one week's notice before the hearing on the second ticket, *id*. at 40:15-20. And Torres was able to provide a statement during both hearings. *See id*. 37:24-25, 38:1-25, 39:1-25, 40:1-8. Moreover, even though Torres argued that his request for witnesses was denied, Doc. 46 at 8-9, he still was afforded all process due because he did not lose any sentencing credit. *See Adams*, 91 F.4th at 896 (right to call witnesses at disciplinary hearing not implicated where inmate's lost good time credits were restored). Torres also argued that his due process rights were violated because he asked for, but was not shown, the writing sample that was compared to the questionnaire found at Pontiac. Doc. 46 at 10-11. But again, Torres was afforded all the process he was owed because he was given notice of the charges against him and provided with a hearing during which he was allowed to present his views. *See* Doc. 41-1 at 36:16-25, 37:24-25, 38:1-25, 39:1-25, 40:1-20; *see also Adams*, 91 F.4th at 895. And Torres's argument that he was found guilty without sufficient evidence, *see* Doc. 46 at 11-12, likewise fails. A prison disciplinary decision must be supported by "some evidence," which "require[es] only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Here, the adjustment committee's reliance on the disciplinary report and comparison of the questionnaire to a handwriting sample from Torres, *see* Doc. 41-1 at 7, satisfied that standard. *See McPherson*, 188 F.3d at 786 (prison board's reliance on disciplinary report satisfied "some evidence" standard). Thus, even if Torres had a liberty interest in avoiding segregation, he received all the process he was owed.

## III. In the alternative, Brookman and Hart are entitled to qualified immunity.

Alternatively, this court should conclude that Brookman and Hart are entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). Courts analyzing a qualified immunity defense conduct a two-step inquiry: "(1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). A plaintiff "carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014) (cleaned up). And a plaintiff cannot defeat a qualified immunity defense "simply by alleging a violation of extremely abstract rights," as courts should not "define the constitutional right in question at a high level of generality." *Dockery*, 911 F.3d at 466 (cleaned up).

Torres has not met his burden to show that Brookman and Hart are not entitled to qualified immunity here. As explained, *supra* pp. 17-19, the evidence at summary judgment established that Brookman and Hart had not violated Torres's procedural due process rights because at summary judgment he established no protected liberty interest. And as explained, *supra* pp. 23-24, even assuming he had such an interest, he was afforded all process due.

28

Regardless, the constitutional right that Torres claimed was violated was not clearly established at the time of the alleged violation. For a right to be clearly established, "at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates the right and existing precedent must have placed the statutory or constitutional question beyond debate." *Chasensky*, 740 F.3d at 1094 (cleaned up). A plaintiff may show that a right is clearly established "in at least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was so egregious that no reasonable person could have believed that it would not violate established rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015) (cleaned up).

Torres cannot make this showing. Torres cited no clearly analogous case in the district court supporting his claim that his time in segregation implicated a liberty interest. See Doc. 46 at 17-18. Rather, this court has held that segregation like that at issue here does not implicate a liberty interest. *See McCoy*, 818 Fed. App'x at 540-42 (three months in segregation described as "unsanitary and dangerous" did not implicate liberty interest); *see also Lisle*, 933 F.3d at 710, 721 (four months in a segregation cell that had "rust on the bars and 'corroded feces' in the toilet" did not implicate liberty interest). At the very least, these cases show that it had not been clearly established that Torres's time in segregation implicated a liberty interest. Nor has Torres shown that Brookman and Hart's conduct was so

egregious that no reasonable person would believe that it would not have violated established rights.

Finally, even assuming that Torres established a liberty interest, he cannot show that it was clearly established that Brookman and Hart violated his due process rights during the adjustment committee hearing. This court in *Adams* held that "[o]ur law is clear that an inmate who is facing transfer to disciplinary segregation is entitled only to information, nonadversarial due process, which leaves substantial discretion and flexibility in the hands of prison administrators." 91 F.4th at 895. And that informal process requires merely "notice of the reasons for the inmate's placement and an opportunity to present his views." *Id*. As a result, it was not clearly established that Brookman and Hart violated Torres's due process rights when he was given that exactly that process during the adjustment committee hearings. *See* Doc. 41-1 at 36:16-25, 37:24-25, 38:1-25, 39:1-25, 40:1-20 (testimony that Torres received notice before both hearings and was able to provide statements).

## CONCLUSION

For these reasons, Defendants-Appellees Kent Brookman and Jason Hart request that this court affirm the district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

/s/ Kaitlyn N. Chenevert
**KAITLYN N. CHENEVERT**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for
Defendants-Appellees

June 21, 2024.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and 7th Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Fed. R. App. P. 32(a)(7)(B)(i) and 7th Cir. R. 32(c) in that the brief is 7,728 words.

/s/ Kaitlyn N. Chenevert
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
kaitlyn.chenevert@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I certify that on June 21, 2024, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are CM/ECF users, and thus will be served via the CM/ECF system.

Samuel Weiss
sam@rightsbehindbars.org

Matthew Farley
Matthew.Farley@arnoldporter.com

Oren Nimni
oren@rightsbehindbars.org

Robert Reeves Anderson
Reeves.Anderson@arnoldporter.com

/s/ Kaitlyn N. Chenevert
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov