# In the United States Court of Appeals for the Seventh Circuit

———————————

NORBERTO TORRES,

*Plaintiff-Appellant*,

v.

KENT BROOKMAN, et al.,

*Defendants-Appellees.*

———————————————————

On Appeal from the United States District Court
for the Southern District of Illinois
No. 3:19-cv-00248 (Hon. Stephen P. McGlynn)

———————————————

**PETITION FOR REHEARING EN BANC**

———————————————

Samuel Weiss
Amaris Montes
RIGHTS BEHIND BARS
416 Florida Ave., N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Norberto Torres*

October 31, 2025

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2830

Short Caption: Torres v. Brookman

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Norberto Torres

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Rights Behind Bars; Arnold and Porter

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Samuel Weiss      Date: 10/31/2025

Attorney's Printed Name: Samuel Weiss

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✔] **No** [ ]

Address: 1800 M Street NW, Front 1 #33821

Washington, DC 20033

Phone Number: 202-455-4399      Fax Number: N/A

E-Mail Address: sam@rightsbehindbars.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND RULE 40(b) STATEMENT ............................................. 1

BACKGROUND ............................................................................... 2

ARGUMENT .................................................................................. 5

   I.   The *Wolff* Due Process Standards Govern Claims Involving Long-Term Disciplinary Segregation ..................................................................... 5

   II.   This Court's Law Accurately Reflected U.S. Supreme Court Precedent— Until Last Year ............................................................................ 8

   III.  Every Other Circuit to Address This Question Has Rejected the Majority's Approach ...................................................................................... 14

CONCLUSION ................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024) ...................................................... 1, 10

*Alexander v. Rasmussen*, 725 F. App'x 418 (7th Cir. 2018) .................................. 10

*Chavis v. Rowe,* 643 F.2d 1281 (7th Cir. 1981) ...................................................... 9

*Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980) ................................................ 14

*Brown v. Plaut*, 131 F.3d 163 (D.C. Cir. 1997) ..................................................... 14

*Davis v. Hughes*, No. 3:16-CV-600, 2025 WL 948443 (S.D. Ill. Mar. 28, 2025) .. 13

*Ealy v. Watson*, 109 F.4th 958 (7th Cir. 2024) .................................................... 1, 11

*Finley v. Huss*, 102 F.4th 789 (6th Cir. 2024) ....................................................... 14

*Gilbert v. Frazier*, 931 F.2d 1581 (7th Cir. 1991) ................................................. 9

*Hewitt v. Helms*, 459 U.S. 460 (1983) ............................................................. 1, 6, 7

*Jackson v. Anastasio*, 150 F.4th 851 (7th Cir. 2025) .......................................... 12, 13

*Jones v. Harris Assocs. L.P.*, 537 F.3d 728 (7th Cir. 2008) .................................. 14

*Kalwasinski v. Morse*, 201 F.3d 103 (2d Cir. 1999) .............................................. 14

*Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670 (7th Cir. 1995) ....................................... 14

*Prude v. Meli*, 76 F.4th 648 (7th Cir. 2023) .......................................................... 9

*Sandin v. Conner*, 515 U.S. 472 (1995) ................................................................. 7

*Stevenson v. Carroll*, 495 F.3d 62 (3d Cir. 2007) ................................................. 14

*Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1994) ................................................... 15

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) .................................................... 10

*Whitford v. Boglino*, 63 F.3d 527 (7th Cir. 1995) ................................................. 9

*Wilkinson v. Austin*, 545 U.S. 209 (2005) .............................................................. 8

*Williams v. Brown*, 849 F. App'x 154 (7th Cir. 2021) ........................................... 9

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ........................................................... 2, 5

*Woodson v. Lack*, 865 F.2d 107 (6th Cir. 1989) .................................................... 14

*Young v. Rios*, 390 F. App'x 982 (11th Cir. 2010) ...................................................15

**Other Authorities**

Fed. R. App. P. 40(b) ....................................................................................................1

# INTRODUCTION AND RULE 40(b) STATEMENT

Norberto Torres spent three months in a cell covered in feces, mold, mildew, and insects as punishment for a violation that the prison vacated because his hearing did not comport with its procedural regulations. When he brought suit *pro se* under the Due Process Clause, the district court held that Torres had no liberty interest in being free from such conditions, considering improper variables such as how long his overall sentence was and whether the conditions manifested in a physical injury. After Torres appealed and obtained counsel, this Court disagreed with the district court's bases for its opinion but affirmed anyway in a 2-1 opinion, holding that disciplinary segregation is subject only to the same barebones process that administrative transfer decisions are.

