No. 22-2830

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| NORBERTO TORRES, | ) | Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Illinois |
| | ) | |
| v. | ) | |
| | ) | No. 3:19-cv-00248-SPM |
| KENT BROOKMAN and JASON | ) | |
| HART, | ) | The Honorable |
| | ) | STEPHEN P. McGYLNN, |
| Defendants-Appellees. | ) | Judge Presiding. |

**RESPONSE OF DEFENDANTS-APPELLEES TO
PETITION FOR EN BANC REHEARING**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

**KAITLYN N. CHENEVERT**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov

Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

*Page*

INTRODUCTION ....................................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

ARGUMENT ............................................................................................... 3

I.     The panel decision does not conflict with Supreme Court precedent.............. 3

II.    The panel decision, like *Adams* and *Ealy* before it, did not create an intra-circuit conflict, nor is there a circuit split on this issue. ................................. 12

III.   The issue that Torres asks the en banc court to resolve is not cleanly presented by this case. ................................................................................ 14

CONCLUSION .......................................................................................... 15

i

*Page(s)*

<u>**Cases**</u>

*Adams v. Reagle,*
   91 F. 4th 880 (7th Cir. 2024) ...................................................................... 1, 7

*Bell v. Wolfish,*
   441 U.S. 520 (1979) ...................................................................................... 11

*Bills v. Henderson,*
   631 F.2d 1287 (6th Cir. 1980) ..................................................................... 13

*Brown v. Plaut,*
   131 F.3d 163 (D.C. Cir. 1997) ..................................................................... 13

*Chavis v. Rowe,*
   643 F.2d 1281 (7th Cir. 1981) ..................................................................... 12

*Ealy v. Watson,*
   109 F.4th 958 (7th Cir. 2024) ........................................................................ 7

*Finley v. Huss,*
   102 F.4th 789 (6th Cir. 2024) ...................................................................... 13

*Gilbert v. Frazier,*
   931 F.2d 1581 (7th Cir. 1991) ..................................................................... 12

*Hewitt v. Helms,*
   459 U.S. 460 (1983) ............................................................ 1, 4, 5, 8, 10, 11

*In re Davis,*
   599 F.2d 690 (Cal. 1979) ............................................................................. 12

*Kalwasinski v. Morse,*
   201 F.3d 103 (2d Cir. 1999) ........................................................................ 13

*Morrissey v. Brewer,*
   408 U.S. 471 (1972) ........................................................................................ 6

*Prude v. Meli,*
   76 F.4th 648 (7th Cir. 2023) ................................................................... 12, 13

*Riner v. Raines*,
409 N.E.2d 575 (Ind. 1980) ...................................................................... 12

*Sandin v. Conner*,
515 U.S. 472 (1995) .............................................. 1, 5, 8, 9, 10, 11

*State ex rel. Anderson-El v. Cooke*
610 N.W.2d 821 (Wisc. 2000) ................................................................ 12

*Stevenson v. Carroll*,
495 F.3d 62 (3d Cir. 2007) ..................................................................... 13

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*,
472 U.S. 445 (1985) ......................................................................... 13, 14

*Torres v. Brookman*,
155 F.4th 952 (7th Cir. 2025) ...................................................... 2, 3, 7, 14

*Turner v. Safley*,
482 U.S. 78 (1987) ................................................................................. 11

*Wagner v. Hanks*,
128 F.3d 1173 (7th Cir. 1997) ............................................................... 10

*Walker v. Sumner*,
14 F.3d 1415 (9th Cir. 1994) ................................................................. 13

*Westefer v. Neal*,
682 F.3d 679 (7th Cir. 2012) ....................................................... 1, 6, 7, 8, 9

*Whitford v. Boglino*,
63 F.3d 527 (7th Cir. 1995) ................................................................... 12

*Wilkinson v. Austin*,
545 U.S. 209 (2005) ................................................................. 1, 5, 6, 10

*Williams v. Brown*,
849 Fed. App'x 154, 156 (7th Cir. 2021) ................................................ 12

*Wolff v. McDonnell*,
418 U.S. 539 (7th Cir. 1974) ........................................... 1, 3, 4, 6, 8, 9

*Woodson v. Lack*,
865 F.2d 107 (6th Cir. 1989) ................................................................. 13