This holding—which cements this Court's two recent decisions in *Ealy v. Watson*, 109 F.4th 958 (7th Cir. 2024), and *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024)—implicates a "question[] of exceptional importance" that warrants panel rehearing en banc. Fed. R. App. P. 40(b)(2)(A)–(D). This case raises an important and recurring question about what process is due for prisoners facing prolonged confinement in disciplinary segregation. The panel applied the "informal, non-adversarial" standard articulated in *Hewitt v. Helms*, 459 U.S. 460 (1983). But *Hewitt* and its progeny—both in the U.S. Supreme Court and this one—addressed the standard applicable to administrative transfers or housing decisions, not

1

punishment. When, as here, a prisoner challenges a decision to impose long-term disciplinary segregation, the standard articulated in *Wolff v. McDonnell*, 418 U.S. 539 (1974), applies, which, while still flexible, provides more protection than the barebones standard from *Hewitt*. The panel's contrary ruling directly conflicts with precedent from the U.S. Supreme Court, this Court, and most of its sister circuits. As Judge Rovner recognized in her dissenting opinion, "this court is losing its way on prisoner due process claims," Panel Op. 14, and should grant this petition to undo its missteps of the past year.

## BACKGROUND

While Norberto Torres was incarcerated in Menard Correctional Center, Defendants held a disciplinary hearing to determine whether Torres had violated prison rules by being a member of a prison gang. Panel Op. 2. Torres requested to present a witness at this hearing, and Defendants refused. Opening Br. 6. After a short hearing, they nonetheless ruled for Torres. *Id.*; Panel Op. 2.

That same day, another IDOC officer issued Torres another disciplinary report that was identical to the previous one. *Id.* At the subsequent hearing, Torres again requested to present witnesses and also asked Defendants to produce the paperwork that was the basis of the ticket. Opening Br. 6–7. Brookman and Hart did not allow him to present the witness and also did not provide the documents that purportedly supported the allegation. Panel Op. 3. Defendants found him guilty and sentenced

him to three months in segregation and a loss of privileges for many months. Panel Op. 3–4.

Torres's segregation cell was riddled with feces, mold, mildew, and insects. Panel Op. 4. When initially entering segregation, his cell did not have a bed for several days. *Id.* Throughout his time in disciplinary segregation, he was able to leave his cell only once or twice a week. *Id.* His toilet "was leaking underneath toilet backflush." *Id.* Each time the toilet was flushed, feces would spread into his cell. *Id.* Torres requested cleaning supplies to clean it himself but never received them. *Id.*

On May 24, 2017, Torres filed a grievance challenging the disciplinary ticket and the lack of appropriate process. Panel Op. 3–4. The grievance officer recommended that the disciplinary ticket be expunged for failing to provide adequate process. Panel Op. 4. The prison expunged his ticket on June 17, 2017 after Torres served three months in disciplinary segregation. *Id.*

Torres brought this action *pro se* alleging violations of the Fourteenth Amendment procedural due process and Eighth Amendment claim for cruel and unusual punishment. ECF 48 at 1–2. The district court at summary judgment conceded that there was evidence which "might support a finding that Defendants' failure to call or interview his witness amounted to a denial of his procedural due process rights." ECF 48 at 8. The court nonetheless granted summary judgment to Defendants by holding that Torres did not have a cognizable liberty interest. The

court held that conditions in his cell and the duration of confinement for three months, considering his lengthy sentence, did not "deviate[] substantially from ordinary conditions of confinement" given that he did not prove physical or mental harm. *Id.* at 8–9.

Torres argued on appeal that the district court erred in its liberty interest analysis by assessing the amount of time spent in segregation relative to his sentence and by requiring him to prove physical and mental harm. *See* Opening Br. 12–29. The panel rejected the district court's holding on both bases but nonetheless affirmed 2-1 on the alternative ground that Torres received sufficient process. Citing this Court's recent decision in *Adams*, the majority held that a prisoner facing either administrative segregation or disciplinary segregation has only a right to informal, nonadversarial process including 1) a notice of the reasons for inmate placement in segregation and 2) an opportunity to present his views in written statement or at a hearing. Panel Op. 11.