*Young v. Rios*,
  390 F. App'x 982 (11th Cir. 2010) ........................................................................ 13, 14

# INTRODUCTION

This court should deny the petition for rehearing en banc. The panel correctly applied this court's precedent to the facts of this case when it held that, even assuming Torres had a liberty interest in avoiding transfer to disciplinary segregation, he received the informal, nonadversarial process he was due under *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012), and *Adams v. Reagle*, 91 F. 4th 880 (7th Cir. 2024). *Westefer* and *Adams*, in turn, correctly applied Supreme Court precedent, including *Wolff v. McDonnell,* 418 U.S. 539 (7th Cir. 1974), *Hewitt v. Helms*, 459 U.S. 460 (1983), *Sandin v. Conner*, 515 U.S. 472 (1995), and *Wilkinson v. Austin,* 545 U.S. 209 (2005), which collectively hold that prison transfers to segregation — whether for administrative or disciplinary purposes — require only informal, nonadversarial procedures. The panel decision, therefore, does not conflict with any Supreme Court decision.

Nor does the panel decision conflict with any decision from this court. The handful of decisions that Torres cites either pre-date *Sandin* and *Wilkinson*, and thus do not reflect the Supreme Court's current approach, or are otherwise distinguishable. For similar reasons, the out-of-circuit cases cited by Torres do not establish an inter-circuit split. Finally, the issue Torres asks this court to resolve in his petition is not cleanly presented by this case. Torres has thus failed to establish that his is a rare case warranting en banc review under Fed. R. App. P. 40(b)(2).

**STATEMENT OF THE CASE**

Torres brought a procedural due process claim against Kent Brookman and Jason Hart, who are employees of the Illinois Department of Corrections and members of the Adjustment Committee at Menard Correctional Center.  Doc. 1 at 1-2, 6.  Torres alleged that he was issued two disciplinary tickets, one of which was expunged.  Doc. 1 at 6.  Both tickets concerned Torres's involvement in gang activity.  *Id.*  The first ticket stated that the "Intel Unit" at another prison had received an envelope "filled with handwritten [gang] material," including a questionnaire that was discovered in another inmate's cell, and that Torres had completed the questionnaire.  Doc. 41-4 at 2.  The second ticket was the same as the first, but stated that the questionnaire was compared with the handwriting samples in Torres's master file, and because of "numerous similarities," it was determined that Torres authored the questionnaire.  *Id*. at 5.  Torres was found guilty of the second disciplinary ticket and received three months in segregation.  Doc. 1 at 14.

Torres claimed that Brookman and Hart "ignored" his requests for witnesses during the hearing on each disciplinary ticket, Doc. 46 at 15, though the detachable portion of the disciplinary ticket where inmates may request witnesses remained unfilled on both tickets, *Torres v. Brookman*, 155 F.4th 952, 955 (7th Cir. 2025).  And, Torres alleged, while he was in segregation, he was in a cell for two-and-a-half months with a toilet that leaked "smelly water" and feces when it was flushed, creating mold on the side of the toilet.  Doc. 1 at 7.

Brookman and Hart moved for summary judgment, arguing that Torres's transfer to disciplinary segregation did not deprive him of a liberty interest, and thus did not trigger due process protections and, even if Torres had been deprived of a liberty interest, he received all the process he was due. Doc. 41 at 7-10. The district court granted summary judgment in favor of Brookman and Hart, determining that Torres had not established that he was deprived of a liberty interest. Doc. 48 at 8-10.

On appeal, the panel assumed, without deciding, that Torres established a protected liberty interest. *Torres*, 155 F.4th at 957. But it concluded that Torres had received all the informal, nonadversarial process he was due under *Wilkinson, Westefer*, and *Adams*. *Id*. at 958-60.

## ARGUMENT

## I.     The panel decision does not conflict with Supreme Court precedent.

The Supreme Court's decisions, from *Wolff* through *Wilkinson*, establish that where an inmate's ability to remain in free society (in the case of parole revocation) or be released from custody (in the case of good-time credit revocation) is at stake, he is entitled to heightened due process protections. Below that threshold, however, only informal, nonadversarial procedures are required, consistent with the deference afforded to prison administrators.