Judge Rovner dissented in relevant part. *See* Panel Op. 14–33. She explained that "this court is losing its way on prisoner due process claims" by improperly importing the due process requirements of informal, nonadversarial process used for transfer decisions or administrative segregation into disciplinary punishments in violation of the longstanding principles of *Wolff*. Panel Op. 14. Judge Rovner methodically walked through Supreme Court and this Court's precedent, which

established that nonadversarial due process for transfer decisions is proper because it relies on the general experience of prison administrators to regulate the safety of prisoners and personnel, as opposed to the disciplinary context which involves factfinding regarding a specific wrongful act. Panel Op. 15–25. Judge Rovner also made clear that *Adams* did not support the majority's opinion as they challenged placement in administrative transfer, not issues related to disciplinary segregation, which should afford the protections under *Wolff* if the conditions rise to an atypical and significant hardship. Panel Op. 27–30. Judge Rovner explained that the majority's holding "effectively forecloses a due process right to witnesses no matter how long a period of time an inmate is ordered to serve in disciplinary segregation and how atypically harsh the conditions of segregation may be." Panel Op. 29.

## ARGUMENT

### I.     The *Wolff* Due Process Standards Govern Claims Involving Long-Term Disciplinary Segregation.

In *Wolff v. McDonnell*, the U.S. Supreme Court first addressed when procedural protections attach to prison decisions and which ones do so. 418 U.S. 539 (1974). A plaintiff-class challenged the defendants' procedures for punishing "'flagrant or serious' cases of prison 'misconduct'—potential sanctions for which included forfeiture of 'good time' credits and confinement in a disciplinary cell." *Id.* at 547, 553. The Court's test had two steps: first, whether the plaintiffs had a liberty interest at all and second, if so, what process was due. At step one, the Court held

that incarcerated people have a protected liberty interest in avoiding the loss of good time credits. *See id.* at 547, 556–58. The Court explained, however, that its holding also applied to disciplinary segregation, which required the same "minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction." *Id.* at 571 n.19. At step two, the Court held that "[an] inmate facing disciplinary proceedings" must receive four basic procedural protections: (a) "advance written notice of the claimed violation;" (b) the ability to call witnesses and present documentary evidence "when [doing] so will not be unduly hazardous to institutional safety or correctional goals;" (c) an impartial decisionmaker; and (d) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563–566, 570–571.

In *Hewitt*, the Court again considered due process requirements for a prisoner held in segregation but this time for administrative reasons. Prison staff segregated Hewitt because they believed that he would be "a danger to staff and to other inmates if released back into [the] general population" rather than to punish him for an act of wrongdoing. *Id.* at 465. The Court noted that "*Wolff* required that inmates facing *disciplinary* charges for misconduct" receive the protections described above, whereas "the transfer of an inmate to less amenable and more restrictive quarters *for nonpunitive reasons* is well within the terms of confinement ordinarily contemplated

by a prison sentence." *Id.* at 466 (emphasis added). *Wolff* concerned "disciplinary confinement" and its resulting "stigma of wrongdoing or misconduct." *Id.* at 473. Administrative transfers, by contrast, focused not on a backward-looking evaluation of misbehavior but rather a forward-looking regulation. Unlike the former, the latter is not "materially assisted by a detailed adversary proceeding." *Id.* at 473–74. Due process therefore only demanded "informal, nonadversary evidentiary review." *Id.* at 476.

*Sandin v. Conner* addressed whether thirty days in disciplinary segregation implicated a liberty interest and held that, on the facts of the case, it did not. 515 U.S. 472, 486 (1995). The opinion nonetheless further solidified the distinction *Wolff* and *Hewitt* had established. The disputed process available to the plaintiff was the right to call witnesses as part of "all of the process due under this Court's pronouncement in *Wolff*." *Id.* at 476, 487. The entire dispute therefore assumed that *if* the prisoner had a liberty interest, it would have triggered entitlement to the *Wolff* protections rather than only the informal procedures of *Hewitt*. Indeed, Justice Ginsburg wrote in dissent that "a return of this case to the District Court would be unavoidable if it were recognized that Conner was deprived of liberty within the meaning of the Due Process Clause." *Id.* at 491 (Ginsburg, J., dissenting). This uncontested conclusion implies that all the Justices understood that step one was decisive because waiting at step two were the *Wolff* procedures.