To begin, in *Wolff*, the Court considered the process due to inmates facing the loss of good-time credits following a disciplinary hearing, and observed that an inmate's interest in retaining those credits, which have the effect of reducing the term of confinement, "has real substance." 418 U.S. at 553, 557. As a result, the

3

Court held, an inmate facing the loss of good-time credits is entitled to: (1) written notice of the charge, at least 24 hours before the disciplinary hearing; (2) a written statement prepared detailing the "evidence relied on and reasons for the disciplinary action"; (3) the option to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (4) an impartial decisionmaker. *Id*. at 564-71. In footnote 19, the Court noted that prison at issue used the same procedures when deciding whether to revoke good-time credits as it did when considering whether to transfer an inmate to disciplinary segregation. *Id*. at 571, n.19. The Court described this as a "realistic approach," stated that inmates should be afforded "minimum procedural safeguards" prior to being transferred to disciplinary segregation, and also made clear that it was "not suggest[ing] . . . that the procedures required . . . for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges." *Id*.

Next, in *Hewitt*, an inmate alleged that his due process rights were violated when he was transferred to administrative segregation pending a disciplinary investigation, without having been afforded the procedures described in *Wolff*. 459 U.S. at 462-66. The Supreme Court first held that the inmate had a protected liberty interest in avoiding transfer to administrative segregation because the prison's regulations included mandatory language requiring that administrative segregation would not occur "absent specified substantive predicates—*viz.,* 'the need for control,' or 'the threat of a serious disturbance.'" *Id*. at 472. However, the Court also held,

4

only "informal, nonadversary review of the information supporting [the inmate's] administrative confinement" was necessary to satisfy due process. *Id*. at 472-73. This was because transfer from the general population to administrative segregation meant merely that the inmate would be moved from an "extremely restricted environment to an even more confined situation." *Id*. at 473.

Then, in *Sandin*, the Court retreated from *Hewitt*'s holding that mandatory language in prison regulations could give rise to a liberty interest, holding instead that an inmate's liberty interests are limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. The Court ultimately concluded that an inmate's transfer to 30 days in disciplinary segregation did not implicate a liberty interest because it "does not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence." *Id*. at 485. Indeed, the Court added, such a transfer would not "inevitably affect the duration of [the inmate's] sentence." *Id*. at 487. Addressing footnote 19 of *Wolff*, which the inmate had relied on to argue that his transfer to disciplinary segregation triggered due process protections, the Court described that portion of *Wolff* as "dicta." *Id*. at 486.

Finally, in *Wilkinson*, the Court held that the inmates there had a liberty interest in avoiding transfer to a maximum-security prison. 545 U.S. at 223-24. The Court explained that two factors, in particular, led it to find a liberty interest: (1) the duration of the transfer, which could be indefinite and subject only to annual review, and (2) that placement in the maximum-security prison disqualified an otherwise

eligible inmate from being considered for parole. *Id*. at 224. But the Court also held that only informal, nonadversarial procedures, consisting of notice of the facts leading to the transfer decision and a fair opportunity for rebuttal, were all the process that was due. *Id*. at 228-29. As the Court explained, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Id*. at 225; *accord id*. at 228-29 (because prison officials were not "attempting to remove an inmate from free society for a specific parole violation," or "revoke good-time credits for specific, serious misbehavior," no additional process was due).

The through line from *Wolff* to *Wilkinson* is that where an inmate is threatened with removal from free society (in the case of parole revocation) or delayed release from incarceration (in the loss of good-time credits), *Wolff*'s procedural protections are required. *See Morrissey v. Brewer*, 408 U.S. 471, 478-88 (1972) (parole revocation hearings require written notice in advance of hearing and opportunity to be heard and present evidence); *see also Wolff*, 418 U.S. at 555-56 (similar requirements for revoking good-time credit). Below that threshold, however, due process will be satisfied by informal, nonadversarial procedures. *See Wilkinson*, 545 U.S. at 223-24 (even indefinite placement in segregation requires only informal, nonadversarial process).