Finally, in *Wilkinson v. Austin* the U.S. Supreme Court addressed a class action challenging transfer to an Ohio "supermax" prison. 545 U.S. 209, 213 (2005). The Court held that the plaintiffs did have a liberty interest as in *Wolff* but that they were entitled to less process. Unlike in *Wolff*, placement in segregation was administrative, not disciplinary. *See id.* at 215–16. The prison sent the plaintiffs to the supermax facility not as punishment for misconduct but rather as a consequence of individual characteristics, such as their offense of conviction. *See id.* That distinction mattered: Whereas disciplinary confinement turns on allegations of "specific, serious misbehavior … where more formal, adversary-type procedures might be useful," confinement for regulatory reasons "draws more on the experience of prison administrators." *Id.* at 228. Accordingly, the Court followed *Hewitt* in holding that the plaintiffs were entitled only to "informal, nonadversary procedures." *Id.* at 229 (citing *Hewitt*, 459 U.S. at 473–76). The U.S. Supreme Court has therefore spoken in one voice: at step two of a procedural due process challenge in prison, administrative transfers or housing placements receive the spare process of *Hewitt* whereas disciplinary segregation receives the greater process of *Wolff*.

## II. This Court's Law Accurately Reflected U.S. Supreme Court Precedent—Until Last Year.

In *Prude v. Meli*, this Court wrote that "[i]t is well-settled that due process in a prison disciplinary hearing requires advance notice of the charges, a hearing before an impartial decisionmaker, the right to call witnesses and present evidence (when

consistent with institutional safety), and a written explanation of the outcome." 76 F.4th 648, 657 (7th Cir. 2023). The majority here notes in passing that *Prude* concerned a property interest rather than a liberty interest but *Prude* rejected any relevance to this distinction: "*Wolff*, which developed the constitutional procedural requirements for prison disciplinary proceedings, explicitly equated the process required to protect a prisoner's liberty interest to property interest protections." *Id.* at 657 n.4. Similarly, in *Whitford v. Boglino*, this Court applied the *Wolff* factors to a challenge to six months of segregation after any claim based on good time credits had become moot. 63 F.3d 527, 534 (7th Cir. 1995).

In *Williams v. Brown*, this Court applied *Wolff* to a due process claim brought by a prisoner confined for eight months in disciplinary segregation. 849 F. App'x 154, 155 (7th Cir. 2021). This Court relied on *Wolff* to hold that the plaintiff had stated a due process claim by "alleg[ing] that the defendants … fil[ed] a disciplinary report that did not notify him of the details of his charges and … refus[ed] to call or interview his witnesses." *Id.* at 157; *see also Chavis v. Rowe,* 643 F.2d 1281, 1285 n.3 (7th Cir. 1981) ("*Wolff v. McDonnell* sets forth the minimum due process requirements for prison disciplinary proceedings when the prisoner has been charged with serious misconduct which could result in loss of good time credits or punitive segregation"); *Gilbert v. Frazier*, 931 F.2d 1581, 1582 (7th Cir. 1991) (explaining the distinction between punitive and administrative segregation for due process

9

purposes); *Alexander v. Rasmussen*, 725 F. App'x 418, 420 (7th Cir. 2018) (explaining that if disciplinary segregation constitutes a liberty interest, "[d]ue process would entitle [plaintiff] to advance notice of the charge against him, a hearing before an impartial decision maker, a chance to present evidence, and an explanation of the ruling against him").

Just as this Court's disciplinary segregation cases tracked *Wolff*, its notable opinion addressing transfers to a supermax facility for administrative reasons naturally tracked *Wilkinson*. In *Westefer v. Neal*, a district court held that Illinois prison officials did not provide adequate due process before transferring prisoners to Tamms Correctional Center. 682 F.3d 679, 682 (7th Cir. 2012). The Court held that only the "informal, nonadversary" process of *Hewitt* and *Wilkinson* was due here in the context of "transfer" or housing "placement determination[s]." *Id.* at 684. Perhaps confusingly, some of the prisoners sent to Tamms through administrative transfer were serving time in disciplinary segregation both before and after their transfer. *Id.* at 682. This fact played no role in *Westefer* as the transfers themselves were not disciplinary—prisoners were shipped from one disciplinary unit to another for regulatory reasons. *Id.*

One sentence in last year's opinion of *Adams v. Reagle* upended this balance. In a brief but controlling concurrence, this Court wrote that "[o]ur law is clear that an inmate who is facing transfer to disciplinary segregation is entitled only to