This court correctly applied this line of Supreme Court precedent in *Westefer*. There, the plaintiffs challenged the Department's system for placing inmates in a

high-security prison based on either administrative or disciplinary reasons. 682 F.3d at 681-82. The court held that the prison's conditions imposed an atypical and significant hardship, and thus implicated a liberty interest, but also held that the inmates were entitled only to "informal, nonadversarial due process" prior to being placed in the prison *Id*. at 683-84. When rejecting the argument that the inmates were entitled to *Wolff*'s procedures, the court reasoned that *Wolff* "dealt with a hearing before a good-conduct credit-adjustment committee," and that "good-time credit revocation affects the length of an inmate's incarceration and not merely his placement, and thus triggers greater due-process requirements." *Id*. at 685 n.2. By contrast, "*Hewitt* and *Wilkinson* set the correct constitutional standard for informal, nonadversary review in the transfer-placement context." *Id*. (cleaned up).

More recently, in *Adams v. Reagle*, 91 F.4th 880, this court held that, under *Westefer*, an inmate "facing transfer to disciplinary segregation is entitled only to informal, nonadversarial due process, which leaves substantial discretion and flexibility in the hands of the prison administrators." *Id*. at 895 (cleaned up); *see also Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (*Adams* "crystalized" the informal process owed to inmates facing disciplinary segregation). The panel here correctly applied *Westefer* and *Adams*, which were, in turn, based on a correct understanding of Supreme Court precedent, and held that Torres received the informal, nonadversarial process he was owed before his transfer to disciplinary segregation (assuming that a liberty interest was even implicated). *See Torres*, 155 F.4th at 958-60.

Torres advances a different view of *Wolff*, *Hewitt*, *Sandin*, and *Wilkinson*, positing that in these cases the Supreme Court distinguished between disciplinary and administrative segregation, and held that *Wolff*'s protections may be required prior to transferring an inmate to the former but not the latter. *See* Pet. 5-8. Torres is incorrect. Taking *Wolff* first, Torres argues that the Court in footnote 19 stated that the due process protections afforded inmates threatened with the loss of good-time credits must also be provided to inmates facing the possibility of transfer to disciplinary segregation. *Id.* at 6. The Court did no such thing: it noted merely that prior to transferring an inmate to segregation as discipline for misconduct, "there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction." *Wolff*, 418 U.S. at 571 n.19. To the extent that Torres understands footnote 19 to require more extensive procedures, *Sandin* clarified that the footnote is dicta. *See supra* p. 5.

As to *Hewitt*, Torres cites the Supreme Court's statement that "*Wolff* required that inmates facing disciplinary charges for misconduct" be afforded *Wolff*'s procedures. Pet. 6; *see Hewitt*, 459 U.S. at 466 n.3 (citing *Wolff*, 418 U.S. at 563-72. Again, in *Sandin*, the Court clarified that *Wolff*'s footnote 19 was dicta. *Sandin*, 515 U.S. at 485. Torres also notes *Hewitt*'s reference to the "stigma of wrongdoing" that can attach to disciplinary segregation, suggesting that no such "stigma" attaches to administrative segregation. Pet. 7 (citing *Hewitt*, 459 U.S. at 473). On the contrary, an inmate may be placed in administrative segregation for any number of reasons, including prison officials' concerns about their propensity for violence or other

8

"stigmatizing" characteristics. *See Westefer*, 682 F.3d at 682 (inmates placed in administrative detention "are classified as too dangerous to be housed in the general population in other prisons because, for example, they are members of prison gangs"). In any event, to the extent that *Hewitt* suggested that a stigmatizing placement may implicate a liberty interest, *Sandin* subsequently refocused the liberty-interest analysis on asking whether the threatened transfer would work an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 414 U.S. at 483-84; *see also id*. ("The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*.").

Next, Torres argues that *Sandin* supports his proposed rule, which would require *Wolff*'s procedures prior to transfer to disciplinary segregation but not administrative segregation, because in *Sandin*, Torres maintains, it was "assumed" that if an inmate's liberty interest were implicated, the inmate would be entitled to *Wolff*'s protections. Pet. 7 (citing *Sandin*, 515 U.S. at 491 (Ginsburg, J., dissenting) (remand to the district court would be "unavoidable" if liberty interest was found)). But *Sandin* made no such assumption: As explained, *Wolff* decided merely that its protections are required when good-time credit is at stake, 418 U.S. at 557, and neither *Wolff* nor *Sandin* addressed the procedures required prior to transferring an inmate to disciplinary segregation.