'informal, nonadversarial due process,'" citing only to *Westefer*. 91 F.4th at 895. As explained above, however, *Westefer*, however, did not address prisoners facing transfer *to* disciplinary segregation but rather prisoners who were being administratively transferred between different prisons. *Westefer* had nothing to say about the U.S. Supreme Court's distinction in *Wolff* and *Hewitt* between backward-looking punishment and forward-looking regulation. The conclusion was also arguably wrong on the assessment of its own case's record. Judge Rovner, writing in dissent, understood Adams's claim to be that after being disciplined for assault, he challenged only the administrative decision that used his disciplinary conviction as "a *predicate* for the reclassification decision that assigned him to department-wide restrictive housing." *Id.* at 891 (emphasis in original).[1]

The arguable mischaracterization of the *Adams* record and the opinion's conclusory break from decades of precedent could have led subsequent panel-majorities to limit the opinion to its facts or at least wrangle with the questions *Adams* left unmentioned. Neither have happened. This Court in *Ealy v. Watson* wrote that the plaintiff received all process due even under the *Wolff* standard but then noted briefly in dicta that "this court's recent decision in *Adams v. Reagle* crystalized

---

[1] Prison disciplinary punishments often result in not only the specified punishment but also unfavorable forward-looking regulation. As with, for example, criminal punishments and consequent civil collateral consequences, that the former often leads to the latter does not render the distinction meaningless or imply that equal levels of process are appropriate.

the process owed to inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence." 109 F.4th 958, 965 (7th Cir. 2024). Then in the present case, the majority noted the practical and doctrinal differences between administrative and punitive segregation but simply invoked the authority of *Adams* in holding that they did not matter. Panel Op. 13 ("Nevertheless, we opted for a bright-line rule in *Adams*…"). *Ealy* and this case have therefore cemented *Adams* and its one-sentence mischaracterization of *Westefer* into the law of this Court. This development conflicts with binding precedent from the Supreme Court and has created an intra-circuit split on the required procedural protections for people who have a liberty interest in being free from disciplinary segregation.

Tension between these opinions and the binding precedent from this Court and the U.S. Supreme Court has already materialized. In *Jackson v. Anastasio*, on strikingly similar facts to the present case this Court held that three months in a filthy disciplinary segregation cell created a liberty interest but the law was not sufficiently clearly established to deny defendants qualified immunity.[2] 150 F.4th 851, 854 (7th Cir. 2025). Jackson's complaint, however, was that he was not allowed to call

---

[2] Defendants waived the affirmative defense of qualified immunity by including in their motion for summary judgment only the introduction to a qualified immunity argument and then a highlighted sentence reading "Look up cases in argument for case law to include here." Panel Op. 33.

witnesses, a procedure guaranteed by *Wolff* but not by *Wilkinson*. *Id.* at 855. A literal reading of *Adams* therefore renders the entire analysis of *Jackson* a nullity, as whether the plaintiff had a liberty interest (and whether the law was clearly established on that question) is irrelevant to a plaintiff who got all the process he was due regardless. Judge Scudder, concurring, cited to *Adams* for this reason, defending the earlier opinion and writing that it flows directly from the Court's opinion in *Wilkinson* without noting that the former concerned disciplinary punishment and the latter administrative transfers. *Id.* at 878. Judge Hamilton, concurring, wrote that *Adams* "extended" the law rather than merely recognizing it and did not even address the Supreme Court or Seventh Circuit law it was breaking from. *Id.* at 866. An unreasoned break from decades of precedent will continue to complicate future panels of this Court, meriting en banc review.[3]

---

[3] Even in the short period since *Adams* and *Ealy*, district courts have already struggled to reconcile them with previous precedent. *See, e.g.*, *Davis v. Hughes*, No. 3:16-CV-600, 2025 WL 948443, at *16 n.24 (S.D. Ill. Mar. 28, 2025) (explaining that both parties had agreed that the *Wolff* factors applied to disciplinary segregation until, mid-litigation, *Adams* and *Ealy* came down, the court noting with confusion that "there were numerous Seventh Circuit opinions from the last several decades that dealt with prison disciplinary proceedings in which there was *no* mention of good-time credits, yet the court cited to *Wolff* as the governing standard for what process was required and/or stated that the inmate was entitled to the procedural requirements set forth in *Wolff*") (emphasis in original).