Finally, Torres argues that *Wilkinson* supports his distinction between decisions to transfer an inmate to disciplinary segregation, which require resolving

9

allegations about "'specific, serious misbehavior,'" and transfers to administrative segregation, which "'draw[ ] more on the experience of prison administrators.'" Pet. 8 (quoting *Wilkinson*, 545 U.S. at 228). To the extent Torres cites this portion of *Wilkinson* to suggest that that disciplinary decisions require factfinding that is unnecessary for administrative transfer decisions is incorrect: both types of decisions require factfinding — one concerning whether an inmate committed a specific infraction, and the other concerning an inmate's propensity for violence or other security concerns — and both types of decisions invoke prison officials' expertise in prison administration. Indeed, Torres's disciplinary infraction concerned his involvement in gang activity, something with which prison officials have acute experience. *See Wilkinson*, 545 U.S. at 227 (prison officials are "imperiled by the brutal reality of prison gangs").

In short, Torres's interpretation of Supreme Court precedent "seeks to draw from the Due Process Clause more than it can provide." *Hewitt*, 459 U.S. at 467. Torres's proposal would require more extensive procedural protections prior to transferring an inmate to disciplinary segregation than administrative segregation even though the conditions of confinement — and therefore the liberty interest implicated — may be the same in both. *See Sandin*, 515 U.S. at 486 ("disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody"); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (conditions in disciplinary segregation "essentially the same" as conditions in administrative segregation). Treating the two

10

types of segregation differently even though the liberty interest is the same would run contrary to the Supreme Court's admonition that courts should "return to the due process principles" by focusing on whether action imposes an "atypical and significant hardship." *Sandin*, 515 U.S. at 473.

By contrast, the panel decision (like *Westefer, Adams*, and *Ealy* before it) properly distinguishes between proceedings that may lengthen an inmate's period of confinement and proceedings that may result in no more than a transfer within the prison system, and holds that *Wolff*'s procedures are required for the former but not the latter. This standard aligns with Supreme Court precedent, including its insistence on avoiding unnecessary federal court entanglement in matters of prison administration. *See Bell v. Wolfish,* 441 U.S. 520, 547 (1979) (prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"*); see also Sandin*, 515 U.S. at 482 ("federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"); *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("the problems of prisons in America are complex"); *Hewitt*, 459 U.S. at 467 (prison administration "is at best an extraordinarily difficult undertaking"). Thus, the panel decision, unlike Torres's proposed rule, does not conflict with Supreme Court decision

**II.     The panel decision, like *Adams* and *Ealy* before it, did not create an intra-circuit conflict, nor is there a circuit split on this issue.**

En banc review is also not warranted because the panel decision does not create an intra- or inter-circuit split. Beginning with this circuit's decisions, *see* Pet. 8-10, Torres cites two cases that pre-date *Sandin* and *Wilkinson*, and thus do not reflect the Supreme Court's current approach to due process protections in the prison setting. *See Chavis v. Rowe*, 643 F.2d 1281 (7th Cir. 1981); *Gilbert v. Frazier*, 931 F.2d 1581 (7th Cir. 1991).[1] Similarly, *Whitford v. Boglino*, 63 F.3d 527 (7th Cir. 1995), preceded *Wilkinson* and, in any event, the parties did not appear to have raised whether *Wolff*'s protections would apply if a liberty interest was implicated, so the court did not need to decide the question presented here. *Id.* at 533-37. And *Williams v. Brown*, 849 Fed. App'x 154 (7th Cir. 2021), was decided on a motion to dismiss and addressed the pleading standards for the facts specific to that case. *See id.* at 156 ("At issue here is whether due process is satisfied by expungement of a flawed disciplinary infraction after an inmate already has served a length period of punitive segregation.").

*Prude v. Meli*, 76 F.4th 648 (7th Cir. 2023), on which Torres primarily relies, also does not support his position. *Prude* addressed an inmate's challenge to a decision by prison officials to seize a check made out to him rather than deposit it in

---

[1] The same is true of the other state supreme court decisions cited by Torres. Pet. 14 n.4; *see State ex rel. Anderson-El v. Cooke*, 610 N.W.2d 821, 829 (Wisc. 2000) (pre-dating *Wilkinson*); *In re Davis*, 599 P.2d 690, 695 (Cal. 1979) (pre-dating *Hewitt, Sandin*, and *Wilkinson*); *Riner v. Raines*, 409 N.E.2d 575, 577 (Ind. 1980) (same).

his prison account. *Id*. at 653-54. Although the officials argued that *Wolff*'s procedures were not required, this court held otherwise, explaining that *Wolff* "explicitly equated the process required to protect a prisoner's liberty interest to property interest protections." *Id*. at 657 n.4. Thus, *Prude* held no more than that an inmate's property interests receive the same level of due process protections as their liberty interests. *Prude* decided nothing about the procedures required prior to transferring an inmate to disciplinary segregation and, as explained, *Westefer*, *Adams*, and *Ealy* held that only informal, nonadversarial proceedings are required.