## III. Every Other Circuit to Address This Question Has Rejected the Majority's Approach.

This Court does "not create conflicts among the circuits without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 675 (7th Cir. 1995). And "the creation of a circuit split" is an appropriate basis for taking a case en banc. *Jones v. Harris Assocs. L.P.*, 537 F.3d 728, 732 (7th Cir. 2008) (Posner, J., dissenting from petition for rehearing en banc). In *Adams* and its subsequent cases that is precisely what this Court has done. As described above, it has done so without a thorough analysis of the relevant doctrine. Virtually every other circuit court has applied the *Wolff* factors to terms of disciplinary segregation sufficient to trigger a liberty interest:

- *Brown v. Plaut*, 131 F.3d 163, 170 (D.C. Cir. 1997): The court explained that "an inmate who has a liberty interest in administrative segregation is subject to [the] limited procedural safeguards" of *Hewitt* whereas it "applied *Wolff*" to cases involving punitive segregation.

- *Kalwasinski v. Morse*, 201 F.3d 103 (2d Cir. 1999) (per curiam): Applying *Wolff*, the court held that "in a disciplinary hearing resulting in … solitary confinement, an inmate must be afforded" procedural protections—including an opportunity "to call witnesses and present documentary evidence." *Id.* at 108 (citing *Wolff*, 418 U.S. at 563–64, 566).

- *Stevenson v. Carroll*, 495 F.3d 62 (3d Cir. 2007): "[T]he procedures required by *Wolff*," the court recognized, "apply if the restraint on liberty is imposed for disciplinary reasons," whereas "if the restraint is for 'administrative' purposes, the minimal   procedures outlined in *Hewitt* are all that is required." *Id.* at 70–71.

- *Bills v. Henderson*, 631 F.2d 1287, 1295 (6th Cir. 1980); *Woodson v. Lack*, 865 F.2d 107, 109–10 (6th Cir. 1989); *Finley v. Huss*, 102 F.4th 789, 816 (6th Cir. 2024): The Sixth Circuit has repeatedly held that *Wolff* applies to disciplinary

segregation proceedings. In so doing, it has distinguished between segregation as punishment for alleged misconduct and segregation as a result of non-punitive classification decisions. In *Bills*, for example, the court explained that punitive segregation is "imposed only for a serious infraction of specific prison rules, while administrative segregation may be based on the inmate's entire past record." 631 F.2d at 1295; *see also Woodson*, 865 F.2d at 109– 10 (holding that *Bills* and *Wolff* remain good law and that a plaintiff's punitive placement in solitary confinement due to his alleged involvement in a prison riot required *Wolff* protections).

- *Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1994): The court considered what process was due to an individual sentenced to 180 days in disciplinary segregation after officers found him guilty of having a knife in his cell. *See id.* at 1417–18. The court applied *Wolff* and held that because "prison officials [had] provide[d] no explanation for the denial of [a witness] request," and the court found "a genuine issue of material fact" as to whether the plaintiff had been "denied the right to produce witnesses in his defense as required by *Wolff*." *Id.*
- *Young v. Rios*, 390 F. App'x 982 (11th Cir. 2010). The plaintiff challenged his sentence in disciplinary segregation. The court ruled for defendants, holding that he had not produced evidence that "he was denied the procedural due process protections that he was entitled to pursuant to *Wolff*."

This Court has erred in creating a circuit split from a majority of its sister circuits[4] and should take this case en banc to bring its law in line with the rest of the country.

---

[4] For good measure, the opinion also splits from the opinions of the highest courts of several states. *See, e.g.*, *State ex rel. Anderson-El v. Cooke*, 610 N.W.2d 821, 829 (Wisc. 2000) (applying *Wolff* to due process claim challenging disciplinary action that resulted in segregation); *Riner v. Raines*, 409 N.E.2d 575, 577 (Ind. 1980) (same); *In re Davis*, 599 P.2d 690, 695 (Cal. 1979).

## CONCLUSION

This Court should rehear this case en banc to resolve the intra- and inter-circuit split it has created and bring its law back within the guidance of the U.S. Supreme Court.

**CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with the type-volume limitation of Circuit Rules. The brief contains 3,888 words. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 (2016) in Times New Roman 14-point font.

Date: October 31, 2025

*s/ Samuel Weiss*
Samuel Weiss

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on October 31, 2025, I electronically filed the foregoing Petition for Rehearing En Banc via ECF, and service was accomplished on counsel of record by that means.

*s/ Samuel Weiss*
Samuel Weiss