Nor do the out-of-circuit cases cited by Torres establish an inter-circuit split. *See* Pet. 14-15. Similar to the in-circuit cases Torres cites, several pre-date all or some of *Hewitt*, *Sandin* and *Wilkinson,* and so do not reflect the Supreme Court's current approach. *See Brown v. Plaut*, 131 F.3d 163 (D.C. Cir. 1997); *Kalwasinski v. Morse*, 201 F.3d 103 (2d Cir. 1999); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980); *Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1994); *Woodson v. Lack*, 865 F.2d 107 (6th Cir. 1989). *Stevenson v. Carroll*, 495 F.3d 62 (3d Cir. 2007), is inapposite because it addressed a due process challenge brought by a pretrial detainee, not a convicted prisoner. *Finley v. Huss*, 102 F.4th 789 (6th Cir. 2024), is consistent with this court's decisions because it held that only informal, nonadversarial procedures were required when an inmate, following disciplinary proceedings, was transferred to administrative segregation. *Id.* at 816-17. Finally, *Young v. Rios*, 390 F. App'x 982 (11th Cir. 2010), an unpublished decision, cannot be reconciled with Supreme Court precedent. The Eleventh Circuit relied on *Superintendent, Mass. Corr. Inst., Walpole*

*v. Hill*, 472 U.S. 445 (1985), to hold that *Wolff*'s procedures applied in a disciplinary segregation case. But the Court in *Superintendent* merely confirmed that *Wolff* applies to disciplinary proceedings that result in a loss of good-time credits. 472 U.S. at 454.

**III. The issue that Torres asks the en banc court to resolve is not cleanly presented by this case.**

Finally, this court should deny Torres's request for en banc review because the issue Torres wants the court to resolve is not cleanly presented by this appeal for at least two reasons. First, the panel assumed, without deciding, that Torres established a liberty interest. *See Torres*, 155 F.4th at 956. If this court were to remand, Brookman and Kent would continue to argue that, as the district court held, no liberty interest was implicated here, including by continuing to contest whether this court may consider Torres's belated reference to feces in his cell. *See Torres*, 155 F.4th at 957 (declining to decide whether Torres's submissions regarding the conditions of his cell should have been considered at summary judgment). Second, even if Torres were entitled to *Wolff*'s procedures, there is a factual dispute over whether he requested a witness given the evidence that he did not complete the necessary form. *See id.* at 954-55. Thus, even if Torres could establish a conflict between the panel decision and another decision of the Supreme Court, this court, or another circuit court (which he cannot), this appeal would not provide a suitable vehicle to decide the question presented.

**CONCLUSION**

For these reasons, Defendants-Appellees Kent Brookman and Jason Hart request that this court deny the petition for rehearing en banc.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

/s/ Kaitlyn N. Chenevert
**KAITLYN N. CHENEVERT**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for
Defendants-Appellees

December 19, 2025.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and 7th Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Fed. R. App. P. 40(d)(2), (3) in that the brief is 3,697 words.

<u>/s/ Kaitlyn N. Chenevert</u>
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
kaitlyn.chenevert@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I certify that on December 19, 2025, I electronically filed the foregoing

Response of Defendants-Appellees to Petition for Rehearing En Banc with the Clerk

of the Court for the United States Court of Appeals for the Seventh Circuit by using

the CM/ECF system.

I further certify that the other participants in this appeal, named below, are

CM/ECF users, and thus will be served via the CM/ECF system.

Samuel Weiss

Oren Nimni

Robert Reeves Anderson

Brian Williams


By:   <u>/s/ Kaitlyn N. Chenevert</u>
KAITLYN N. CHENEVERT
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2127 (office)
(773) 590-6946 (cell)
Kaitlyn.Chenevert@ilag.gov